**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASSOCIATION OF CIVILIAN TECHNICIANS, INC., <u>et</u> <u>al</u>. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) **Civil Action No. 07-1747 (CKK)** |
| | ) |
| UNITED STATES OF AMERICA, <u>et</u> <u>al</u>., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

<u>**DEFENDANTS' MOTION TO DISMISS,**</u>
<u>**OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**</u>

Defendants, the United States of America, Pete Geren, and Lieutenant General Steven

Blum, in their official capacity, through the undersigned counsel, respectfully move to dismiss

Plaintiffs' Complaint, pursuant to Rules 12(b)(1) of the Federal Rules of Civil Procedure ("Fed.

R. Civ. P.") for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(7) for failure

to join an indispensable party.  In the alternative, the Defendants move for summary judgment,

pursuant to Fed. R. Civ. P. 56 because there is no genuine issue as to any material fact and

Defendants are entitled to judgment as a matter of law.  In support of this Motion, Defendants

respectfully submit the attached memorandum of points and authorities, statement of material

facts not in genuine dispute, proposed order, and four administrative records.

Respectfully submitted,

                    /s               
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


                    /s               
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


                    /s               
_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Room E4408
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants


Of Counsel:
MAJOR KELLY L. MCGOVERN
U.S. Army Litigation Division
Arlington, VA 22203

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ASSOCIATION OF CIVILIAN TECHNICIANS, INC., et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1747 (CKK)** |
| | ) | |
| **UNITED STATES OF AMERICA, <u>et</u> <u>al.</u>,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

Defendants file this Memorandum in support of Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.  Plaintiffs' Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) because the Plaintiffs failed to iedentify a waiver of sovereign immunity, and in the alternative, because the Court lacks subject matter jurisdiction of Plaintiffs' mandamus claim.  Plaintiffs' Complaint should also be dismissed under Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party under Rule 19. Additionally, because Plaintiffs' seek reinstatement into their National Guard technician jobs, and thus, necessarily reinstatement into the Puerto Rico Army National Guard ("PRANG"), but the relief Plaintiffs demand is beyond the Defendants' authority, Defendants are therefore entitled to judgment as a matter of law.  Defendants' statement of material facts not in genuine dispute, Defense Exhibits, and the Administrative Records ("AR") support this memorandum.

# I.  **INTRODUCTION**

Plaintiffs,[1] Kenneth Colon Ayala, Daniel Romero Cruz, Domingo Hernandez Dones, and Juan A. Velez Soto, are former military members of the PRANG and former dual status National Guard technicians employed by the PRANG under 32 U.S.C. § 709.  (Compl. ¶ 3.)   All of the Plaintiffs were separated from PRANG and consequently lost their technician employment.[2] (Compl. ¶ 3.)

The Secretary of the Army, acting through the Army Board for Correction of Miliary Records[3] ("ABCMR" or "Board"), found that each Plaintiff had been separated from the PRANG in violation of federal regulations and determined that they should be retroactively reinstated in the PRANG.  (Compl. ¶ 3.)  The ABCMR recommended to the Puerto Rico Adjutant General (AG) that the four members be reinstated and granted equitable relief.  (AR Colon 10); (AR Cruz 8,10);(AR Hernandez 13); (AR Velez 15).)  The National Guard Bureau[4] ("NGB") performed its mission as the liaison by generating advisory opinions and forwarding

---

[1]  Throughout this memorandum, "Plaintiffs" shall refer to Plaintiffs' Hernandez, Velez, Cruz, and Colon, while recognizing that the union organizations are named as Plaintiffs in the Complaint.

[2]  Membership in the state National Guard is a prerequisite to employment as a civilian technician.  32 U.S.C. § 709(b).

[3]  The ABCMR is composed of civilians appointed by the Secretary of the Army, and has statutory authority to any military records within the Secretary's Department when the Secretary considers it is necessary to correct an error or remove an injustice. 10 U.S.C. § 1552(a); 32 C.F.R. § 581.3 (setting out the policies, procedures, and governing rules of the ABCMR); U.S. DEP'T OF ARMY REG. (Army Reg.)15-185, ARMY BOARD FOR CORRECTION OF MILITARY RECORDS (31 Mar. 2006).

[4]  The NGB "is the channel of communications on all matters pertaining to the National Guard, the Army National Guard of the United States ("ARNGUS"), and the Air National Guard of the United States between (1) the Department of the Army and Department of the Air Force, and (2) the several States."  10 U.S.C. § 10501.  See also Army Reg. 130-5, Army National Guard Organization and Functions of National Guard Bureau, para. 1-5(b) (30 Dec 2001).

the ABCMR's recommendations to the Puerto Rico AG.  (AR Colon 1); (Cruz 24, 45); (AR Hernandez 1-6); (AR Velez 31-39).)  Puerto Rico officials refused to reinstate Plaintiffs in the PRANG.[5]  (AR Colon 5); (AR Hernandez 8); (AR Velez 22).)  The ABCMR made the corrections it deemed appropriate to the Plaintiffs' federal records, within the Department of the Army. (Id.)  The ABCMR and NGB lack the authority to correct records belonging to the Commonwealth of Puerto Rico and the PRANG.  Therefore, Defendants could not reinstate Plaintiffs to the PRANG.  Plaintiff's failure to be reinstated to the PRANG also precludes their reinstatement to their National Guard technician employment.

## II.  SUMMARY OF THE ARGUMENT

Plaintiffs' Complaint fails to properly plead or prove subject matter jurisdiction. Plaintiffs assert jurisdiction under § 1331 and § 1336, but neither of those provisions provide a waiver of sovereign immunity.  The government cannot be sued without its consent, therefore, the Plaintiffs' Complaint should be dismissed in its entirety pursuant to Rule 12(b)(1).

Plaintiffs seek mandamus, asking this Court to order the Defendants to reinstate them in their technician jobs and thus the PRANG.  However, Plaintiffs do not have a clear right to the relief sought, and the Defendants do not have a clear, non-discretionary duty to provide Plaintiffs the relief they seek.  Moreover, Plaintiffs have other adequate remedies, to include relief under the Administrative Procedure Act (APA), 28 U.S.C. §§ 701-706.  Accordingly, the Court lacks subject matter jurisdiction over Plaintiffs' mandamus claim, and it should be dismissed.

Plaintiffs' Complaint fails to join the Commonwealth of Puerto Rico, an indispensable

---

[5] Although the administrative record of Plaintiff-Cruz does not affirmatively indicate that Puerto Rico officials refused his reinstatement to the PRANG, his filing of this Complaint suggests that they did in the same way as they refused reinstatement of the other Plaintiffs.

party under Rule 19.  Because Plaintiffs' membership in the PRANG is a prerequisite to employment as a National Guard technician under 32 U.S.C. § 709, Puerto Rico is an indispensable party.  Under Rule 19, Plaintiffs' case cannot go forward in equity and good conscience, and accordingly, it should be dismissed under Fed. R. Civ. P. 12(b)(7).

Defendants clearly lack authority to grant Plaintiffs' requested relief because Federal Officials cannot order State Officials to reinstate members to a State's National Guard.[6]  Because Defendants do not have the authority to order Puerto Rico officials to reinstate Plaintiffs to the PRANG, and since PRANG membership is a prerequisite to employment as a National Guard technician, Defendants cannot re-appoint Plaintiffs as National Guard technicians.  Therefore, Defendants acted lawfully in  recommending to the PRANG AG that Plaintiffs be re-instated into the PRANG.        Defendants action should also be upheld under the APA because Defendants' action complies with the Civilian Technicians Act and other applicable laws and regulations.  Accordingly, Defendants' Motion should be granted.

### III. STATEMENT OF FACTS

Defendants respectfully refer the Court to Defendants' Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

### IV. ARGUMENT

### A.  Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims

---

[6] 32 U.S.C. 709 governs the employment of technicians, to include those working for the Puerto Rico National Guard.  "The local governments to which National Guard units may be responsible include the local governments of states, territories of the United States, Puerto Rico, the Canal Zone, and the District of Columbia.  32 U.S.C. § 101(6).  For the sake of convenience, Defendants adopt the practice of the First Circuit and "refer to all these entities as 'state' governments or states, although of course, Puerto Rico is not a state but enjoys a unique political relationship of its own with the United States.  In the present case, the difference between Puerto Rico and a state are immaterial."  Penagaricano v. Llenza, 747 F.2d 55, 57, n.1 (1st Cir. 1984).

1. **Standard of Review**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), a complaint is construed to afford all possible inferences in favor of the plaintiff's allegations of fact. Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "In spite of the favorable inferences that a plaintiff receives, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence." McManus v. District of Columbia, 2007 U.S. Dist. LEXIS 94797, *30-32 (D.D.C. 2007); See also Am. Farm Bureau v. United States EPA, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). In considering a motion to dismiss for lack of subject matter jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997).

2. **Plaintiffs Fail To Provide A Waiver Of Sovereign Immunity**

It is well established that the United States cannot be sued without its consent. "[A] sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." United States v. Mitchell, 445 U.S. 535, 538 (1980) (citation omitted); United States v. Testan, 424 U.S. 392, 399 (1975); United States v. Sherwood, 312 U.S. 584, 586 (1941). Only Congress can waive the sovereign immunity of the United States. Block v. North Dakota, 461 U.S. 273 (1983). These waivers of sovereign immunity are strictly construed, cannot be implied, and must be unequivocally expressed. Library of Congress v. Shaw, 478 U.S. 310 (1986); United States v. Mitchell, 445 U.S. 535, 538 (1980); McMahon v. United States, 342 U.S. 25 (1951). In addition, such

5

statutory waivers "are to be construed strictly in favor of the sovereign." <u>McMahon v. United States</u>, 342 U.S. 25, 27 (1951) (footnote omitted).

The burden of pleading and proving a court's subject matter jurisdiction is plaintiffs'. <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 182, 189 (1936); <u>McManus</u>, 2007 U.S. Dist. LEXIS at*30-32.  Plaintiffs asserted that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1361, however neither statute provides a waiver of sovereign immunity of the United States.  As the D.C. Circuit has stated "Neither the general federal question statute nor the mandamus statute by itself waives sovereign  immunity." <u>Swan v. Clinton</u>, 100 F.3d 973, 981 (D.C. Cir. 1996); <u>See</u> <u>also</u> <u>Romashko v. United  States</u>, 2007 U.S. Dist. LEXIS 72472, 31-33 (D.D.C. 2007).  28 U.S.C. § 1331 provides jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1361 provides the Court with "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Although both § 1331 and  § 1361 offer a jurisdictional basis, neither provides a waiver of sovereign immunity. Therefore, Plaintiffs' Complaint should be dismissed.

### 3.  The APA Could Provide A Waiver Of Sovereign Immunity

Although Plaintiffs failed to provide a waiver of sovereign immunity when they asserted jurisdiction under 28 U.S.C. § 1331, Plaintiffs arguably could have an APA claim under 5 U.S.C. §§ 701-705.  Since Plaintiffs are challenging the ABCMR's decision to make recommendations to the PRANG and assert that the Defendants acted contrary to law, the Court could review the case under the APA standard.

### 4.  This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Mandamus Claim

Plaintiffs attempt to invoke jurisdiction of the Court under the Mandamus Act, 28 U.S.C. § 1361. (Compl. ¶ 2.) Plaintiffs ask that this Court order Defendants to reinstate them to the PRANG and their civilian technician jobs. (Compl. ¶ 21.) Plaintiffs have failed to set forth the necessary prerequisites for mandamus relief in this Complaint. "The mandamus remedy is an extraordinary one, and it is to be utilized only under exceptional circumstances . . . ." Haneke v. Secretary of Health, Education and Welfare, 535 F.2d 1291 (D.C. Cir. 1976).

To qualify for mandamus relief Plaintiffs must show: 1) a clear right to the relief sought; 2) the defendant has a clear duty to act; and 3) the absence of any other adequate remedy. Swan, 100 F.3d at 977; Atlantic Tele-Network Inc. v. Inter-American Development Bank, 251 F. Supp. 2d 126, 131 (D.D.C. 2003). Plaintiff cannot demonstrate they have a clear right to the relief they seek, therefore they have failed to satisfy the first prerequisite for mandamus relief. The composition of a state militia is one of the most fundamental military decisions. Courts simply are not competent to "detemin[e] who is fit or unfit to serve in the armed forces." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983); Cargill v. Marsh, 902 F.2d 1006 (D.C. Cir. 1990) (service member's mandamus petition to reassignment is nonjusticiable). An order by this Court that Defendants reinstate Plaintiffs would intrude upon a military decision regarding the composition of the force and is beyond the type of relief contemplated by mandamus.

Furthermore, Plaintiffs failed to show that Defendants have a clear, ministerial, non-discretionary duty to perform any acts other than those already performed on Plaintiffs behalf. Plaintiffs assert that the Secretary of the Army and the NGB have a duty and the authority to order Plaintiffs' reinstatement into their National Guard technician jobs and the PRANG based on 10 U.S.C. § 3013(b) or 10 U.S.C. §10503 . (Compl. ¶¶ 18-20.) 10 U.S.C.

§3013 applies to the Department of Army, Title 10 military affairs, not those belonging to the States' militias under Title 32. 10 U.S.C. § 3013(b) specifically states that "the Secretary of the Army is responsible for, and has the authority necessary to conduct, all affairs of the <u>Department of the Army</u>, . . ." 10 U.S.C. §3013(b) (emphasis added). These responsibilities do not include reinstating individuals to a State National Guard. <u>Id.</u> That is because enlistment, revocation of State National Guard discharge orders, or reinstatement to the State National Guard are all military affairs that belong to the Governor of the state militia under Title 32 of the United States Code, not the Secretary of the Army under Title 10.[7] Accordingly, the Secretary of the Army does not owe Plaintiffs any duty to reinstate them to their National Guard jobs. Similarly, 10 U.S.C. §10503 does not authorize the NGB to reinstate individuals to civilian technician positions. Instead it merely charges the NGB with developing policies and issuing "directives, regulations, and publications consistent with approved policies of the Army and Air Force, as appropriate." 10 U.S.C. §10503(10).

The Secretary of the Army and the Chief of the NGB lack legal authority under 32 U.S.C. § 709 to reinstate Plaintiffs to their National Guard technician jobs as long as they remain discharged from the PRANG. By statute, the Puerto Rico AG was the sole discretion in handling personnel matters, including appeals, for employment as technicians. 32 U.S.C. § 709. 32 U.S.C. §709(d) clearly states that the AG "employs and administers the technicians authorized

---

[7] The officials of the PRANG, who are not Defendants in this suit, have the authority, but have refused to reinstate Plaintiffs. (AR Colon 5); (AR Hernandez 8); (AR Velez 22); <u>See</u> <u>also</u> note 5, *supra*. 32 U.S.C. § 709(b)(2) requires Plaintiffs to be members of the State National Guard in order to be civilian technicians. 32 U.S.C. §709(f)(1)(A) requires that Plaintiffs be separated from their technician employment once they were separated from the PRANG. <u>See</u> Defendant's Motion to Dismiss Due to Failure To Join An Indispensable Party, Part B, *infra*.

by this section" <u>Id</u>.  The AG can separate a technician at any time for cause, 32 U.S.C. § 709(f)(2) and the AG has jurisdiction that includes "a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation." 32 U.S.C. § 709(f)(3).  Whenever technicians are terminated, including mandatory removal from the dual status technician position due to loss of their state National Guard status, the right of the individual to appeal "shall not extend beyond the adjutant general of the jurisdiction." 32 U.S.C. § 709(f)(4).  Therefore, the Defendants clearly do not have a duty to provide the relief Plaintiffs requested; the duty rests with the Puerto Rico AG.

Finally, Plaintiff has another adequate remedy which precludes the availability of mandamus relief.  Plaintiff has the ability to obtain relief from this Court under the APA.  Given the existence of relief under the APA, mandamus relief is unavailable. <u>American Cetacean Soc'y v. Baldrige</u>, 768 F.2d 426, 433 (D.C. Cir. 1985), <u>rev'd on other grounds</u> sub nom. <u>Japan Whaling Ass'n v. American Cetacean Soc'y</u>, 478 U.S. 221 (1986)**.**

**B.  <u>Plaintiffs' Complaint Should be Dismissed for Failure to Join Indispensable Parties</u>**

**1.  <u>Standard of Review for a 12(b)(7) Motion to Dismiss</u>**

"Rule 19 sets forth a two-part test that mandates joinder of a party or dismissal of the suit if the absent party meets the description of a necessary party under Rule 19(a) and is deemed indispensable under Rule 19(b)." <u>Corsi v. Eagle Publ., Inc</u>., 2008 U.S. Dist. LEXIS 6257, *14-15 (D.D.C. 2008); <u>Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Washington</u>, 699 F.2d 1274, 1278-79 (D.C. Cir. 1983). Rule 19(a) states that a party is necessary if, without that party: 1) "complete relief cannot be accorded;" or 2) the absent party "claims an interest relating

9

to the subject of the action and is so situated that the disposition of the action in [that party's] absence may" either "(i) as a practical matter impair or impede the [party]'s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed. R. Civ. P. 19(a); <u>see also</u> <u>Kickapoo Tribe v Babbitt</u> 43 F.3d 1491 (D.C. Cir1995) (District Court abused its discretion in denying motion to dismiss the complaint because a State was an indispensible party under Rule 19(b)); A party only needs to meet on of the above elements in order to be deemed a necessary party under Rule 19(a). Fed. R. Civ. P. 19(a); <u>Corsi</u>, U.S. Dist. Lexis 6257 at *8.

"Where an absent party cannot be made a party, Fed. R. Civ. P. 19(b) instructs the court to determine: 'whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent [party] being thus regarded as indispensable.'" <u>Kickapoo Tribe</u>, 43 F.3d at 1495 (<u>quoting</u> Fed. R. Civ. P. 19(b). Rule 19(b) lists four factors to be considered including: 1) the "extent a judgment rendered in the [party's] absence might prejudice that [party] or those already parties;" 2) "the extent to which . . . any prejudice could be lessened or avoided;" 3) "whether a judgment rendered in the [party's] absence [would] be adequate;" and 4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(1)-(4); <u>Corsi</u>, U.S. Dist. Lexis 6257 at *8-9. While a court has "substantial discretion in considering which factors to weigh" <u>Cloverleaf Standardbred</u>, 699 F.2d at 1277, there is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit." <u>Kickapoo Tribe</u>, 43 F.2d at 1496. Instead, it is unlikely that a lawsuit can proceed "in equity and good

10

conscience" in the absence of a State which is both a necessary party and immune from suit. Id. at 1497.

## 2.  **Background Of Civilian Technicians Working For the National Guard**

### a.  **Structure of the National Guard**

"The National Guard is the modern Militia reserved to the states by Art. I § 8, cl. 15, 16 of the Constitution." Illinois Nat'l Guard v. Fed. Labor Relations Auth., 854 F.2d 1396, 1397-98 (D.C. Cir. 1988) (quoting Maryland v. United States, 381 U.S. 41, 46 (1965)). "The status of National Guard employees, like that of the Guard itself, is unusual and somewhat complex.  In addition to its part-time, purely military personnel, the Guard employs full-time civilian workers, known as National Guard technicians, who 'meet the day-to-day administrative, training, and logistic needs of the Guard.' Illinois Nat'l Guard, 854 F.2d at 1398 (quoting Simpson v. United States, 467 F. Supp. 1122 (S.D.N.Y. 1979).  See also Assoc. of Civil Technicians, Wichita Air Capitol Chapter v. Fed. Labor Relations Auth., 360 F.3d 195 (D.C. Cir. 2004); Assoc. of Civilian Technicians, Schenectady Chapter v. Fed. Labor Relations Auth., 230 F.3d 377 (D.C. Cir. 2000). Technicians are required to be members of their state National Guard units, and perform even their civilian tasks "in a distinctly military context, implicating significant military concerns." Illinois National Guard, 854 F.2d at 1398 (quoting New Jersey Air National Guard v. Fed. Labor Relations Auth., 677 F.2d 276, 279 (3d Cir. 1982); See also 32 U.S.C. § 709(b).

National Guard technicians are considered to be 'dual status' employees.  Assoc. of Civilian Technicians, Tex. Lone Star Chapter 100 v. Fed. Labor Relations Auth., 250 F.3d 778 (D.C. Cir. 2001)  "[T]he employment status of National Guard technicians is a hybrid, both of federal and state, and of civilian and military strains."  Illinois National Guard, 854 F.2d at 1398.

"Technicians occupy a dual-employment status: in addition to serving as federal civilian employees, see 5 U.S.C. § 2105(a)(1)(F) (2000), they must be military members of the National Guard under the National Guard Technicians Act, see 32 U.S.C. § 709(b)(2) (2000) ("Technicians Act")." Assoc. of Civil Technicians, Wichita Air Capitol Chapter, 360 F.3d at 196.

National Guard technicians became federal employees in 1968, when Congress enacted the National Guard Technician Act, (codified as amended at 32 U.S.C. §§ 709, 715.) Illinois National Guard, 854 F.2d at 1398. "When Congress enacted the National Guard Technician Act of 1968 . . . it provided that all employed technicians shall be members of the National Guard, hold the military grade specified for that position and be considered in some respects as federal employees. As federal employees, they would have available to them the same retirement and fringe benefits available to other federal employees and be covered by the Federal Tort Claims Act." Am. Fed'n of Gov't Employees, Local 2953 v. Fed. Labor Relations Auth., 730 F.2d 1534, 1537 (D.C. Cir. 1984)(emphasis added). See also Illinois National Guard, 854 F.2d at 1398 ("That Act grants technicians federal employee status 'for the limited purpose of making fringe and retirement benefits of federal employees and coverage under the Federal Tort Claims Act … available to National Guard technician employees of various states") (quoting Am. Fed'n of Gov't Employees Local 2953, 730 F.2d at 1537).

### b. State Adjutants Possess The Power To Make Personnel Decisions

"Since technicians are members of the state National Guard, Congress was careful to recognize the authority of the state." Am. Fed'n of Gov't Employees Local 2953, 730 F.2d at 1536. The principal reason for enacting the Technician Act was to afford those employees the

federal fringe and retirement benefits, "and in so providing the Congress made it clear that it recognized that the states' authority in other respects would continue as before.  This included generally that reductions-in-force, discharges and other personnel actions would be accomplished by the Adjutant General of the National Guard of the particular state and that a right to appeal from such decisions would <u>not</u> extend beyond the State's Adjutant General."  <u>Id.</u> <u>See</u> <u>also</u> <u>Illinois National Guard</u>, 854 F.2d 1398 (32 U.S.C. § 709(e) of the Technician Act "vests the adjutants general of the various states with final discretion over most matters relating to [the Technicians] employment and termination").

> [T]he Secretary of the Army is directed to designate that the state adjutants general 'employ and administer the technicians, § 709(c)'; technicians are required to be <u>members</u> of the national Guard and hold the military grade specified for that position, id., (b), (d); the separation of technicians from their employment for failure to meet military security standards, or for other cause is to be effected by the state adjutant general, id. (e) (1), (2), (3); and the adjutant general also is to accomplish a 'reduction-in-force, removal, adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation, id., (4).  In addition a right of appeal from any action taken under (1), (2), (3), or (4), supra, does '<u>not extend beyond the adjutant general</u> . . . .

<u>Am. Fed'n of Gov't Employees Local 2953</u>, 730 F.2d at 1537;  <u>See</u> <u>also</u> <u>Illinois National Guard</u>, 854 F.2d at 1398 (citing 32 U.S.C. § 709(f)) ("Because of their unique status, the Technician Act specifically exempts Guard technicians from several other provisions of title 5 of the U.S. Code that apply to the vast majority of federal government employees.  For example, technicians who are fired or suspended from the Guard may not avail themselves of the appeals procedure set forth in section 7513.")

### c.  <u>Technicians Must Be Members Of The National Guard</u>

13

"The National Guard Technician Act of 1968, 32 U.S.C. § 709(b), provides that, as a condition of civilian employment, technicians must [ ] be members of the National Guard . . . ." Assoc. of Civilian Technicians, Tex. Lone Star Chapter 100, 250 F.3d 778 (D.C. Cir. 2001). See also Tennessee v. Dunlap, 426 U.S. 312 (1976) ("The National Guard Technicians Act of 1968 provides generally that a National Guard technician, who is a full time civilian employee of the National Guard, must be a member of the National Guard, and that a technician who is separated from the Guard 'shall be promptly separated from his technician employment' 32 U.S.C.§ 709 (b), (e)(1)); Assoc. of Civil Technicians, Wichita Air Capitol Chapter, 360 F.3d 195 (D.C. Cir. 2004) ("they must be members of the National Guard under the National Guard Technicians Act); Am. Fed'n of Gov't Employees, Local 2953, 730 F.2d at 1537 (D.C. Cir. 1984) (finding that the Technician Act requires that each dual status technician be a member of the National Guard). As the D.C. Circuit stated:

> [We] previously observed that the military side of technicians employment takes precedence. That precedence is made clear in the National Guard Technician Act, 32 U.S.C. § 709, et seq. We have said of the Technicians Act that 'military preparedness is [its] sine qua non,' and that its '[m]andate is to preserve the Guard's military effectiveness and efficiency … [by] ensuring the guard's ability to recruit and retain technicians qualified for both their civilian and military roles.'

Nat'l Fed'n of Fed. Employees, Local 1623 v. Fed. Labor Relations Auth., 852 F.2d 1349, 1351 (D.C. Cir. 1988).

"When a technician's military and civilian positions become incompatible (because of a change in either one), the Technicians Act provides that the technician 'shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned.' 32 U.S.C. § 709(e)(1)" Id. The D.C. Circuit court went on to say that "[t]he Technician Act makes clear that the entire question of compatibility is a military issue… the statute requires that

incompatibility be remedied in one swift way: a technician who is no longer compatible 'shall

promptly separate from his employment.' 32 U.S.C. § 709(e)(1)"  Id. at 1352.

### 3.  The Commonwealth of Puerto Rico is a Necessary and Indispensable Party according to Rule 19

Because Plaintiffs' Complaint, seeks reinstatement as a National Guard technician,

(Compl. ¶21(d)) there can be no real doubt that Puerto Rico is a necessary party under the tests

set forth in Rule 19(a). Rule 19(a) defines a party as necessary, *inter alia*, if  "complete relief

cannot be accorded" without that party; or alternatively, if the absent party's  interest in the case

is such that resolution "as a practical matter [will] impair or impede" the party's ability to protect

its interest. Fed. R. Civ. P. 19(a).  While a party need only meet one of those criteria to be

deemed "necessary," Puerto Rico is a necessary party under both the criteria set forth above. 32

U.S.C. § 709 requires National Guard Technicians to be members of the State National Guard

and it gives State officials final discretion to terminate National Guard employees. 32 U.S.C. §

709 (b),(e).  As a result, Plaintiffs cannot get the relief they seek without joining the

Commonwealth of Puerto Rico.  More importantly, Puerto Rico has an obvious interest in who

works as a National Guard technician for the reasons set forth above.  The Technicians Act, and

subsequent caselaw make clear that its "mandate is to preserve the Guard's military effectiveness

and efficiency . . . by ensuring the guard's ability to recruit and retain technicians qualified for

both their civilian and military roles." (Emphasis added). Nat'l Fed'n of Fed. Employees, Local

1623, 852 F.2d at 1351.

Given the "hybrid" status of National Guard technicians as both military-civilian, and

state-federal actors, the interests of Puerto Rico are completely intertwined in this case.

15

Reinstating Plaintiffs as National Guard technicians without the involvement of Puerto Rico, would obviously impede its serious interest in determining the composition of its National Guard Militia.  The "multi-hatted" roles of National Guard technicians, the authority of the Puerto Rico AG to make personnel decisions, and the statutory requirement that National Guard technicians be members of the PRANG leave no doubt that Puerto Rico is a necessary party to this action. 32 U.S.C. § 709(b).  Cf Kickapoo Tribe, 43 F.2d at 1495 ("Kansas has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by the relief the [plaintiff] seeks.").

Puerto Rico is also an indispensable party under Rule 19(b).  The four non-exclusive factors court looks to in considering whether a party is indispensable are: (1) the "extent a judgment rendered in the [party's] absence might prejudice that [party] or those already parties;" (2) "the extent to which . . . any prejudice could be lessened or avoided;" (3) "whether a judgment rendered in the [party's] absence [would] be adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(1)-(4).  In this instance, the first two factors of Rule 19(b) are met because the relief Plaintiffs seek would prejudice Puerto Rico and there is no effective way that this Court could "lessen or avoid" that prejudice while allowing Plaintiffs to pursue their claims. As the D.C. Circuit stated in reversing a district court in a case involving similar facts, if  "there is no way the court can avoid the prejudice" a district court should "dismiss the complaint for failing to join an indispensable party without consideration of any additional [Rule 19(b)] factors." Kickapoo Tribe, 43 F.3d at 1498; See also Adams v. Bell, 711 F.2d 161, 171 n.42 ("Under the first and second prongs of [Rule 19(b)], when the relief requested *must*, to satisfy plaintiff's

claims, be in derogation of the rights of a [party] not before the court, that person is an

indispensable party.") Accordingly, the Court should dismiss Plaintiffs' Complaint pursuant to

Fed. R. Civ. P. 12(b)(7) and Rule 19.

**C.  Summary Judgment Should Be Entered In Favor of the Defendants**

    **1.  Standard of Review**

        **a.  Motion for Summary Judgment**

        Summary judgment is proper when the pleadings and evidence demonstrate that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A genuine issue of material fact is

one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 243 (1986).  While all evidence and the inferences drawn therefrom must be

considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986), summary judgment should be granted if the

moving party submits "affirmative evidence that negates an essential element of the nonmoving

party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish

an essential element of the nonmoving party's claim." Celotex, 477 U.S. at 331.[8]

        In an opinion issued the same day as Celotex, the Supreme Court explained the

circumstances in which summary judgment is appropriate, "the mere existence of a scintilla of

---

[8]  "In the language of the Rule, the nonmoving party must come forward with 'specific facts
showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.
Civ. Proc. 56(e)).  Therefore, Plaintiffs' failure to meet the Rule 56 standard of review by not
providing any factual evidence sufficient to prove the elements of his claim will justify summary
judgment as a matter of law.

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 252 (1986). Unsupported speculation is not enough to defeat a summary judgment motion;

the existence of specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e)(the

nonmoving party may not rest on mere allegations but "must come forward with 'specific facts

showing there is a genuine issue for trial.'"). See also Hayes v. Shalala, 902 F.Supp. 259, 263

(D.D.C. 1995)(opposition to summary judgment must consist of more than mere unsupported

allegations or denials). In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'" 477 U.S. at 327, quoting Fed. R. Civ. P. 1.

### b. Review is Limited Under the Administrative Procedure Act

"Summary judgment is appropriate to resolve disputes over final administrative actions.

However, the court does not employ the standard under Fed. R. Civ. P. 56, but instead applies

the standard of review under the relevant statute and the Administrative Procedure Act."

Weingartner v. Wynne, 2007 U.S. Dist. LEXIS 22175, at n.2 (D.D.C. 2007). See 5 U.S.C. §§

701-05. "Final agency action is subject to judicial review under the APA. The ABCMR and

NGB are "agencies," see 5 U.S.C. § 701(b)(1) (defining "agency" to include "each authority of

the Government"), and their decisions are considered agency actions for the purposes of this suit.

See 5 U.S.C. § 704. Thus, the Court must defer to the ABCMR and NGB's decisions unless they

are "arbitrary and capricious, contrary to law, or unsupported by substantial evidence."

Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 4; see Frizelle v. Slater, 111 F.3d 172, 176

18

(D.C. Cir. 1997); Dickson v. Secretary of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995).

"[T]hough judicial review of military records correction decisions incorporates the core 'arbitrary or capricious' standard of traditional administrative law, such review involves an 'unusually deferential application' of that standard." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting Kreis, 866 F.2d at 1514). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Id. (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.") Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 8. The deference owed by the courts to the military "is at its highest when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process." Dilley v. Alexander, 603 F.2d 914, 920 (D.C. Cir. 1979).

"The court's only task is to determine whether there is such relevant evidence as a reasonable mind might accept as adequate to support the [agency's] conclusions." Pierce v. Underwood, 487 U.S. 552, 564 (1988); accord Burlington Northern R. Co. v. Surface Transp. Bd., 114 F.3d 206, 210 (D.C. Cir. 1997). A court should consider whether the "decision was based on a consideration of the relevant factors and whether there was a clear error of judgment," but a court "is not empowered to substitute its judgment for that of the agency." Pierce, 487 at 564. The "review is highly deferential," requiring a court to "presume the validity of agency action." Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994); see also American Horse Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990); Motor Vehicles

19

Mfrs. Ass'n. v. Ruckleeshaus, 719 F.2d 1159, 1164 (D.C. Cir. 1983).  "[O]nly the most

egregious decisions" may be set aside by the courts.  Kreis, 866 F.3d at 1514.  A court should

uphold a decision if "the agency has articulated a rational connection between the facts found

and the choice made."  Kisser, 14 F.3d at 619 (quoting Bowman Transportation v. Arkansas-Best

Freight System, 419 U.S. 281, 285 (1974)).

As the D.C. Circuit has noted, the ABCMR's authorizing statute provides the agency

with considerable discretion in determining whether to take corrective action with respect to an

applicant's record.  Kreis, 866 F.2d at 1512-14.  The Secretary, acting through the ABCMR,

"'may correct any military record of that department when he considers it necessary to correct an

error or remove an injustice,' 10 U.S.C. § 1552(a)(emphasis added), not simply whenever a court

determines that certain objective conditions are met, i.e., that there has been an error or

injustice."  Id. (noting that this scheme "exudes deference" to the Secretary and "substantially

restrict[s] the authority of the reviewing court to upset the Secretary's determination").  Judicial

review of the ABCMR's decision requires the Court "to determine only whether the Secretary's

decision making process was deficient, not whether his decision was correct."  Id. at 1511."

Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 6.

To prevail, the "plaintiff has the burden of . . . providing cogent and clearly convincing

evidence" and must overcome the presumption that military administrators discharge their duties

correctly, lawfully, and in good faith."  Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996); see

also Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) cert. denied, 479 U.S. 853 (1986).

Thus, "[u]nless Congress specifically provided otherwise, courts traditionally have been

reluctant to intrude upon the authority of the Executive in military and national security affairs."

20

Department of Navy v. Egan, 484 U.S. 518, 530 (1988).

In short, the Court's task in reviewing military personnel decisions under the APA is to determine whether "the decision making process was deficient, not whether [the] decision was correct." Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) (quoting Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989). In this case, the Defendants followed the letter of the law, and therefore, the Court should grant Defendants' Motion for Summary Judgment.

### 3.  The Army is Limited to Correcting Plaintiffs' Federal Records

The heart of Plaintiffs' case rests on the fact that "[t]he National Guard Technician Act of 1968, 32 U.S.C. § 709(b), provides that, as a condition of civilian employment, technicians must [ ] be members of the National Guard . . . ." It has clearly been established that you cannot be a technician unless you are also a member of the National Guard. 32 U.S.C. §709(b). Therefore, when the Puerto Rico AG refused to reinstate Plaintiffs into the National Guard, he also precluded their reinstatement as National Guard civilian technicians. As stated in Part 4.B.2, *supra,* the Technicians Act gives the Puerto Rico AG the authority to make these personnel decisions. Neither this Court nor Defendants can reinstate Plaintiffs to their National Guard technician jobs as Plaintiffs seek (Compl. ¶ 21), because the AG has refused to reinstate them to the PRANG. (AR Colon 5; AR Hernandez 8; AR Velez 22.) Plaintiffs are essentially seeking an order from the Court requiring the Federal Government to compel the Governor of the State militia to exercise a function of the State, and to reappoint Plaintiffs as members in a State organization. Such an order would be improper because it is violates 32 U.S.C. §709, basic principles of Federalism, and goes beyond the Federal Government's jurisdiction. See American

Federation of Gov't. Employees, Local 2953, v FLRA, 730 F2d, 1534 (D.C. Cir. 1984) (Discharge of technicians remains completely with state officials, and no appeal lies from personnel decisions of Adjutants General).

### a. The ABCMR Lacks Authority To Order State Officials To Reinstate Members To A State National Guard.

Courts have repeatedly recognized that the ABCMR cannot compel a State to reinstate members to the National Guard. Navas v. Vales, 752 F.2d 765, 770 (1st Cir. 1985); See also Penagaricano v. Llenza, 747 F.2d 55, 57 (1st Cir. 1984).  In Navas, a plaintiff chose not to file an application with the ABCMR because he knew it could not grant him the actual relief of being re-admitted to the PRANG.  Navas, 752 F.2d at 770.  While requiring plaintiff to exhaust his remedies with ABCMR, the First Circuit agreed that the ABCMR could not "compel the Puerto Rico National Guard to reinstate Navas."  Id.

In Penagaricano, with facts nearly identical to this present case, a plaintiff sued the Puerto Rico Air National Guard and senior officers, after he was discharged from the Air National Guard, and as a result lost his civilian employment as a National Guard technician. Penagaricano, 747 F.2d at 56.  The court noted the dual state-federal nature of the National Guard stating:  "[T]o secure complete relief, i.e., to be reinstated ..." in the National Guard, a service member must pursue remedies both within the United States [ ] National Guard and within the [ ] National Guard of his state.  Id. at 57.  The First Circuit explained:

> The remedy within ANGUS is that available generally to officers of the United States Air Force, ANGUS, being a part of the United States Air Force Reserve. The complainant may go to the Air Force Board for Correction of Military Records ("AFBCMR"), which has authority to correct any military record . . . when . . . necessary to correct an error or remove an injustice."  10 U.S.C. § 1552. If the AFBCMR determines that an officer's nonretention in the Air National Guard was the consequence of error or injustice, the Board can correct the

22

officer's <u>federal</u> records to show that his federal recognition has not been withdrawn and that he remains a member in good standing of the ANGUS. While the Board cannot direct his reinstatement in the National Guard of the state, it can reinstate him in a comparable active federal reserve status, restore his pay and order compensatory back pay.

<u>Id.</u> at 57.

The First Circuit specifically found that, a favorable finding by the military correction board may include significant relief, although the board has no power to force a state to reinstate the officer in the state's National Guard. <u>Id.</u> To gain reinstatement in the state National Guard, the service member "must seek whatever administrative relief is afforded under state law." <u>Id.</u> <u>See also</u>, 32 U.S.C. § 709(f)(3) (limiting a dual status technician's right to appeal to the AG of the state).

The Fourth Circuit also held that the ABCMR cannot reinstate service members into the National Guard. In <u>Williams v. Wilson</u>, 762 F.2d 357 (4th Cir. 1985), the court noted that "the ABCMR lacks authority over the West Virginia National Guard to reinstate [plaintiff] were it to find in his favor, it would have the power to correct [plaintiff's] federal records to show that his federal recognition has not been withdrawn, reinstate [plaintiff] in a comparable active federal reserve status, restore his pay and order compensatory back pay." 762 F.2d 357 (4th Cir. 1985)(citing <u>Penagaricano</u>, 747 F.2d at 57; <u>Navas</u>, 752 F.2d at 770).

As recently as 2005, a North Carolina district court also noted that the ABCMR could not order a plaintiff's reinstatement into the North Carolina Army National Guard [NCARNG]. <u>Culbreth v. Ingram</u>, 389 F. Supp. 2d 668, 674 (E.D.N.C. 2005). That case was similar to <u>Navas,</u> where plaintiff argued he did not need to go to the ABCMR to correct his military record because he was in a State National Guard status. Plaintiff argued that "since there was no federal involvement whatsoever in this case, and that as such there is no federal record for the ABCMR

23

to correct, [] there's no ABCMR jurisdiction under 32 C.F.R. 581.3(d)(1)." Id. at 674.  The court

agreed that the "ABCMR would not be able to afford plaintiff all of the relief he seeks.  For

instance, it could not order his reinstatement in the NCARNG or award him attorney's fees."  Id.

However, the court went on to note that the ABCMR could grant some relief in his federal

capacity, and could issue an advisory opinion to the state, and thus plaintiff must exhaust his

intraservice remedies.  Id. 674-75.

Plaintiffs in this case exhausted their federal remedies and obtained the federal relief

deemed appropriate by the ABCMR. (AR Colon 1-12); (AR Cruz 1-14); (AR Hernandez 1, 9-

14); (AR Velez 1-17).)  However, as the First and Fourth Circuits point out, Defendants, as

federal officials and agencies, cannot compel Puerto Rico officials to reinstate members to their

respective State National Guard.  To gain reinstatement in the PRANG, Plaintiffs are limited to

whatever relief is available under Puerto Rico law.  As stated earlier, since the Plaintiffs are not

members of the PRANG, they do not meet the prerequisite of obtaining civilian technician

employment with the PRANG under 32 U.S.C. § 709.  Since the Puerto Rico AG refused to

reinstate Plaintiffs into the PRANG or their dual status technician jobs, neither the Secretary of

the Army, nor the Chief of the NGB, as federal actors, could reinstate them to their technician

jobs.

**b.  Plaintiffs' Request For Correction of PRANG Records And
Reinstatement In The PRANG Are Beyond the ABCMR's Jurisdiction**

Army Regulations provide that "it is the nature of the record and the status of the

applicant that define the ABCMR's jurisdiction."(Def. Ex. A., ¶ 2-3(a).) Plaintiffs' status is one

factor affecting the ABCMR's jurisdiction.  Plaintiffs, as member of the National Guard, hold a

status as a member of the federal military or the state militia, but never both at the same time.

<u>Perpich v. Department of Defense</u>, 496 U.S. 334, 347-48 (1990) ("[National Guard members] now must keep three hats in their closets – a civilian hat, a state militia hat, and an army hat – only one of which is worn at any particular time.").  As the First Circuit put it,  "The National Guard is a component of the organized militia of the United States. 10 U.S.C. § 101.  It is a unique military force in that each unit within the Guard is responsible to two governments, one local (here, the Commonwealth of Puerto Rico), and the other federal, i.e., that of the United States."  <u>Penagaricano</u>, 747 F.2d at 57.

In order to serve both governments, members of the National Guard actually belong to two units: the State militia, in this case PRANG, as well as a distinct federal military organization called the Army National Guard (ARNGUS) which is a component of the U.S. Army Reserves.  10 U.S.C. § 8351(a).  Army Reg 130-5, (Def. Ex. B), states that, "Members of the [ARNGUS] are not in active Federal service except when ordered thereto in accordance with law, or called into active Federal service in their status as members of the National Guard. When not in active Federal service, such members are administered, armed, equipped, and trained in their status as members of the Army National Guard . . . of the several states." (Def. Ex. B., ¶ 1-6.)  As the Supreme Court clearly stated in <u>Perpich</u>  "unless and until ordered to active duty in the Army, [members of the National Guard] retained their status as members of a separate state Guard unit."  <u>Perpich v. Department of Defense</u>, 496 U.S. 334, 345 (1990).

Plaintiffs were discharged from the PRANG, wearing the state militia hat, as Puerto Rico National Guardsmen. (AR Colon 5); (AR Cruz 47, 54); (AR Hernandez 11); (AR Velez 4, 25).) Plaintiffs were called up by the Governor of Puerto Rico, the commander-in-chief of the PRANG, to respond to a local disaster emergency while in a Title 32 status.  (<u>Id.</u>)  Plaintiffs were

all accused of being AWOL after Hurricane Georges in 1998. (Id.) The AG, as the appointee of

the governor, separated the Plaintiffs' for these alleged failures while acting under the authority

of the PRANG, in a state capacity. (Id.) As a result of the loss of their state National Guard

membership, Plaintiffs were terminated from their federal civilian technician job in accordance

with 32 U.S.C. § 709. Plaintiffs' membership in the PRANG is under the control of the

Commonwealth of Puerto Rico, not the Department of the Army. Therefore, the Plaintiffs' state

status under Title 32 as members of the PRANG is not within the Secretary's department.

Instead, it is under the militia of Puerto Rico and the control of the Puerto Rico Governor and

AG.

While status is one factor affecting the ABCMR's jurisdiction, the other key

consideration is the "nature of the record." (Defense Ex. A, ¶ 2-3(a).) The nature of the record

rests on whether it falls within the Department of the Army or under the control of the state

National Guard. Specifically, "Department" is defined to include only those entities "under the

control or supervision of the Secretary of the department," 10 U.S.C. § 101(a)(6).

"The Secretary of a military department may correct any military record of the

Secretary's department when the Secretary considers it necessary to correct an error or remove

an injustice." 10 U.S.C. § 1552(a)(1) (emphasis added). See also Army Regulation ("Army

Reg.") 15-185, Army Board for Correction of Military Records,(Def. Ex. A, ¶ 2-3(a).)[9]

Therefore, "[t]he ABCMR's jurisdiction under 10 U.S.C. § 1552 extends to any military record

of the [Department of the Army]", (Id. ¶ 2-3(a).). PRANG records are within the Governor of

Puerto Rico's jurisdiction and are not records within the Secretary of the Army's department. In

_____

[9] This regulation is published in the Code of Federal Regulations at 32 C.F.R § 581.3 (2007).

<u>Peprich</u> the Supreme Court clearly explained this dual enlistment system and stated "unless and until ordered to active duty in the Army, [members who enlisted in the National Guard] retained their status as members of a separate state Guard unit." <u>Perpich v. Department of Defense</u>, 496 U.S. 334, 345 (1990). The PRANG, as the militia for the Commonwealth of Puerto Rico, is not a "department" under the control or supervision of the Secretary of the Department. Therefore, the records generated while Plaintiffs were serving under the PRANG, specifically pertaining to the enlistment and discharge of the PRANG, are not within the Secretary of the Department's purview. As a result, they are beyond the reach of the ABCMR and the ABCMR lacks the authority to correct Plaintiffs' state military records. Therefore any action by the ABCMR regarding Plaintiffs' state records can only be advisory in nature.

In this case the ABCMR issued recommendations to the Puerto Rico AG to make changes, but in the event that the AG refused to reinstate the Plaintiffs, the ABCMR provided alternate federal relief as the Board deemed appropriate.

Cruz applied for a request for reconsideration asking the ABCMR to reinstate him in the PRANG, to pay all pay, allowances, and benefits due from January 16, 1999 to the present, and to remove all documents relating to Cruz's discharge from the PRANG. (AR Cruz 3.) As to the records of the PRANG, the ABCMR recommended that the AG revoke Cruz's discharge, tender all military pay, allowances and retirement points accruing from January 16, 1999 to April 21, 2001, and that all documents and references to his discharge from the PRANG be expunged. (Id. at 10-14) The ABCMR went on to say that if AG did not reinstate Cruz to the PRANG, then the ABCMR recommends the following actions be taken as to his Department of the Army records: the discharge from the PRANG and transfer to the retired reserve stay in full effect, that U.S.

Army Reserve Personnel Command amend his orders to show he was in a U.S. Army Reserve unit as of January 18, 1999, that his federal records be amended to reflect he attended drills and credited toward retirement points, that his transfer to the retired reserves remain in effect, that Cruz be paid all military pay and allowances for ten drill periods, and finally that Human Resource Command recompute his retirement points and publish a corrected statement of his retirement points.  (Id.)

Colon also requested that the ABCMR correct his records to reflect that he was not discharged from the PRANG and that he was not AWOL on September 26-27, and October 3-4, 1998.  (AR Colon 16.)  The ABCMR found that the PRANG improperly issued Colon a 20 year retirement letter because he had not completed 20 years in the PRANG. (Id. at 11.)  Also, the PRANG improperly transferred Colon to the Retired Reserve while he was in fact in a drilling status in the United States Army Reserves. ( Id.)  The ABCMR determined that the Board could not reinstate Colon to the PRANG or correct his PRANG records because the ABCMR lacks authority to direct officials of Puerto Rico to take such action. ( Id. at 12.)  However, the ABCMR directed that Colon's Department of the Army records be corrected and that Human Resource Command should conduct an audit of his retirement points, publish a corrected statement, and issue a correct 20-year letter.(Id. at 11-12.)

For Herandez, the ABCMR decided to recommended that the Puerto Rico AG revoke the January 16, 1999 discharge, remove documents from his National Guard records in reference to the discharge, and provide all military pay, allowances and retirement points from January 16, 1999 to 2003.  (AR Hernandez 13-14.)  The ABCMR also determined that there was insufficient evidence to support Hernandez's contention that he was not AWOL. (Id.)  The ABCMR did not

provide any relief concerning the federal reserves because Hernandez did not request that relief. (<u>Id.</u> at 1.)

In response to Velez's application, the ABCMR recommended that the AG of Puerto Rico amend Velez's discharge orders, reinstate him as a Staff Sergeant, with all pay, allowances, and retirement points through February 21, 1999. (<u>Id.</u> at 16.)  The Board also recommended that the AG correct Velez's records to show he was transferred to the U.S. Army Reserves on February 22, 1999, and publish appropriate orders if Velez wants to be transferred back to the PRANG. (<u>Id.</u> at 17.)  The Board determined that there was insufficient evidence to warrant removal of his absence on October 4, 1998. ( <u>Id.</u>)  Also, the Board found it was not necessary to change his re-entry code of 3, so that Velez would be permitted to join the United States Reserves or another National Guard unit, because he already was a member in good standing with the U.S. Army Reserves. (<u>Id.</u>)  As a result, the ABCMR did not make a recommendation to change Velez's PRANG record to remove the AWOL offense or the re-entry code.  (<u>Id.</u>)

For Velez's federal records, the ABCMR directed that all of the Department of the Army records related to Velez's case be corrected by showing that he was separated from the PRANG on February 21, 1999, transferred to the USAR Control Group on February 22, 1999, and to a Troop Program Unit on February 23, 1999. (<u>Id.</u>) Also, if Velez requests to be transferred to the PRANG upon the AG's approval, that Velez be honorably discharged from the U.S. Army Reserves and issued an re-entry code of 1, allowing him to re-enter at a later date.( <u>Id.</u>)  The ABCMR proceeded to state that if the AG elected not to reinstate Velez as the Board recommended, and the AG does not approve Velez's request to transfer to the PRANG, then Velez will remain in the U.S. Army Reserves in his current assignment in compliance with his

current service obligation. (Id.)

In short, the ABCMR corrected Plaintiffs' federal records and advised the PRANG on what it should do with Plaintiffs' State records. Given those facts, the ABCMR's decision was not arbitrary, capricious or contrary to law or regulation.

### c. __The NGB  Lacks Authority To Reinstate Plaintiffs__

The NGB also acted lawfully and within its authority by acting as "the channel of communications on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States between (1) the Department of the Army and the Department of the Air Force, and (2) the several States."  10 U.S.C. § 10501(b).  On October 20, 1998, the NGB issued a memorandum with the subject "All States Enlisted Separations. (AR Colon 8.)  It served to replace all previous policies and regulations concerning enlisted discharges. (Id.)  It directed State National Guard units to use Army Reg. 135-178, Separation of Enlisted Personnel, (Def. Ex. C), whenever processing involuntary separations.  (Id.)  Army Reg. 135-178 affords service members extensive due process procedures to include notification of the right to a hearing and appearance before an administrative separation board if the soldier has served over six years. (See Def. Ex. C at ¶ 3-10.) The NGB monitors State compliance with the Army Reg. 135-178 by requiring the States to forward the discharge paperwork for enlisted members with over 18 years of service and less than 20, to the Chief of the NGB for final approval.  (See Def. Ex. C,  ¶¶ 1-4(b), 1-12(a), 3-18(a).)  However, the PRANG separated Plaintiffs without the NGB's approval.  (AR Cruz at 3.)

While the Commonwealth of Puerto Rico may establish procedures for separation of military members of the PRANG, the guidance from the NGB is that those procedures should be

consistent with the Department of the Army regulations, which afford all soldiers with over six years of service the right to an administrative separation board.  (Def. Ex. C).  Puerto Rico chose not to follow that guidance and failed to comply with the federal regulations.  (AR Colon 5; AR Hernandez 8; AR Velez 22.)  However, the NGB has no authority to enforce compliance with Puerto Rico's policy.

In this case, because the PRANG did not follow Army Reg 135-178 and never forwarded Plaintiffs' separations for the NGB Chief's approval, Plaintiffs were not discharged from the ARNGUS.  (AR Hernandez 1.)  Other than issuing regulations and advisory opinions as to the correction of the military records, the NGB lacks direct authority over the States' National Guard personnel because 32 U.S.C. § 709, grants the State AG authority over personnel matters within the State's militia.[10]  The NGB forwarded the Puerto Rico AG the ABCMR's recommendation that Plaintiffs' discharges were unjust because they did not comply with Army Regulations.  (AR Colon 1.)  The NGB also issued advisory opinions to the ABCMR as well as the PRANG highlighting that the federal regulations affording the Plaintiffs an administrative hearing should have been followed, even though the PRANG regulation did not require a hearing.  (AR Cruz 24, 45); (AR Hernandez 1-6); (AR Velez 31-39).)  Nonetheless, the Puerto Rico AG refused to reinstate the Plaintiffs. (AR Colon 5); (AR Hernandez 8); (AR Velez 22).)  Therefore, there was nothing more Defendants could do to change the Plaintiffs' records or reinstate Plaintiffs to the

---

[10] If a State refuses to follow Department of the Army regulations the only federal remedy is withholding funds or privileges.  "If a state National Guard elects, for some reason, not to comply with federal regulations, that state risks forfeiture of federal monies and other privileges. See 32 U.S.C. § 108."  Knutson v. Wisconsin Air National Guard, 995 F.2d 765, 767 (7th Cir. 1993); Charles v. Rice, 28 F.3d 1312, 1315 (1st Cir. 1994).

PRANG.[11]

Plaintiffs fail to cite to any statute or applicable law that authorizes the Secretary of the Army, the ABCMR, or the NGB to interject into State militia personnel matters and reinstate Plaintiffs to the PRANG.  Defendants acted lawfully and rationally by correcting Plaintiffs federal records and recommending that the AG reinstate Plaintiffs to the PRANG.  The AG chose not to do so.  Since Plaintiffs are not in the PRANG, federal law prohibits Plaintiffs from being employed as National Guard technicians under 32 U.S.C. § 709.  Plaintiffs suggest that Defendant or this Court should issue an *ultra vires* order beyond their jurisdictional powers, directing the Governor and AG to re-admit Plaintiffs to the National Guard. Due to the fact that the relief Plaintiffs request is beyond the federal jurisdiction of Defendants, their action is not arbitrary, capricious or contrary to law and regulation. Accordingly, the Court should find that the Defendants acted reasonably within the confines of Title 10 and well within the authority of the APA.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss, or in the alternative, their Motion for Summary Judgment, denying Plaintiffs' claims.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610

---

[11]  The Chief, NGB, may not compel the PRANG AG to comply with the recommendations of the ABCMR. The only recourse the Chief of the NGB has would be pursuant to, NGR 10-1, which authorizes the Chief of NGB to initiate withdrawal of Federal recognition of the State National Guard in order to compel compliance with Army regulations.  (Defense Ex. E, ¶ 2-6(e)1.)

United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Room E4408
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants

Of Counsel:
MAJOR KELLY L. MCGOVERN
U.S. Army Litigation Division
Arlington, VA 22203

33

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASSOCIATION OF CIVILIAN TECHNICIANS, INC., <u>et</u> <u>al.</u>** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 07-1747 (CKK)** |
| ) | |
| **UNITED STATES OF AMERICA, <u>et</u> <u>al.</u>,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| _____ ) | |

### <u>DEFENDANTS' STATEMENT OF MATERIAL FACTS</u>
### <u>TO WHICH THERE IS NO GENUINE DISPUTE</u>

Pursuant to LcvR 7(h) and in support of Defendants' Motion for Summary Judgment, Defendants respectfully submit this statement of material facts as to which there is no genuine dispute.  The Administrative Records ("AR") supports this statement.

1.  Plaintiffs, Association of Civilian Technicians, Inc., and the Laborers' Union of North America, are labor organiz[1]ations within the meaning of 5 U.S.C. § 7103(a)(4).  Their members and members of the federal employee bargaining units which they represent include a nationwide majority of dual-status National Guard technicians who are employed under 32 U.S.C. § 709. (Compl. ¶ 3.)

2.  Under 32 U.S.C. § 709, these technicians are considered "dual status" which means they must maintain military membership in the Army National Guard[1] as a condition of their

---

[1] The Army National Guard encompasses "that part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia . . ."  For the sake of convenience, we will adopt the practice of the First Circuit and "refer to all these entities as 'state' governments or states, although of course, Puerto Rico is not a state but enjoys a unique political relationship of its own with the United States.  In the present case, the difference between Puerto Rico and a

federal civilian employment. (Compl. ¶ 3.)  The law requires that they must be separated from their technician employment automatically if they lose their Army National Guard membership. Id.

3.  Plaintiffs Daniel Romero Cruz (Cruz), Juan A. Velez Soto (Velez), Domingo Hernandez Dones (Hernandez), and Kenneth Colon Ayala (Colon) are former members of the Puerto Rico Army National Guard (PRANG) and former dual status National Guard technicians employed by the PRANG under 32 U.S.C. § 709. (Compl. ¶ 4.)

4.  Hurricane Georges caused major destruction in Puerto Rico on September 21, 1998. (AR Hernandez 12.)  The Governor mobilized the PRANG to provide recovery assistance under Puerto Rico Executive Order OE-1998-26. (AR Cruz 54.)  All four of the Plaintiffs were accused of being absent without leave (AWOL) during various periods of the activation and were administratively separated based on those allegations.  (AR Cruz 47, 54); (AR Velez 4, 25); (AR Hernandez 11); (AR Colon 5).)

5.  Plaintiff Cruz served as a Sergeant in the 840th Maintenance Company of the PRANG and a technician assigned to the PRANG Mobilization and Training Equipment Site (MATES). (AR Cruz 4.)

a.  Cruz's Commander alleged that Cruz did not report to duty on September 26, 1998. (Id. at 56.)  Cruz submitted a rebuttal on November 7, 1998 indicating that he did not know he had been ordered to military duty until 6:00 P.M. that night. (Id. at 21, 22, 55.)   He claimed that when he found out, he asked his non-commissioned officer (NCO) if he should come in, but the NCO told him no, report the next day at 2:00 P.M. (Id.) The Commander

---

state are immaterial." Penagaricano v. Llenza, 747 F.2d 55, 57 n. 1 (1st Cir. 1984).

initiated Cruz's separation on October 22, 1998 and after receiving Cruz's rebuttal, he forwarded

the recommendation of separation. (<u>Id.</u> at 4, 22-23, 56.)  The Battalion Commander endorsed the

recommendation for separation on November 23, 1998 and the Troop Command Commander

endorsed the recommendation as well on November 25, 1998. (<u>Id.</u> at 57-58.)  On December 23,

1998, the Puerto Rico AG approved the recommendation to separate Cruz.(<u>Id.</u> at 60.)

       b.  On January 16, 1998, Cruz was honorably discharged from the PRANG. (<u>Id.</u>)

Cruz was also terminated from his military technician status as a result of his discharge from the

PRANG. (<u>Id</u>. at 51.)

       c.  Cruz became a member of the U.S. Army Reserves on January 17, 1999 and

transferred to the Retired Reserves on April 1, 2001. (<u>Id.</u> at 6-7.)

       d.  Cruz applied to the ABCMR on December 29, 2001, requesting that his

records be corrected to show that he was not discharged from the PRANG and that he was not

AWOL. (<u>Id</u> at 46-63.)  That application was denied on August 8, 2002. ( <u>Id.</u> at 24-26.)

       e.  In 2003, Cruz applied for a request for reconsideration asking the ABCMR to

reinstate him in the PRANG, to pay all pay, allowances and benefits due from January 16, 1999

to the present, and to remove all documents relating to Cruz's discharge from the PRANG. (<u>Id.</u> at

3.)  As to the records of the PRANG, the ABCMR recommended the AG revoke Cruz's

discharge, tender all military pay, allowances and retirement points accruing from January 16,

1999 to April 21, 2001, and that all documents and references to his discharge from the PRANG

be expunged. (<u>Id.</u> at 10-14.)  The ABCMR went on to say that if AG did not reinstate Cruz to the

PRANG, then the ABCMR recommends the following actions be taken as to his Department of

the Army records: the discharge from the PRANG and transfer to the retired reserve stay in full

effect, that U.S. Army Reserve Personnel Command amend his orders to show he was in a U.S.

Army Reserve unit as of January 18, 1999, that his federal records be amended to reflect he attended drills and credited toward retirement points, that his transfer to the retired reserves remain in effect, that Cruz be paid all military pay and allowances for ten drill periods, and finally that Human Resource Command recompute his retirement points and publish a corrected statement of his retirement points.  (Id.)

      f.  On October 8, 2004, the ABCMR's recommendations were forwarded to the Chief of the NGB. (Id. at 1.)

  6.  Plaintiff Hernandez was a Sergeant First Class with over nineteen years of service, assigned to the 840th Maintenance Company in Juana Diaz, Puerto Rico as a maintenance section chief. (AR Hernandez 11.)  He also was a full time military technician in MATES, in Camp Santiago, Salinas, Puerto Rico.(Id. at 11.)

      a.  His Commander alleged that Hernandez did not report to duty on the weekends of September 26-27, 1998, or October 3-4, 10-12, 1998. (Id. at 11.)  Hernandez submitted a rebuttal claiming he did not receive orders, he was helping his mother who was ill recovering from the hurricane damage on October 3-4, 1998, and he was sick from October 10-12. (Id. at 12).  Hernandez also provided medical documents showing he was partially hospitalized for the condition on November 9, 1998. (Id.)  Hernandez's commander initiated his separation on October 22, 1998. (Id. at 11.)  The Battalion Commander endorsed the recommendation to separate him, along with the Troop Command Commander, and the AG approved the recommendation. (Id. at 12.)

      b.  On January 5, 1999, Hernandez was honorably discharged and transferred to the U.S. Army Reserve Control Group. ( Id. at 11.)  On February 9, 1999, Hernandez was terminated from his technician job due to his loss of PRANG military membership.  Id. at 13.

c.  On January 7, 2002, Hernandez applied to the ABCMR requesting that his discharge from the PRANG be revoked and that his records not show that he was AWOL. (Id. at 3, 11.)

d.  On March 4, 2003, the ABCMR decided to recommend that the Puerto Rico AG revoke the January 16, 1999 discharge, remove documents from his National Guard records in reference to the discharge, and provide all military pay, allowances and retirement points from January 16, 1999 to 2003.(Id. 10-14.)  The ABCMR also determined that there was insufficient evidence to support Hernadez's contention that he was not AWOL. (Id.)  The ABCMR did not provide any relief concerning the federal reserves because Hernandez did not request that relief. (Id. at 1.)  On March 20, 2003, the ABCMR decision was approved and a letter issued to the Chief of the NGB to correct all of the Department of the Army records. (Id. at 9.)

e.  On April 11, 2003, the NGB issued a memorandum to the AG of the PRANG requesting that he implement the ABCMR's recommendations. (Id. at 8.)  On May 16, 2003, the AG returned the request without action because the documentation did not contain a legal review, and due to the fact ABCMR rulings cannot compel AG's of different states or territories to reinstate individual members of the state's National Guard.(Id.)

f.  On May 23, 2003, the NGB approved the ABCMR recommendation, and directed all Department of the Army records be corrected. (Id. at 1.)

g.  The NGB issued an advisory opinion on August 8, 2003. (Id. at 3.)

h.  The NGB issued another letter to the AG of Puerto Rico on July 14, 2004 requesting that the AG review Hernandez's case and reconsider him for reinstatement and back pay.(Id. at 1.)  The NGB letter also noted that, "[t]he ABCMR could correct his federal records and indicate that federal recognition was still valid and that he remained a member in good

5

standing of the United States Army National Guard (ARNGUS).  The ABCMR could also reinstate them to a comparable active Federal Reserve status, restore his pay, and order compensatory back pay.  Such relief was not granted in this case because [Hernandez] did not request that action."( Id.)

7.  Plaintiff Colon served in the U.S. Army Reserves and on active duty from 1979 until 1985 when he enlisted in the PRANG. (AR Colon 5.)  He also served as a civilian technician. (Compl. ¶ 3.)

a.  On October 21, 1998, the MATES Superintendent advised the commander of HHC, 192nd Support Battalion, San Juan, Puerto Rico, that Colon was allegedly AWOL from his duties to assist in the relief efforts of Hurricane Georges.(Id.).

b.  On October 22, 1998, Colon's Commander issued a memorandum to him of his intentions to separate him from the PRANG for being AWOL from MATES on September 26-27, 1998 and October 3-4, 1998, in violation of an order to Military State Active Duty by the Governor of Puerto Rico. (Id.) On November 14, 1998, the Commander submitted a memorandum to the Battalion Commander and the AG explaining that after counseling Colon, there was evidence that he was ill on those dates. (Id.)  The unit Commander stated he did not recommend Colon be separated from the PRANG and attached the evidence of Colon's illness. (Id.)

c.  On November 16, 1998, the Battalion Commander did not concur with the unit commander, questioning how he could be "cured Monday through Friday and relapsed on Saturday and Sunday on two consecutive weekends."(Id.)  The Battalion Commander recommended separation.  (Id.)  On the same day, the Brigade Commander recommended separation. (Id. at 6.)

d.  On 3 December 1998, the PRANG AG approved the recommendation for separation for failure to report for State duty with an honorable discharge. (Id.).

e.  On January 16, 1999, Colon was discharged as a Sergeant First Class and received an honorable discharge. (Id.)  On January 23, 1999, he was transferred to the Retired Reserves because he completed twenty years of service. ( Id. at 7.)

f.  On March 22, 1999, Colon joined a U.S. Army Reserves unit and participated in training for military pay and retirement points. ( Id. at 8.)

g.  On December 1, 2001, Colon applied to the ABCMR requesting that his records be corrected to reflect that he was not discharged from the PRANG and that he was not AWOL on September 26-27, and October 3-4, 1998. ( Id. at 16.)

h.  On November 6, 2002, Colon was informed that his application was forwarded to the Chief of the NGB for review and appropriate action. (Id. at 7.)  Colon was also informed that the agency had notified the Commander and requested him to reopen Colon's case. (Id.)

i.  On May 16, 2003, Colon and his counsel were notified by the Puerto Rico AG that no further action would be taken in Colon's case. (Id. at 4, 7.)

j.  On May 21, 2003, Colon's counsel requested the ABCMR reinstate Colon based on his original application since the AG refused to review the discharge procedures as recommended by the NGB. ( Id.)

k.  On September 28, 2004, the ABCMR determined that the PRANG improperly issued Colon a 20 year retirement letter because he had not completed 20 years in the PRANG. (Id. at 11.)  Also, the PRANG improperly transferred Colon to the Retired Reserve while he was in fact in a drilling status in the United States Army Reserves. ( Id.)  The ABCMR directed that Colon's Department of the Army records be corrected and that Human Resource Command

7

should conduct an audit of his retirement points, publish a corrected statement, and issue a correct 20-year letter.(Id. at 11-12.)  The ABCMR also determined they could not reinstate Colon to the PRANG or correct his PRANG records because the ABCMR lacks authority to direct officials of Puerto Rico to take such action. ( Id. at 12.)

l.  On December 31, 2004, the NGB issued a memorandum to the Puerto Rico AG directing the results of the ABCMR be implemented. (Id. at 1.)

8.  Plaintiff Velez was enlisted in the PRANG for over twenty years.  (AR Velez 25.)  He served in the 840th Maintenance Company in the PRANG and as a civilian technician. ( Id.)

a.  The Commander accused Velez of being AWOL on October 4, 1998. (Id.)  On October 22, 1998, the Commander issued a letter to Velez with his intent to initiate separation proceedings. (Id.)  On October 27, 1998, Velez issued a rebuttal memorandum to the Commander stating that he was too ill to work on October 4th, so he stayed home. (Id.)  He provided a medical document indicating he had the flu from October 3-4, 1998. (Id.)

b.  On November 16, 1998, the Commander recommended Velez for separation noting that Velez did not notify anyone at work on October 3rd that he was feeling sick, and Velez did not raise the issue of his illness until he was notified of the initiation of separation. ( Id. at 5-6.)

c.  On November 23, 1998, the Battalion Commander recommended approval of the separation. (Id. at 6.)  On November 25, 1998, the Troop Commander also recommended approval of the separation.(Id.)

d.  On December 23, 1998, the AG approved the recommendation to separate Velez. (Id.)

e.  On January 5, 1999, Velez was notified that he would be discharged from the

8

PRANG and terminated from his technician employment due to his loss of membership in the PRANG. (Id. at 7.) On January 26, 1999, Velez received an honorable discharge from the PRANG. (Id.)  He was transferred to the Reserves as a Staff Sergeant on January 17, 1998. (Id. at 4, 7, 14.)

        f.  On September 20, 1999, Velez enlisted in the U.S. Army Reserves for six years. (Id. at 70.)

        g.  On January 14, 2002, Velez applied to the ABCMR requesting that his records be corrected to show that he was not discharged from the PRANG and was not AWOL on October 4, 1998. ( Id. at 23-145.)

        h. On December 7, 2002, the NGB issued a legal review and found that based on PRANG's failure to afford Velez his procedural right to an administrative discharge board, and with the evidence to mitigate his alleged AWOL offense, there were grounds to correct his military records. (Id. at 8.)

        i.  The ABCMR also referred to a legal review dated January 27, 2003, prepared by the NGB Administrative Law Team regarding the Velez case. (Id. at 10.)  The NGB legal review had referred the matter back to the PRANG to find the normal actions taken when a soldier missed a day of work due to illness. (Id. at 10-11.)  The NGB counsel also noted that Velez's separation from the PRANG was entirely a State process under State law and not premised upon any federal law or regulation pertaining to the National Guard. (Id. at 11.)

    On June 17, 2003, the ABCMR issued Velez a letter indicating that his application was administratively closed and returned without action. (Id. at 18.)

        j.  On July 18, 2003, Velez requested that the ABCMR reconsider his application. (Id. at 18.)

k.  On August 23, 2003, the ABCMR recommended that the AG of Puerto Rico amend Velez's discharge orders, reinstate him as a Staff Sergeant, with all pay, allowances, and retirement points through February 21, 1999. (<u>Id.</u> at 16.)  The Board also recommended that the AG correct Velez's records to show he was transferred to the U.S. Army Reserves on February 22, 1999, and publish appropriate orders if Velez wants to be transferred back to the PRANG. (<u>Id.</u> at 17.) The Board determined that there was insufficient evidence to warrant removal of his absence on October 4, 1998. ( <u>Id.</u>)  Also, the Board found it was not necessary to change his re-entry code of 3, so that Velez would be permitted to join the United States Reserves or another National Guard unit, because he already was a member in good standing with the U.S. Army Reserves. (<u>Id.</u>)  As a result, the ABCMR did not make a recommendation to change Velez's PRANG record to remove the AWOL offense or the re-entry code.  (<u>Id.</u>)

l.  The ABCMR directed that all of the Department of the Army records related to Velez's case be corrected by showing he was separated from the PRANG on February 21, 1999, transferred to the USAR Control Group on February 22, 1999, and to a Troop Program Unit on February 23, 1999. (<u>Id.</u>) Also, if Velez requests to be transferred to the PRANG upon the AG's approval, that Velez be honorably discharged from the U.S. Army Reserves and issued a re-entry code of 1, allowing him to re-enter at a later date.( <u>Id.</u>)

m.  The ABCMR stated that if the AG elects not to reinstate Velez as the Board recommended, and does not approve Velez's request to transfer to the PRANG, then Velez will remain in the U.S. Army Reserves in his current assignment in compliance with his current service obligation. (<u>Id.</u>)

9.  The administrative separations were initiated under Puerto Rico Regulation 635-100, Separations - Separations for Cause, dated November 1, 1996 (Def.  Ex. D).  (AR Cruz 47, 54);

(AR Velez 4, 25); (AR Hernandez 11); (AR Colon 5).)  This regulation provides that the commander or supervisor will forward through command channels to the AG of the PRANG recommendations for involuntary separation of enlisted personnel and the enlisted member's rebuttal statements or comments in response to the pending involuntary separation notification. (Def. Ex. D.).

10.  The federal regulation for administrative separations, Army Reg. 135-178, Section III, entitles soldiers with over six years in service to be informed in writing of their right to a hearing by an administrative separation board. (Def. Ex. C.)

11.  On October 20, 1998, the NGB issued a memorandum with the subject as All States Enlisted Separations.  (AR Colon 8.)  It served to replace all previous policies and regulations concerning enlisted discharges. (Id.) It required that commanders must use Army Regulation 135-178, Separation of Enlisted Personnel, for involuntary discharges(Id.) That regulation affords service members notification procedures and the right to a hearing before an administrative separation board if he/she has served over six years. (Id.).;  See also (Def. Ex. C.)

12.  The Plaintiffs' Commanders initiated the discharges on October 22, 1998, and failed to follow the directives in the NGB October 20, 1998 memorandum, National Guard Regulation 600-200, or Army Reg. 135-178.  (AR Hernandez 5.)  However, the four Plaintiffs' discharge orders were amended to show the discharge authority changed from National Guard Regulation 600-200, to All States Log P98-0061. The PRANG did not utilize separation procedures according to National Guard Regulation 600-200 or Army Reg. 135-178. (AR Cruz 9); (AR Colon 10); (AR Velez 7); (AR Hernandez 5).)  As a result, the discharges only impacted membership in the PRANG.  Id.  The four Plaintiffs remained in the U.S. Army Reserves following their discharges.  (Id.)

11

13.  None of the Plaintiffs received notice of a right to a hearing or appeared before an administrative separation board prior to their discharge. (AR Cruz 2-14); (AR Hernandez 9-14); (AR Colon 2-14); (AR Velez 2-17).) Also, none of the discharges were approved by the Chief of the NGB as required by the National Guard and Army regulations. (Id.) The ABCMR determined their discharges were in violation of the federal regulation, erroneous and unjust.(Id.)

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney



_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney



_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Room E4408
Washington, D.C. 20530
202-353-9895

Attorneys for Defendants

Of Counsel:
MAJOR KELLY L. MCGOVERN
U.S. Army Litigation Division
Arlington, VA 22203

13

Exhibit A

**Army Regulation 15–185**

Boards, Commissions, and Committees

# Army Board for Correction of Military Records

Headquarters
Department of the Army
Washington, DC
31 March 2006

## UNCLASSIFIED

# *SUMMARY of CHANGE*

AR 15–185
Army Board for Correction of Military Records

This rapid action revision dated 31 March 2006--

o  Updates policies and procedures in the reconsideration of Army Board for
   Correction of Military Records decision in order to comply with the United
   States District Court for the District of Columbia decision (Lipsman v.
   Secretary of the Army--Civil Action No. 02-0251, 2004 U.S. Dist. Lexis 17866)
   (para 2-15).

o  Updates appendix A.

This revision--

o  Updates information on the policy and procedures for the operation of the Army
   Board for Correction of Military Records.

o  Implements Department of Defense (DOD) Instruction 1336.6, Correction of
   Military Records (para 2-2a).

o  Implements that portion of section 1034 of title 10 of the U.S. Code and that
   portion of DOD Directive 7050.6, Military Whistleblower Protection, that
   pertain to actions by the Army Board for Correction of Military Records (para
   2-2b).

o  Prescribes DD Form 149 (Application for Correction of Military Record Under
   the Provisions of title 10, U.S. Code, section 1552) (para 2-3b).

**Headquarters**
**Department of the Army**
**Washington, DC**
**31 March 2006**

*Army Regulation 15–185

Effective 1 May 2006

**Boards, Commissions, and Committees**

# Army Board for Correction of Military Records

By Order of the Secretary of the Army:

PETER J. SCHOOMAKER
*General, United States Army*
*Chief of Staff*

Official:

JOYCE E. MORROW
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a rapid action revision. The portions affected by this rapid action revision are listed in the summary of change.

**Summary.** This regulation provides Department of the Army policy, criteria, and administrative instructions regarding an applicant's request for the correction of a military record.

**Applicability.** This regulation applies to the Active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve unless otherwise stated. Also, it applies to former soldiers of these organizations and their heirs or legal representatives and other individuals, military or civilian, who are affected by a military record. Further, it applies to the Defense Finance and Accounting Service in settling claims as a result of correction of an Army military record. This regulation remains in full effect during mobilization.

**Proponent and exception authority.** The proponent of this regulation is the Assistant Secretary of the Army (Manpower and Reserve Affairs). The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.**
This regulation contains management control provisions in accordance with AR 11–2, but does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from HQDA, Assistant Secretary of the Army (Manpower and Reserve Affairs) (SAMR–ZA), Army Pentagon, Washington, DC 20310–0111.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Department of the Army Review Boards Agency, ATTN: SAMR–ARBA, 1941 Jefferson Davis Highway, Arlington, VA 22202–4508.

**Distribution.** This publication is available in electronic media only and is intended for command levels C, D, and E for the Active Army, Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve.

---

## Contents (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Statutory authority • 1–4, *page 1*

*Section II*
*Responsibilities, page 1*

---

*This regulation supersedes AR 15–185, dated 29 February 2000.

AR 15–185 • 31 March 2006          i

**UNCLASSIFIED**

**Contents—Continued**

The Secretary of the Army • 1–5, *page 1*
The Director, Army Board for Correction of Military Records • 1–6, *page 1*
The chair of an Army Board for Correction of Military Records panel • 1–7, *page 1*
The Army Board for Correction of Military Records members • 1–8, *page 1*
The Director, Army Records Holding Agency • 1–9, *page 1*
The commanders of Army Staff agencies and commands • 1–10, *page 2*
The Director, Defense Finance and Accounting Service • 1–11, *page 2*

**Chapter 2**
**General,** *page 2*

*Section I*
*Army Board for Correction of Military Records Establishment and Functions, page 2*
Army Board for Correction of Military Records establishment • 2–1, *page 2*
Army Board for Correction of Military Records functions • 2–2, *page 2*

*Section II*
*Application Procedures, page 2*
Who may apply • 2–3, *page 2*
Time limits • 2–4, *page 2*
Administrative remedies • 2–5, *page 3*
Stay of other proceedings • 2–6, *page 3*
Counsel • 2–7, *page 3*

*Section III*
*Actions by the Army Board for Correction of Military Records Director and Staff, page 3*
Criteria • 2–8, *page 3*
Burden of proof • 2–9, *page 3*
Army Board for Correction of Military Records consideration • 2–10, *page 3*

*Section IV*
*Hearings and Disposition of Applications, page 3*
Army Board for Correction of Military Records hearings • 2–11, *page 3*
Army Board for Correction of Military Records decisions • 2–12, *page 3*
Army Board for Correction of Military Records final action • 2–13, *page 3*
Decision of the Secretary of the Army • 2–14, *page 4*
Reconsideration of Army Board for Correction of Military Records decision • 2–15, *page 4*

**Chapter 3**
**Claims/Expenses,** *page 4*

Authority • 3–1, *page 4*
Settlement of claims • 3–2, *page 4*
Payment of expenses • 3–3, *page 4*

**Chapter 4**
**Miscellaneous Provisions,** *page 5*

Special standards • 4–1, *page 5*
Public access to decisions • 4–2, *page 5*

**Appendix A.**   References, *page 6*

**Glossary**

**Index**

# Chapter 1
# Introduction

## Section I
## General

### 1–1. Purpose
This regulation prescribes the policies and procedures for correction of military records by the Secretary of the Army, acting through the Army Board for Correction of Military Records (ABCMR).

### 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

### 1–4. Statutory authority
Section 1552, Title 10, United States Code (10 USC 1552) is the statutory authority for this regulation.

## Section II
## Responsibilities

### 1–5. The Secretary of the Army
The Secretary of the Army will oversee the operations of the ABCMR. The Secretary will take final action on applications, as appropriate.

### 1–6. The Director, Army Board for Correction of Military Records
The Director, ABCMR will manage the ABCMR day–to–day operations.

### 1–7. The chair of an Army Board for Correction of Military Records panel
The chair of a given ABCMR panel will—
  *a.* Preside over the panel.
  *b.* Conduct a hearing.
  *c.* Maintain order.
  *d.* Ensure the applicant receives a full and fair opportunity to be heard.
  *e.* Certify the written record of proceedings in pro forma and formal hearings as being true and correct.

### 1–8. The Army Board for Correction of Military Records members
The ABCMR members will—
  *a.* Review all applications that are properly before them to determine the existence of error or injustice.
  *b.* Direct or recommend changes in military records to correct the error or injustice, if persuaded that material error or injustice exists and that sufficient evidence exists on the record.
  *c.* Recommend a hearing when appropriate in the interest of justice.
  *d.* Deny applications when the alleged error or injustice is not adequately supported by the evidence and when a hearing is not deemed proper.
  *e.* Deny applications when the application is not filed within prescribed time limits and when it is not in the interest of justice to excuse the failure to file in a timely manner.

### 1–9. The Director, Army Records Holding Agency
The director of an Army records holding agency will—
  *a.* Take appropriate action on routine issues that may be administratively corrected under authority inherent in the custodian of the records and that do not require ABCMR action.
  *b.* Furnish all requested Army military records to the ABCMR.
  *c.* Request additional information from the applicant, if needed, to assist the ABCMR in conducting a full and fair review of the matter.
  *d.* Take corrective action directed by the ABCMR or the Secretary of the Army.
  *e.* Inform the Defense Finance and Accounting Service (DFAS), when appropriate; the applicant; the applicant's counsel, if any; and the interested Members of Congress, if any, after a correction is complete.
  *f.* Return original records of the soldier or former soldier obtained from the Department of Veterans Affairs.

## 1–10. The commanders of Army Staff agencies and commands

The commanders of Army Staff agencies and commands will—

   *a.* Furnish advisory opinions on matters within their areas of expertise upon request of the ABCMR and in a timely manner.

   *b.* Obtain additional information or documentation as needed before providing the opinions to the ABCMR.

   *c.* Provide records, investigations, information, and documentation upon request of the ABCMR.

   *d.* Provide additional assistance upon request of the ABCMR.

   *e.* Take corrective action directed by the ABCMR or the Secretary of the Army.

## 1–11. The Director, Defense Finance and Accounting Service

At the request of the ABCMR staff, the Director, DFAS, will—

   *a.* Furnish advisory opinions on matters within the DFAS area of expertise upon request.

   *b.* Obtain additional information or documentation as needed before providing the opinions.

   *c.* Provide financial records upon request.

   *d.* Settle claims that are based on ABCMR final actions, on behalf of the Army.

   *e.* Report quarterly to the ABCMR Director on the monies expended as a result of ABCMR action and the names of the payees.


# Chapter 2
# General

## Section I
## Army Board for Correction of Military Records Establishment and Functions

### 2–1. Army Board for Correction of Military Records establishment

The ABCMR operates pursuant to law (10 USC 1552) within the Office of the Secretary of the Army. The ABCMR consists of civilians regularly employed in the executive part of the Department of the Army (DA) who are appointed by the Secretary of the Army and serve on the ABCMR as an additional duty. Three members constitute a quorum.

### 2–2. Army Board for Correction of Military Records functions

   *a.* The ABCMR considers individual applications that are properly brought before it. In appropriate cases, it directs or recommends correction of military records to remove an error or injustice.

   *b.* When an applicant has suffered reprisal under 10 USC 1034 and DODD 7050.6, the ABCMR may recommend to the Secretary of the Army that disciplinary or administrative action be taken against any Army official who committed an act of reprisal against the applicant.

   *c.* The ABCMR will decide cases on the evidence of record. It is not an investigative body. The ABCMR may, in its discretion, hold a hearing (sometimes referred to as an evidentiary hearing or an administrative hearing in 10 USC 1034 and DODD 7050.6) or request additional evidence or opinions.

## Section II
## Application Procedures

### 2–3. Who may apply

   *a.* The ABCMR's jurisdiction under 10 USC 1552 extends to any military record of the DA. It is the nature of the record and the status of the applicant that define the ABCMR's jurisdiction.

   *b.* Usually applicants are soldiers or former soldiers of the Active Army, the U.S. Army Reserve (USAR), and in certain cases, the Army National Guard of the United States (ARNGUS) and other military and civilian individuals affected by an Army military record. Requests are personal to the applicant and relate to military records. Requests are submitted on DD Form 149 (Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552). Soldiers need not submit applications through their chain of command.

   *c.* An applicant with a proper interest may request correction of another person's military records when that person is incapable of acting on his or her own behalf, missing, or deceased. Depending on the circumstances, a child, spouse, parent, or other close relative, heir, or legal representative (such as a guardian or executor) of the soldier or former soldier may be able to demonstrate a proper interest. Applicants must send proof of proper interest with the application when requesting correction of another person's military records.

### 2–4. Time limits

Applicants must file an application within 3 years after an alleged error or injustice is discovered or reasonably should

have been discovered. The ABCMR may deny an untimely application. The ABCMR may excuse untimely filing in the interest of justice.

## 2–5. Administrative remedies
The ABCMR will not consider an application until the applicant has exhausted all administrative remedies to correct the alleged error or injustice.

## 2–6. Stay of other proceedings
Applying to the ABCMR does not stay other proceedings.

## 2–7. Counsel
*a.* Applicants may be represented by counsel, at their own expense.
*b.* See DODD 7050.6 for provisions for counsel in cases processed under 10 USC 1034.

## Section III
## Actions by the Army Board for Correction of Military Records Director and Staff

## 2–8. Criteria
The ABCMR staff will review each application to determine if it meets the criteria for consideration by the ABCMR. The application may be returned without action if—
*a.* The applicant fails to complete and sign the application.
*b.* The applicant has not exhausted all other administrative remedies.
*c.* The ABCMR does not have jurisdiction to grant the requested relief.
*d.* No new evidence was submitted with a request for reconsideration.

## 2–9. Burden of proof
The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence.

## 2–10. Army Board for Correction of Military Records consideration
*a.* A panel consisting of at least three ABCMR members will consider each application that is properly brought before it. One panel member will serve as the chair.
*b.* The panel members may consider a case on the merits in executive session or may authorize a hearing.
*c.* Each application will be reviewed to determine—
(1) Whether the preponderance of the evidence shows that an error or injustice exists and—
(a) If so, what relief is appropriate.
(b) If not, deny relief.
(2) Whether to authorize a hearing.
(3) If the application is filed outside the statute of limitations and whether to deny based on untimeliness or to waive the statute in the interest of justice.

## Section IV
## Hearings and Disposition of Applications

## 2–11. Army Board for Correction of Military Records hearings
Applicants do not have a right to a hearing before the ABCMR. The Director or the ABCMR may grant a formal hearing whenever justice requires.

## 2–12. Army Board for Correction of Military Records decisions
The panel members' majority vote constitutes the action of the ABCMR. The ABCMR's findings, recommendations, and in the case of a denial, the rationale will be in writing.

## 2–13. Army Board for Correction of Military Records final action
The panel members' majority vote constitutes the action of the ABCMR. The ABCMR's findings, recommendations, and in the case of a denial, the rationale will be in writing.
*a.* Except as otherwise provided, the ABCMR acts for the Secretary of the Army, and an ABCMR decision is final when it—
(1) Denies any application (except for actions based on reprisals investigated under 10 USC 1034).
(2) Grants any application in whole or in part without a hearing when—
(a) The relief is as recommended by the proper staff agency in an advisory opinion.

*(b)* Is unanimously agreed to by the ABCMR panel.

*(c)* Does not involve an appointment or promotion requiring confirmation by the Senate.

*b.* The ABCMR will forward the decisional document to the Secretary of the Army for final decision in any case in which—

(1) A hearing was held.

(2) The facts involve reprisals under the Military Whistleblower Protection Act, confirmed by the DOD Inspector General (DODIG) under 10 USC 1034 and DODD 7050.6.

(3) The ABCMR recommends relief but is not authorized to act for the Secretary of the Army on the application.

## 2–14. Decision of the Secretary of the Army

*a.* The Secretary of the Army may direct such action as he or she deems proper on each case. Cases returned to the Board for further consideration will be accompanied by a brief statement of the reasons for such action. If the Secretary does not accept the ABCMR's recommendation, adopts a minority position, or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision.

*b.* The Secretary of the Army will issue decisions on cases covered by the Military Whistleblower Protection Act (10 USC 1034 and DODD 7050.6). In cases where the DODIG concluded that there was reprisal, these decisions will be made within 180 days after receipt of the application and the investigative report by the DODIG, the DA Inspector General (DAIG), or other Inspector General offices. Unless the full relief requested is granted, these applicants will be informed of their right to request review of the decision by the Secretary of Defense.

## 2–15. Reconsideration of Army Board for Correction of Military Records decision

An applicant may request the reconsideration of an ABCMR decision under the following circumstances:

*a.* If the ABCMR receives the request for reconsideration within 1 year of the ABCMR's original decision and if the ABCMR has not previously reconsidered the matter, the ABCMR staff will review the request to determine if it contains evidence (including, but not limited to, any facts or arguments as to why relief should be granted) that was not in the record at the time of the ABCMR's prior consideration. If new evidence has been submitted, the request will be submitted to the ABCMR for its determination of whether the new evidence is sufficient to demonstrate material error or injustice. If no new evidence is found, the ABCMR staff will return the application to the applicant without action.

*b.* If the ABCMR receives a request for reconsideration more than 1 year after the ABCMR's original decision or after the ABCMR has already considered one request for reconsideration, then the case will be returned without action and the applicant will be advised the next remedy is appeal to a court of appropriate jurisdiction.

# Chapter 3
# Claims/Expenses

## 3–1. Authority

*a.* The Army, by law, may pay claims for amounts due to applicants as a result of correction of military records.

*b.* The Army may not pay any claim previously compensated by Congress through enactment of a private law.

*c.* The Army may not pay for any benefit to which the applicant might later become entitled under the laws and regulations managed by the Department of Veterans Affairs.

## 3–2. Settlement of claims

*a.* The ABCMR will furnish DFAS copies of decisions potentially affecting monetary entitlement or benefits. The DFAS will treat such decisions as claims for payment by or on behalf of the applicant.

*b.* The DFAS will settle claims on the basis of the corrected military record. The DFAS will compute the amount due, if any. The DFAS may require applicants to furnish additional information to establish their status as proper parties to the claim and to aid in deciding amounts due. Earnings received from civilian employment during any period for which active duty pay and allowances are payable will be deducted. The applicant's acceptance of a settlement fully satisfies the claim concerned.

## 3–3. Payment of expenses

The Army may not pay attorney's fees or other expenses incurred by or on behalf of an applicant in connection with an application for correction of military records under 10 USC 1552.

# Chapter 4
# Miscellaneous Provisions

## 4–1. Special standards

*a.* Pursuant to the 27 November 1979 order of the United States District Court for the District of Columbia in *Giles v. Secretary of the Army* (Civil Action No. 77–0904), a former Army soldier is entitled to an honorable discharge if a less than honorable discharge was issued to the soldier on or before 27 November 1979 in an administrative proceeding in which the Army introduced evidence developed by or as a direct or indirect result of compelled urinalysis testing administered for the purpose of identifying drug abusers (either for the purposes of entry into a treatment program or to monitor progress through rehabilitation or follow-up).

*b.* Applicants who believe that they fall within the scope of paragraph *a,* above, should place the term "CATEGORY G" in block 11b of DD Form 149. Such applications should be expeditiously reviewed by a designated official, who will either send the individual an honorable discharge certificate if the individual falls within the scope of paragraph *a,* above, or forward the application to the Discharge Review Board if the individual does not fall within the scope of paragraph *a,* above. The action of the designated official will not constitute an action or decision by the ABCMR.

## 4–2. Public access to decisions

*a.* After deletion of personal information, a redacted copy of each decision will be indexed by subject and made available for review and copying at a public reading room at Crystal Mall 4, 1941 Jefferson Davis Highway, Arlington, VA. The index will be in a usable and concise form so as to indicate the topic considered and the reasons for the decision. Under the Freedom of Information Act, records created on or after 1 November 1996 will be available by electronic means.

*b.* Under the Freedom of Information Act and the Privacy Act of 1974, the ABCMR will not furnish to third parties information submitted with or about an application unless specific written authorization is received from the applicant or unless the Board is otherwise authorized by law.

**Appendix A**
**References**

**Section I**
**Required Publications**
This section contains no entries.

**Section II**
**Related Publications**
A related publication is a source of additional information. The user does not have to read a related reference to understand this publication.

**AR 15–130**
Army Clemency and Parole Board

**AR 25–55**
The Department of the Army Freedom of Information Act Program

**AR 340–21**
The Army Privacy Program

**AR 600–8–104**
Military Personnel Information Management/Records

**DODD 7050.6**
Military Whistleblower Protection

**5 USC 552**
Public information; agency rules, opinions, orders, records, and proceedings

**10 USC 1034**
Protected communications; prohibition of retaliatory personnel actions

**10 USC 1552**
Correction of military records: claims incident thereto

**38 USC 5902**
Recognition of representatives of organizations

**Section III**
**Prescribed Forms**
This prescribed form is available through the normal supply channels and the APD Web site http://www.apd.army.mil.

**DD Form 149**
Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552 (prescribed in para 2–3*b*).

**Section IV**
**Referenced Forms**
This section contains no entries.

## Glossary

**Section I**
**Abbreviations**

**ABCMR**
Army Board for Correction of Military Records

**AR**
Army regulation

**ARNGUS**
Army National Guard of the United States

**ATTN**
Attention

**DA**
Department of the Army

**DAIG**
Department of the Army Inspector General

**DFAS**
Defense Finance and Accounting Service

**DOD**
Department of Defense

**DODD**
Department of Defense Directive

**DODIG**
Department of Defense Inspector General

**HQDA**
Headquarters, Department of the Army

**IG**
Inspector General

**U.S.**
United States (of America)

**USAR**
U.S. Army Reserve

**USC**
United States Code

**Section II**
**Terms**

**Applicant**
A person who applies to the ABCMR for correction of an Army military record.

**Counsel**
Includes individuals in good standing of the Federal bar or the bar of any state, territory or the District of Columbia; accredited representatives of veterans' organizations recognized under 38 USC 5902; and other individuals determined by the ABCMR to be competent to represent the interests of the applicant. Army Judge Advocate General's Corps officers may assist in the preparation and submission of an application to the ABCMR. However, they may not

represent an applicant at a hearing, if one is granted, without written approval of The Judge Advocate General of the Army.

**Official military personnel file**
The permanent, historical, and official record of a soldier's military service.

**Records Holding Agency**
The agency responsible for the safe storage, maintenance, and control of records.

**Secretary of the Army**
Includes the Secretary's designee to act on ABCMR matters.

**Section III**
**Special Abbreviations and Terms**
This section contains no entries.

## Index

This index is organized alphabetically by topic and subtopic. Topics and subtopics are identified by paragraph number.

**ABCMR decisions**
    Action of the ABCMR, 1–8, 2–2, 2–8
    Decisional documents, 2–13
    Determinations, 1–8, 2–12
    \Military Whistleblower Protection Act provisions, 2–12, 2–14
**ABCMR deliberations**
    ABCMR determinations, 2–14, 2–15
    Advisory opinions, 1–10, 1–11
    Denial of applications, 1–8, 2–12, 2–13
    Evidence considered, 2–10
**ABCMR hearings**
    Evidence considered, 2–10
    Executive session, 2–10
    Hearings, 2–10, 2–11
    Military Whistleblower Protection Act provisions, 2–2, 2–14
    No right to hearing, 2–11
**ABCMR information sources**
    Advisory opinions, 1–10, 1–11, 2–13
    Information from other Government sources, 1–9, 1–10
    Presumption of administrative regularity, 2–9
    Reports from IG, 2–14
**Access to records**
    Records access, 4–2
    Request for official records, 4–2
**Action after final decision**
    Filing of documentation, 1–9
    Notification to applicant, 1–9
    Notification to Army/Defense officials , 1–9, 3–2
    Notification to counsel/Members of Congress, 1–9
**Actions by the ABCMR staff**
    Administrative denial, 2–8
    Notification to applicant, 2–8
    Preview of applications, 2–8
**Application forms**
    Completion of forms, 2–3, 2–8

**Claims/expenses**
    Authority for payment, 3–1
    Payments not authorized, 3–1, 3–3
**Consideration by the ABCMR**
    Composition of ABCMR panel, 2–10
    Evidence considered, 2–10
**Counsel representation**
    Counsel at applicant's own expense, 2–7
    Definition of counsel, 2–7
    Representation by Army Judge Advocate General Corps officer, 2–7

**Decision of the Secretary of the Army**
    Military Whistleblower Protection Act provisions, 2–13, 2–14
    Review by the Secretary of Defense, 2–14
    Secretary of the Army's actions, 1–5, 2–13, 2–14
**Decisional documents**
    Evidence considered, 2–13

**Explanation of abbreviations and terms, Glossary**

**Final action by the ABCMR**
Actions of the ABCMR, 2–12, 2–13
Decisional documents, 2–13
**Form prescribed**
Completion of form, 2–8, 4–1
Minority reports, 2–14

**Payment of expenses**
Payments not authorized, 3–1, 3–3
**Preparation before applying**
Applicant's actions before applying, 2–5
**Public access to decision**
Documents available to review, 4–2
Index of decisions, 4–2
Prohibitions on furnishing information, 4–2
Purpose paragraph, 1–1

**Reconsideration of applications**
Actions on requests for reconsideration, 2–15
Basis for reconsideration, 2–15
Notification to applicant, 2–15
**References**
Prescribed and referenced forms, appendix A
Related publications, appendix A
**Report of settlement**
The Army section of the DFAS action, 1–11
**Responsibilities**
ABCMR members, 1–8, 2–14
Applicant, 2–3, 2–4, 2–5, 2–6, 2–10, 2–11, 2–12, 2–13, 3–2
Army records holding agency, 1–9, 4–2
DFAS, 1–11, 3–1, 3–2, 3–3
Army Staff agencies and/or commands, 1–10
Chair, 1–7
Director of the ABCMR, 1–6
Secretary of the Army, 1–1, 1–5, 1–9, 2–1, 2–13, 4–2

**Separate communications**
Comments/Recommendations to the Secretary of the Army, 2–14
**Settlement of claims**
Army section of the DFAS actions, 1–11, 3–1, 3–2, 3–3
Settlement report, 1–11
**Setup of the ABCMR**
Authority for ABCMR, 2–1
Composition of ABCMR, 2–1
Special Standards, 4–1
**Staff assistance**
Advisory opinions, 1–10, 1–11
Compliance with requests, 1–10, 1–11, 1–14
Information from other Government sources, 2–13, 4–2
Statutory authority, 1–4
Stay on other proceedings, 2–6

**Time limits**
Excusing a failure to timely file, 2–4, 2–10
Failure to timely apply, 2–4, 2–10

**Who may apply**
Applicants, 2–3
ABCMR jurisdiction, 2–3

**UNCLASSIFIED**

PIN 000431−000



ELECTRONIC  PUBLISHING  SYSTEM
OneCol FORMATTER WIN32 Version  231


PIN:          000431–000
DATE:         03-31-06
TIME:         10:48:24
PAGES  SET:   14
_____
DATA  FILE:   C:\wincomp\r15-185.fil
DOCUMENT:    AR  15–185


SECURITY:     UNCLASSIFIED
DOC  STATUS:  REVISION

Exhibit B

**Army Regulation 130–5**
**AFMD 10**

Army National Guard

# Organization and Functions of National Guard Bureau

**Headquarters**
**Departments of the Army, Department of**
**the Air Force**
**Washington, DC**
**30 December 2001**

# UNCLASSIFIED

# *SUMMARY of CHANGE*

AR 130–5/AFMD 10
Organization and Functions of National Guard Bureau

This revision--

o  Describes the responsibilities of the Chief, National Guard Bureau (para 1-
   4).

o  Adds the National Guard Charter (fig 1-1) as jointly developed and prescribed
   by the Secretary of the Army and the Secretary of the Air Force pursuant to
   section 10503, title 10, United States Code (para 1-7).

o  Describes the principal organizational elements of the National Guard Bureau
   (para 3-2).

Headquarters
Departments of the Army,
Department of the Air Force
Washington, DC
30 December 2001

*Army Regulation 130–5
*AFMD 10

Effective 30 January 2002

Army National Guard

# Organization and Functions of National Guard Bureau

BY ORDER OF THE SECRETARY OF THE ARMY:

BY ORDER OF THE SECRETARY OF THE AIR FORCE:

ERIC K. SHINSEKI
*General, United States Army
Chief of Staff*

PAUL A. WEAVER, *Major General
Director, Air National Guard*

Official:

*Joel B. Hudson*

JOEL B. HUDSON
*Administative Assistant to the
Secretary of the Army*

**History.** This printing publishes a revision of this publication. Because the publication has been extensively revised, the changed portions have not been highlighted.

**Summary.** This regulation covers the policy, major functions, and organization of the National Guard Bureau as a Joint Bureau of the Department of the Army and the Department of the Air Force. It updates the 1977 edition by incorporating the changes to the organization and functions of the National Guard Bureau as set forth in the new sections 10501 through 10507, chapter 1011, title 10, United States Code (10 USC 10501–10507). The National Guard Bureau Charter prescribes the duties and responsibilities of the National Guard Bureau.

**Applicability.** This regulation applies to the Active Army, the Army National Guard, the Department of the Air Force, and the Air National Guard.

**Proponent and exception authority.** The proponent of this regulation is the Chief, National Guard Bureau. The Chief, National Guard Bureau has the authority to approve exceptions to this regulation that are consistent with controlling law and regulations. The Chief, National Guard Bureau may delegate this approval authority in writing to a division chief within the proponent agency in the grade of colonel or civilian equivalent. The reporting requirements in this publication are exempt from licensing in accordance with paragraph 2.11.12 of Air Force Instruction 33–324.

**Army management control process.** This regulation contains management control provisions, but it does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the National Guard Bureau. ATTN: NGB–JA, Arlington, VA 22202–3231.

**Suggested Improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the National Guard Bureau. ATTN: NGB–SDP, Arlington, VA 22202–3231.

**Distribution.** This publication is available in electronic media only and is intended for command levels D and E for the Active Army, the Army National Guard, and the U.S. Army Reserve. Air Force distribution: F.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*

*Section II*
*Responsibilities, page 1*
Chief, National Guard Bureau • 1–4, *page 1*
Legal basis • 1–5, *page 1*
Special relationships • 1–6, *page 1*
History of the National Guard Bureau • 1–7, *page 2*

**Chapter 2**
**National Guard Bureau Mission and Charter,** *page 5*
Mission • 2–1, *page 5*
National Guard Bureau Charter • 2–2, *page 5*
Governing regulations when not in active Federal service • 2–3, *page 5*
Legal opinions • 2–4, *page 5*

**Chapter 3**
**Organization,** *page 5*
General • 3–1, *page 5*
Major organizational elements • 3–2, *page 6*

**Chapter 4**
**Appointments and Duties,** *page 6*
Appointment of Chief, National Guard Bureau • 4–1, *page 6*
Appointment of Vice Chief, National Guard Bureau • 4–2, *page 6*
Succession • 4–3, *page 7*
Appointment of Director, Army National Guard • 4–4, *page 7*
Appointment of Deputy Director, Army National Guard • 4–5, *page 7*
Appointment of Director, Air National Guard • 4–6, *page 8*
Appointment of Deputy Director, Air National Guard • 4–7, *page 8*
Other statutory officers • 4–8, *page 8*

**Appendix A.**   References, *page 9*

**Figure List**

Figure 1–1: National Guard Bureau Charter, *page 3*
Figure 1–1: National Guard Bureau Charter–Continued, *page 4*

**Glossary**

# Chapter 1
# Introduction

## Section I
## General

### 1–1. Purpose
This regulation prescribes the major functions and organization of the National Guard Bureau as a Joint Bureau of the Department of the Army and the Department of the Air Force.

### 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

## Section II
## Responsibilities

### 1–4. Chief, National Guard Bureau
The Chief, National Guard Bureau will—

*a.* Serve as the principal adviser to the Secretary of the Army and the Chief of Staff of the Army and the Secretary of the Air Force and the Chief of Staff of the Air Force on matters relating to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States.

*b.* Establish State military headquarters in the 50 States, Guam, the District of Columbia, the Commonwealth of Puerto Rico, and the Virgin Islands; plan for and conduct operations in support of civil defense; and utilize the State adjutants general and their State headquarters.

*c.* Be the "responsible department official" who implements title VI of the Civil Rights Act of 1964, and DOD Directive 5500.11, as it applies to the Army and Air National Guard (NGR 600–23/ANGR 30–12).

*d.* Administer the National Guard technician program, as redelegated by the Secretaries of the Army and Air Force, in a manner consistent with approved policies, directives, regulations, and publications of the Army and Air Force (AR 570–4, AR 135–2, Department of the Army General Order 85, 1968, and AFI 36–103).

*e.* Implement the Small Business Program in the National Guard Bureau (DODD 4205.1).

*f.* Submit to the Secretary of Defense, through the Secretaries of the Army and the Air Force, an annual report on the state of the National Guard and the ability of the National Guard to meet its missions. The report will be prepared in conjunction with the Secretary of the Army and the Secretary of the Air Force and may be submitted in classified and unclassified versions.

### 1–5. Legal basis
Under the provisions of section 10501, title 10, United States Code (10 USC 10501), the National Guard Bureau—

*a.* Is established in the Department of Defense as a Joint Bureau of the Department of the Army and the Department of the Air Force.

*b.* Is the channel of communication between the Departments of the Army and the Air Force and the several states on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States.

### 1–6. Special relationships
*a. States.* The Army National Guard of the United States and the Air National Guard of the United States are reserve components of the Army and the Air Force, respectively. Members of the Army National Guard of the United States and of the Air National Guard of the United States are not in active Federal service except when ordered thereto in accordance with law, or called into active Federal service in their status as members of the National Guard. When not in active Federal service, such members are administered, armed, equipped, and trained in their status as members of the Army National Guard and the Air National Guard of the several states (sections 10107 and 10113, title 10, United States Code (10 USC 10107, 10113)).

*b. Command jurisdiction.*

(1) The Governor of each State, Guam, the Commonwealth of Puerto Rico, and the Virgin Islands is the Commander in Chief of all Army and Air National Guard units not in active Federal service within his or her jurisdiction. Command is normally exercised by an adjutant general or other designated military official of the State, Guam, Commonwealth of Puerto Rico, or the Virgin Islands.

(2) The President of the United States is the Commander in Chief of the National Guard of the District of Columbia.

Command is exercised through the Secretary of Defense and the Commanding General of the District of Columbia National Guard, as provided in Executive Order No. 11485, 1 October 1969 (34 FR 15411). The Secretary of Defense has delegated his command authority to the Secretary of the Army with respect to the District of Columbia Army National Guard and to the Secretary of the Air Force with respect to the District of Columbia Air National Guard by a memorandum dated 10 October 1996.

## 1–7. History of the National Guard Bureau

The Constitution and Bill of Rights made specific provision for continuing a militia as a military force. Following the establishment of the Federal Government in 1792, the militia remained under complete control of the States until congressional enactment of the Dick Military Act in 1903, which made the Federal Government responsible for their training, equipment, and pay. The administrative burden placed upon the War Department by that legislation led to the creation of a type of bureau agency to administer militia affairs. With the support thus provided, the militia developed into sufficiently well-organized and uniformly trained units to permit, under the National Defense Act of 1916, as amended, the necessary alignment with the Regular Army and Federal recognition of the militia of individual states as a composite National Guard. During 1916, the antecedent unit of the present-day Air National Guard was formed. Its separate status as a component was later brought about by the National Security Act of 1947. With the creation of the separate components, the National Guard Bureau continued as a Bureau of the Department of the Army, and it became an agency of the Department of the Air Force to perform similar functions and duties for that Department. The Department of the Army Reorganization Act of 1958 designated the National Guard Bureau as a Joint Bureau of the Department of the Army and the Air Force. The Reserve Officers Personnel Management Act (the Act), dated 5 October 1994, reaffirmed that there is in the Department of Defense the National Guard Bureau, which is a Joint Bureau of the Department of the Army and the Department of the Air Force, and directed that the Secretaries of the Army and the Air Force jointly develop and prescribe a charter for the National Guard Bureau covering the matters set forth in the Act. (See fig 1–1.)

1 September 1995

Pursuant to the requirements of Section 10503, Title 10, United States Code, the Secretary of the Army and the Secretary of the Air Force have jointly developed and do hereby prescribe the following Charter for the National Guard Bureau:



## NATIONAL GUARD BUREAU
## CHARTER

Subject to the authority, direction, and control of the Secretary of the Army and the Secretary of the Air Force, subject to sections 3013 and 8013 of Title I0, United States Code, and consistent with approved policies, directives, regulations, and publications of the Army and the Air Force, and subject to inspections in accordance with Section 105 of Title 32, United States Code, the Chief of the National Guard Bureau is responsible for the following functions:

*(1) Implementing Departmental guidance on allocation of unit structure, strength authorizations, and other resources to the Army National Guard of the United States and the Air National Guard of the United States.*

*(2) Prescribing the training discipline and training requirements for the Army National Guard and the Air National Guard and the allocation of Federal funds for the training of the Army National Guard and the Air National Guard.*

*(3) Ensuring that units and members of the Army National Guard and the Air National Guard are trained by the States in accordance with approved programs and policies of, and guidance from, the Secretary of the Army, the Secretary of the Air Force, and the respective Service Chiefs of Staff.*

*(4) Monitoring and assisting the States in the organization, maintenance, and operation of National Guard units so as to provide well-trained and well-equipped units capable of augmenting the active forces in time of war or national emergency.*

*(5) Planning and administering the budgets for the Army National Guard of the United States and the Air National Guard of the United States*

*(6) Supervising the acquisition and supply of, and accountability of the States for, Federal property issued to the National Guard through the property and fiscal officers designated, detailed, or appointed under section 708 of Title 32, United States Code.*

*(7) Granting and withdrawing, in accordance with applicable laws and regulations, Federal recognition of (A) National Guard units, and (B) officers of the National Guard*

*(8) Coordinating departmental policies and programs for the employment and use of National Guard technicians under section 709 of Title 32, United States Code.*

*(9) Supervising and administering the Active Guard and Reserve program as it pertains to the National Guard in accordance with priorities established by the Secretary of the Army and the Secretary of the Air Force.*

**Figure 1–1. National Guard Bureau Charter**

*(10) Issuing, with the coordination and approval of the service concerned, directives, regulations, and publications consistent with approved policies of the Army and Air Force, as appropriate.*

*(11) Facilitating and supporting the training of members and units of the National Guard to meet State requirements.*

*(12) Facilitating and coordinating with the Departments of the Army and the Air Force the use of National Guard personnel and resources for contingency operations, Military Operations Other Than War, natural disasters, Military Support to Civil Authorities, and special events.*

*(13) Ensuring that appointments of all officials and personnel of the National Guard Bureau comply with all applicable Department of the Army and Department of the Air Force personnel and manpower rules and regulations.*

*(14) Ensuring that, in the performance of their duties, all officials and personnel of the National Guard Bureau comply fully with applicable Department of the Army and Department of the Air Force policies, directives, publications and legal opinions.*

*(15) Implementing, with the Chief of the National Guard Bureau as the Responsible Department Official, Title VI of the Civil Rights Act of 1964 and DOD Directive 5500.11, Nondiscrimination in Federally Assisted Programs, as they apply to the Army and Air National Guard.*

(16) Such other functions as the Secretaries may prescribe.

TOGO D. WEST, JR.
Secretary of the Army

SHEILA E. WIDNALL
Secretary of the Air Force



**Figure 1–1. National Guard Bureau Charter–Continued**

# Chapter 2
# National Guard Bureau Mission and Charter

## 2–1. Mission

The mission of the National Guard Bureau is to—

*a.* Participate with the Army and the Air Force staffs in the formulation, development, and coordination of all programs, policies, concepts, and plans pertaining to or affecting the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States.

*b.* Develop and administer such detailed operating programs as are required for the operation of the Army National Guard and the Air National Guard, based on approved programs, policies, and guidance from the Department of the Army and the Department of the Air Force.

*c.* Participate with and assist the several states in the organization, maintenance, and operation of their National Guard units so as to provide trained and equipped units capable of immediate expansion to war strength, and available for service in time of war or emergency to augment the Active Army and Air Force.

## 2–2. National Guard Bureau Charter

Section 10503, chapter 1011, title 10, United States Code (10 USC 10503), directed the Secretary of the Army and the Secretary of the Air Force to develop a charter for the National Guard Bureau. This has been accomplished with the cooperation and assistance of the National Guard Bureau and the Army and Air staffs. The charter, which prescribes the duties and responsibilities of the National Guard Bureau, is at figure 1–1 and is a part of this regulation.

## 2–3. Governing regulations when not in active Federal service

*a. Army regulations and Air Force instructions.* Army regulations and Air Force instructions govern the National Guard not in the active Federal service in the same manner as they do the regular components, when such regulations or instructions have been made applicable to the National Guard. Specific applicability is indicated in departmental regulations and instructions.

*b. Army National Guard regulations and Air National Guard instructions.* Army National Guard regulations will be based on Army policies fully coordinated with HQDA, approved by the Chief of Staff, United States Army, and issued by order of the Secretary of the Army. Air National Guard instructions will be issued subject to the approval of the Chief of Staff, United States Air Force, and issued by order of the Secretary of the Air Force. These regulations or instructions are binding on the National Guard and on all agents of the Active Army and Active Air Force in the same manner as Army regulations and Air Force instructions. Joint Regulations may be issued when the subject matter is applicable to both the Army and Air National Guard, with the approval of both the Department of the Army and the Department of the Air Force.

*c. Other National Guard publications.* The Chief, National Guard Bureau will issue such other publications as necessary, provided that such publications are consistent with approved policies of the Secretary and Chief of Staff of the Department concerned. Such publications may cover areas of operation not fully clarified or detailed in departmental publications. They will be binding only upon the Army or Air National Guard, as appropriate.

*d. Comparative status of National Guard and Air National Guard regulations and Army and Air Force regulations.* National Guard and Air National Guard regulations are issued by the authority of the Secretary of the Army and Secretary of the Air Force, and they therefore carry the same force and effect as Army and Air Force regulations.

## 2–4. Legal opinions

The legal opinions rendered by the Office of the General Counsel, Department of Defense; Office of the General Counsel, Army; Office of the General Counsel, Air Force; Office of the Judge Advocate General, Army; and the Office of the Judge Advocate General, Air Force are applicable to and binding upon the National Guard Bureau and the Army and Air National Guard of the United States to the same extent as those legal opinions are binding upon the Department of Defense, Department of the Army, and Department of the Air Force.

# Chapter 3
# Organization

## 3–1. General

The organization of the National Guard Bureau includes the offices of the Chief, National Guard Bureau; Director, Army National Guard; Director, Air National Guard; Chief Counsel; Comptroller; Inspector General; and such other

subordinate offices and operating divisions as required to discharge the responsibilities of the National Guard Bureau of the Department of the Army and the Department of the Air Force.

### 3–2. Major organizational elements

*a.* Office of the Chief, National Guard Bureau is composed of the Chief, National Guard Bureau; Vice-Chief, National Guard Bureau; Chief of Staff; Executive Office; United States Property and Fiscal Officers; and such separate offices as are required by the Chief, National Guard Bureau.

*b.* Office of the Director, Army National Guard is composed of the Director, Army National Guard; Deputy Director, Army National Guard; Executive Office; and such operating divisions as may be prescribed by the Chief, National Guard Bureau for those matters pertaining to the Army National Guard and the Army National Guard of the United States.

*c.* Office of the Director, Air National Guard is composed of the Director, Air National Guard; Deputy Director, Air National Guard; Executive Office; and such operating divisions as may be prescribed by the Chief, National Guard Bureau for those matters pertaining to the Air National Guard and the Air National Guard of the United States.

*d.* Office of the Chief Counsel, National Guard Bureau is composed of the Chief Counsel and such additional staff as may be needed to provide legal support to the Chief, National Guard Bureau, other National Guard Bureau offices, the Adjutants General, and the United States Property and Fiscal Officers.

*e.* Office of the Comptroller, National Guard Bureau is composed of the Comptroller and such additional staff as may be prescribed by the Chief, National Guard Bureau.

*f.* Office of the Inspector General is composed of the Inspector General and such other staff as may be required to perform the Inspector General functions of the National Guard Bureau.


## Chapter 4
## Appointments and Duties

### 4–1. Appointment of Chief, National Guard Bureau

*a. How appointed.* The President, by and with the advice and consent of the Senate, appoints the Chief of the National Guard Bureau from officers of the Army National Guard of the United States and the Air National Guard of the United States who—

(1) Are recommended for such appointment by their respective Governors or, in the case of the District of Columbia, by the commanding general of the District of Columbia National Guard.

(2) Have had at least 10 years of federally recognized commissioned service in an active status in the National Guard.

(3) Are in a grade above the grade of brigadier general.

*b. Term of office.* An officer appointed as Chief of the National Guard Bureau serves at the pleasure of the President for a term of 4 years. An officer may not hold the office of chief after becoming 64 years of age. An officer may be reappointed as Chief of the National Guard Bureau. While holding the office, the Chief of the National Guard Bureau may not be removed from the reserve active status list, or from an active status under any provision of law that otherwise would require such removal due to completion of a specified number of years of service or a specified number of years of service in grade.

*c. Duties.* The Chief of the National Guard Bureau is the principal adviser to the Secretary of the Army, the Chief of Staff of the Army, the Secretary of the Air Force, and the Chief of Staff of the Air Force on matters relating to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States. He or she ensures that the National Guard Bureau performs those functions contained in the National Guard Bureau charter, as more specifically defined in this regulation, or such other functions as may be prescribed by the Secretary of the Army or the Secretary of the Air Force.

*d. Grade.* The Chief of the National Guard Bureau will be appointed to serve in the grade of lieutenant general.

### 4–2. Appointment of Vice Chief, National Guard Bureau

*a. How appointed.* The Vice Chief, National Guard Bureau, is selected by the Secretary of Defense from officers of the Army National Guard of the United States or the Air National Guard of the United States who—

(1) Are recommended for such appointment by their respective Governors or, in the case of the District of Columbia, the commanding general of the District of Columbia National Guard.

(2) Have had at least 10 years of federally recognized commissioned service in an active status in the National Guard.

(3) Are in a grade above the grade of colonel.

*b. Term of office.* An officer appointed as Vice Chief of the National Guard Bureau serves for a term of 4 years, but he or she may be removed from office at any time for cause. The Chief and Vice Chief of the National Guard Bureau

may not both be members of the Army or of the Air Force. The term of the Vice Chief of the National Guard Bureau will end upon the appointment of a Chief of the National Guard Bureau who is a member of the same armed force as the Vice Chief. However, the Secretary of Defense may waive the restrictions for a limited period of time to provide for the orderly transition of officers to serve in the positions of Chief and Vice Chief of the National Guard Bureau.

*c. Duties.* The Vice Chief of the National Guard Bureau performs such duties as may be prescribed by the Chief of the National Guard Bureau.

*d. Grade.* The Vice Chief of the National Guard Bureau will be appointed to serve in the grade of major general.

*e. Functions as Acting Chief.* When there is a vacancy in the office of the Chief of the National Guard Bureau or in the absence or disability of the Chief, the Vice Chief of the National Guard Bureau acts as Chief and performs the duties of the Chief until a successor is appointed or the absence or disability ceases.

## 4–3. Succession

When there is a vacancy in the offices of both Chief and Vice Chief of the National Guard Bureau or in the absence or disability of both the Chief and Vice Chief of the National Guard Bureau, or when there is a vacancy in one such office and in the absence or disability of the officer holding the other, the senior officer of the Army National Guard of the United States or the Air National Guard of the United States on duty with the National Guard Bureau shall perform the duties of the Chief until a successor to the office of the Chief or Vice Chief is appointed or the absence or disability of the Chief or Vice Chief ceases, as the case may be.

## 4–4. Appointment of Director, Army National Guard

*a. How appointed.* The President, by and with the advice and consent of the Senate, shall appoint the Director, Army National Guard from general officers of the active Army National Guard of the United States nominated by their respective Governors or, in the case of the District of Columbia, the commanding general of the District of Columbia National Guard. The Secretary of Defense may not recommend an officer to the President for appointment as Director, Army National Guard unless the officer—

(1) Is recommended by the Secretary of the Army.

(2) Is determined by the Chairman of the Joint Chiefs of Staff to have significant joint duty experience. Until 1 October 2003, the Secretary of Defense may waive this requirement if the Secretary of the Army requests the waiver, and, in the judgment of the Secretary of Defense, the officer is qualified for service in the position and the waiver is necessary for the good of the service.

*b. Term of office.* The Director, Army National Guard will be appointed for a period of 4 years, but he or she may be removed for cause at any time. The officer serving as Director may be reappointed for one additional 4-year period.

*c. Grade.* The Director, Army National Guard will serve in the grade of lieutenant general.

*d. Duties.* The Director, Army National Guard, under the supervision and control of the Chief, National Guard Bureau, performs those administrative and operational functions of the Chief pertaining to the Army National Guard and the Army National Guard of the United States. The organization of the office of Director, Army National Guard and the operating divisions thereunder, with specific functions and responsibilities, will be as prescribed by the Chief, National Guard Bureau.

*e. Succession.* In the event the office of the Director, Army National Guard becomes vacant, or the incumbent, because of disability, is unable to discharge the responsibilities and the duties thereof, the Deputy Director, Army National Guard will act as Director, Army National Guard until the disability ceases or a successor is appointed.

## 4–5. Appointment of Deputy Director, Army National Guard

*a. How appointed.* The Secretary of the Army will appoint the Deputy Director, Army National Guard from officers of the active Army National Guard of the United States who—

(1) Have been recommended by their respective Governors or, in the case of the District of Columbia, the Commanding General of the District of Columbia National Guard.

(2) Have had at least 10 years of federally recognized commissioned service in the active Army National Guard of the United States immediately preceding their appointment.

*b. Term of office.* The Deputy Director, Army National Guard will be appointed for a term not to exceed 4 years. He or she may serve consecutive terms.

*c. Grade.* The Deputy Director, Army National Guard will serve in the grade of brigadier general.

*d. Duties.* The Deputy Director, Army National Guard is the principal assistant to the Director, Army National Guard and performs such duties and functions as may be prescribed by the Director, Army National Guard.

*e. Succession.* In the event the office of the Deputy Director, Army National Guard becomes vacant, or the incumbent, because of disability, is unable to discharge the responsibilities and duties thereof, the next senior officer of the Army National Guard assigned to the National Guard Bureau will act as Deputy Director, Army National Guard unless otherwise directed by the Chief, National Guard Bureau.

## 4–6. Appointment of Director, Air National Guard

*a. How appointed.* The President, by and with the advice and consent of the Senate, shall appoint the Director, Air National Guard from rated general officers of the active Air National Guard of the United States nominated by their respective Governors or, in the case of the District of Columbia, the commanding general of the District of Columbia National Guard. The Secretary of Defense may not recommend an officer to the President for appointment as Director, Air National Guard, unless the officer—

(1) Is recommended by the Secretary of the Air Force.

(2) Is determined by the Chairman of the Joint Chiefs of Staff to have significant joint duty experience. Until 1 October 2003, the Secretary of Defense may waive this requirement if the Secretary of the Air Force requests the waiver, and, in the judgment of the Secretary of Defense, the officer is qualified for service in the position and the waiver is necessary for the good of the service.

*b. Term of office.* The Director, Air National Guard will be appointed for a period of 4 years, but he or she may be removed for cause at any time. The officer may be reappointed for one additional 4-year period.

*c. Grade.* The Director, Air National Guard will serve in the grade of lieutenant general.

*d. Duties.* The Director, Air National Guard, under the supervision and control of the Chief, National Guard Bureau, performs those administrative and operational functions of the Chief pertaining to the Air National Guard and the Air National Guard of the United States. The organization of the office of Director, Air National Guard and the operating divisions thereunder, with specific functions and responsibilities, will be as prescribed by the Chief, National Guard Bureau.

*e. Succession.* In the event the office of the Director, Air National Guard becomes vacant, or the incumbent, because of disability, is unable to discharge the responsibilities and the duties thereof, the Deputy Director, Air National Guard will act as Director, Air National Guard until the disability ceases or a successor is appointed.

## 4–7. Appointment of Deputy Director, Air National Guard

*a. How appointed.* The Secretary of the Air Force will appoint the Deputy Director, Air National Guard from rated officers of the active Air National Guard of the United States who—

(1) Have been recommended by their respective Governors, or, in the case of the District of Columbia, the Commanding General of the District of Columbia National Guard.

(2) Have had at least 10 years of federally recognized commissioned service in the active Air National Guard of the United States immediately preceding the appointment.

*b. Term of office.* The Deputy Director, Air National Guard will be appointed for a term not to exceed 4 years. He or she may serve consecutive terms.

*c. Grade.* The Deputy Director, Air National Guard will serve in the grade of brigadier general.

*d. Duties.* The Deputy Director, Air National Guard is the principal assistant to the Director, Air National Guard, and he or she performs such duties and functions as may be prescribed by the Director, Air National Guard.

*e. Succession.* In the event the office of the Deputy Director, Air National Guard becomes vacant, or the incumbent, because of disability, is unable to discharge the responsibilities and duties thereof, the next senior officer of the Air National Guard assigned to the National Guard Bureau will act as Deputy Director, Air National Guard unless otherwise directed by the Chief, National Guard Bureau.

## 4–8. Other statutory officers

In addition to the above officers, the National Guard Bureau will have a legal counsel, a comptroller, and an inspector general. Appointment of these officers will be by the Chief, National Guard Bureau. Such appointments will comply with all applicable departmental personnel and manpower rules, regulations, and policies. Officers appointed will perform such duties as the Chief may prescribe.

**Appendix A**
**References**

**Section I**
**Required Publications**

**AFI 36–103**
Organizational Responsibility for Civilian Personnel Administration and Management (Cited in para 1–4*d*) http://afpubs.hq.af.mil

**AR 135–2**
Full-Time Support Program (Cited in para 1–4*d*)

**AR 570–4**
Manpower Management (Cited in para 1–4*d*)

**Section II**
**Related Publications**
A related publication is merely a source of additional information. The user does not have to read it to understand this publication.

**AFI 33–324**
The Information Collections and Reports Management Program; Controlling Internal, Public, and Interagency Air Force Information Collections http://afpubs.hq.af.mil

**DA GO 85**
Department of the Army General Order 85, 1968

**Department of the Army Reorganization Act of 1958, P.L. 85–599**
http://www.nara.gov/nara/legislative

**Dick Military Act of 1903, 32 Stat 775**
http://www.nara.gov/nara/legislative

**DODD 4205.1**
Department of Defense Small and Small Disadvantaged Business Utilization Programs http://www.dtic.mil/whs/directives

**DODD 5500.11**
Nondiscrimination in Federally Assisted Programs http://www.dtic.mil/whs/directives

**EO 11485**
Executive Order No. 11485, 1 Oct. 69 (34 FR 15411) http://www.nara.gov/fedreg/eo.html

**National Defense Act of 1916, as amended**
http://www.nara.gov/nara/legislative

**National Security Act of 1947**
http://www.nara.gov/nara/legislative

**NGR 600–23/ANGR 30–12**
Nondiscrimination in Federally Assisted Programs http://www.ngbpdc.ngb.army.mil

**Title VI of the Civil Rights Act of 1964**
http://www.nara.gov/nara/legislative

**10 USC 331–333 or 12406**
www4.law.cornell.edu/uscode

**10 USC 10107**
www4.law.cornell.edu/uscode

**10 USC 10113**
www4.law.cornell.edu/uscode

**10 USC 10501**
www4.law.cornell.edu/uscode

**10 USC 10503**
www4.law.cornell.edu/uscode

**10 USC 12301–12304**
www4.law.cornell.edu/uscode

**Section III**
**Prescribed Forms**
This section contains no entries.

**Section IV**
**Referenced Forms**
This section contains no entries.

# Glossary

## Section I
## Abbreviations

**ANGI**
Air National Guard instruction

**NGB**
National Guard Bureau

**NGR**
National Guard regulation

## Section II
## Terms

**Air National Guard**
That part of the federally recognized organized militia of the several states that is an air force, is trained, and has its officers appointed under the sixteenth clause of section 8, article I of the Constitution; and is organized, armed, and equipped wholly or partly at Federal expense.

**Air National Guard of the United States**
The reserve component of the Air Force, all of whose members are members of the Air National Guard.

**Army National Guard**
That part of the federally recognized organized militia of the several states that is a land force, is trained, and has its officers appointed under the sixteenth clause of section 8, article I of the Constitution; and is organized, armed, and equipped wholly or partly at Federal expense.

**Army National Guard of the United States**
The reserve component of the Army, all of whose members are members of the Army National Guard.

**Call**
The procedure, under sections 331–333 or 12406, title 10, United States Code (10 USC 331–333 or 12406), through which the President brings all or a part of the National Guard (as part of the militia of the United States) into the active military service of the United States.

**National Guard**
The Army National Guard and the Air National Guard.

**Order**
The procedure under sections 12301–12304, title 10, United States Code (10 USC 12301–12304), through which the Army National Guard of the United States and the Air National Guard of the United States as reserve components enter into the active military service of the United States.

**Several States**
The 50 states, Commonwealth of Puerto Rico, Guam, the District of Columbia, and the Virgin Islands.

## Section III
## Special Abbreviations and Terms
This section contains no entries.

**UNCLASSIFIED**



ELECTRONIC PUBLISHING SYSTEM
OneCol FORMATTER .WIN32 Version 171

PIN:            004541–000
DATE:           01-11-02
TIME:           09:00:11
PAGES SET:      15
────────────────────────────
DATA FILE:      C:\wincomp\r130-5.fil
DOCUMENT:       AR 130–5
DOC STATUS:     REVISION

Exhibit C

Headquarters
Puerto Rico National Guard
San Juan, Puerto Rico
1 November 1996

PRNG REG 635-100

Effective 1 November 1996

SEPARATIONS
SEPARATIONS FOR CAUSE

===============================================================

FOR THE ADJUTANT GENERAL:

WILFREDO MARTINEZ
COL, GS    PRARNG Director of Personnel

---------------------------------------------------------------

Summary. This regulation covers the process of separation for cause for members of the Military Forces of Puerto Rico. Establishes responsibilities for the initiation and follow-up of the procedure at different levels. Establishes criteria for characterization of service of individuals separated under the dispositions of this regulation.

Applicability. This regulation applies to all Puerto Rico Military Forces officers, warrant officers and enlisted personnel, while acting under the dispositions of title 25 of the Laws of Puerto Rico Annotated alone or in conjunction with the dispositions of title 32 of the United States Code.

Authority. This regulation is promulgated under the dispositions of the Military Code of Puerto Rico, 25 L.P.R.A. sections 2059(g) and (m).

===============================================================

1. Introduction. The members of the Puerto Rico Military Forces may be involuntarily separated for cause from the Puerto Rico Military Forces in accordance with the provisions and procedures established in this regulation. The Adjutant General of Puerto Rico shall review all recommendations for separation under this regulation and shall make the final determination. This authority shall not be delegated. The Adjutant General, as the approving authority, may not initiate separation actions under this regulation.

Anejo 2

00079

Page    2
PRNG Regulation
Separations for Cause
1 November 1996

2.  Procedure for involuntary separation.

(A)  Counselling or a letter of reprimand will be initiated by a commander or supervisor when an individual's degree of efficiency, manner of performance of duty, conduct, or the commission of any derogatory act makes such action appropriate.  Normally, counseling statement(s) or a letter of reprimand will be documented in individual's military records before initiating involuntary separation actions against a member of the Puerto Rico Military Forces, unless the reason for release would not require such action.  Individuals being counseled will verify acknowledgement of counselling session(s).

(B)  When deciding whether to initiate procedures for involuntary separation, the following factors may be considered:

(i)  The seriousness of the events or conditions that form the basis for initiation of separation proceedings.  Also, consider the effect of the member's continued retention on military discipline, good order and morale.

(ii)  The likelihood that the events or conditions will continue or recur.

(iii)  Whether the actions of the members resulted or are likely to result in an adverse impact on accomplishment of unit mission.

(iv)  The member's ability to perform his assigned duties in a reasonable manner.

(v)  The member's potential for further service.

(vi)  The member's military record.  This includes past contribution to the Military Forces of Puerto Rico, assignments, awards and decorations, evaluations, ratings, letters of commendation, letters of reprimand or admonition, counseling records, records of nonjudicial punishment, and records of involvement with civilian authorities; as well as any other matter deemed relevant by the separation authority.

(vii)  Possibility of reassigning member.

(viii)  Whether the moral conduct, ability, or general fitness of the member is contrary to or constitutes a risk to the good name, interest or discipline of the Military Forces of Puerto Rico.

(C)  Involuntary separations for cause recommendations will be made by the commander or first line supervisor of the member.

Page    3
PRNG Regulation
Separations for Cause
1 November 1996

(D)  The member will be given fifteen (15) days from receipt to submit a written rebuttal statement or comments to the commander or supervisor who initiated the action.

(i) ~~of the rebuttal statement or comments, the commander will submit~~ *English* recommendation will constitute the report and determination by an investigating officer required by section 221, Puerto Rico Military Code, 25 L.P.R.A. sec. 2072.

(ii)  If the member is an officer or warrant officer, upon receipt of the rebuttal statement, the commander or supervisor will forward it to an investigation board composed of three officers from the Military Forces of Puerto Rico, with a superior rank, in so far as possible, than the officer in question. The board will analyze the case and submit a recommendation, thru channels, to the Adjutant General.

(iii)  The recommendations made under the dispositions of paragraphs (i) and (ii) above will reach the Adjutant General's office not later that 15 days after the receipt of the rebuttal statement, unless the board of investigation finds cause for further hearings or receipt of additional evidence.

(E)  The member may be given the opportunity but will not be required to request voluntary release in lieu of involuntary separation. Members pending involuntary separation under this paragraph will be advised of and provided assistance, if they request, of a Judge Advocate Officer (JAGC) in preparing rebuttals.  If JAGC assistance is not reasonably available, the fifteen (15) day provision in paragraph (D) may be waived by the Adjutant General.

~~include: Reasons for involuntary based upon this separation~~

(i)  Positive result in a urinalysis test for chemical substances or refusal to submit to such a test.

(ii)  Inappropriate professional and personal conduct, as defined in the Military Justice Code of Puerto Rico.

(iii)  Loss of professional qualifications required for the Performance of assigned duties.

(iv)  Substandard duty performance.

(v)  Acts of expressed sentiments of racism, sexism, or

Page    4
PRNG Regulation
Separations for Cause
1 November 1996

prejudice against ethnic or religious groups.

(vi)  Failure to attain and maintain medical, physical fitness and weight standards.

~~[redacted]~~

(A)  The Adjutant General:

(i)  Will review the recommendation for separation and make a final determination.

(ii)  Appoint the Board required by law as stated in paragraph 2 D (ii) of this regulation. *Enlisted & entitled to a Board*

(B)  Director of Personnel: (DOP).

(i)  The DOP will process the request for separation submitted in accordance with this regulation, when so directed by the Adjutant General.

(ii)  Upon the Adjutant General's decision, the DOP will notify, thru channels, to the commander at the initial level the action taken.

(iii)  The DOP will prepare the required documentation for the separation of the individual from the Military Forces of Puerto Rico.  Characterization of service will be honorable, unless otherwise directed by other applicable regulations.  ~~[redacted]~~ *Enlisted Code*

(C)  Commander:

(i)  The commander will immediately initiate separation action under the disposition of this regulation upon learning that any of the reasons stated in paragraph 2 (F) exist.

(ii)  The commander at the initial level will prepare the documentation required by paragraph 2 (C) above and will forward it thru channels to the Adjutant General.

(iii)  Commanders at intermediate levels will receive the documentation from the first level commanders and endorse it favorably or unfavorably and explain reason for recommendation.

(D)  Full Time Judge Advocate Office:

Page   5
PRNG Regulation
Separations for Cause
November 1996

(i)   Will provide legal advice to the commanders, the Director of Personnel and the Adjutant General regarding the implementation of this regulation.

(ii) Will coordinate legal assistance for those members who request it under the dispositions of this regulation.

Definitions.

a.  Military Forces of Puerto Rico.  The Militias of Puerto Rico, to include the Puerto Rico Army National Guard, the Puerto Rico Air National Guard, the State Guard of Puerto Rico and any other military forces organized under the Laws of the Commonwealth of Puerto Rico.

b.  Director of Personnel (DOP).  The oficer in charge of Personnel matters in each branch of the Military Forces of Puerto Rico (ie. Army National Guard, Air National Guard and State Guard of Puerto Rico)

This Regulation supersedes PRARNG 635-100, 15 April 1995.

Exhibit D

Army Regulation 135–178

Army National Guard and Army Reserve

# Enlisted Administrative Separations

Headquarters
Department of the Army
Washington, DC
13 March 2007

## UNCLASSIFIED

# *SUMMARY of CHANGE*

AR 135–178
Enlisted Administrative Separations

This administrative revision, dated 13 March 2007--

o  Clarifies characterization of service as general (under honorable
   conditions) (para 2-9*b*).

o  Makes administrative changes throughout.

o  Updates references (app A).

This administrative revision, dated 10 July 2006-

o  Changes the proponent's office symbol (title page).

o  Updates references (app A).

This rapid action revision, dated 29 July 2005--

o  Requires USAR separation cases requiring HQDA approval be referred to the
   Chief, Army Reserve. (para 1-12b).

o  Corrects typographical errors throughout the publication.

This rapid action revision, dated 10 December 2004--

o  Changes notification procedures for Soldiers who have been determined to be
   unsatisfactory participants (para 13-1).

o  Makes administrative changes throughout the document.

This revision, dated 27 July 2004--

o  Updates nomenclature to reflect recent administrative changes.

o  Modifies policy regarding the issuance of discharge certificates (para 2-19).

o  Adds policy regarding voluntary separation of Army Reserve Soldiers on
   indefinite re-enlistments (para 4-4).

o  Changes the terms "drug and alcohol abuse" and "drug or alcohol abuse" to
   "substance abuse" (chap 11).

o  Revises appendix A to bring up to date.

This revision, dated 26 March 2004--

o  Makes changes to align with AR 600-85, which specifies that any Soldier who
   abuses illegal drugs must be processed for administrative separation.

o  Modifies paragraphs 2-9c, 3-14, 12-1, and 15-9.

Specifically, this revision, dated 17 October 2003--

o  Grants Commanding General, U.S. Army Recruiting Command discharge authority
   for Soldiers in the Reserve Delayed Entry Program and Delayed Training
   Program (para 1-10b).

o  Corrects paragraph references to separation authorities (paras 2-9c, 3-7, 3-
   9, 3-13, 3-15a, 3-17, 3-18a, and 5-2).

o  Updates acronym for the Deputy Chief of Staff, G-1 from DCSPER, G-1 to DCS, G-1
   throughout the regulation.

o  Makes corrections to reflect the reorganization of the United States Total
   Army Personnel Command as the United States Army Human Resources Command
   throughout the regulation.

This change, dated 3 December 2001--

o  Changes medical examination requirements for separations under chapter 1
   paragraph 1-8. Medical examinations are required only for Soldiers being
   processed for separation under chapter 6 (paragraphs 6-3, 6-6 and 6-7).

o  Changes mental status evaluation to better comply with DOD guidance. Mental
   status evaluation is required for Soldiers being processed for separation
   under chapter 6, paragraph 6-7b and chapter 10.

o  Changes paragraph 3-17a(2) for better clarification. Boards with ARNGUS
   respondents shall include at least one ARNGUS officer as a voting member.
   Boards with USAR respondents shall include at least one USAR officer as a
   voting member.

This rapid action revision, dated 29 December 2000--

o  Supersedes AR 135-178, 1 January 1983 that was previously published in the
   Reserve Components Personnel handbook UPDATE Issue Number 23, 1 September
   1994.

o  Requires commanders referring Soldiers for a mental status evaluation to
   comply with the provisions of DOD Directive 6490.1 and AR 600-20 unless a
   mental status evaluation is required by this regulation (para 1-8a) and the
   reason for separation is not based on the Soldier's mental status. (para 1-8,
   6-7)

o  Prescribes a new form DA Form 7423, Consulting Counsel's Checklist. (chap 3)

o  Requires that a Soldier who has completed 18, but fewer than 20 years of
   qualifying service for retired pay (10 U.S. Code 12732) will not be
   involuntarily separated without the approval of the Secretary of the Army or
   his designated representative. Cases involving voluntary separation of
   Soldiers in this category will not be referred to HQDA for approval. (para 1-
   11)

o  Added para 3-3 (Counsel for respondent).

o  Adds under the Hearing procedure (para 3-17) under presiding officer, that Judge Advocate Officers including Military Judges may be appointed presidents of boards. In these cases, legal advisors are not appointed. (para 3-17 b)

o  Significantly revises previous chapter 5 and is currently chapter 8 in new revision.

o  AR 135-178 is governed by DOD Directive 1332.14, and to ensure compliance and compatibility with the directive, has been formatted by subject, chapter and paragraph to match the format of the DOD Directive.

o  Extensive minor changes throughout.

**Headquarters**
**Department of the Army**
**Washington, DC**
**13 March 2007**

***Army Regulation 135–178**

**Effective 13 April 2007**

Army National Guard and Army Reserve

## Enlisted Administrative Separations

By Order of the Secretary of the Army:

PETER J. SCHOOMAKER
*General, United States Army*
*Chief of Staff*

Official:

JOYCE E. MORROW
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is an administrative revision. The portions affected by this administrative revision are listed in the summary of change.

**Summary.** This regulation establishes policies, standards, and procedures governing the administrative separation of certain enlisted Soldiers of the Army National Guard of the United States and the United States Army Reserve as directed by Department of Defense Directive 1332.14, December 1993 Subject: Enlisted Administrative Separations.

**Applicability.** This regulation applies to the Active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated. During mobilization, the proponent may modify chapters and policies contained in this regulation.

**Proponent and exception authority.** The proponent of this regulation is the Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.**

This regulation contains management control provisions and identifies key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Deputy Chief of Staff, G–1, ATTN: DAPE–MP, 300 Army Pentagon, Washington, DC 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA, DCS, G–1, ATTN: DAPE–MPE–IP, 300 Army Pentagon, Washington, DC 20310–0300.

**Distribution.** This publication is available in electronic media only and is intended for command level B for the Active Army and A for the Army National Guard of the United States and the U.S. Army Reserve.

---

## Contents (Listed by paragraph and page number)

**Chapter 1**
**General Provisions,** *page 1*

*Section I*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Statutory authority • 1–5, *page 2*
Separation processing goals • 1–6, *page 2*
DA Form 5138 (Separation Action Control Sheet) • 1–7, *page 2*
Medical processing and evaluation • 1–8, *page 2*

---

*This regulation supersedes AR 135–178, dated 10 July 2006.

**UNCLASSIFIED**

**Contents—Continued**

Disposition through medical channels • 1–9, *page 3*

*Section II*
*Authority to Order and Accomplish Separation, page 4*
Authority to order separation prior to expiration of service obligation • 1–10, *page 4*
Authority to order separation of Soldiers having more than 18 but fewer than 20 years of qualifying service for retired pay • 1–11, *page 4*
Referrals to HQDA • 1–12, *page 4*
Authority to convene administrative separation boards for non-unit Soldiers • 1–13, *page 5*
Actions required of commanders having separation authority regarding Soldiers' incentives and entitlements • 1–14, *page 5*

*Section III*
*Instruction in Benefits of an Honorable Characterization of Service on Discharge, page 5*
Purpose of instruction • 1–15, *page 5*
Presentation of instruction • 1–16, *page 5*
Contents of instruction • 1–17, *page 5*
Applicability and time of instruction • 1–18, *page 5*
Recording • 1–19, *page 6*

*Section IV*
*Bars to Reenlistment, page 6*
General • 1–20, *page 6*
Discharge initiation and processing • 1–21, *page 6*

*Section V*
*Mobilization Asset Transfer Program, page 6*
Policy • 1–22, *page 6*
Eligibility for the MATP • 1–23, *page 6*
Ineligible for the Mobilization Asset Transfer Program • 1–24, *page 7*
Separation authority determination of mobilization potential • 1–25, *page 7*
Requirements on retention, transfer, or reassignment to the individual ready reserve • 1–26, *page 7*

**Chapter 2**
**Guidelines on Separation and Characterization,** *page 10*

*Section 1*
*Separation, page 10*
Scope • 2–1, *page 10*
Guidance • 2–2, *page 10*
Limitations on separation actions • 2–3, *page 11*
Counseling and rehabilitation • 2–4, *page 11*

*Section II*
*Suspension of Separation, page 12*
Suspension • 2–5, *page 12*
Action during the period of suspension • 2–6, *page 12*

*Section III*
*Characterization or Description of Service on Separation, page 12*
Types of characterization or description • 2–7, *page 12*
General considerations • 2–8, *page 13*
Characterization of service • 2–9, *page 13*
Limitation on characterization of service • 2–10, *page 14*
Separation where service is uncharacterized • 2–11, *page 15*

**Contents—Continued**

*Section IV*
*Discharge Policy, page 15*
Separation counseling for Soldiers being discharged • 2–12, *page 15*
Orders • 2–13, *page 16*
Discharge before expiration of the service obligation • 2–14, *page 16*
Discharge after expiration of the service obligation • 2–15, *page 16*
Effective date of discharge • 2–16, *page 16*
Notification of discharge • 2–17, *page 16*
Notification of discharge of a Soldier who cannot be located or is absent in the hands of civil authorities • 2–18, *page 17*
Certificates • 2–19, *page 17*
Preparation of certificates • 2–20, *page 17*
Amendments and corrections to certificates • 2–21, *page 17*

**Chapter 3**
**Guidelines for Separation,** *page 18*

*Section I*
*Application, page 18*
Scope • 3–1, *page 18*
Guidance • 3–2, *page 18*
Counsel for respondent • 3–3, *page 18*

*Section II*
*Separation Using the Notification Procedure, page 18*
Notice under the Notification Procedure • 3–4, *page 18*
Additional notice requirements • 3–5, *page 19*
Response • 3–6, *page 19*
The initiating commander's report to the separation authority • 3–7, *page 20*
Action by intermediate commanders • 3–8, *page 20*
Action by separation authority • 3–9, *page 20*

*Section III*
*Separation Using The Administrative Board Procedure, page 20*
Notice under the Administrative Board Procedure • 3–10, *page 20*
Additional notice requirements • 3–11, *page 21*
Response • 3–12, *page 21*
The initiating commander's report to the separation authority • 3–13, *page 22*
Action by intermediate commanders • 3–14, *page 22*
Waiver • 3–15, *page 22*
Action by the separation authority on commander's recommendation • 3–16, *page 22*
Hearing requirements • 3–17, *page 23*
Action by separation authority on board recommendations • 3–18, *page 25*
Disposition of proceedings • 3–19, *page 26*
Errors and discrepancies noted before accomplishing separation • 3–20, *page 26*
Disposition of the case file • 3–21, *page 26*

*Section IV*
*Additional Provisions Concerning Soldiers Confined by Civil Authorities, page 26*
Proceedings when Soldier is confined by civil authorities • 3–22, *page 26*
Notification requirements • 3–23, *page 26*

**Chapter 4**
**Expiration of Service Obligation,** *page 60*
Basis • 4–1, *page 60*
The MSO • 4–2, *page 60*

**Contents—Continued**

Retention beyond expiration of service obligation • 4–3, *page 60*
Voluntary separation of Soldiers on indefinite re-enlistments • 4–4, *page 60*
Characterization of service • 4–5, *page 61*
Separation authority • 4–6, *page 61*

## Chapter 5
**Selected Changes in Service Obligations,** *page 61*
Basis • 5–1, *page 61*
Reduction in authorized strength of the USAR or ARNGUS • 5–2, *page 61*
Discharge for immediate reenlistment • 5–3, *page 61*
Discharge on enlistment in another component of the U.S. Armed Forces • 5–4, *page 61*
Discharge on appointment as a commissioned or warrant officer • 5–5, *page 62*
Separation of cadets on disenrollment from the Senior ROTC or an ROTC Scholarship Program • 5–6, *page 62*
ROTC cadet early release • 5–7, *page 63*
Discharge of a potential ROTC/SMP participant • 5–8, *page 63*

## Chapter 6
**Convenience of the Government,** *page 63*
Basis • 6–1, *page 63*
Dependency or hardship • 6–2, *page 63*
Pregnancy • 6–3, *page 64*
Surviving sons or daughters • 6–4, *page 65*
Involuntary separation due to parenthood • 6–5, *page 66*
Not medically qualified under procurement medical fitness standards • 6–6, *page 66*
Other designated physical or mental conditions • 6–7, *page 66*
Characterization of service • 6–8, *page 67*
Procedures • 6–9, *page 67*
Separation authority • 6–10, *page 67*

## Chapter 7
**Defective Enlistments and Reenlistments,** *page 67*
Minority enlistments • 7–1, *page 67*
Erroneous enlistment, reenlistment, and extension • 7–2, *page 67*
Defective enlistments or reenlistments • 7–3, *page 68*
Fraudulent enlistments or reenlistments • 7–4, *page 69*

## Chapter 8
**Entry Level Performance and Conduct,** *page 70*
Basis • 8–1, *page 70*
Counseling and rehabilitation • 8–2, *page 70*
Characterization and description • 8–3, *page 70*
Procedures • 8–4, *page 70*
Separation authority • 8–5, *page 70*

## Chapter 9
**Unsatisfactory Performance,** *page 70*
Basis • 9–1, *page 70*
Criteria • 9–2, *page 71*
Counseling and rehabilitation • 9–3, *page 71*
Suspension of favorable personnel action • 9–4, *page 71*
Medical processing and evaluation • 9–5, *page 71*
Characterization of service • 9–6, *page 71*
Procedures • 9–7, *page 71*
Separation authority • 9–8, *page 71*

**Contents—Continued**

**Chapter 10**
**Homosexual Conduct,** *page 71*

*Section I*
*Policy, page 72*
General policy • 10–1, *page 72*
Discharge policy • 10–2, *page 72*
Criteria for discharge • 10–3, *page 72*
Characterization or description of service • 10–4, *page 73*
Separation authority • 10–5, *page 73*

*Section II*
*Procedures, page 73*
Action by unit or immediate commander • 10–6, *page 73*
Action by intermediate commanders • 10–7, *page 73*
Action by separation authority • 10–8, *page 73*
Administrative separation board • 10–9, *page 74*
Separation authority action after board hearings • 10–10, *page 74*

**Chapter 11**
**Substance Abuse Rehabilitation Failure,** *page 74*
Basis • 11–1, *page 74*
Characterization or description • 11–2, *page 74*
Procedures • 11–3, *page 75*
Separation authority • 11–4, *page 75*

**Chapter 12**
**Misconduct,** *page 75*
Basis • 12–1, *page 75*
Conviction by civil court • 12–2, *page 75*
Procedures for civil court cases in foreign countries • 12–3, *page 76*
Related separations • 12–4, *page 77*
Counseling and rehabilitation • 12–5, *page 77*
Suspension of favorable personnel action • 12–6, *page 77*
Medical processing and evaluation • 12–7, *page 77*
Characterization of service • 12–8, *page 77*
Procedures • 12–9, *page 77*
Separation authority • 12–10, *page 77*

**Chapter 13**
**Unsatisfactory Participation in the Ready Reserve,** *page 77*
Basis • 13–1, *page 77*
Suspension of favorable personnel action • 13–2, *page 78*
Characterization of service • 13–3, *page 78*
Procedures • 13–4, *page 78*
Separation authority • 13–5, *page 78*

**Chapter 14**
**Secretarial Plenary Authority,** *page 78*
Basis • 14–1, *page 78*
Characterization of service • 14–2, *page 78*
Procedures • 14–3, *page 78*

**Chapter 15**
**Separation for Other Reasons,** *page 79*

**Contents—Continued**

*Section I*
*Reasons for Separation, page 79*
Basis • 15–1, *page 79*
Characterization of service • 15–2, *page 80*
Procedures • 15–3, *page 80*
Separation authority • 15–4, *page 80*

*Section II*
*Separation from the Delayed Entry Program, page 80*
Basis • 15–5, *page 80*
Characterization or description • 15–6, *page 80*
Procedures • 15–7, *page 81*
Separation authority • 15–8, *page 81*

*Section III*
*Dropping from the Rolls, page 81*
Sentenced to imprisonment (10 USC 12684(3)) • 15–9, *page 81*
Characterization of service • 15–10, *page 81*
Procedures • 15–11, *page 81*
Separation authority • 15–12, *page 81*

**Chapter 16**
**Failure to Meet Army Body Composition Standards,** *page 81*
Applicability • 16–1, *page 81*
Basis • 16–2, *page 82*
Counseling and rehabilitation • 16–3, *page 82*
Medical processing and evaluation • 16–4, *page 82*
Characterization or description • 16–5, *page 82*
Separation authority • 16–6, *page 82*

**Appendixes**

**A.** References, *page 83*

**B.** Management Control Evaluation Checklist, *page 88*

**Figure List**

Figure 1–1: Format for an affidavit of service by mail, *page 9*
Figure 3–1: Format for notification of separation proceedings when the Notification Procedure is used, *page 28*
Figure 3–1: Format for notifcation of separation proceedings when the Notification Procedure is used—Continued, *page 29*
Figure 3–1: Format for notifcation of separation proceedings when the Notification Procedure is used—Continued, *page 30*
Figure 3–1: Format for notification of separation proceedings when the Notification Procedure is used—Continued, *page 31*
Figure 3–1: Format for notification of separation proceedings when the Notification Procedure is used—Continued, *page 32*
Figure 3–2: Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used, *page 33*
Figure 3–2: Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued, *page 34*
Figure 3–2: Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued, *page 35*
Figure 3–2: Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued, *page 36*
Figure 3–2: Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued, *page 37*

**Contents—Continued**

Figure 3–2: Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued, *page 38*

Figure 3–3: Format for commanding officer's report to the separation authority, *page 39*

Figure 3–3: Format for commanding officer's report to the separation authority—Continued, *page 40*

Figure 3–3: Format for commanding officer's report to the separation authority—Continued, *page 41*

Figure 3–3: Format for commanding officer's report to the separation authority—Continued, *page 42*

Figure 3–3: Format for commanding officer's report to the separation authority—Continued, *page 43*

Figure 3–4: Format for notification of separation proceedings when the Administrative Board Procedure is used, *page 44*

Figure 3–4: Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 45*

Figure 3–4: Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 46*

Figure 3–4: Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 47*

Figure 3–4: Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 48*

Figure 3–4: Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 49*

Figure 3–5: Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used, *page 50*

Figure 3–5: Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 51*

Figure 3–5: Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 52*

Figure 3–5: Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 53*

Figure 3–5: Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 54*

Figure 3–5: Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued, *page 55*

Figure 3–6: Format of request for conditional waiver of administrative board proceedings, *page 56*

Figure 3–6: Format of request for conditional waiver of administrative board proceedings—Continued, *page 57*

Figure 3–6: Format of request for conditional waiver of administrative board proceedings—Continued, *page 58*

Figure 3–6: Format of request for conditional waiver of administrative board proceedings—Continued, *page 59*

**Glossary**

## Chapter 1
## General Provisions

### Section I
### General

### 1–1. Purpose

*a.* This regulation sets policies, standards, and procedures to ensure the readiness and competency of the U.S. Army while providing for the orderly administrative separation of Army National Guard of the United States (ARNGUS) and U.S. Army Reserve (USAR) enlisted Soldiers for a variety of reasons. Readiness is promoted by maintaining high standards of conduct and performance. The separation policies in this regulation promote the readiness of the Army by providing an orderly means to—

(1) Judge the suitability of persons to serve in the Army on the basis of their conduct and their ability to meet required standards of duty performance and discipline.

(2) Maintain standards of performance and conduct through characterization of service in a system that emphasizes the importance of honorable service.

(3) Achieve authorized force levels and grade distribution.

(4) Provide for the orderly administrative separation of enlisted Soldiers in a variety of circumstances.

*b.* Department of the Army separation policy is designed to strengthen the concept that military service is a calling different from any civilian occupation.

(1) The acquisition of military status involves a commitment to the United States, the Army, fellow citizens, and Soldiers to successfully complete a period of obligated service. Early separation for failure to meet required standards of performance or conduct represents a failure to fulfill that commitment.

(2) Millions of Americans from diverse backgrounds and with a wide variety of aptitudes and attitudes upon entering military service have served successfully in the Reserve Components of the Army. It is the policy of the Department of the Army to provide Soldiers with the training, motivation, and professional leadership that inspires the dedicated Soldier to emulate their predecessors and peers in meeting required standards of performance and conduct.

(3) The Army makes a substantial investment in training, time, equipment, and related expenses when persons enter into military service. Separation prior to completion of an obligated period of service is wasteful because it results in loss of this investment and generates a requirement for increased accessions. Consequently, attrition is an issue of significant concern at all levels of responsibility within the Reserve Components of the Army. Reasonable efforts should be made to identify Soldiers who are likely to be separated early, and to improve their chances for retention through counseling, retraining, and rehabilitation prior to initiation of separation proceedings. Soldiers who do not conform to required standards of conduct and performance and Soldiers who do not demonstrate potential for further military service should be separated to avoid the high costs of continued service in terms of pay, administrative efforts, degradation of morale, and substandard mission performance.

*c.* This regulation provides—

(1) The authority for separation of Soldiers upon expiration of their military service obligation (MSO).

(2) The authority and general provisions governing the separation of Soldiers before the expiration of their service obligation to meet the needs of the Reserve components of the Army and its Soldiers.

(3) The criteria for characterizing or describing military service as being honorable, general (under honorable conditions), or under other than honorable conditions, and when the service is not characterized.

### 1–2. References

Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1–3. Explanation of abbreviations and terms

Abbreviations and special terms used in this regulation are explained in the glossary.

### 1–4. Responsibilities

*a.* The Deputy Chief of Staff, G-1 (DCS, G-1) has Army General Staff responsibility for the enlisted separation program.

*b.* The Chief, National Guard Bureau (CNGB) has special staff responsibility for ARNGUS Soldiers. The CNGB will monitor the Army National Guard (ARNG) enlisted separations process.

*c.* The Chief, Army Reserve (CAR) has special staff responsibility for USAR Soldiers. The CAR will monitor the USAR enlisted separations process.

*d.* With respect to reserve enlisted Soldiers under their respective commands, the Commander, U.S. Army Human Resources Command (HRC), St. Louis Area Commanders, Commander, Reserve Officers' Training Corps (ROTC) Cadet Command, Commander, U.S. Army Human Resources Command (AHRC-OPD-R), Commander, U.S. Army Aviation Center and Fort Rucker, Commander, U.S. Army Reserve Readiness Training Center, and Commanding

General, U.S. Army Recruiting Command will ensure that the policies, standards, and procedures of this regulation are applied consistently, that fact-finding inquiries are conducted properly, that no abuse of authority occurs, and that failure to follow the provisions of this regulation results in appropriate corrective action.

## 1–5. Statutory authority
The following provisions of law contained in Title 10, United States Code (10 USC), pertain to the separation of Reserves of the Army.

*a.* Section 654 provides policy concerning homosexuality in the armed forces including separation based on homosexual conduct.

*b.* Section 1176(b) provides for the retention of Reserve enlisted Soldiers in an active status on completion of 18 but fewer than 20 years of qualifying service for retired pay.

*c.* Section 10206 provides that members of the Ready Reserve not on active duty (AD) will undergo a medical examination every 5 years and execute and submit annually a certificate of physical fitness.

*d.* Section 12106 provides that an enlisted member of the ARNGUS who is discharged from the ARNG but not concurrently discharged as a Reserve of the Army automatically becomes a member of the USAR.

*e.* Section 12641 provides for regulatory directives pertaining to standards and qualifications for retention in the Reserve Components and for the disposition of those Soldiers who fail to comply with such standards and qualifications.

*f.* Section 12644 provides for the disposition of those Soldiers determined to be physically unfit for AD.

*g.* Section 12681 provides that the Secretary of the Army will prescribe regulations for discharge of Reserves of the Army.

*h.* Section 12682 provides that Reserves of the Army who become regular or duly ordained ministers of religion will be discharged upon their request.

*i.* Section 12684 describes the circumstances under which Reserves of the Army may be dropped from the rolls of the Army.

*j.* Section 12685(1) precludes the discharge of Reserves of the Army for cause, except under 12684, under other than honorable conditions unless such discharge is the result of an approved sentence of a court-martial or approved findings of a board of officers.

*k.* Section 12685(2) describes other circumstances when a reserve Soldier separated for cause may receive a characterization of service other than under honorable conditions.

## 1–6. Separation processing goals
*a.* The separation process will be conducted efficiently and in a manner which will afford each Soldier being separated the courtesy, recognition, and consideration deserved by the nature of the service performed. Separation processing must be accomplished in a manner which will enhance the dignity of the individual and leave the departing Soldier with a favorable attitude toward the Army.

*b.* Processing time for separations when the Notification Procedure is used will not exceed 45 days. Processing time when the Administrative Board Procedure is used will not exceed 90 days. Time will be measured from the date of notification to the Soldier of the proposed separation to the date of separation. Shorter processing times are encouraged. Failure to process an administrative separation within these time frames does not create a bar to separation or characterization of service.

## 1–7. DA Form 5138 (Separation Action Control Sheet)
*a.* To ensure separation processing goals are met, commanders initiating separation actions under the Notification Procedure (chap 3, sec II), or the Administrative Board Procedure (chap 3, sec III), will initiate, maintain, and file Department of the Army (DA) Form 5138.

*b.* On final disposition of the proceedings, a copy of DA Form 5138 will be filed with each copy of the proceedings.

## 1–8. Medical processing and evaluation
*a.* Medical examinations are required for Soldiers being processed for separation under chapter 6 (paras 6-3, 6-6, and 6-7 only). Medical examinations incident to separation under other provisions of this regulation are not required; however, examinations will be administered if requested in writing by the Soldier or if the Soldier's commander considers it necessary based on the circumstances of the case or when the Soldier's fitness is in doubt. (See AR 40-501, para 8-23 and table 8-2). Completion of the physical will not delay separation.

*b.* In addition to a medical examination, a mental status evaluation is required for Soldiers being processed for separation under paragraph 6-7b and chapter 10.

(1) The mental status evaluation for Soldiers being processed for separation under paragraph 6-7b must have the diagnosis of personality disorder established by a psychiatrist or doctoral-level clinical psychologist with necessary and professional credentials, who is privileged to conduct mental health evaluations for Department of Defense (DOD)

components. The mental status evaluation will be documented in the Soldier's medical record on Standard Form (SF) 600 (Medical Record—Chronological Record of Medical Care).

(2) The mental status evaluation for Soldiers being processed for separation under chapter 10 will be conducted by a psychologist, or master-level, licensed clinical social worker. The mental status evaluation will be documented in the Soldier's medical record on SF 600.

(3) Commanders referring a Soldier for mental status evaluation that is not required, as specified above, must comply with the provisions of DOD Directive (DODD) 6490.1, DOD Instruction (DODI) 6490.4, and AR 600-20, paragraph 5-4*b*.

*c.* Detailed information about the reasons for considering a Soldier for separation will be provided to attending medical personnel to permit a thorough understanding of the considered action. Medical personnel will not be used in an investigative capacity to determine facts relative to a Soldier's behavior.

*d.* Except as provided in *b* above, specific responsibilities and procedures for conducting medical examinations and mental status evaluations will be prescribed in pertinent regulatory guidance issued by The Surgeon General.

*e.* Soldiers being processed for separation under those chapters cited in paragraph 1-8*a* above who refuse to undergo a medical evaluation or mental status evaluation when required will be processed as follows:

(1) The Soldier will be advised in writing that failure to undergo such examination or evaluation will be the basis for the separation action to proceed, despite the absence of such information. Reasonable effort should be made to furnish copies of the notice to the Soldier through personal contact by a representative of the command. If the Soldier cannot be contacted or refuses to acknowledge receipt of the notice, the notice will be sent by registered or certified mail to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. A return receipt will be requested. The individual who mails the notification will prepare an Affidavit of Service by Mail (fig 1-1). This will be inserted in the Soldier's personnel file together with PS Form 3800 (Receipt for Certified Mail).

(2) Except for separation based on personality disorder (para 6-7*b*), when a Soldier has failed or refused to comply after notification in (1) above, or if the notification was mailed and the Soldier fails to acknowledge receipt, or to submit a reply within 30 days, separation action may be taken without a medical examination or mental status evaluation. A Soldier may not be separated based on personality disorder (para 6-7*b*) without the required psychiatric evaluation. Copies of communications remaining unanswered or returned unclaimed along with the dates and addresses will be included in the recommendations for discharge. Also, a brief description of any other means used to locate or communicate with the Soldier concerned will be included. If a board is required, these documents will be furnished to the board of officers. They will be made a part of the board proceedings.

(3) Soldiers being processed for separation under paragraph 6-7*b* will necessarily have already had the appropriate mental status evaluation. Accordingly, the provisions of *e* above apply only to medical evaluations for such Soldiers.

*f.* Soldiers being processed for separation under those chapters cited in para 1-8*a* above who refuse to undergo a medical examination, mental status evaluation, or psychiatric/psychological evaluation when required will be processed as follows:

(1) The Soldier will be advised in writing that failure to undergo such examination or evaluation will be the basis for the separation action to proceed, despite the absence of such information. Reasonable effort should be made to furnish copies of the notice to the Soldier through personal contact by a representative of the command. If the Soldier cannot be contacted or refuses to acknowledge receipt of the notice, the notice will be sent by registered or certified mail to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. A return receipt will be requested. The individual who mails the notification will prepare an Affidavit of Service by Mail (fig 1-1). This will be inserted in the Soldier's personnel file together with PS Form 3800.

(2) Except for separation based on a personality disorder (para 6-7*b*), when a Soldier has failed or refused to comply after notification in (1) above, or if the notification was mailed and the Soldier fails to acknowledge receipt, or to submit a reply within 30 days, separation action may be taken without a medical examination, mental status evaluation, or psychiatric/psychological evaluation. A Soldier may not be separated based on a personality disorder (para 6-7*b*) without the required psychiatric evaluation. Copies of communications remaining unanswered or returned unclaimed along with the dates and addresses will be included in the recommendations for discharge. Additionally, a brief description of any other means used to locate or communicate with the Soldier concerned will be included. If a board is required, these documents will be furnished to the board of officers. They will be made a part of the board proceedings.

## 1–9. Disposition through medical channels

*a.* Disposition through medical channels takes precedence over administrative separation processing.

*b.* When the medical treatment facility (MTF) commander or attending medical officer determines that a Soldier being processed for administrative separation under chapter 7 (para 7-4), 10, or 12 does not meet the medical fitness standards for retention (AR 40-501, chap 3), he or she will refer the Soldier to a Medical Evaluation Board (MEB) in accordance with AR 40–400, chapter 7. The administrative separation proceedings will continue, but final action by the separation authority will not be taken, pending the results of MEB.

*c.* If the MEB findings indicate referral of the case to a physical evaluation board (PEB) is warranted for disability processing under the provisions of AR 635-40, the MTF commander will furnish copies of the approved MEB

proceedings to the Soldier's General Court Martial Convening Authority (GCMCA) and unit commander. The GCMCA may direct, in writing, that the Soldier be processed through the physical disability system when action under the Uniform Code of Military Justice (UCMJ) has not been initiated, and it has been determined that—

(1) The Soldier's medical condition is the direct or substantial contributing cause of the conduct that led to the recommendation for administrative elimination or,

(2) Other circumstances of the individual case warrant disability processing instead of further processing for administrative separation.

*d.* The authority of the GCMCA to determine whether a case is to be processed through medical disability channels, or under administrative separation provisions, will not be delegated.

*e.* The GCMCA's signed decision to process a Soldier through the physical disability system will be transmitted to the MTF commander as authority for referral of the case to a PEB. Copies of the GCMCA's decision will be furnished to the unit commander and will be included in the administrative separation proceedings. The unit commander will suspend processing of the administrative separation action pending the PEB. If the Soldier is found physically fit, the administrative separation action will be resumed. If the Soldier is found physically unfit, the administrative separation action will be abated.

## Section II
## Authority to Order and Accomplish Separation

### 1–10. Authority to order separation prior to expiration of service obligation

Except where approval by Headquarters, Department of the Army (HQDA) is required, the following officials are authorized to convene administrative separation boards as required, and to order separation under this regulation. The separation authority delegated to commanders by this regulation will not include the authority to discharge a Soldier under court-martial sentence that includes a dishonorable or bad conduct discharge, prior to the completion of appellate review, unless the discharge is directed by HQDA.

*a. For ARNGUS Soldiers:* State Adjutants General.

*b. For USAR Soldiers:*

(1) The Commander, U.S. Army Human Resources Command–St. Louis (CDR, HRC–St. Louis) for Soldiers under his or her jurisdiction serving in the Individual Mobilization Augmentee (IMA) program, or assigned to the Individual Ready Reserve (IRR), the Standby Reserve, or the Retired Reserve. (See para 1-13).

(2) Area commanders (see glossary) for Soldiers attached or assigned to troop program units (TPUs) of the Selected Reserve within their jurisdiction. An area commander may delegate authority to order separations and convene administrative separation boards under this regulation for separation of Soldiers within the jurisdiction of that commander to any subordinate general officer commander who has a Staff Judge Advocate or legal advisor.

(3) When authorized by the State Adjutant General, or the USAR officials cited in (1) or (2) above, unit commanders may order discharge in accordance with paragraph 5-3 for immediate reenlistment under the provisions of AR 140-111 or National Guard Regulation (NGR) NGR 600-200, as appropriate.

(4) Commander, ROTC Cadet Command, for cadets enrolled in the Senior ROTC and assigned to Control Group (ROTC). Authority to separate cadets for purposes of appointment (para 5-5), or disenrollment from the ROTC program (para 5-6), may be delegated to professors of military science.

(5) Commander, U.S. Army Human Resources Command (AHRC-OPD-R); Commander, U.S. Army Aviation Center and Fort Rucker; and Commander, U.S. Army Reserve Readiness Training Center, are authorized to order the discharge of a warrant officer candidate (WOC) concurrent with the candidate's appointment as a warrant officer (para 5-5).

(6) Commanding General, U.S. Army Recruiting Command (USAREC), for Soldiers in the Delayed Entry Program (DEP) (chap 15, sec II), the Reserve Delayed Entry Program (RDEP), and the Delayed Training Program (DTP). Commanding General, USAREC, may delegate to the commander of a U.S. Army Recruiting Battalion (RBN) separation authority for DEP, RDEP, and DTP Soldiers under that commander's jurisdiction. An RBN commander may also void enlistments (para 7-2*c*(2)(e)) of Soldiers under the commander's jurisdiction.

### 1–11. Authority to order separation of Soldiers having more than 18 but fewer than 20 years of qualifying service for retired pay

*a.* A Soldier having completed 18 but fewer than 20 years of qualifying service for retired pay (Title 10, Section 12732, United States Code (10 USC 12732)) will not be involuntarily separated without the approval of the Secretary of the Army or his designated representative. All recommendations for involuntary separation of Soldiers in this category will be sent to HQDA (para 1-12) for consideration.

*b.* Cases involving voluntary separation at the request of the Soldier need not be referred to HQDA for approval.

### 1–12. Referrals to HQDA

Cases requiring approval by HQDA, to include the Army Secretariat, will be referred to the following:

*a. For ARNGUS Soldiers:* HQDA, Office of the Chief, National Guard Bureau, ATTN: NGB-ARP, 2500 Army Pentagon, Washington, DC 20310-2500.

*b. For USAR Soldiers:* Office of the Chief, Army Reserve, ATTN: DAAR-ZX, 2400 Army Pentagon, Washington, DC 20310–2400.

## 1–13. Authority to convene administrative separation boards for non-unit Soldiers

When sufficient basis exists to initiate separation action pertaining to USAR Soldiers assigned under jurisdiction of the CDR, HRC–St. Louis (para 1-10*b*(1)), the notification and administrative board procedures will apply. Where an investigation or appointment of an administrative separation board is required, the case will be referred for necessary action to an area commander in whose geographical area the member resides.

*a.* Cases referred to area commanders by CDR, HRC–St. Louis will include, to the extent possible, the following: correspondence, statements, Military Personnel Records Jacket, U.S. Army (MPRJ), and similar related documents. Area commanders may further delegate cases in accordance with paragraph 1-10*b*(2).

*b.* Where a criminal investigation is required in accordance with AR 195-2, the CDR, HRC–St. Louis will request the appropriate area commander contact a military law enforcement agency to perform the investigation. On completion of the investigation the area commander will initiate further action, as required.

*c.* Except for cases where final action is restricted to HQDA, or cases of Soldiers under the jurisdiction of CDR, HRC–St. Louis. Area commanders are authorized to take final action on board recommendations.

*d.* On completion of the separation board, area commanders will forward the original of the board proceedings with approved disposition to the CDR, HRC–St. Louis, who will accomplish separation action, as appropriate, and file the board proceedings in the enlisted Soldier's official military personnel file (OMPF).

## 1–14. Actions required of commanders having separation authority regarding Soldiers' incentives and entitlements

Incentives and entitlements for Reserve membership and participation are prescribed by AR 135-7. Under certain conditions, separation will terminate payment of an incentive and entitlement to a Soldier and may also result in a collection of overpayment or recoupment action from the Soldier. In all cases of voluntary or involuntary separations, commanders will—

*a.* Determine a Soldier's entitlements, if any, in accordance with AR 135-7.

*b.* Initiate termination and recoupment actions where required and/or appropriate.

## Section III
## Instruction in Benefits of an Honorable Characterization of Service on Discharge

### 1–15. Purpose of instruction

*a.* The rate of enlisted Soldiers receiving other than an honorable characterization of service on discharge is a concern of commanders at all levels. Receiving other than an honorable characterization of service can have a lasting adverse effect on the individual Soldier. Every effort must be made to ensure that Soldiers are aware of such consequences. This section prescribes a program of instruction concerning the benefits derived from receiving an honorable characterization of service on discharge from the Army.

*b.* This training should assist commanders in their efforts to minimize misconduct. Many Soldiers gain the false impression that an unfavorable characterization of service can be easily re-characterized by petitioning the Army Discharge Review Board. Many Soldiers can be discouraged from the type of conduct that warrants an unfavorable characterization of service on discharge.

### 1–16. Presentation of instruction

Commanders will ensure that this instruction is presented in a manner that will create the most lasting impression on each Soldier who receives the training.

### 1–17. Contents of instruction

The instruction will include a comprehensive explanation of the following:

*a.* Characterization of service (chap 2, sec III).

*b.* The types of discharge certificates (chap 2, sec IV).

*c.* The possible effects of the various certificates on reenlistment, civilian employment, veterans' employment, veterans' benefits, and related matters.

*d.* The unlikelihood that the Soldier will be successful in any attempt to have the character of his or her service changed.

### 1–18. Applicability and time of instruction

The instructions cannot be offered to Soldiers assigned to the IRR, Standby, or Retired Reserve. It also is not feasible

to offer the instructions to a Soldier serving as an IMA in a non-drilling status. However, the instruction will be presented to enlisted Soldiers assigned to Selected Reserve units of the ARNGUS and the USAR and to drilling IMA Soldiers. It will be given—

*a.* On initial assignment to the IMA duty position or Selected Reserve unit or within 3 months thereafter.

*b.* During the annual orientation of the Soldier's service obligations and participation requirements in accordance with AR 135-91, paragraph 4-4.

*c.* When a Soldier's conduct or performance warrants counseling in accordance with paragraph 2-4.

### 1–19. Recording

The DA Form 2-1 (Personnel Qualification Record—Part II) of each Soldier receiving instructions in the benefits of receiving an honorable characterization of service on discharge during the annual orientation (para 1-18*b*) will be annotated in item 19 (Specialized Training) as follows: "Bfts of Hon Disch (date)."

### Section IV
### Bars to Reenlistment

### 1–20. General

As set forth in paragraph 1-21 below, commanders will initiate discharge proceedings against Soldiers who have received a local bar to reenlistment in accordance with AR 140-111, chapter 1, or NGR 600-200, chapter 7. Discharge action is not based on the imposition of a bar to reenlistment, but rather on the conduct which forms the basis(es) for the bar.

### 1–21. Discharge initiation and processing

*a.* If the unit commander does not recommend that the bar be removed at the time of the second 6-month review of a locally imposed bar to reenlistment, he or she will process the Soldier for discharge in accordance with chapter 9, chapter 12, or another appropriate chapter of this regulation.

*b.* "Processed for discharge" means that discharge action will be initiated and processed through the chain of command to the separation authority for appropriate action. There must be compliance with paragraph 2-4. The immediate and intermediate commanders will recommend discharge or retention and the characterization of service to be awarded (chap 2, sec III).

### Section V
### Mobilization Asset Transfer Program

### 1–22. Policy

*a.* The purpose of the Mobilization Asset Transfer Program (MATP) is to ensure sufficient trained manpower is available in the IRR of the USAR to meet the Army's personnel requirements under conditions of full mobilization (10 USC 12301(a)). To retain mobilization assets, eligible and qualified Soldiers who have a remaining statutory or contractual MSO (para 4-2) are in, or transferred or reassigned, to the IRR to complete their statutory or contractual MSO, whichever expires later. Soldiers who are not retained, transferred, or reassigned to the IRR under the separation procedures prescribed by this regulation will be discharged from the military service.

*b.* This section and the MATP applies only to ARNGUS and USAR Soldiers who are subject to separation processing under this regulation or for the reasons in NGR 600-200 corresponding to the reasons listed below and who meet the eligibility criteria listed in paragraph 1-23, below.

(1) Disenrollment from Senior Reserve Officers' Training Corps (SROTC) or an ROTC Scholarship Program (para 5-6).

(2) ROTC cadet early release (para 5-7*b*).

(3) Pregnancy (para 6-3).

(4) Entry level performance and conduct (chap 8).

(5) Unsatisfactory participation (chap 13).

(6) Secretarial plenary authority (chap 14), as determined by HQDA.

(7) Failure to meet body composition standards (chap 16).

*c.* The provisions of this section are not applicable to Soldiers being processed for separation under this regulation for reasons other than those shown in *b,* above.

### 1–23. Eligibility for the MATP

*a. ARNGUS.* State military authorities are required to follow the procedures of NGR 600-200 in processing ARNGUS Soldiers for discharge from the ARNGUS prior to expiration of their terms of service. ARNGUS Soldiers who are discharged from the ARNG in accordance with NGR 600-200 become members of the IRR unless they are concurrently discharged from the ARNGUS and the Reserve of the Army under the procedures set forth in this

regulation. An ARNGUS Soldier, upon separation from the ARNGUS for any of the reasons cited in paragraph 1-22*b*, is eligible for transfer to the IRR as a Reserve if he or she meets all of the following conditions:

(1) The separation authority has determined the Soldier possesses the potential for useful service if ordered to AD under conditions of full mobilization.

(2) The Soldier has completed initial entry training (IET) and has been awarded a military occupational specialty (MOS).

(3) The Soldier has three or more months remaining on his or her statutory or contractual Reserve obligation.

(4) On separation from the ARNGUS, the Soldier's service will be characterized as honorable or under honorable conditions, or the service is described as uncharacterized.

*b. USAR.*

(1) A Soldier assigned to the Selected Reserve (TPU or IMA) who is—

*(a)* Subject to separation proceedings for any of the reasons cited in paragraph 1-22*b*, except for entry level performance and conduct (para 1-22*b*(4)), and who meets all of the conditions listed in (3) below, will not be processed for separation under this regulation. The Soldier will be processed for reassignment to the IRR in accordance with AR 140-10; or

*(b)* Processed for separation under this regulation for entry level performance and conduct (para 1-22*b*(4)). The Soldier is eligible for transfer to the IRR if he or she meets all of the conditions listed in (3), below.

(2) A Soldier assigned to the IRR or Standby Reserve (Active List) who is subject to separation proceedings for any of the reasons cited in paragraph 1-22*b*, and who meets all of the conditions listed in (3), below, will be retained in the IRR or Standby Reserve (Active List).

(3) All of the following conditions must be met:

*(a)* The separation authority has determined the Soldier possesses the potential for useful service if ordered to AD under conditions of full mobilization.

*(b)* The Soldier has completed IET and has been awarded an MOS.

*(c)* The Soldier has three or more months remaining on his or her statutory or contractual Reserve obligation.

*(d)* The Soldier's service will be characterized as honorable or under honorable conditions, or the service will be uncharacterized if appropriate (see para 1-26 below).

## 1–24. Ineligible for the Mobilization Asset Transfer Program

A Soldier is ineligible for retention in or transfer/reassignment to the IRR or Standby Reserve (Active List) and will be separated from military service if he or she meets any of the following criteria:

*a.* Has not completed IET or has not been awarded an MOS.

*b.* Has fewer than three months remaining on a statutory or contractual service obligation.

*c.* Is administratively separated with service characterized as under other than honorable conditions, or is released from custody and control of the Army, or is dropped from the rolls.

*d.* Is processed for separation for any other reason than those cited in paragraph 1-22*b*.

*e.* Has been determined, by the separation authority, to possess no potential for useful service under conditions of full mobilization.

## 1–25. Separation authority determination of mobilization potential

*a.* Except in cases where the Soldier has no remaining statutory or contractual service obligation, or where discharge is required by paragraph 1-24, the separation authority must determine whether or not the Soldier possesses the potential to perform useful service if ordered to AD to meet mobilization requirements. The decision to order discharge, transfer, reassignment, or retention, rests with the separation authority and cannot be delegated, although the recommendations of subordinate commanders (para 3-7 and 3-8) may be considered. The separation authority's determination will be made on a case-by-case basis and included in the decision document.

*b.* The separation authority must exercise sound judgement and prudent discretion in the decision process. The key consideration is the need to retain trained Soldiers in the IRR for mobilization purposes. In making a decision regarding potential for future useful service, the separation authority, must give due consideration to all pertinent factors, including the positive motivation that a full mobilization may have on the Soldier, and the probable maturing effect of the passage of time, especially in the case of young Soldiers. The reason for separation is not in itself a basis for determining that a Soldier has no potential for useful service in the future. In the final analysis, the separation authority will direct discharge, in lieu of retention in, or transfer/reassignment to, the IRR or Standby Reserve (Active List), only when the circumstances of the individual case clearly indicate the Soldier has no potential for useful service under conditions of full mobilization.

## 1–26. Requirements on retention, transfer, or reassignment to the individual ready reserve

*a.* The service of a Soldier retained in the IRR or Standby Reserve (Active List) under the provisions of the MATP will not be characterized.

*b.* The service of a Soldier reassigned to the IRR for a reason cited in paragraph 1-22*b* under the provisions of AR 140-10 will not be characterized.

*c.* The service of a Soldier transferred to the IRR for a reason cited in paragraph 1-22*b* will be characterized as honorable or under honorable conditions in accordance with paragraph 2-9, unless an uncharacterized description of service is required by paragraph 2-11*a.*

*d.* On transfer to the IRR, a Soldier will be notified of the following:

(1) The date on which the MSO will expire and the Soldier will be discharged.

(2) The characterization of service on transfer to the IRR.

(3) That the character of service on completion of the MSO and discharge from the USAR will be the same. If, on transfer to the IRR the Soldier's service was characterized as under honorable conditions, or uncharacterized, the Soldier must perform a period of service that is characterized as honorable to receive an honorable discharge on completion of the MSO.

(4) The date by which the Soldier must submit evidence of satisfactory completion of service characterized as honorable. If the Soldier—

*(a)* Submits evidence of completion of service characterized as honorable, the Soldier's service will be characterized as honorable on discharge.

*(b)* Submits evidence of completion of service characterized as honorable, but if a discharge other than an honorable is proposed, the notification procedure (chap 3, sec II) will be used. An administrative board is not required at this point regardless of the Soldier's years of service.

*(c)* Does not submit such information on or before the date specified in the notice, no further proceedings are required. The character of service at the completion of the MSO will be the same as the character of service issued when transferred to the IRR.

Affidavit of Service by Mail

State of *(name)*

County of *(name)*

*(Name of individual who mailed notification)*, being duly sworn, deposes and says: I am the *(Job title, e.g., personnel officer)* of *(organization)* and on *(Day)(Month)(Year)* I mailed a notification dated *(Date)*, *(for Subject, select and enter one or more of the following, as appropriate)*:

   a.  Subj: *Separation Under AR 135-178;*

   b.  Subj: *Medical evaluation;*

   c.  Subj: *Discharge orders.*

a true copy of which is attached hereto, via certified mail, restricted delivery, return receipt requested, to *(name of soldier)* at *(most recent address of soldier)* that being the last known address given to the *(soldier's organization of assignment)* as the one at which official mail would be received by or forwarded to *(Him)(Her)*, by depositing the same in an official depository of the U.S. Postal Service at *(location of postal facility)* in a securely wrapped and sealed U.S. postage-and-fees-prepaid envelope addressed to *(Him)(Her)* at said address.

*(Signature and rank of affiant)*

Sworn and subscribed before me this *(Day)(Month)(Year)*.

*(Signature and rank of officer administering oath)*

Attachment
Copy of notification

If the soldier is a member of the ARNGUS or assigned to a USAR TPU the affidavit together with the receipt showing the certified mail receipt number will be forwarded to the area commander or State adjutant general, as appropriate, for insertion in the member's MPRJ as an action pending document.

If the soldier is a member of the USAR assigned to an IMA duty position, or assigned to the IRR, the Standby Reserve, or the Retired Reserve, the affidavit together with the receipt showing the certified mail receipt number will be retained in the separation authority's suspense file as an action pending document.

**Figure 1–1. Format for an affidavit of service by mail**

## Chapter 2
## Guidelines on Separation and Characterization

### Section I
### Separation

### 2–1. Scope
This chapter provides general guidance, which applies when referenced under the reasons for separation in this regulation. Further guidance is set forth under the specific reasons for separation in chapters 4 through 16.

### 2–2. Guidance
   *a.* There is a substantial investment in the training of Soldiers enlisted in the Army. As a general matter, reasonable efforts at rehabilitation should be made prior to initiation of separation proceedings.

   *b.* Unless separation is mandatory, the potential for rehabilitation and further useful military service, will be considered by the separation authority, and where applicable, the administrative separation board. If separation is warranted despite the potential for rehabilitation, consideration should be given to suspension of the separation, if authorized.

   *c.* Counseling and rehabilitative efforts are a prerequisite to initiation of separation proceedings only insofar as expressly set forth under the specific requirements for the separation. An alleged or established inadequacy in previous rehabilitation efforts does not bar separation.

   *d.* The following factors may be considered on the issue of retention or separation, depending on the circumstances of the case:

   (1) The seriousness of the circumstances forming the basis for initiation of separation proceedings, and the effect of the Soldier's continued retention on military discipline, good order, and morale.

   (2) The likelihood of continuation or recurrence of the circumstances forming the basis for initiation of separation proceedings.

   (3) The likelihood that the Soldier will be a disruptive or undesirable influence in present or future duty assignments.

   (4) The ability of the Soldier to perform duties effectively in the present and in the future, including potential for advancement or leadership.

   (5) The Soldier's rehabilitative potential.

   (6) The Soldier's entire military record. This includes—

   *(a)* Past contributions to the Army, assignments, awards and decorations, evaluation ratings, and letters of commendation.

   *(b)* Memorandum of reprimand or admonition, counseling records, records of nonjudicial punishment, records of conviction by court-martial and records of involvement with civilian authorities.

   *(c)* Any other matter deemed relevant by the board or the separation authority. This may include specialized training, duties, and experience of persons entrusted by this regulation with making recommendations or decisions on separation or retention.

   *(d)* Adverse information from a prior enlistment or period of military service only when such information would have a direct and strong probative value in determining whether separation is appropriate. This would include records of nonjudicial punishment and convictions by court-martial. Such information ordinarily will be used only in those cases involving conduct repeated over an extended time or in cases resulting from a bar to reenlistment. In unusual situations, conduct from a prior enlistment that does not constitute a pattern of conduct that is manifested over an extended period of time, may be considered in determining whether retention or separation is warranted. An example is where a single incident of misconduct occurring in the prior period of service, by itself, warrants separation and the officials in the Soldier's chain of command neither knew, nor reasonably should have known, of the conduct at the time the Soldier reenlisted.

   *(e)* Isolated incidents and events that are remote in time normally have little probative value in determining whether administrative separation should be effected.

   *(f)* Criminal history information from personnel security investigative (PSI) reports requested within the first 90 days of a Soldier's initial enlistment may be used to support separation proceedings initiated under chapter 7 (Fraudulent Enlistment and Fraudulent Entry). Use of PSI reports in connection with all other separation proceedings is prohibited unless specific authorization is granted in accordance with AR 380-67, paragraph 10-100. Requests for such authorization may be submitted case by case through command channels to HQDA, ARNGUS, NGR-ARP/OCAR, DAAR (para 1-12).

## 2–3. Limitations on separation actions

*a.* A Soldier may not be separated on the basis of the following:

(1) Conduct that has been the subject of judicial proceedings resulting in an acquittal or action having the effect thereof, except in the circumstances described in (a) through (c) below. Only HQDA will determine that an action does not have the effect of an acquittal. Requests for such a determination must be submitted to HQDA, ARNGUS, NGR-ARP/OCAR, DAAR (para 1-12).

*(a)* When such action is based on a judicial determination not going to the guilt or innocence of the respondent; or

*(b)* When the judicial proceeding was conducted in a State or foreign court and the separation is approved by HQDA, ARNGUS, NGR-ARP/OCAR, DAAR (para 1-12); or

*(c)* When acquittal from the judicial proceedings was based on a finding of not guilty only by reason of lack of mental responsibility. A Soldier in this category normally shall be separated under Secretarial plenary authority (chap 14) unless separation for disability is appropriate.

(2) Conduct that has been the subject of a prior administrative separation board in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct except when the conduct is the subject of a rehearing ordered on the basis of fraud or collusion; or

(3) Conduct that has been the subject of an administrative separation proceeding resulting in a final determination of a separation authority that the member should be retained, except in the following circumstances:

*(a)* When there is subsequent conduct or performance forming the basis, in whole or in part, for a new proceeding; or

*(b)* When there is new or newly discovered evidence that was not reasonably available at the time of the prior proceeding; or

*(c)* When the conduct is the subject of a rehearing ordered on the basis of fraud or collusion.

*b.* No convening authority will direct separation if a board recommends retention, nor will a characterization of service less favorable than that recommended by the board be directed. However, a convening authority may direct retention when separation is recommended or may direct a characterization of service more favorable than that recommended (para 3-18*f*).

## 2–4. Counseling and rehabilitation

*a. General.* Commanders must make reasonable efforts to identify Soldiers who are likely candidates for early separation and to improve their chances for retention through counseling, retraining, and rehabilitation before starting separation action. These actions are prerequisite for initiating action to separate a Soldier for one of the following reasons:

(1) Involuntary separation due to parenthood (para 6-5).

(2) Other designated physical or mental conditions (para 6-7).

(3) Entry level performance and conduct (chap 8).

(4) Unsatisfactory performance (chap 9).

(5) Minor disciplinary infractions or a pattern of misconduct (para 12-1*a* and *b*).

(6) Failure to meet Army body composition standards (chap 16).

*b. Counseling.* When a Soldier's conduct or performance approaches the point where a continuation of such conduct or performance would warrant initiating separation action for one of the reasons in *a*above, the Soldier will be counseled by a responsible person about his or her deficiencies at least once before initiating separation action. Additional formal counseling is discretionary; however, the Soldier's counseling or personnel records must establish that the Soldier was afforded a reasonable opportunity to overcome these deficiencies. Such factors as the length of time that has elapsed since the prior counseling, the Soldier's conduct and performance during that period, and the commander's assessment of the Soldier's potential for becoming a fully satisfactory Soldier, should be considered.

(1) Counseling will include, but not be limited to, the following:

*(a)* Reasons for counseling.

*(b)* The fact that continued behavior of a similar nature or additional misconduct may result in the Soldier's separation.

*(c)* The characterization of service that may be issued and the effect of each type if such action is taken and separation accomplished.

(2) Each counseling session will be recorded in writing (to include date and by whom counseled). When, after reasonable effort, the Soldier cannot be located for counseling in person, the counseling information will be furnished to him or her by certified mail, return receipt requested, addressed to the latest mailing address provided to the command by the Soldier. If the Soldier does not respond by the date specified in the memorandum, or the memorandum is returned as "undeliverable as addressed," "moved—left no forwarding address," or similar marking, the counseling requirement will be considered to have been satisfied.

*c. Rehabilitation.* If practical, one of the following measures will be taken:

(1) Soldiers assigned to the ARNGUS or USAR TPUs will be reassigned at least once if within commuting distance, with a minimum of 2 months in each ARNGUS unit or USAR TPU.

(2) If case reassignment is restricted (for example, small, independent, or isolated unit), or the Soldier is assigned to the IRR or Standby Reserve, the commander will ensure that proper alternate rehabilitation measures are employed, if feasible.

*d. Waivers.* The officer exercising separation authority may waive the requirement for a rehabilitative reassignment. The exercise of waiver authority may be withheld by a higher separation authority as to a particular case or class of cases. Action to withhold waiver authority will be in writing and will be valid until revoked in writing. The requirement for a rehabilitative reassignment may be waived when it is determined that—

(1) Reassignment is not feasible because there are no appropriate units within a reasonable commuting distance of the Soldier's residence; or

(2) Further duty of the Soldier would create serious disciplinary problems, or create a hazard to the military mission or to the Soldier, or would seriously affect unit readiness; or

(3) Further duty of the Soldier would be inappropriate because the Soldier is resisting all rehabilitation attempts or that rehabilitation would not produce the quality Soldier desired by the ARNGUS and USAR.

## Section II
## Suspension of Separation

### 2–5. Suspension

*a.* In order to afford a highly deserving Soldier a probationary period to demonstrate successful rehabilitation prior to expiration of the Soldier's service obligation, the separation authority or a higher authority may suspend execution of an approved separation for a period not to exceed 12 months. However:

(1) Suspension of a discharge is not authorized in a case where there is an approved finding that one or more of the circumstances authorizing discharge for homosexual conduct under paragraph 10-3 has occurred, or when the sole reason for separation is fraudulent entry; or

(2) When there are approved reasons for separation in addition to fraudulent entry, suspension may be authorized only when the additional reason is not homosexual conduct, a waiver of the fraudulent entry is obtained, and the suspension pertains to reasons for separation other than the fraudulent entry.

*b.* During the period of suspension, the Soldier will be afforded an opportunity to demonstrate the capability of behaving properly and performing assigned duties efficiently under varying conditions.

*c.* On satisfactory completion of the probationary period, or earlier, if rehabilitation has been achieved, or at the end of the Soldier's period of obligated service, the authority that suspended the separation will remit execution of the approved separation.

### 2–6. Action during the period of suspension

During the period of suspension, if the Soldier engages in conduct similar to that for which separation was approved, but suspended, or otherwise fails to meet the appropriate standards of conduct and duty performance, the commander concerned, the convening authority, or the separation authority, whichever is appropriate, will take one of the following actions:

*a.* Initiate punitive or new administrative action notwithstanding the suspension of the execution of the approved separation, or

*b.* Advise the Soldier, in writing, that vacation action is being considered and the reasons which warrant such consideration. The Soldier will be given an opportunity to consult with counsel and to submit a statement in writing to the separation authority. Failure to respond within 20 calendar days from receipt of the notification of the proposed vacation of the suspension shall constitute a waiver of this right. If the Soldier identifies specific legal issues for consideration by the separation authority, the information will be reviewed by a judge advocate, and the separation authority will—

(1) Vacate suspension of approved separation and execute separation; or

(2) Continue to suspend execution of the approved separation.

## Section III
## Characterization or Description of Service on Separation

### 2–7. Types of characterization or description

*a.* At separation, the following types of characterization of service or description of separation are authorized under this regulation:

(1) Separation with characterization of service as Honorable, General (under honorable conditions), or Under Other Than Honorable Conditions.

(2) Separation with an uncharacterized description of service when separated—

*(a)* In an entry level status; or

*(b)* By order of release from custody and control of the Army by reason of void enlistment; or

*(c)* By being dropped from the rolls of the Army.

*b.* Any of the types of characterization or description of service listed in *a*, above, may be used in appropriate circumstances unless a limitation is set forth in this section or in chapters 4 through 16 of this regulation.

*c.* Characterization of service as a result of administrative action is governed by this regulation and the service of Soldiers is either characterized or uncharacterized when they are separated from the ARNGUS or USAR. However, discharge certificates are issued only to those Soldiers whose service is characterized as honorable in accordance with paragraph 2-19.

## 2–8. General considerations

*a.* The characterization of service upon separation is of great significance to the Soldier. It must accurately reflect the nature of service performed. Eligibility for veterans' benefits provided by law, eligibility for reentry into the military service, and acceptability for employment in the civilian community may be affected by the service characterization. The type of discharge and character of service will be determined solely by the military record during the current enlistment or period of service, plus any extension thereof, from which the Soldier is being separated. The Soldier's performance of duty and conduct must be accurately evaluated. The evaluation must be based on the overall period of service and not on any isolated actions or entries on DA Form 2-1. Separations where the service has been characterized as honorable or under honorable conditions entitle a Soldier to Federal rights and benefits as provided by law. However, separation characterized as under other than honorable conditions could deprive the Soldier of veterans benefits administered by the Department of Veterans Affairs (DVA). A determination by that agency is required in each case.

*b.* Characterization at separation will be based upon the quality of the Soldier's service, including the reason for separation and guidance set forth in paragraph 2-9, subject to the limitations under the various reasons for separations. The quality of service will be determined in accordance with standards of acceptable personal conduct and performance of duty for military personnel as found in the UCMJ, Army regulations, and the time-honored customs and traditions of the Army.

*c.* The quality of service of a Reserve Soldier in an active status is affected adversely by conduct that is of a nature to bring discredit on the Army or is prejudicial to good order and discipline, regardless of whether the conduct is subject to UCMJ jurisdiction. Characterization may be based upon conduct in the civilian community, and the burden is on the Soldier to demonstrate that such conduct did not adversely affect his or her service.

*d.* The reasons for separation, including the specific circumstances that form the basis for the separation, shall be considered on the issue of characterization. As a general matter, characterization will be based on a pattern of behavior rather than an isolated incident. There are circumstances, however, in which the conduct or performance of duty reflected by a single incident, provides the basis for characterization.

*e.* Due consideration will be given to the Soldier's age, length of service, grade, aptitude, physical and mental condition, and the standards of acceptable conduct and performance of duty.

## 2–9. Characterization of service

The following are characterizations of service authorized by this regulation.

*a. Honorable.* An honorable characterization is appropriate when the quality of the Soldier's service generally has met the standards of acceptable conduct and performance of duty for Army personnel, or is otherwise so meritorious that any other characterization would be clearly inappropriate.

(1) An honorable characterization may only be awarded a Soldier upon completion of his or her service obligation, or where required under specific reasons for separation, unless an uncharacterized description is warranted.

(2) When a Soldier is discharged before expiration of the service obligation for a reason for which an honorable characterization is discretionary, the following considerations apply:

*(a)* Where there have been infractions of discipline, the extent thereof should be considered, as well as the seriousness of the offense(s).

*(b)* A Soldier will not necessarily be denied an honorable characterization solely by reason of a specific number of convictions by court-martial or actions under the UCMJ, Art. 15.

*(c)* Conviction by a general court-martial or by more than one special court-martial does not automatically rule out the possibility of awarding an honorable characterization of service.

*(d)* An honorable characterization may be awarded when disqualifying entries in the Soldier's military record are outweighed by subsequent honorable and faithful service over a greater period of time during the current term of service.

*(e)* It is a pattern of behavior and not an isolated instance which should be considered the governing factor in determining the character of service.

*(f)* Unless otherwise ineligible, a Soldier may receive an honorable characterization of service if he or she has, during his or her current enlistment, or any extension thereof, received a personal decoration.

*b. General (under honorable conditions).* If a Soldier's service has been honest and faithful, it is appropriate to characterize that service as under honorable conditions. Characterization of service as general (under honorable conditions) is warranted when significant negative aspects of the Soldier's conduct or performance of duty outweigh positive aspects of the Soldier's military record.

(1) When authorized, a characterization of under honorable conditions is awarded to a Soldier whose military record is satisfactory but not sufficiently meritorious to warrant an honorable discharge.

(2) A characterization of under honorable conditions may be issued only when the reason for the Soldier's separation specifically allows such characterization. It will not be issued to Soldiers upon separation for expiration of their service obligation.

*c. Under other than honorable conditions.* Service may be characterized as under other than honorable conditions only when discharge is for misconduct, fraudulent entry, homosexual conduct, unsatisfactory participation, or security reasons, and under the following circumstances:

(1) When the reason for discharge is based upon a pattern of behavior, or one or more acts or omissions, that constitutes a significant departure from the conduct expected of Soldiers. Examples of factors that may be considered include the following:

*(a)* Use of force or violence to produce serious bodily injury or death.

*(b)* Abuse of a position of trust.

*(c)* Disregard by a superior of customary superior-subordinate relationships.

*(d)* Acts or omissions that endanger the security of the United States or the health and welfare of other Soldiers.

*(e)* Deliberate acts or omissions that seriously endanger the health and safety of other persons.

(2) A discharge where service is characterized as under other than honorable conditions will be directed only by a general officer in command who has a judge advocate or legal advisor available to the command, or a higher authority in accordance with paragraphs 1-10*a* and 1-10*b*(1) and (2).

(3) No Soldier will be discharged in accordance with this regulation, with service characterized as under other than honorable conditions, unless he or she is afforded the right to present his or her case before an administrative separation board. The Soldier will be afforded the advice and assistance of counsel. Such discharge must be supported by approved board findings, and an approved board recommendation for discharge under other than honorable conditions.

(4) As an exception to (3) above, a discharge with service characterized as under other than honorable conditions may be issued without board action if the Soldier waives their right to board action.

(5) When a Soldier is to be discharged under other than honorable conditions, the separation authority will direct an immediate reduction to private E1 (PV1), in accordance with AR 600–8–19, chapter 10.

## 2–10. Limitation on characterization of service

Characterization will be determined solely by the Soldier's military record, which includes the Soldier's behavior and performance of duty during the current enlistment or period of service to which the separation pertains, plus any extensions of service prescribed by law or regulation or effected with the consent of the Soldier. The exceptions are provided in this paragraph. In determining characterization or description of service, the following will be used as guidelines:

*a.* A Soldier will receive an honorable characterization of service if limited use evidence (AR 600-85) is initially introduced by the Government in the separation proceedings, and the separation is based on those proceedings. (See *f* below and para 3-17*f*.) The separation authority will consult with the servicing Judge Advocate in cases involving limited use evidence.

*b.* The following will not be considered in determining the character of service:

(1) Pre-service activities, except in proceedings for fraudulent entry (chap 7) when misrepresentations, including omissions of facts which, if known, would have prevented, postponed, or otherwise affected the Soldier's eligibility for enlistment.

(2) Prior service activities including but not limited to records of conviction by courts-martial, records of non-judicial punishment, records of absence without leave, or commission of other offenses for which punishment was not imposed. To the extent that such matters are considered on the issue of retention or separation, the record of proceedings will reflect express direction that such information will not be considered on the issue of characterization. As an exception, personal decorations received during prior service may be considered in characterizing the current period of service.

*c.* The limitations in paragraph 2-3 as to matters that may be considered on the issue of separation are applicable to matters that may be considered on the issue of characterization.

*d.* When the sole basis for separation is a serious offense that resulted in a conviction by a court-martial authorized to but not imposing a punitive discharge, the Soldier's service may not be characterized under other than honorable conditions unless such characterization is approved by HQDA, ARNGUS, NGR-ARP/OCAR, DAAR. Requests for approval will be sent to the HQDA, ARNGUS, NGR-ARP/OCAR, DAAR addresses shown in paragraph 1-12.

*e.* The conduct of a Soldier in the civilian community may form the basis for characterization under other than

honorable conditions only if such conduct directly affects the performance of military duties. Such conduct may form the basis of characterization under honorable conditions only if such conduct has an adverse impact on the overall effectiveness of the Army, including military morale and efficiency.

*f.* A Soldier's voluntary submission to a treatment and rehabilitation program (for personal use of drugs) and evidence provided voluntarily by the Soldier concerning personal use of drugs as part of initial entry into such a program may not be used against the Soldier on the issue of characterization. This limitation does not preclude the following actions:

(1) The introduction of evidence for impeachment or rebuttal purposes in any proceeding in which the evidence of drug abuse (or lack thereof) has been first introduced by the Soldier; and

(2) Taking action based on independently derived evidence, including evidence of drug abuse after initial entry into the treatment and rehabilitation program.

*g.* The results of mandatory urinalysis may be used on the issue of characterization unless prohibited by AR 600-85.

## 2–11. Separation where service is uncharacterized

*a. Entry level status.* Service will be described as uncharacterized if separation processing is initiated while a Soldier is in an entry level status (see glossary), except in the following circumstances:

(1) When characterization under other than honorable conditions is authorized under the reason for separation and is warranted by the circumstances of the case; or

(2) The Secretary of the Army, or the Secretary's designated representative, on a case-by-case basis, determines that characterization of service as honorable is clearly warranted by the presence of unusual circumstances involving personal conduct and performance of military duty. This characterization is authorized when the Soldier is separated—

*(a)* By reason of selected changes in service (chap 5); or

*(b)* For the convenience of the Government (chap 6); or

*(c)* Under the Secretarial plenary authority (chap 14).

*b. Void enlistments.* A Soldier will not receive a discharge, characterization of service at separation, or an uncharacterized description of service, if the enlistment is void except when a constructive enlistment arises and such action is required under (3) below. If characterization or an uncharacterized description of service is not required, the separation will be described as an order of release from custody and control of the Army.

(1) An enlistment is void in the following circumstances:

*(a)* If it was effected without the voluntary consent of a person who has the capacity to understand the significance of enlisting in the Army. This includes enlistment of a person who is intoxicated or insane at the time of enlistment.

*(b)* If the person is under 17 years of age.

*(c)* If the person is a deserter from another military service.

(2) Although an enlistment may be void at its inception, a constructive enlistment will arise in the case of a person serving in the Army who—

*(a)* Submitted voluntarily to military authority.

*(b)* Met the mental competency and minimum age statutory qualifications, at the time of voluntary submission to military authority.

*(c)* Received military pay or allowances.

*(d)* Performed military duties.

(3) If an enlistment that is void at its inception is followed by a constructive enlistment within the same term of service, characterization of service or description of separation will be in accordance with paragraphs 2-8 and 2-9, as appropriate. However, if the enlistment was void by reason of desertion from another military service, the Soldier will be separated by an order of release from the custody and control of the Army regardless of any subsequent constructive enlistment. A constructive enlistment does not preclude the Army from either retaining the Soldier or separating the member based on the circumstances that occasioned the original void enlistment or any other reason for separation.

*c. Dropped from the rolls.* A Soldier may be dropped from the rolls of the Army when such action is authorized in accordance with chapter 15, section III, and a characterization of service or other description of separation is not authorized or warranted.

## Section IV
## Discharge Policy

## 2–12. Separation counseling for Soldiers being discharged

The purpose and authority of the Army Discharge Review Board (AR 15-180) and the Army Board for Correction of Military Records (AR 15-185) will be explained during separation processing, except when the separation is for immediate reenlistment. Counseling will include advice that a discharge under other than honorable conditions is a conditional bar to benefits administered by the DVA, notwithstanding any action by a Discharge Review Board. Such

explanation may be furnished the Soldier in written form. Failure on the part of the Soldier to receive or understand this counseling does not create a bar to separation or characterization.

## 2–13. Orders

*a.* The following order formats prescribed by AR 600-8-105 will be used for separations processed under this regulation:

(1) Order Format 500 where discharge is directed in accordance with this regulation, to include expiration of the service obligation and immediate reenlistment.

(2) Order Format 502 where ROTC cadets are discharged to accept a commission.

(3) Order Format 505 where a Soldier is released from the custody and control of the Army.

(4) Order Format 540 where a Soldier is dropped from the rolls.

*b.* Once a Soldier receives his or her orders, by actual or constructive delivery, such orders may not be revoked except in one or more the following circumstances:

(1) The orders are revoked by proper authority, either orally or in writing, prior to the effective date of the discharge. Orally revoked orders should be documented in writing within 30 days of the revocation.

(2) When one or more of the exceptions to the doctrine of administrative finality exist (that is, fraud; mistake of law; mathematical miscalculation; and/or substantial new evidence discovered contemporaneously within a short time following the action).

*c.* After the effective date of discharge, orders may be amended by the separation authority only to correct administrative errors, such as errors concerning grade, Social Security number, or misspelled name.

## 2–14. Discharge before expiration of the service obligation

*a.* A discharge for the purpose of complete separation from military service terminates a Soldier's statutory and contractual MSO on the effective date of the discharge.

*b.* An enlisted ARNGUS Soldier who is discharged from the ARNG and not concurrently discharged as a Reserve of the Army automatically becomes a member of the USAR.

*c.* A discharge issued only for the purpose of a change in status with continuing military service does not terminate a statutory MSO. Some examples of such changes in status are:

(1) Discharge from enlisted status on appointment as an officer.

(2) Discharge from a reserve component on enlistment in a regular component.

(3) Discharge on transfer between reserve components.

(4) Discharge for the purpose of reenlistment in the same component.

## 2–15. Discharge after expiration of the service obligation

*a.* A Soldier is entitled to be discharged on the expiration of his or her service obligation, and normally will be discharged unless action is taken to retain the Soldier beyond such expiration date.

*b.* Retention beyond the expiration date of a service obligation may be either voluntary or involuntary.

(1) Soldiers may voluntarily remain beyond the expiration date of a service obligation if they are undergoing required health care or are being processed for physical disability separation. They may also consent to remain beyond the expiration date if they are subject to criminal jurisdiction of a foreign court but not physically confined by that country.

(2) Soldiers may be involuntarily retained beyond expiration of their service obligation only when action with a view toward trial by court-martial has been taken by the appropriate authorities. Such action must have been initiated before the Soldier's service obligation expired.

*c.* Soldiers properly held beyond expiration of their service obligation, whether voluntarily or involuntarily, retain their military status and continue to be subject to the UCMJ until formally discharged by the appropriate authorities.

*d.* Soldiers otherwise eligible for discharge on expiration of their service obligation will not be retained to satisfy a debt to the United States Government or to an individual, or to process and complete an involuntary administrative separation action in accordance with this regulation. On the other hand, if the Army does not affirmatively act to discharge a Soldier and the Soldier does not demand discharge, but rather remains on duty and accepts pay and benefits, the military status of that Soldier continues.

## 2–16. Effective date of discharge

The effective date of discharge is 2400 hours on the date of notice of discharge (see para 2-17, below). When discharge is for change of military status, the effective date of the order will be the day prior to the date of the Soldier's entry into a new military status. When discharge is under the provisions of para 15-1*c*, the effective date of the order will be the last day of the month during which maximum allowable age is reached.

## 2–17. Notification of discharge

Notice of discharge may be either—

*a.* Actual, as by delivery to the Soldier of the discharge order or certificate; or

*b.* Constructive, when actual delivery of the discharge order cannot be accomplished due to the absence of the Soldier to be discharged.

(1) If the Soldier is assigned to a Selected Reserve unit or duty position, receipt of the order directing his or her discharge by the Soldier's organization, at the proper station of the organization, will be sufficient notice. The date of receipt of the order by the Soldier's organization and the reason why actual notice was not given will be entered, by endorsement, on the back of the discharge order. A confirmed copy of the annotated discharge order will be sent by registered or certified mail to the Soldier at the most recent address provided by the Soldier for that purpose. The annotated order, reflecting the date of mailing to the Soldier, will be included in the personnel file forwarded to the Commander, HRC–St. Louis, ATTN: AHRC-CIS-P, 1 Reserve Way, St. Louis, MO 63132-5200.

(2) If the Soldier is assigned to the Individual Ready, Standby, or Retired Reserve, CDR, HRC–St. Louis (AHRC-PAR), will issue an annotated discharge order. The order will be annotated on the back, by endorsement, to show that the order was mailed to the Soldier at the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail and the date the order was mailed. The annotated order will be sent by registered or certified mail. A copy of the annotated order, reflecting the date of mailing to the Soldier, will be placed in the Soldier's OMPF.

(3) If a mailed discharge order is returned as "unclaimed" or "undeliverable," the returned order and its accompanying envelope will be retained in the Soldier's file.

(4) The discharge order of a mentally incompetent Soldier will be delivered to the Soldier's legal guardian.

## 2–18. Notification of discharge of a Soldier who cannot be located or is absent in the hands of civil authorities

When discharge has been ordered by the separation authority and the Soldier can not be located or is absent in the hands of civil authorities subsequent to the issuance of the discharge orders, the discharge may be executed regardless of absence. The notification procedure in paragraph 2-17 is applicable.

## 2–19. Certificates

*a.* Discharge certificates will be furnished to Soldiers when they are honorably discharged. The discharge certificate is Department of Defense (DD) Form 256A (Honorable Discharge Certificate).

*b.* Discharge certificates will not be issued under the following conditions:

(1) Where service is characterized as under honorable conditions (General) or under other than honorable conditions.

(2) Where the service is uncharacterized.

(3) On discharge for immediate reenlistment.

(4) On discharge from a cadet status on appointment as an officer or warrant officer.

## 2–20. Preparation of certificates

*a. Number of copies.* Discharge certificates will be issued in the original only.

*b. How prepared.* Entries on discharge certificates will be typewritten. Only black typewriter ribbon ink will be used.

*c. Entries.* Entries on the discharge certificates will be as follows:

(1) On the line provided under the words "This is to certify that," enter the Soldier's name in signature order, followed by his or her Social Security number and grade, and "USAR". When discharge certificate is prepared by automated systems, the Soldier's name may be entered in last name, first name, and middle initial sequence.

(2) Enter effective date of discharge in space provided. This date must agree with the effective date of discharge shown in the discharge order.

(3) Discharge certificates normally will be authenticated by a commissioned officer. However, the separation authority or other appropriate commander may delegate this authority to a warrant officer or noncommissioned officer in the rank/grade of sergeant first class and above or Department of the Army (DA) civilian in the grade of GS-7 and above. The designated official will sign the certificate in the space provided. Signature blocks will be in accordance with AR 25-50.

## 2–21. Amendments and corrections to certificates

The discharge certificate as originally prepared cannot be altered or amended after the effective date of discharge. Correction of cosmetic or typographical administrative errors will be made on written application of the individual to CDR, HRC–St. Louis. Applications for review of the type of discharge certificate awarded under this regulation will be submitted by the individual to the CDR, HRC–St. Louis (AHRC-PAV) on DD Form 293 (Application for Review of

Discharge or Dismissal from the Armed Forces of the United States) for consideration by the Army Discharge Review Board (AR 15-180).


# Chapter 3
# Guidelines for Separation

## Section I
## Application

### 3–1. Scope
The procedures in this chapter are applicable only when required under a specific reason for separation cited in this regulation. These actions are subject to the requirements set forth in the specific reason for separation.

### 3–2. Guidance
When a Soldier is processed on the basis of multiple reasons for separation, the following guidelines apply to procedural requirements (including procedural limitations on characterization or description of service):

*a.* The basis for each reason must be clearly established.

*b.* If a reason for separation set forth in the notice of proposed action requires processing under the Administrative Board Procedure, the entire matter will be processed under section III, of this chapter.

*c.* When there is any other clear conflict between a specific requirement applicable to one reason and a general requirement applicable to another reason, the specific requirement will be applied.

*d.* If a conflict in procedures cannot be resolved on the basis of the foregoing principles, the procedure most favorable to the Soldier will be used.

### 3–3. Counsel for respondent
Counsel for consultation and counsel for representation for Soldiers being considered for separation under this regulation are described as follows:

*a. Counsel for consultation.*

(1) A reserve component or Active Army officer of the Judge Advocate General's Corps appointed by a convening authority to consult with and advise a Soldier being processed under this regulation at the outset of an involuntary separation proceedings. Such counsel must be qualified under Article 27(b)(1) of the UCMJ. Counseling may be accomplished in person, or through the use of mail, E-mail, FAX or telephone, as circumstances dictate. (Counsel for consultation will advise respondent using DA Form 7423 (Consulting Counsel's Checklist) and make annotations as appropriate.

(2) A civilian counsel retained by the Soldier at no expense to the Government. Civilian counsel is not appointed by the convening authority.

*b. Counsel for representation.*

(1) A reserve component or Active Army officer of the Judge Advocate General's Corps appointed by the convening authority to provide representation during the course of any hearing before an administrative separation board under the provisions of of this regulation. Representation by counsel will be in accordance with AR 15-6. Such counsel must be qualified under Article 27(b)(1) of the UCMJ.

*(a)* Reserve component judge advocates are appointed under the provisions of AR 27-3, chapter 2.

*(b)* Active Army judge advocates are appointed under the provisions of AR 27-10, chapter 6.

*(c)* A respondent who declines representation by a qualified judge advocate officer is not entitled to appointment of a different counsel or counsel of choice.

(2) Civilian counsel not employed by the Government and at no expense to the Government.

(3) Non-lawyer counsel may represent a respondent before an administrative board only where:

*(a)* The respondent expressly declines appointment of counsel under Article 27(b)(1) of the UCMJ and requests a specific non-lawyer counsel; or,

*(b)* The separation authority assigns non-lawyer counsel as assistant counsel.

*c. Counsel for consultation and counsel for representation.* These need not be the same individual.

## Section II
## Separation Using the Notification Procedure

### 3–4. Notice under the Notification Procedure
*a.* When the Notification Procedure is required under a reason for separation cited in this regulation, the commander

will notify the Soldier, in writing, of the matter set forth in this section. (Use the memorandum format in fig 3-1, with the endorsement format int fig 3-2, for this purpose.)

(1) The basis of the proposed separation, including the circumstances upon which the action is based, and a reference to the applicable provisions of this regulation.

(2) Whether the proposed separation could result in a discharge from the Army, transfer from the ARNGUS to the USAR, or release from custody or control of the Army.

(3) The least favorable characterization or description of service authorized for the proposed separation.

(4) The right to obtain copies of documents that will be sent to the separation authority supporting the basis of the proposed separation. Classified documents may be summarized. For separation under chapter 11 or chapter 12 based on a positive urinalysis, the Soldier will be provided, on request, a copy of the laboratory documents (as described in AR 600-85).

(5) The Soldier's right to submit statements.

(6) The Soldier's right to consult with counsel. The Soldier may also consult with civilian counsel retained at the Soldier's own expense.

(7) If the Soldier has 6 or more years of total active and reserve military service on the date of initiation of recommendation for separation, the Soldier's right to request an Administrative Board (section III, below). (See para 3-6*a*.)

(8) The right to waive the rights in paragraphs (4) through (7) above, in writing (fig 3-2), after being afforded a reasonable opportunity to consult with counsel, and that failure to respond within 30 calendar days from the date of receipt of the notice will constitute a waiver of the right.

*b.* Reasonable effort should be made to furnish copies of the notice to the Soldier through personal contact by a representative of the command. In such a case, a written acknowledgment of the notice will be obtained. If the Soldier cannot be personally contacted or refuses to acknowledge receipt of the notice, the notice will be sent by registered or certified mail, return receipt requested, to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. The individual who mails the notification will prepare an Affidavit of Service by Mail (fig 1-1). This will be inserted in the Soldier's personnel file together with PS Form 3800.

## 3–5. Additional notice requirements

*a.* If separation processing is initiated on the basis of more than one reason, the Soldier will be notified of the basis of each reason, including the circumstances on which the action is based, with reference to the specific provisions of this regulation that authorize separation.

*b.* If the Soldier is in civil confinement the relevant notification procedures of paragraph 3-4*b* above apply.

*c.* If the separation action involves a transfer from the ARNGUS to the USAR the notification procedures in paragraph 1-25 are required.

*d.* When the Soldier is processed for separation by reason of convenience of the Government (chap 6) and characterization of service of general (under honorable conditions) is authorized, the Soldier must be notified of the specific factors in the service record that warrant such a characterization.

*e.* The intermediate commander(s), in making recommendations on the characterization or description of service, may recommend any characterization or description of service authorized for the notified basis of separation, but will normally be limited to considering facts contained within the proposed action. If the intermediate commander(s) consider additional unfavorable information outside that contained in the proposed action in making recommendations, the intermediate commander(s) will state, in writing, the specific facts and incidents in the Soldier's record that warrant such type of discharge and characterization or description. The Soldier will be given an opportunity to rebut the additional material prior to the proposed action being forwarded from that intermediate commander. Military legal counsel will be made available to assist in preparation of rebuttal of the additional material. An explanation by the intermediate commander of the reasons for his or her recommendation that refers only to facts contained within the proposed action or to the commander's conclusions based on those facts will not constitute "additional unfavorable information" within the meaning of this paragraph.

## 3–6. Response

The Soldier will be provided a reasonable period of time (not fewer than 30 calendar days) to respond by endorsement to the notification memorandum (fig 3-2). An extension may be granted on a timely showing of good cause by the Soldier. An extension will normally be granted until any documents requested by the Soldier pursuant to paragraph 3-4*a*(4) are provided to the Soldier and the Soldier has a reasonable opportunity to respond to such documents. The decision of the Soldier on each of the rights set forth in paragraphs 3-4*a*(4) through (7), and applicable provisions referenced in paragraph 3-5, will be recorded and signed by the Soldier and counsel (fig 3-2), subject to the following limitations:

*a.* If the Soldier elects to exercise his or her right to a hearing before an administrative board (para 3-4*a*(7)), then the entire matter will be processed under the Administrative Board Procedure (sec III, below) commencing with paragraph 3-13. (Compliance with paras 3-10, 3-11, and 3-12 is not required in this situation.)

*b.* If the notification memorandum was mailed (para 3-4*b*) and the Soldier fails to acknowledge receipt, or to submit a reply (fig 3-2) within 30 calendar days, that fact will constitute a waiver of the right to respond. An appropriate notation will be recorded on the retained copy of the memorandum of notification (fig 3-1).

*c.* If the Soldier declines to respond as to the selection of rights, such declination will constitute a waiver of rights and an appropriate notation will be recorded on the retained copy of the memorandum of notification (fig 3-1). If the Soldier indicates that one or more of the rights will be exercised, but declines to sign the receipt of notification (fig 3-2), the selection of rights will be noted. An appropriate notation as to the failure to sign will be made.

## 3–7. The initiating commander's report to the separation authority

The commander initiating the separation proceedings will forward a full report of the recommended proceedings through intermediate commanders, if any, to the appropriate separation authority (para 1-10) using the commanding officer's report in the format shown in figure 3-3.

## 3–8. Action by intermediate commanders

Intermediate commanders may take the following action:

*a.* Disapprove the recommendation and direct reassignment of the Soldier to another organization, if applicable, or direct disposition by other means. In case of reassignment, the commanding officer's report will be forwarded to the new organization commander for information.

*b.* Approve the commanding officer's recommendation and forward the report to the separation authority.

## 3–9. Action by separation authority

*a.* The separation authority for actions initiated under the Notification Procedure will be the authority cited in paragraph 1-10.

*b.* The action of the separation authority will be recorded.

*c.* On receipt of the commander's report (para 3-7 or para 3-13), the separation authority will determine if there is sufficient evidence to verify the allegations set forth in the notification of the basis for separation. If an allegation is not supported by a preponderance of the evidence, it may not be used as a basis for separation. If there is not sufficient basis for separation, the separation authority will disapprove the recommendation and return the case to the originator for disposition by other means or take other appropriate action under this regulation. If the recommendation is disapproved, the return endorsement will cite reasons for disapproval.

*d.* If there is a sufficient factual basis for separation for the reason set forth in the notification, the separation authority will determine whether separation is warranted under the guidance in chapter 2, sections I and II. On the basis of that guidance, the separation authority will direct one of the following actions:

(1) Retention.

*(a)* In current assignment or pay category; or

*(b)* In the USAR with reassignment to the IRR under the MATP (chap 1, sec V), or in accordance with AR 140-10.

(2) Separation. If an ARNGUS Soldier eligible for MATP (para 1-22a) is being separated for reasons cited in paragraph 1-21b and the separation authority determines the Soldier has mobilization potential (para 1-24), the separation authority may direct the Soldier be discharged from the ARNG in accordance with NGR 600-200 with concurrent transfer as a Reserve of the Army to the IRR of the USAR as a mobilization asset.

(3) Suspended separation in accordance with the guidance in chapter 2, section II.

*e.* If the separation authority directs separation or suspended separation on the basis of more than one reason authorized by this regulation, the separation authority will designate the most appropriate basis as the primary reason for reporting purposes (para 3-2).

*f.* If separation or a suspended separation is directed, the separation authority will assign a characterization or description of service in accordance with chapter 2, section III.

## Section III
## Separation Using The Administrative Board Procedure

## 3–10. Notice under the Administrative Board Procedure

*a.* When the Administrative Board Procedure is required under a reason for separation cited in this regulation, the Soldier will be notified in writing of the matters set forth in this section: (Use the memorandum format in fig 3-4, with the endorsement format in fig 3-5, for this purpose.)

(1) The basis of the proposed separation, including the circumstances upon which the action is based, and a reference to the applicable provisions of this regulation.

(2) Whether the proposed separation could result in a discharge from the Army, transfer from the ARNGUS to the USAR, or release from custody and control of the Army.

(3) The least favorable characterization or description of service authorized for the proposed separation.

(4) The Soldier's right to consult with counsel. The Soldier may also consult with civilian counsel retained at the Soldier's own expense.

(5) The right to obtain copies of documents that will be sent to the Separation Authority supporting the basis of the proposed separation. Classified documents may be summarized. For separation under chapter 11 or chapter 12 based on a positive urinalysis, the Soldier will be provided, on request, a copy of the laboratory documents (as described in AR 600-85).

(6) The Soldier's right to request a hearing before an Administrative Board.

(7) The Soldier's right to present written statements instead of board proceedings.

(8) The Soldier's right to representation at the Administrative Board by military counsel designated in accordance with AR 27-10, chapter 6. Request for military counsel of choice is not authorized (AR 15-6, para 5-6*b*(2)).

(9) The Soldier's right to representation at the Administrative Board by civilian counsel at the Soldier's own expense.

(10) Nonlawyer counsel may not represent a Soldier before an Administrative Board unless:

*(a)* The Soldier expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests a specific nonlawyer counsel; or

*(b)* The Separation Authority assigns nonlawyer counsel as assistant counsel.

(11) The Soldier's right to submit a conditional waiver of the right to a hearing before an administrative board (para 3-15*a*).

(12) Unless prohibited by paragraph 3-15*c*, the right to waive the rights in paragraphs (4) through (10) above, in writing (fig 3-5), after being afforded a reasonable opportunity to consult with counsel, and that failure to respond within 30 calendar days from the date of receipt of the notification memorandum (fig 3-1 or fig 3-4) will constitute a waiver of the right.

(13) The right to be present at the board hearing will be waived if the Soldier fails to appear without good cause.

*b.* Reasonable effort should be made to furnish copies of the notification memorandum (fig 3-4) to the Soldier through personal contact by a representative of the command. In such a case, a written acknowledgment of receipt of the notification will be obtained. If the Soldier cannot be contacted or refuses to acknowledge receipt of the notification, the notification memorandum will be sent by registered or certified mail, return receipt requested, to the most recent address furnished by the Soldier as an address for receipt or forwarding of official mail. The individual who mails the notification will prepare a Affidavit of Service by Mail (fig 1-1). This will be inserted in the Soldier's personnel file together with PS Form 3800.

### 3–11. Additional notice requirements

*a.* If separation processing is initiated on the basis of more than one reason, the Soldier will be notified of the basis of each reason, including the circumstances on which the action is based, with reference to the specific provisions of this regulation that authorize separation.

*b.* If the Soldier is in civil confinement, the relevant notification procedures of paragraph 3-10*b* above apply.

*c.* If the separation action involves a transfer from the ARNGUS to the USAR, the notification procedures in paragraph 1-25 are required.

*d.* The intermediate commander(s), in making recommendations on the characterization or description of service, may recommend any characterization or description of service authorized for the notified basis of separation, but will normally be limited to considering facts contained within the proposed action. If the intermediate commander(s) consider additional unfavorable information outside that contained in the proposed action in making recommendations, the intermediate commander(s) will state in writing the specific facts and incidents in the Soldier's record that warrant such type of discharge and characterization or description. The Soldier will be given an opportunity to rebut the additional material prior to the proposed action being forwarded from that intermediate commander. Military legal counsel will be made available to assist in preparation of rebuttal of the additional material. An explanation by the intermediate commander of the reasons for his or her recommendation that refers only to facts contained within the proposed action or to the commander's conclusions based on those facts will not constitute "additional unfavorable information" within the meaning of this paragraph.

### 3–12. Response

The Soldier will be provided a reasonable period of time (not fewer than 30 calendar days) to respond by endorsement to the notification memorandum (fig 3-5). An extension may be granted on a timely showing of good cause by the Soldier. An extension will normally be granted until any documents requested by the Soldier pursuant to paragraph 3-10*a*(5) are provided to the Soldier and the Soldier has a reasonable opportunity to respond to such documents. The decision of the Soldier on each of the rights set forth in paragraphs 3-10*a*(1) through (10), and applicable provisions referenced in paragraph 3-11, will be recorded and signed by the Soldier and counsel (fig 3-5), subject to the following limitations:

*a.* If the notification memorandum (fig 3-4) was mailed in accordance with paragraph 3-10*b* and the Soldier fails to

acknowledge receipt, or to submit a reply by endorsement (fig 3-5) within 30 calendar days, that fact will constitute a waiver of rights. An appropriate notation will be recorded on a retained copy of the notification memorandum (fig 3-4).

   *b.* If the Soldier declines to respond as to the selection of rights, such declination will constitute a waiver of rights and an appropriate notation will be made on the retained copy of the notification memorandum (fig 3-4).

   *c.* If the Soldier indicates that one or more of the rights will be exercised, but declines to sign the endorsement (fig 3-5), the selection of rights will be noted. An appropriate notation as to the failure to sign will be made on the retained copy of the endorsement (fig 3-5).

## 3–13. The initiating commander's report to the separation authority

The commander initiating the separation proceedings will forward a full report of the recommended proceedings through intermediate commanders, if any, to the appropriate separation authority (para 1-10) using the commanding officer's report in the format shown in figure 3-3.

## 3–14. Action by intermediate commanders

Except as may be prescribed in paragraphs 10–7 and 12–1*d*, intermediate commanders may take the following action:

   *a.* Disapprove the recommendation and direct reassignment of the Soldier to another organization, if applicable, or direct disposition by other means. In case of reassignment, the commanding officer's report will be forwarded to the new organization commander for information.

   *b.* Approve the commanding officer's recommendation and forward the report to the separation authority.

## 3–15. Waiver

   *a.* When a Soldier waives his or her right to a hearing before an administrative board, then the entire matter will be processed under the Notification Procedure (sec II, above) commencing with paragraph 3-7. (Compliance with paras 3-4, 3-5, and 3-6 is not required in this situation.) However, the separation authority will be a general officer cited in paragraphs 1-10*a* or *b*.

   *b.* A Soldier entitled to an Administrative Board may submit a conditional waiver to a hearing by a board after a reasonable opportunity to consult with counsel under paragraph 3-10*a*(11). (The memorandum format in fig 3-6 will be used for this purpose.) The conditional waiver (fig 3-6) is a memorandum submitted by a Soldier waiving the right to a hearing by a board on the condition characterization of service on separation will be higher than the least favorable characterization or description of service authorized for the basis of the separation reason listed in the notification memorandum (fig 3-4). The separation authority will be the same as if the Soldier had not submitted the conditional waiver.

   (1) The separation authority may approve or disapprove the conditional waiver. If the conditional waiver is disapproved, the case will be referred to a hearing before an Administrative Board unless there is a subsequent unconditional waiver of a right to a hearing before an administrative separation board under paragraphs 3-4*a*(7) and 3-10*a*(6).

   (2) There is no requirement to delay board proceedings pending action by the separation authority on the conditional waiver. However, once the board has made its findings and recommendations, the convening authority may not approve the conditional waiver.

   *c.* Waivers of the board hearings and the right to representation by counsel at board hearings will not be accepted in the cases of Soldiers who have completed 18 but fewer than 20 years of qualifying service for retired pay.

## 3–16. Action by the separation authority on commander's recommendation

Except as may be prescribed in paragraph 10-8, on receiving the commanding officer's report (para 3-7 or 3-13), the separation authority may take one of the following actions—

   *a.* Disapprove the recommendation and return the case to the originator for disposition by other means.

   *b.* Disapprove the recommendation relating to reason for separation and direct the Soldier be processed for separation under another reason for separation. This may be done when the separation authority determines that an alternative basis for separation is more appropriate than the originating command's reason for separation. In this case the Soldier must be so advised and new proceedings must be initiated using the Notification Procedure or Administrative Board Procedure, as required.

   *c.* When the board hearing has been properly and effectively waived, approve the separation and direct characterization of service or description of separation in accordance with chapter 2, section III.

   *d.* When the board hearing has been properly and effectively waived, approve the separation and direct characterization of service or description of separation in accordance with chapter 2, section III, and suspend execution of the separation (chap 2, sec II).

   *e.* Convene an Administrative Board to conduct a hearing and provide recommendations as prescribed in paragraph 3-17.

   *f.* Direct that the case be processed through medical channels, if appropriate, as provided in paragraph 1-8.

### 3–17. Hearing requirements

Except as otherwise provided herein, the procedures of AR 15-6 as they relate to boards of officers will also be used in these proceedings. If a Soldier requests, or does not waive the right to, a hearing before an Administrative Board, the following actions are applicable:

*a. Composition.*

(1) The separation authority (para 1-10) will appoint to the Administrative Board at least three experienced commissioned, warrant or noncommissioned officers. At least one of the voting commissioned officers must be a Reserve officer.

*(a)* Enlisted Soldiers appointed to the Board must be sergeants first class or above and must be senior to the respondent.

*(b)* At least one member of the Board must be a major or higher, and a majority must be commissioned or warrant officers. However, all board members must be commissioned officers (includes warrant officers) if under other than honorable conditions character of service is authorized for the reason for separation.

*(c)* The senior member will be the president of the Board.

*(d)* The separation authority may appoint to the Board a nonvoting recorder.

*(e)* A nonvoting legal advisor may be appointed to assist the Board.

(2) Boards with ARNGUS respondents will include at least one ARNGUS officer as a voting member. Boards with USAR respondents will include at least one USAR officer as a voting member.

(3) The separation authority will ensure that the opportunity to serve on administrative boards is given to women and minorities. The mere appointment or failure to appoint a member of such a group to the Board, however, does not provide a basis for challenging the proceeding.

(4) The respondent may challenge a voting member of the Board or the legal advisor, if any, for cause only.

*b. Presiding officer.* The president will preside and rule on all matters of procedure and evidence, but the rulings of the president may be overruled by a majority of the Board. If appointed, the legal advisor will rule finally on all matters of evidence and challenges except challenges to the legal advisor. Military judges may be appointed as board members. If a military judge is appointed as the president of a board, a legal advisor to the board need not be appointed.

*c. Witnesses.*

(1) The Soldier will be notified of the names and addresses of witnesses expected to be called at the board hearing and that the recorder of the board will, on written request of the Soldier, endeavor to arrange for the presence of any available witness the Soldier desires to call. Pursuant to AR 15-6, paragraph 3-7*c*, expert medical and psychiatric testimony routinely may be provided in the form of affidavits.

(2) The respondent may submit a written request for temporary duty or invitational travel orders for witnesses. Such a request will contain the following matter:

*(a)* A synopsis of the testimony that the witness is expected to give.

*(b)* An explanation of the relevance of such testimony to the issues of separation or characterization.

*(c)* An explanation as to why written or recorded testimony would not be sufficient to provide for a fair determination.

(3) The convening authority may authorize expenditure of funds for production of witnesses only if the presiding officer (after consultation with a judge advocate) or the legal advisor (if appointed) determines that—

*(a)* The testimony of a witness is not cumulative.

*(b)* The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization.

*(c)* Telephonic, written, or recorded testimony will not adequately accomplish the same objective.

*(d)* The need for live testimony is substantial, material, and necessary for a proper disposition of the case, and

*(e)* The significance of the personal appearance of the witness when balanced against the practical difficulties in producing the witness favors production of the witness. Factors to be considered in relation to the balancing test include the cost of producing the witness, the timing of the request for production of the witness, the potential delay in the proceeding that may be caused by producing the witness, or the likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

(4) If the convening authority determines that the personal testimony of a witness is required, the hearing will be postponed or continued if necessary to permit the attendance of the witness.

(5) The hearing will be continued or postponed to provide the respondent with a reasonable opportunity to obtain a written statement from the witness if a witness requested by the respondent is unavailable in the following circumstances:

*(a)* When the presiding officer determines that the personal testimony of the witness is not required; or

*(b)* When the commanding officer of a military witness determines that military necessity precludes the witness' attendance at the hearing; or

*(c)* When a civilian witness declines to attend the hearing.

(6) Paragraph (5)(c) above does not authorize a Federal employee to decline to appear as a witness if directed to do so in accordance with applicable procedures of the employing agency.

*d. Record of proceedings.* The proceedings of the board will be summarized as fairly and accurately as possible. The proceedings will contain a verbatim record of the findings and recommendations.

*e. Presentation of evidence.* Except as otherwise provided in this regulation, the procedures in AR 15-6 apply.

*f. Introduction of limited use evidence.* The Government may initially introduce limited use evidence (AR 600-85) into separation proceedings accomplished under this regulation, or at its option, may elect to proceed solely with independent evidence not subject to limited use. If limited use evidence is initially introduced by the Government and the separation proceedings result in separation, the Soldier will receive an honorable characterization of service (para 2-10*a*). However, the proceedings may be reinitiated or a rehearing held in accordance with the following guidance. If limited use evidence is introduced by the Government before the board convenes, the separation proceedings may be reinitiated, excluding all references to limited use evidence. If limited use evidence is introduced by the Government after the board convenes, a general officer who is the separation authority may set aside the proceedings and refer the case to a new board for rehearing. (See AR 600-85.) The reason for the rehearing will not be disclosed to the new board and limited use information will not be initially introduced by the Government. Review and action in the case will be based only on the new record. If a rehearing is not deemed appropriate, the Soldier may be separated with an honorable characterization of service (para 2-10*a*). The servicing Judge Advocate will review completed board proceedings that contain limited use evidence and advise the separation authority whether a rehearing is appropriate.

*g. Rights of the respondent.*

(1) The respondent may testify in his or her own behalf. The provisions of Article 31(a), UCMJ, will apply, as appropriate.

(2) At any time before the board convenes and during the proceedings, the respondent or counsel may submit written or recorded matter for consideration by the board. This includes submission of any answer deposition, sworn or unsworn statement, affidavit, certificate, or stipulation, or depositions of witnesses not reasonably available or witnesses unwilling to appear voluntarily.

(3) The respondent or counsel may call witnesses in his or her own behalf subject to the provisions of *c* above.

(4) The respondent or counsel may question any witness who appears before the board.

(5) The respondent or counsel may present argument before the board closes for deliberation on findings and recommendations.

(6) The respondent may appear in person with or without counsel at all open proceedings of the board. When a Soldier appears before a board without counsel, the record will show that the president of the board counseled the respondent as to characterization or description of service that he or she may receive as a result of the board action, the effects of such characterization or description, and that he or she may request counsel. The record of the proceedings will reflect the respondent's response.

(7) The respondent or counsel may challenge any voting member of the board or the legal advisor, if any, for cause only. Furthermore, when the board is considering a case in which the respondent has exercised his or her right to revoke a previous waiver, the board membership will not be advised in any manner of such action by the respondent, or of the type of discharge which had been recommended in his or her case. When it has come to the attention of the respondent or his or her counsel that facts intended to be excluded are known by any member of the board, failure to challenge the member having such knowledge constitutes a waiver of the matter.

(8) Failure of the Soldier to invoke any of the rights in (1) through (7) above after having been apprised of same is not a bar to the board proceedings, findings, or recommendations.

*h. Findings and recommendations.* Except as may be prescribed in paragraph 10-9, the board will—

(1) Determine its findings and make recommendations in closed session. Only voting members will be present.

(2) Determine whether each allegation in the notice of proposed separation is supported by a preponderance of the evidence.

(3) Determine under the guidance in chapter 2, section I, whether the findings warrant separation with respect to the reason for separation set forth in the notice. If more than one reason was contained in the notice, there will be a separate determination for each reason.

(4) Make recommendations on the following:

*(a) Retention or separation.* The board will recommend retention or separation. Should the board recommend retention, the recommendation must provide for the Soldier to be retained in the component and status in which the Soldier is currently serving, and no characterization of service will be recommended. A board will not recommend retention when recommending a characterization of service.

*(b) Suspension of separation.* If the board recommends separation, it may recommend that the separation be suspended in accordance with chapter 2, section II, but the recommendation of the board is not binding on the separation authority.

*(c) Characterization of service or description of separation.* If separation or suspended separation is recommended,

the board will recommend a characterization of service or description of separation as authorized by the basis for separation (chaps 6 through 16) in accordance with the guidance in chapter 2, section III.

*i. Report of proceedings.* A complete report of proceedings will be forwarded to the Separation Authority for final determination and disposition.

## 3–18. Action by separation authority on board recommendations

Except as may be prescribed in paragraph 10-10—

*a.* The Separation Authority for actions initiated under the Administrative Board Procedure will be the authority cited in paragraphs 1-10*a* and *b*. This authority will not be further delegated.

*b.* The board proceedings will be reviewed by a qualified officer fully cognizant of applicable regulations and policies. This officer determines whether the action meets the requirements of this regulation. However, in every case in which characterization of service under other than honorable conditions is recommended, or when limited use evidence was introduced in the board proceedings (para 3-17*f*), or when the Soldier identifies specific legal issues for consideration by the separation authority, the proceedings will be reviewed by a member of The Judge Advocate General's Corps.

*c.* The respondent will be provided a copy of the board's statement of facts and recommendations.

*d.* In cases where the separation authority recommends the separation of a Soldier with 18 but fewer than 20 years of qualifying service for retired pay (10 USC 12732), the report of board proceedings and the separation authority recommendation will be sent to HQDA in accordance with paragraph 1-12 for consideration.

*e.* In cases where a board has recommended separation of a Soldier based on a civil court conviction and the Soldier is not incarcerated (para 12-2), approval and execution of the separation will normally be withheld only if the Soldier has filed an appeal of the conviction or stated his or her intention to do so (para 12-2*b*). If the separation authority determines execution of the separation is appropriate without waiting for final action on the appeal, the Soldier may be separated with the appropriate characterization of service upon the approval of HQDA, ARNGUS, NGR-ARP/OCAR, DAAR (para 1-12), or at the request of the Soldier

*f.* The separation authority will take action in accordance with this paragraph; the requirements of chapters 4 through 16 with respect to the reason for separation; and the guidance in chapter 2 on separation and characterization; and the guidance in chapter 1, section V, regarding the MATP.

(1) If the separation authority approves the recommendations of the board on the issue of separation or characterization (or both) this constitutes approval of the board's findings and recommendations under paragraph 3-17*h*, unless the separation authority expressly modifies such findings or recommendations. However, the Separation Authority cannot authorize a characterization of service less favorable than that recommended by the board.

(2) If the board recommends retention, the separation authority will not direct discharge. The Separation Authority may take one of the following actions:

(a) Approve the recommendation.

(b) If the Separation Authority believes that discharge is warranted and in the best interests of the Army, a request for separation under the provisions of chapter 14 may be sent to HQDA, ARNGUS, NGR-ARP/OCAR, DAAR (para 1-12). The separation authority will personally sign the memorandum to HQDA, ARNGUS, NGR-ARP/OCAR, DAAR which sets forth specific reasons justifying the Soldier's discharge as being in the Army's interest. Prior to forwarding the case, the Notification Procedure (sec II) will be used. However, the procedure for requesting an administrative board (para 3-4*a*(7)) is not applicable. It is the policy of HQDA, ARNGUS, NGR-ARP/OCAR, DAAR to uphold the recommendations of a duly constituted board unless compelling justification is given to warrant separation under Secretarial authority, as being in the Army's best interest. Compelling justification warranting separation might be such things as incomplete record available to the board, false testimony, or other defects in the proceedings. If separation is approved under chapter 14, the characterization or description of service will be in accordance with paragraph 14-2.

(3) If the board recommends separation, the separation authority may:

(a) Approve the board's recommendation.

(b) Approve the board's recommendations, but modify the recommendations by one or more of the following actions when appropriate:

*1.* Approve the separation but suspend execution as provided in chapter 2, section II.

*2.* Change the character of service or description of separation to a more favorable characterization or description. The separation authority cannot authorize a characterization of service less favorable than that recommended by the board.

(c) Disapprove the board's recommendation and direct retention.

(4) If the separation authority approves the board's findings and recommendations in whole or in part with respect to more than one reason for separation (chaps 6 through 16), the separation authority will designate the most appropriate basis as the primary reason for reporting purposes.

(5) If the separation authority notes a defect but deems it harmless in a case in which separation has been recommended, he or she will take final action in accordance with (3) above. If these are substantial defects, the separation authority may take one of the following actions:

*(a)* Direct retention.

*(b)* If the board has failed to make findings or recommendations required, return the case to the same board for compliance with this regulation.

*(c)* If there is an apparent procedural error or omission in the record of proceedings that may be corrected without reconsideration of the findings and recommendations of the board, return the case to the same board for corrective action.

*(d)* If the board's error materially prejudiced a substantial right of the Soldier, the separation authority may only take action that can be sustained without relying on the proceedings affected by the error. The separation authority may set aside the findings and recommendations and refer the case to a new board for a rehearing. A member of the new board cannot have served on a prior board that considered any of the same matters against the Soldier. The new board may be furnished the evidence properly considered by the first board. This evidence will include extracts from its record of testimony of witnesses not deemed by the convening authority to be reasonably available to testify at the rehearing. Additional admissible evidence may be furnished to or obtained by the new board. The separation authority may, on due notice to the Soldier, incorporate new allegations based on later conduct of the Soldier. Unless the new board considers substantial additional evidence unfavorable to the Soldier, the separation authority may not approve any findings and recommendations of the new board less favorable than those rendered by the first board.

(6) If the Separation Authority determines, based on newly discovered evidence that the findings of the first board were obtained by fraud or collusion, the case may be referred to a new board. The fraud or collusion, which serves as the basis for referral to a new board, must be based on newly discovered evidence which was unknown at the time of the original proceedings. No member of the new board may have been a member of the first board. The separation authority may not approve findings and approve recommendations less favorable to the Soldier than those rendered by the first board unless the separation authority finds that the newly discovered evidence of fraud or collusion in the first board is attributable to the Soldier or an individual acting on the Soldier's behalf.

## 3–19. Disposition of proceedings

*a.* When separation is ordered by the separation authority or his or her designee, he or she will so note in the record of proceedings and forward them as authority for separation to the appropriate commander for execution of the separation. (See para 3-21 for disposition of the case file when separation is accomplished.)

*b.* When separation is not ordered by the separation authority, the proceedings will be filed at that headquarters. The Soldier's commanding officer will be notified of the final action. When deemed appropriate, consideration will be given to the Soldier's reassignment to a different organization. Ultimate disposition of the board proceedings will be governed by AR 25-400-2.

*c.* A Soldier who is to be separated will be furnished a copy of the board proceedings, less written medical testimony and reports which would prove injurious to the Soldier's physical or mental health.

(1) The Soldier's copy of the proceedings will be marked "copy for (name and Social Security number of the member)" and furnished the Soldier or his or her counsel. A signed receipt will be obtained from the Soldier or the Soldier's counsel to whom the copy is furnished and filed with the original board proceedings. If the Soldier refuses to sign the receipt, a statement to that effect will be filed.

(2) If the Soldier or the Soldier's counsel does not desire a copy of the board proceedings or if for any other reason a copy is not furnished, a notation will be made on the Soldier's copy, which will be filed with the original. Release of this copy thereafter may be made only by the CDR, HRC–St. Louis.

## 3–20. Errors and discrepancies noted before accomplishing separation

If material errors or discrepancies in approved board proceedings are found, the case will be referred for review before separation to HQDA (para 1-12), as appropriate.

## 3–21. Disposition of the case file

When separation of the Soldier has been accomplished by appropriate authority under this regulation, the complete file of the case together with the Soldier's military personnel records will be disposed of in accordance with the instructions contained in AR 600-8-104 or NGR 600-200, as appropriate.

## Section IV
## Additional Provisions Concerning Soldiers Confined by Civil Authorities

## 3–22. Proceedings when Soldier is confined by civil authorities

If separation proceedings under this chapter have been initiated against a Soldier confined by civil authorities, the case may be processed in the absence of the respondent (see para 2-18).

## 3–23. Notification requirements

The following requirements apply:

*a.* A Soldier confined by civil authorities will receive a notification memorandum under the Notification Procedure (para 3-4) or the Administrative Board Procedure (para 3-10) as appropriate. The notification memorandum will be delivered personally to the Soldier or sent by certified mail, return receipt requested, to the Soldier's last known home address. When a Soldier refuses to acknowledge receipt of notice, the individual who mails the notification will prepare an Affidavit of Service by Mail (fig 1-1). This will be inserted in the Soldier's personnel file.

*b.* If the notification memorandum (fig 3-1 or fig 3-4) is delivered personally, receipt will be acknowledged by signing the endorsement (fig 3-2 or fig 3-5). If the Soldier does not acknowledge receipt, the notification memorandum will be sent by mail as provided in *a*, above.

*c.* The required actions governing the Soldier's response or failure to respond are prescribed in paragraph 3-6, or paragraph 3-12, as appropriate.

*d.* The name and address of the appointed military counsel for consultation will be specified in the notification memorandum.

*e.* Where the Soldier has a right to, and requests, a hearing before an administrative board (paras 3-4*a*(7) and 3-10*a*(6)) and a right to, and requests, representation by counsel at the board hearings, the Soldier will be notified that the proceedings will be conducted in his or her absence and that he or she will be represented by counsel.

*(Letterhead)*

S: *(Enter date of suspense)*

*(Office Symbol)*                                                    *(Date)*

MEMORANDUM FOR *(Soldier's name, SSN, grade, and organization of assignment)*

SUBJECT: Notification of Separation Proceedings Under AR 135-178, Chapter *(Enter appropriate chapter)*

1.  Under the provisions of AR 135-178, *(Indicate specific chapter, section and paragraph),* I am initiating action to separate you from *(See note below)* for *(Indicate narrative reason).* The reasons for my proposed action are: *(State specific, factual details that constitute the basis for the proposed action).*

2.  I am recommending that you receive a(n) *(Indicate one of the following: Honorable characterization of service, General (under honorable conditions) characterization of service, or Uncharacterized description of service).*  My recommendation and your reply will be submitted through intermediate commanders (if any) to the Separation Authority, *(Enter the name, grade, and organization of the separation authority)* who will make the final decision in your case.

**Figure 3–1. Format for notification of separation proceedings when the Notification Procedure is used**

3.  The intermediate commander(s) and the separation authority are not bound by my

recommendation as to characterization of service.  The separation authority may direct that

your service be characterized as honorable or under honorable conditions, or you may

receive an uncharacterized description of service if you are in an entry level status.

4.  *(Select and enter the appropriate paragraph from the following:)*

*(Use for ARNG)*

4.  If my recommendation is approved, the proposed separation could result in discharge

from the Army National Guard and as a Reserve of the Army, discharge from the Army

National Guard and transfer to the Individual Ready Reserve, or release from custody and

control of the Army.

*(Use for USAR)*

4.  If my recommendation is approved, the proposed separation could result in discharge

from the U.S. Army Reserve, transfer or reassignment from your U.S. Army Reserve unit

to the Individual Ready Reserve, or release from custody and control of the Army.

5.  I am suspending separation action for 45 days to give you an opportunity to exercise the

following rights:

**Figure 3–1. Format for notifcation of separation proceedings when the Notification Procedure is used—Continued**

a.  You have the right to consult with an appointed counsel for consultation; or military counsel of your choice, if he or she is reasonably available, or civilian counsel at your own expense.

(1)  If you desire an appointed counsel for consultation, notify this command *before completing the response* by endorsement and the name and phone number of the appointed counsel will be provided.

(2)  If you desire a military counsel of your choice, provide this command with the officer's name and rank *before completing the response* by endorsement and if the officer is reasonably available, he or she will be appointed counsel for consultation.

(3)  If you retain civilian counsel at no expense to the government, recommend the counsel be retained *before completing the response* by endorsement.


b.  You have the right to obtain copies of documents that will be sent to the separation authority supporting the basis of the proposed separation.  (Classified documents may be summarized.)


c.  You have the right to request a hearing before an administrative separation board if you have 6 or more years of total active and/or reserve service on the date of this notification.


d.  If you request a hearing before an administrative board, you have the right to representation at the administrative board by a military counsel.


**Figure 3–1. Format for notification of separation proceedings when the Notification Procedure is used—Continued**

e. You have the right to representation at the administrative board by civilian counsel at your own expense and at no expense to the Government.

f. You have the right to present written statements on your behalf instead of the administrative board proceedings.

g. You have the right to waive the rights listed above in paragraphs *a* through *f* in writing, and you may withdraw any such waiver at any time before the date the separation authority orders, directs, or approves your separation.

*(Insert this paragraph when required per paragraph 1-8 and renumber the following paragraphs.)*

6. You are required to undergo a medical evaluation in accordance with AR 40-501. Arrangements have been made for this examination and you are to report to *(Location)* at *(Time)* on *(Date).* *(See para 1-8.)*

*(Insert this paragraph when required per paragraph 1-8 and renumber the following paragraph.)*

6. You are required to undergo a mental status evaluation in accordance with AR 40-501. Arrangements have been made for this examination and you are to report to *(location)* at *(time)* on *(date).* *(See para 1-8.)*

**Figure 3–1. Format for notification of separation proceedings when the Notification Procedure is used—Continued**

7.  You must complete the attached endorsement acknowledging receipt of this memorandum and indicating the election of your rights.  *A copy of this memorandum with the completed endorsement attached, must be delivered to the address shown on the endorsement within 30 days from the date of your receipt of this memorandum of notification.*  Any statement or documents you desire to submit in your behalf must also reach me within 30 calendar days after you receive this memorandum, unless you request and receive an extension for good cause shown. Unless an extension is granted, failure to deliver the completed endorsement within 30 days of the date of your receipt of this memorandum will constitute a waiver of your rights in paragraphs 5a, b, c, d, e, and f above.

*Encl Listing*                                  *(Commander's signature)*

                                                *(Typed name, grade, branch)*

*Note:*  Enter one of the following, as appropriate: the Army National Guard of the United States; the Army National Guard and Reserve of the Army; the U.S. Army Reserve; or, your USAR organization of assignment.

**Figure 3–1. Format for notification of separation proceedings when the Notification Procedure is used—Continued**

(NOTE: The commander issuing the notification memorandum (fig 3-1) will prepare and partially complete the following endorsement and enclose it with the notification memorandum. The soldier will complete the endorsement by making the appropriate entries where indicated and return the endorsement attached to a copy of the notification memorandum.)

(*Insert Soldier's Last Name*) (*Insert Memo Office Symbol/Date*)  1st End

(*Insert Preparer's Name and Telephone Number*)

SUBJECT:  Notification of Separation Proceedings Under AR 135-178, Chapter (*Insert the appropriate chapter*)

(*Insert the soldier's full name, SSN, address, and organization of assignment*)

(*Soldier will enter date of response here*)

FOR COMMANDER *(Insert the complete organization address shown on memorandum)*

1.  I hereby acknowledge receipt of the Notification of Separation Proceedings Under AR 135-178, Chapter *(Insert the appropriate chapter)* dated *(Insert the date of memorandum)*.  I understand that I may expect to encounter substantial prejudice in civilian life if my service is characterized as general (under honorable conditions).

2.  Before completing this response, I understand that *I have the right to consult* with an appointed counsel for consultation; or military counsel of my own choice, if he or she is

**Figure 3–2. Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used**

reasonably available, or civilian counsel at my own expense. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

   a. (initial) I have *exercised my right* and I have consulted with counsel in preparation of this response to the notification memorandum. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for *(Enter the reason)* under AR 135-178, *(Enter appropriate chapter)*, and its effects; of the rights available to me; and the effect of any action taken by me in waiving my rights. The counsel has confirmed this by entering and signing the statement at the end of this endorsement; or

   b. (initial) I hereby *waive my right to consult* with an appointed counsel for consultation; or military counsel of my own choice, or civilian counsel at my own expense.


3. I understand I have the right to obtain copies of documents that will be sent to the separation authority supporting the basis of my proposed separation. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

   a. (initial) I hereby *waive my right* to obtain copies of documents.

   b. (initial) I hereby request copies of the documents.


4. I understand that if I have 6 or more years of total active and/or reserve service, on the date of this notification, *I have the right to a hearing* before an administrative separation board, unless I waive that right. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

   a. (initial) I have 6 or more years of total active and/or reserve service on the date of this notification and I hereby *exercise my right to a hearing* before an administrative separation

**Figure 3–2. Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued**

board. I understand that after having requested appearance before the board, my willful failure to appear before the board will constitute a waiver of my rights to personal appearance before the board, unless I am in civil confinement. *(When requesting a board hearing the soldier must also initial one of the following subparagraphs:)*

(1) (initial) I *request a counsel* for representation at the hearing be designated.

(2) (initial) I *waive my right* to a counsel for representation at the board hearing.

b. (initial) I have 6 or more years of total active and/or reserve service on the date of this notification and I hereby *waive my right to a hearing* before an administrative separation board.

5. I have the right to representation at the administrative board by civilian counsel at my own expense and at no expense to the Government. *(The soldier will initial the following if civilian counsel is retained)*

(initial) I have retained, or will retain, civilian counsel.

6. I understand I have the right to present written statements in my behalf instead of the administrative board proceedings. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

**Figure 3–2. Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued**

a.  (initial) I hereby *waive my right* to submit written statements.

b.  (initial) Statements in my own behalf are submitted herewith and attached as enclosures.

7.  I understand that I have the right, up until the date the separation authority orders, directs, or approves my separation, *to withdraw any waiver of my rights* that I may have submitted.  If I had a right to a board hearing and waived that right, I can withdraw the waiver and request a hearing before an administrative board.

8.  I understand that if I have been ordered to undergo a medical or mental status evaluation and refuse to comply with the order, or willfully fail to undergo such examination or evaluation, separation action will be taken without an examination or evaluation.

9. I understand that there is no automatic upgrading or review by any Government agency of any characterization of service that is less than honorable.  After discharge, I may apply to the Army Discharge Review Board or the Army Board for Correction of Military Records if I wish review of my characterization of service.  I realize that consideration by either board does not imply that my characterization of service will be upgraded.

*(Insert the following as paragraph 10 if the soldier is considered for separation based on fraudulent entry.  Renumber later paragraphs if this paragraph is used.)*

**Figure 3–2. Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued**

10. I understand that if I am being considered for separation for fraudulent entry my enlistment may be voided under certain circumstances and that all pay and allowances will be suspended immediately upon verification of the fraudulent entry.

11. I have retained a copy of the Notification Memorandum and a copy of this completed endorsement and I submit the following statement of understanding:

UNDERSTANDING:  I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my waiver options.  Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived *(If none, write "NONE")*.

*Encl*                                        *(Signature of individual)*

                                          *(Typed name, SSN, grade)*

*(Entries will be made in the following statement, where indicated, by the counsel for consultation if the soldier elects to consult with consulting counsel.)*  Having been advised by me of the basis for *(His) (Her)* contemplated separation and its effects, the rights available to *(Him) (Her)*, and the effect of a waiver of *(His) (Her)* those rights, *(Soldier's*

**Figure 3–2. Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued**

name)_____ personally made the choices indicated

in the foregoing endorsement.

*(Signature of counsel)*

*(Typed name, SSN, grade, branch)*

*(Date counsel signed statement)*

**Figure 3–2. Format for Soldier's response by endorsement to notification of separation proceedings when the Notification Procedure is used—Continued**

*(Letterhead)*

*(Office Symbol)*                                                    *(Date)*

THRU: *(Intermediate commander(s), if any)*

FOR: *(Separation authority)*

SUBJECT: Commander's Report for Separation Under AR 135-178, *(Enter appropriate chapter)*.

1.    Under the provisions of AR 135-178, chapter *(number)*, paragraph *(number)*, I recommend _____*(Name and grade of soldier)*_____ be separated from _____*(See Note 1)*_____prior to the expiration of *(his)(her)* term of military service, and that *(His)* *(Her)* service be *(Uncharacterized)*, or characterized as *(Honorable)* *(General (under honorable conditions)* *(Under Other than Honorable Conditions)*.

**Figure 3–3. Format for commanding officer's report to the separation authority**

2. In accordance with AR 135-178, *(paragraph 3-4) (paragraph 3-10)*, I have notified the soldier of these proceedings and the characterization of service I have recommended. Following are my reasons for the recommended action(s) and characterization of service:

a. *(Commander will insert here the specific and factual reasons for the recommended action(s) and characterization of service.)*

b. *(Insert here a statement why the commander does not consider it feasible or appropriate to accomplish other disposition of the case.)*

c. *(See Note 2. Insert a recommendation regarding the soldier's potential to perform useful service if ordered to active duty to meet mobilization requirements.)*

3. I hereby provide the following information and facts relative to this report:

a. The soldier's:

(1) Organization of assignment.

(2) Current reported home address.

(3) Date of birth.

(4) Date of current enlistment/reenlistment agreement, term of service, and the date the contractual or statutory military service obligation (whichever is the later) will expire.

(5) Retirement year ending (RYE) date and the total years of qualifying service for retired pay at age 60 accrued by the last RYE date.

(6) Aptitude area scores and DMOS:

(7) PMOS, SMOS, and AMOS, if any:

(8) Results of the Common Task Test (CTT):

**Figure 3–3. Format for commanding officer's report to the separation authority—Continued**

b. Military history:

(1)  Summary of previous military service, if any, including tours of active duty or active duty for training.

(2)  Promotion(s) and dates thereof.

(3)  Reduction(s) and dates thereof.

(4)  Citations or awards.

c.  Counseling/rehabilitation:

(1)  Record of NCOER counseling (DA Form 2166-7-1), if appropriate.

(2)  Record of counseling, if applicable.

(3)  Description of rehabilitation attempts, if applicable.

(4)  Evidence of rehabilitation, where unfavorable information has been revealed.

(5)  Other applicable records.

d.  Medical/mental examinations or evaluations:

(1)  Report of Mental Status Evaluation or psychiatric report *(is) (is not)* enclosed, if applicable.

(2)  Report of Medical Examination *(is) (is not)* enclosed, if applicable.

e.  Record of other disciplinary action including nonjudicial punishment (include offense(s), findings, and sentence).

f.  Medical or other data meriting consideration in the overall evaluation to separate the soldier and in the determination as to the appropriate characterization of service.

g.  Favorable communications or recommendations for the soldier.

h.  Other information considered pertinent to this case:

**Figure 3–3. Format for commanding officer's report to the separation authority—Continued**

4.  When a soldier is being processed for *separation for alcohol or other drug abuse rehabilitation failure* (AR 135-178, chap 11) include--

a.  A statement that the commander, in consultation with the rehabilitation team, has determined that further rehabilitative efforts are not practical, rendering the rehabilitation a failure.  Documentation indicating this must be included with the statement.

b.  A chronological history of the soldier's alcohol/drug abuse. Inclusion of limited use evidence (AR 600-85) is discretionary. (If limited use evidence is included, the provisions of AR 135-178, paras 2-10*f* and 3-17*f* apply.)

c.  Circumstances *(to include dates)* concerning soldier's referral, initial screening interview, medical evaluation *(when conducted)*, and enrollment in the ADAPCP.

d.  A summary of the rehabilitation efforts made before and after soldier was enrolled in the ADAPCP to include--

(1) Dates of detoxification, if applicable.

(2) Extent *(to include dates)* of counseling and other rehabilitative efforts made by the ADAPCP facility.

(3) Extent *(to include dates)* of counseling and other rehabilitative efforts made by the unit chain of command.


5.  In addition, where soldier is recommended for *separation for unsatisfactory participation* (AR 135-178, chap 13) include--

a.  The reason why the soldier has been determined to be an unsatisfactory participant to include dates and notification procedures.

b.  Records of certified mailings.

**Figure 3–3. Format for commanding officer's report to the separation authority—Continued**

c.  Record of participation during current term of service.

d.  List assignments and duties under different officers and noncommissioned officers in each organization or unit during the current term of service. Include the duration of each assignment.


6.  The memorandum of notification and soldier's response by endorsement, or record of result of delivery by certified mail (including inability to deliver, refusal to accept, and failure or refusal to respond) are attached as enclosures.


Encls                                  *(Initiating commander's signature)*

                                       *(Typed name, grade, branch)*


*Notes:*

1.  Select the appropriate entry from the following:
a.  The (Name of State, Commonwealth, or Territory) Army National Guard. (Use this entry where soldier is to be transferred as a Reserve of the Army.)
b.  The (Name of State, Commonwealth, or Territory) Army National Guard and as a Reserve of the Army. (Use this entry where soldier is to be discharged from all military service obligation.)
c.  The U.S. Army Reserve.

2.  To be used when required by the Mobilization Asset Transfer Program (AR 135-178, chap 1, sec V) and only for separation reasons cited in AR 135-178, paragraph 1-22b.


**Figure 3–3. Format for commanding officer's report to the separation authority—Continued**

*(Letterhead)*

S: *(Enter date of suspense)*

*(Office Symbol)*                                                              *(Date)*

MEMORANDUM FOR *(Soldier's name, SSN, grade, and organization of assignment)*

SUBJECT: Notification of Separation Proceedings Under AR 135-178, Chapter *(Enter appropriate chapter)*.

1. Under the provisions of AR 135-178, *(Indicate specific chapter, section and paragraph)*, I am initiating action to separate you from *(See note below)* for *(Indicate narrative reason)*. The reasons for my proposed action are: *(State specific, factual details which constitute the basis for the proposed action)*.

2. I am recommending that upon separation you receive a(n) *(Indicate one of the following: Honorable characterization of service, General (under honorable conditions) characterization of service, Under Other than Honorable characterization of service, or Uncharacterized description of service).* My recommendation and your reply will be submitted through intermediate commanders (if any) to the Separation Authority, *(Enter*

**Figure 3–4. Format for notification of separation proceedings when the Administrative Board Procedure is used**

*name, rank, and organization of the separation authority)*, who will make the final decision in your case.

3.  The intermediate commander(s) and the separation authority are not bound by my recommendation as to characterization of service.  The separation authority may direct that your service be characterized as honorable, general (under honorable conditions), under other than honorable conditions, or you may receive an uncharacterized description of service if you are in an entry level status.  However, the separation authority may not direct the issuance of a type of discharge or characterization of service less favorable than that recommended by an administrative separation board should you request a hearing before an administrative separation board.

4.  *(Select and enter the appropriate paragraph from the following:)*

*(Use for ARNGUS)*

4.  If my recommendation is approved, the proposed separation could result in your discharge from the Army National Guard and as a Reserve of the Army; your discharge from the Army National Guard and transfer to the Individual Ready Reserve; or your release from custody and control of the Army.

*(Use for USAR)*

4.  If my recommendation is approved, the proposed separation could result in your discharge from the Reserve of the Army; transfer or reassignment from your U.S. Army

**Figure 3–4. Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued**

Reserve unit to the Individual Ready Reserve; or your release from custody and control of the Army.

5. I am suspending separation action for 45 days to give you an opportunity to exercise the following rights:

a. You have the right to consult with an appointed counsel; military counsel of your choice, if he or she is reasonably available, or civilian counsel at your own expense.

(1) If you desire an appointed counsel for consultation, notify this command *before completing the response* by endorsement and the name and phone number of the appointed counsel will be provided.

(2) If you desire a military counsel of your choice, provide this command with the officer's name and grade *before completing the response* by endorsement and if the officer is reasonably available, he or she will be appointed counsel for consultation.

(3) If you retain civilian counsel at no expense to the government, recommend the counsel be retained *before completing the response* by endorsement.

b. You have the right to obtain copies of documents that will be sent to the separation authority supporting the basis for the proposed separation. (Classified documents may be summarized.)

c. You have the right to request a hearing before an administrative board.

**Figure 3–4. Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued**

d.  You have the right to representation at the administrative board by military counsel that will be designated (see para 6 below). A military counsel of choice is not authorized.

e.  You have the right to representation at the administrative board by civilian counsel at your own expense and at no expense to the Government.

f.   You have the right to present written statements on your behalf instead of the administrative board proceedings.

g.  Except as explained in paragraph 6 below, you have the right to waive the rights listed above in paragraphs a through f in writing, and you may withdraw any such waiver at any time before the date the separation authority orders, directs, or approves your separation.

h.  Except as explained in paragraph 6 below, you may submit a conditional waiver of your right to an administrative board proceeding contingent upon receiving a characterization of service higher than the least favorable characterization of service authorized for the basis of your proposed separation.

6.  Waiver of the right to an administrative board hearing (para 5c(3)) and waiver of the right to representation by counsel at board hearings (para 5d or e) will not be accepted if you have completed 18, but less than 20, years of qualifying service for retired pay.

**Figure 3–4. Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued**

*(Insert this paragraph when required per paragraph 1-8 and renumber the following paragraphs.)*

7.   You are required to undergo a medical evaluation in accordance with AR 40-501. Arrangements have been made for this examination and you are to report to *(Location)* at *(Time)* on *(Date)*.  (See para 1-8.)

*(Insert this paragraph when required per paragraph 1-8 and renumber the following paragraphs.)*

7.   You are required to undergo a mental status evaluation in accordance with AR 40-501. Arrangements have been made for this examination and you are to report to *(Location)* at *(Time)* on *(Date)*.  (See para 1-8.)

8.   You must complete the attached endorsement acknowledging receipt of this memorandum and indicating the election of your rights.  *A copy of this memorandum with the completed endorsement attached, must be delivered to the address shown on the endorsement within 30 days from the date of your receipt of this memorandum of notification.*  Any statement or documents you desire to submit in your behalf must be received by me within 30 calendar days after you receive this memorandum, unless you request and receive an extension for good cause shown. Unless an extension is granted, failure to deliver the completed endorsement within 30 days of the date of your receipt of this memorandum will constitute a waiver of your rights in paragraphs 4*a* through 4*h* above.

**Figure 3–4. Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued**

Encl                                    *(Commander's signature)*

                                        *(Typed name, grade, branch)*


*Note:*  Enter one of the following, as appropriate: the Army National Guard of the United States; the Army National Guard and Reserve of the Army; the U.S. Army Reserve; your USAR organization of assignment.


**Figure 3–4. Format for notification of separation proceedings when the Administrative Board Procedure is used—Continued**

(NOTE: The commander issuing the notification memorandum (fig 3-4) will prepare and partially complete the following endorsement and enclose it with the notification memorandum.  The soldier will complete the endorsement by making the appropriate entries where indicated and return the endorsement attached to a copy of the notification memorandum.)

(*Insert Soldier's Last Name*) (*Insert Memo Office Symbol/Date*)  1st End

(*Insert Preparer's Name and Telephone Number*)

SUBJECT:  Notification of Separation Proceedings Under AR 135-178, Chapter (*Insert the appropriate chapter*)

(*Insert the soldier's full name, SSN, address, and organization of assignment*)

(*Soldier will enter date of response here*)

FOR COMMANDER (*Insert the complete organization address shown on memorandum*)

1.  I hereby acknowledge receipt of the Notification of Separation Proceedings Under AR 135-178, Chapter (*Insert the appropriate chapter*) dated (*Insert the date of memorandum*). I understand I may expect to encounter substantial prejudice in civilian life if my service is characterized as General (under honorable conditions), or under other than honorable conditions. I further understand that, as the result of issuance of a discharge where the service is characterized as Under Other Than Honorable conditions, I may be ineligible for many or all benefits as a veteran under both Federal and State laws.

**Figure 3–5. Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used**

2. Before completing this response, I understand that *I have the right to consult* with an appointed counsel for consultation; or military counsel of my own choice, if he or she is reasonably available, or civilian counsel at my own expense. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

 a. <u>(initial)</u> I have *exercised my right* and I have consulted with counsel in preparation of this response to the notification memorandum. I have been advised by my consulting counsel of the basis for the contemplated action to separate me for *(Enter the reason)* under AR 135-178, *(Enter appropriate chapter)*, and its effects; of the rights available to me; and the effect of any action taken by me in waiving my rights. The counsel has confirmed this by entering and signing the statement at the end of this endorsement; or

 b. <u>(initial)</u> I hereby *waive my right to consult* with an appointed counsel for consultation; or military counsel of my own choice, or civilian counsel at my own expense.

3. I understand I have the right to obtain copies of documents that will be sent to the separation authority supporting the basis of my proposed separation. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

 a. <u>(initial)</u> I hereby request copies of the documents.

**Figure 3–5. Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued**

    b.    <u>(initial)</u> I hereby *waive my right* to obtain copies of documents.

4. I understand I have a right to a hearing before an administrative board. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

    a.    <u>(initial)</u> I hereby *exercise my right to a hearing* before an administrative separation board. I understand that after having requested appearance before the board, my willful failure to appear before the board will constitute a waiver of my rights to personal appearance before the board, unless I am in civil confinement. *(When requesting a board hearing the soldier must also initial one of the following subparagraphs:)*

    (1) <u>(initial)</u> I request a counsel for representation at the hearing be designated.

    (2) <u>(initial)</u> I *waive my right* to a counsel for representation at the board hearing (see para 9 below).

    b.  <u>(initial)</u> I hereby *waive my right to a hearing* before an administrative separation board (see para 9 below).

5. I have the right to representation at the administrative board by civilian counsel at my own expense and at no expense to the Government.   *(The soldier will exercise this right by initialing the following paragraph:)*

    <u>(initial)</u> I have retained, or will retain, civilian counsel.

**Figure 3–5. Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued**

6.  I understand I have the right to present written statements in my behalf instead of the administrative board proceedings.  *(The soldier will exercise this right by initialing one of the following paragraphs:)*

  a.  (initial) Statements in my own behalf are submitted herewith and attached as enclosures.

  b.  (initial) I hereby *waive my right* to submit written statements.


7.  I understand that I may submit a waiver of my right to an administrative board, except as explained in para 9 below, on the condition that I receive a characterization of service higher than the least favorable characterization of service authorized in my separation action.  I understand that the separation authority may decline to accept my conditional waiver.  A request for a conditional waiver may be enclosed with this response, or in addition to but separate from this response, but in either case I understand it must be received by the commander by the suspense date shown on the Notification Memorandum.  I understand that my request may be disapproved. See AR 135-178, paragraph 3-15b.


8.  Except as explained in paragraph 9 below, I understand that I have the right, up until the date the separation authority orders, directs, or approves my separation, *to withdraw any waiver of my rights* that I may have granted above.  If I had a right to a board hearing and waived that right, I can withdraw the waiver and request a hearing before an administrative board.

**Figure 3–5. Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued**

9.  Waiver of the right to an administrative board hearing (para 4a) and waiver of the right to representation by counsel at board hearings (para 4b(1)) will not be accepted if I have completed 18, but less than 20, years of qualifying service for retired pay.

10. I understand that if I have been ordered to undergo a medical or mental status evaluation and refuse to comply with the order, or willfully fail to undergo such examination or evaluation, separation action will be taken without an examination or evaluation.

*(Insert the following as paragraph 11 if the soldier is considered for separation based on fraudulent entry.  Renumber later paragraphs if this paragraph is used.)*

11.  I understand that if I am being considered for separation for fraudulent entry my enlistment may be voided under certain circumstances and that all pay and allowances will be suspended immediately upon verification of the fraudulent entry.

12. I understand that there is no automatic upgrading or review by any Government agency of any characterization of service that is less than honorable.  After discharge, I may apply to the Army Discharge Review Board or the Army Board for Correction of Military Records if I wish review of my characterization of service.  I realize that consideration by either board does not imply that my characterization of service will be upgraded.

13. I have retained a copy of the Notification Memorandum and a copy of this completed endorsement and I submit the following statement of understanding:

**Figure 3–5. Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued**

UNDERSTANDING: I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my waiver options. Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived *(If none, write "NONE")*.


*Encl*                               *(Signature of individual)*

                               *(Typed name, SSN, grade)*



*(Entries will be made in the following statement, where indicated, by the counsel for consultation if the soldier elects to consult with consulting counsel.)* Having been advised by me of the basis for *(His) (Her)* contemplated separation and its effects, the rights available to *(Him) (Her)*, and the effect of a waiver of *(His) (Her)* those rights, *(Soldier's name)*_____ personally made the choices indicated in the foregoing endorsement.


                               *(Signature of counsel)*

                               *(Typed name, SSN, grade, branch)*

                               *(Date counsel signed statement)*


**Figure 3–5. Format for Soldier's response by endorsement to notification of separation proceedings when the Administrative Board Procedure is used—Continued**

*(Letterhead)*

*(Office Symbol)*                                                                    *(Date)*

FOR: *(Appropriate Commander in Basic Memorandum)*

SUBJECT: Request for Conditional Waiver--Separation Under AR 135-178, Chapter *(Enter appropriate chapter number)*.

1.  I hereby submit this request for conditional waiver and voluntarily waive my right to a hearing before an administrative separation board *on the condition* that upon separation my service will be characterized as *(The soldier will make known an election by initialing one of the following paragraphs:)*

a.  ___(initial)_____  Honorable.

b.  ___(initial)_____  General (under honorable conditions).

I am making this request of my own free will and have not been subjected to any coercion whatsoever by any person.

2.  Before submitting this request, I understand that *I have the right to consult* with an appointed counsel for consultation; or military counsel of my own choice, if reasonably

**Figure 3–6. Format of request for conditional waiver of administrative board proceedings**

available, or civilian counsel at my own expense. *(The soldier will exercise this right by initialing one of the following paragraphs:)*

a.  __(initial)_____  I have *exercised my right* and I have consulted with counsel in preparation of this request for a conditional waiver of my right to a hearing before an administrative board.  I have been advised by my consulting counsel of the basis for the contemplated action to separate me for *(Enter the reason)* under AR 135-178, *(Enter appropriate chapter)*, and its effects; of the rights available to me; and the effect of any action taken by me in waiving my rights.  The counsel has confirmed this by entering and signing the statement at the end of this endorsement; or

b.  __(initial)_____  I hereby *waive my right to consult* with an appointed counsel for consultation; or military counsel of my own choice, or civilian counsel at my own expense.

3.  I understand I have the right to present written statements in my behalf instead of the administrative board proceedings.  *(The soldier will exercise this right by initialing one of the following paragraphs:)*

a.  __(initial)_____  Statements in my own behalf are submitted herewith and attached as enclosures.

b.  __(initial)_____  I hereby *waive my right* to submit written statements.

**Figure 3–6. Format of request for conditional waiver of administrative board proceedings—Continued**

4.  I understand that I may, up until the date the separation authority orders, directs, or approves my separation, withdraw this waiver and request that an administrative board hear my case.

5.  I understand that if the separation authority refuses to grant my request for a conditional waiver of a hearing before an administrative board, my case will be referred to an administrative board and a military counsel will be designated as my counsel for representation at the board hearings.

6.  I understand I may expect to encounter substantial prejudice in civilian life if my service is characterized as General (under honorable conditions), or under other than honorable conditions. I further understand that, as the result of issuance of a discharge where the service is characterized as Under Other Than Honorable conditions, I may be ineligible for many or all benefits as a veteran under both Federal and State laws.

7  I understand that if my service is characterized as less than  honorable, I may make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading; however, I realize that consideration by either board does not imply that my discharge will be upgraded.

8.  I have retained a copy of this statement.

**Figure 3–6. Format of request for conditional waiver of administrative board proceedings—Continued**

UNDERSTANDING: I have read and understand each of the statements above and understand that they are intended to constitute all promises whatsoever concerning my conditional waiver. Any other promise, representation, or commitment made to me in connection with my separation is written below in my own handwriting or is hereby waived (if none, write *"NONE"*).

*Encl*                                                    *(Signature of individual)*

                                                          *(Typed name, SSN, grade)*

Having been advised by me of the basis for *(His)(Her)* contemplated separation and its effects, the rights available to *(Him)(Her)* and the effect of a waiver of *(His)(Her)* rights, *(Soldier's Name)* personally made the choices indicated in the foregoing statement.

                                                          *(Signature of counsel)*

                                                          *(Typed name, SSN, grade, branch)*

                                                          *(Date counsel signed statement)*

**Figure 3–6. Format of request for conditional waiver of administrative board proceedings—Continued**

# Chapter 4
# Expiration of Service Obligation

## 4–1. Basis
A Soldier will be discharged from the Army upon expiration of the later of the term of contractual service or the statutory MSO.

## 4–2. The MSO
The period of military service required for all enlisted Soldiers will be in accordance with applicable laws and DOD directives. Contractual terms of enlistment or reenlistment are as set forth in AR 140-111, AR 601-210, AR 601-280, and NGR 600-200.

   *a. Statutory MSO.* A person whose initial entry into military service was on or after 1 June 84 incurred an obligation under 10 USC 651(a) to serve a period of 8 years in the military service from the date of entry unless sooner discharged for personal hardship. Unless reenlisted or extended for a term of service that exceeds the expiration date of the statutory MSO, or retained as prescribed in paragraph 2-15, the Soldier will be discharged on the expiration of the statutory MSO by the separation authority (para 1-10).

   *b. Contractual MSO.* On enlistment and reenlistment, a Soldier enters into an agreement to serve in a Regular or Reserve component of the armed forces for a specified term of service. The contracted term of service may expire during, run concurrent with, or exceed the term of an incurred statutory MSO. Unless reenlisted or extended, a Soldier will be discharged from military service on expiration of a contractual MSO, or a statutory MSO, whichever is the later, by the separation authority (para 1-10). Consider the following examples:

   (1) A Soldier enlists in the ARNGUS for 6 years and incurs an 8-year statutory MSO. On completion of the 6 years, unless reenlisted or extended in the ARNGUS, the Soldier will be separated from the ARNGUS and transferred as a Reserve of the Army to the USAR. Unless reenlisted or extended in the USAR, the Soldier will be discharged from the USAR on completion of the 8-year statutory MSO.

   (2) A Soldier enlists in the USAR for 8 years with a concurrent assignment to a (TPU under the 6 x 2 option (6 years TPU and 2 years IRR) and incurs an 8-year statutory MSO. Unless reenlisted in the USAR for a term of service that exceeds the expiration date of the statutory MSO, the Soldier may request reassignment to the IRR on completion of the 6 years, or remain assigned to the TPU. In either case, unless sooner reenlisted or extended, the Soldier will be discharged from the USAR on expiration of the 8-year statutory MSO.

   (3) A Soldier enlists or reenlists in the ARNGUS or USAR for a term of service that exceeds the expiration date of the 8-year statutory MSO. Unless sooner reenlisted or extended, the Soldier will be discharged from the ARNGUS or USAR on expiration of the enlistment or reenlistment agreement.

   (4) A Soldier having no incurred statutory MSO remaining, enlists or reenlists in the ARNGUS or USAR. Unless sooner reenlisted or extended, the Soldier will be discharged from the ARNGUS or USAR on expiration of the enlistment or reenlistment agreement.

## 4–3. Retention beyond expiration of service obligation
A Soldier may not be held in the Army beyond the normal expiration of service obligation unless the service obligation is extended by law or the provisions of paragraph 2-15 apply. When through administrative error a Soldier is not discharged on the actual date of completion of term of enlistment, reenlistment, or date of completion of statutorily obligated service, or as provided in paragraph 2-15, a remark will be included in the "Remarks" section of the Soldier's DA Form 2-1 as follows: "Retained beyond normal discharge date for the convenience of the Government."

## 4–4. Voluntary separation of Soldiers on indefinite re-enlistments
   *a.* Army Reserve Soldiers serving on indefinite re-enlistments desiring a voluntary separation for reasons not specifically covered in this regulation must submit requests through command channels to the authority cited in paragraph 1–10.

   (1) Soldiers requesting voluntary separation under this provision will indicate the reason(s) for voluntary separation.

   (2) Such requests generally will be denied if the Soldier has an unfulfilled service obligation as a result of training or a service remaining obligation.

   (3) If requests are approved, Soldiers will be separated under the provisions of this chapter, as they are considered to have fulfilled the MSO.

   *b.* Soldiers applying for separation may request specific separation dates. Requested separation dates will not be more than 6 months after the date of the application.

#### 4–5. Characterization of service

The service of a Soldier being discharged on expiration of the term of an enlistment, reenlistment, or on fulfillment of a statutory MSO will be characterized as honorable except as provided in paragraph 1-26.

#### 4–6. Separation authority

The appropriate authority cited in paragraph 1-10 can order separations under this chapter.

## Chapter 5
## Selected Changes in Service Obligations

#### 5–1. Basis

A Soldier may be separated on the basis of a reason set forth in this chapter. The separation actions and the characterization of service are as prescribed for the reason for separation.

#### 5–2. Reduction in authorized strength of the USAR or ARNGUS

*a. Early separation.* Soldiers may be discharged from Reserve of the Army status prior to expiration of their service obligations when budgetary constraints or authorization limitations require a reduction in enlisted strength. The Secretary of the Army or his or her designee will authorize this reduction and will direct the CNGB and the CAR to issue discharge instructions pertaining to a Soldier or to all Soldiers of a specified class or category of personnel. Discharge may be voluntary or involuntary, except for enlisted Soldiers with at least 18 but fewer than 20 years of service qualifying for retired pay who meet other requirements of 10 USC 1176(b).

*b. Procedures.* The Notification Procedure chapter 3, section II, will be used for involuntary discharges under this paragraph. However, the notification memorandum may contain information other than that shown in figure 3-1, as the notification will be based on information and instructions furnished by HQDA.

*c. Characterization of service.* The service of Soldiers discharged under this paragraph will be characterized as honorable unless an uncharacterized description of service is required by paragraph 2-11.

*d. Separation authority.* On receipt of instructions from CNGB and CAR, the authorities cited in paragraphs 1-10*a* and 1-10*b*, may order discharge under this paragraph.

#### 5–3. Discharge for immediate reenlistment

*a. Immediate reenlistment.* Enlisted Soldiers who immediately reenlist for continuing service in the ARNGUS in accordance with NGR 600-200, or in the USAR in accordance with AR 140-111, as appropriate, will be discharged effective the date preceding the date of the immediate reenlistment agreement.

*b. Discharge certificate.* A formal discharge certificate will not be issued when a Soldier is discharged under this paragraph.

*c. Discharge order.* Use orders format 500. Under additional instructions insert the following: "Your enlistment in, or assignment to, the (ARNGUS or USAR) on (date) was terminated on the effective date of this order as a result of your immediate reenlistment in the (ARNGUS or USAR) on (date). No formal discharge certificate will be issued."

*d. Characterization of service.* The service of a Soldier discharged in accordance with this paragraph will be characterized as honorable.

*e. Separation authority.* The authorities cited in paragraph 1-10 may order discharge under this paragraph.

#### 5–4. Discharge on enlistment in another component of the U.S. Armed Forces

*a. Enlistment in a regular or reserve component.* Except as cited in *c* below, a Reserve of the Army Soldier will be discharged on enlistment or reenlistment in any regular or reserve component of the U.S. armed forces, other than—

(1) Enlistment in the ARNGUS. The Soldier will be transferred as a Reserve of the Army to the ARNGUS in accordance with AR 140-10, paragraph 5-2.

(2) Appointment as a cadet or midshipman to one of the Service academies. An enlisted Soldier of the ARNGUS will be discharged from the ARNG in accordance with NGR 600-200 and transferred to the Service academy as a Reserve of the Army in accordance with AR 140-10, paragraph 1-6.

*b. Enlistment in the SROTC.* ARNGUS and USAR Soldiers who execute a USAR enlistment on enrollment in the SROTC with assignment to Control Group (ROTC) in accordance with AR 145-1, paragraph 3-15, will be discharged from their current ARNGUS or USAR enlistment agreements effective the date preceding the date of enlistment as a cadet in the SROTC.

*c. Discharge limitation.* Discharge to enlist in a regular or reserve component of any of the U.S. Armed Forces, other than the Army, is not authorized for enlisted Soldiers within the 60-day period immediately preceding the effective date of order to AD or active duty for training (ADT) other than annual training (AT) or during the

performance of AD (except extended active duty (EAD), ADT, or AT). A Soldier serving on EAD in the Active Army may be discharged as a Reserve of the Army to enlist in the Regular Army under AR 601-280.

*d. Discharge certificate.* A formal discharge certificate will not be issued when a Soldier is discharged under this paragraph.

*e. Discharge order.* Use orders format 500. The effective date of discharge will be the date preceding the date of enlistment in the U.S. Armed Force. Under additional instructions insert the following: "Your enlistment in, or assignment to, the (ARNGUS or USAR) on (date) was terminated on the effective date of this order, preceding the date of your enlistment in the (Enter the name of the Regular or Reserve component). No formal discharge certificate will be issued."

*f. Characterization of service.* The service of a Soldier discharged in accordance with this paragraph will be characterized as honorable unless an uncharacterized description of service is authorized in accordance with paragraph 2-11.

*g. Separation authority.* The authorities cited in paragraph 1-10*a* and 1-10*b*, may order discharge under this paragraph.

## 5–5. Discharge on appointment as a commissioned or warrant officer

*a. Acceptance of appointment.* An enlisted Soldier (including a cadet) will be discharged on acceptance of an appointment as—

(1) An officer or warrant officer in any regular or reserve component of the U.S. Armed Forces.

(2) A commissioned officer in the Public Health Service.

(3) A commissioned officer of the National Oceanic and Atmospheric Administration Corps.

*b. Discharge limitation.* Before such discharge, the separation authority must have documentary evidence proving that the Soldier will be appointed as a commissioned or warrant officer upon discharge from enlistment.

*c. Discharge order.* Use orders format 500. The effective date of discharge will be the date preceding the date of appointment as an officer or warrant officer. Under additional instructions insert the following: "Your enlistment in, or assignment to, the (ARNGUS or USAR) on (date) was terminated on the effective date of this order, preceding the date of your appointment as an officer or warrant officer in the (Enter the name of the Regular or Reserve component). No formal discharge certificate will be issued."

*d. Characterization of service.* The service of a Soldier discharged in accordance with this paragraph will be characterized as honorable unless an uncharacterized description of service is authorized in accordance with paragraph 2-11.

*e. Separation authority.*

(1) The authorities cited in paragraph 1-10*a* and 1-10*b*, may order discharge under this paragraph.

(2) The authorities cited in paragraph 1-10*b*(4) may order the discharge of ROTC cadets on appointment as an officer.

(3) The authorities cited in paragraph 1-10*b*(5) may order the discharge of a WOC on appointment as a warrant officer.

## 5–6. Separation of cadets on disenrollment from the Senior ROTC or an ROTC Scholarship Program

*a. Disenrollment.* ROTC cadets enrolled in the SROTC Advanced Course or an ROTC Scholarship Program are assigned members of (Control Group ROTC) (AR 140-1) of the IRR, unless they are participating in the ROTC/Simultaneous Membership Program (ROTC/SMP) in accordance with AR 601-210, chapter 10, or NGR 600-200. The disposition of a cadet who is disenrolled from the ROTC Program is prescribed by AR 145-1, chapter 3, section VI, and AR 135-91, paragraph 3-12.

*b. Disposition.* The separation authority may order that a cadet be—

(1) Discharged from the USAR citing this paragraph as the authority; or

(2) Retained in the IRR under the MATP in accordance with chapter 1, section V.

*c. Characterization of service.* The service of cadets discharged or retained under the provisions of this paragraph will be described as uncharacterized.

*d. Procedures.*

(1) The procedures for separation of cadets under this paragraph will be governed by AR 135-91, paragraph 3-12, and AR 145-1, chapter 3, section VI.

(2) The notification procedures of chapter 3 of this regulation are not applicable to separations under this paragraph.

(3) The MATP policy prescribed by chapter 1, section V, will govern whether the cadet is eligible to be retained in the IRR and assigned to Control Group (Annual Training) or (Reinforcement).

*e. Separation authority.* The authorities cited in paragraph 1-10*b*(4) are authorized to order the separation of cadets under this paragraph.

**5–7. ROTC cadet early release**

The provisions of this paragraph, and separations hereunder, are applicable only where HQDA has authorized and announced a voluntary ROTC cadet release program.

   *a. Characterization of service.* The service of cadets discharged under the provisions of this paragraph will be uncharacterized.

   *b. Procedures.* The requirements for the early release of cadets will be provided in the HQDA announcement. If authorized by the HQDA announcement, eligible cadets may be retained in the IRR and reassigned to Control Group (Annual Training) or (Reinforcement) under the MATP in accordance with chapter 1, section V. However, the following is applicable to ROTC cadets assigned to USAR units who are SMP participants.

   (1) Cadets who enlisted in the ARNGUS prior to enrollment in the SROTC, and have a remaining statutory MSO will, after disenrollment from the SROTC, be retained in their ARNGUS unit in an enlisted grade determined under NGR 600-200, paragraph 6-44, and serve under the terms of their ROTC SMP agreement.

   (2) Cadets who enlisted in the USAR, completed required IET, were awarded an MOS prior to enrollment in the SROTC, and have a remaining statutory MSO will, after disenrollment from the SROTC, be retained in a USAR unit in an enlisted grade determined in accordance with AR 600–8–19, chapter 10, and serve under the terms of their ROTC SMP agreement.

   (3) Except for cadets identified in (1) and (2) above, ROTC cadets will be offered an opportunity to remain assigned to their ARNGUS or USAR unit and serve under the terms of their ROTC SMP agreement. However, cadets who decline continuing unit participation in an enlisted status will be discharged from the USAR by the appropriate separation authority.

   *c. Separation authority.* The authorities cited in paragraph 1-10*b*(4) are authorized to order the separation of cadets under this paragraph.

**5–8. Discharge of a potential ROTC/SMP participant**

   *a. Criteria.* A Soldier who enlisted as a potential participant in the ROTC/SMP in accordance with AR 601-210, chapter 10, with duty status coded 09R10, and who applies but is not accepted for enrollment in the ROTC advanced course will be discharged on his or her request.

   *b. Characterization of service.* The service of Soldiers discharged under the provisions of this paragraph will be uncharacterized unless an honorable characterization is warranted in accordance with paragraph 2-11*a*.

   *c. Separation authority.* The authorities cited in paragraph 1-10*a* and 1-10*b*, may order discharge under this paragraph.

# Chapter 6
# Convenience of the Government

**6–1. Basis**

A Soldier may be separated for the convenience of the Government on the basis of the reasons set forth in this chapter.

**6–2. Dependency or hardship**

Upon the request of a Soldier and approval of the separation authority, separation may be directed when it is considered that continued membership and service on AD, full-time National Guard duty (FTNGD), or ADT, would result in genuine dependency or undue hardship.

   *a. Criteria for separation.* Separation may be approved when all of the following circumstances exist:

   (1) The hardship or dependency is not temporary;

   (2) Conditions have arisen or have been aggravated to an excessive degree since entry in the Army, and the Soldier has made every reasonable effort to remedy the situation;

   (3) The administrative separation will eliminate or materially alleviate the condition; and

   (4) There are no other means of alleviation reasonably available.

   *b. Limitation of criteria for separation.* The following circumstances do not justify separation because of dependency or hardship. However, the existence of these circumstances does not preclude separation because of dependency or hardship provided the application meets the criteria in *a*above.

   (1) Normal pregnancy of a Soldier's wife is not a condition for which his separation is justified.

   (2) Undue hardship does not necessarily exist solely because of altered income, separation from family, or the inconvenience normally incident to military service.

   *c. Conditions of dependency or hardship.*

   (1) *Dependency.* Dependency exists when, because of death or disability of a member of a Soldier's family, other members of his or her family become principally dependent on him or her for care or support to the extent that continued membership and service on AD, FTNGD, or ADT, would result in undue hardship.

(2) *Hardship.* Hardship exists when, in circumstances not involving death or disability of a member of a Soldier's family, separation from the service would materially affect the care or support of the Soldier's family by materially alleviating undue hardship.

(a) *Parenthood.* A married Soldier who becomes a parent by birth, adoption, or marriage (step parent) and whose children under 18 years of age reside within the household, may apply for separation under hardship. The Soldier must submit evidence in accordance with paragraph *e*below that the roles of parent and Soldier are incompatible and that he or she cannot fulfill his or her military obligation on AD, FTNGD, or ADT, without neglecting the children.

(b) *Sole parents.* Soldiers who are sole parents and whose children under 18 years of age reside within the household may apply for separation under hardship. A "sole parent" is a parent who is single by reason of never being married, or is divorced or legally separated and has been awarded child custody by judicial decree or court order, or is a widow or widower. Basis for separation is as prescribed in (a) above.

(c) *Intent.* It is not the intent of the Army to arbitrarily allow the separation of an enlisted woman who remained in the service during her pregnancy and then requests release immediately after receiving the medical and monetary benefits related to her prenatal and postnatal absence and delivery.

(d) *Supporting evidence.* Supporting evidence will be provided in accordance with paragraph *e*below. Paragraph 6–4*e*(2) below minimizes the supporting evidence when the basis is parenthood of either a sole parent or a married Soldier. However, Soldiers must meet the application criteria in paragraph *d*below, in addition to the requirement that there be unexpected circumstances beyond the Soldier's control justifying separation. An example of these circumstances is the birth of a child with a serious birth defect requiring constant care. Inability to obtain an approved Family Care Plan (AR 600-20) does not qualify the Soldier for separation under this provision.

(3) *Members of the family.* For the purpose of separation under dependency or hardship conditions, the term "members of the family" includes only spouse, children, father, mother, brothers, sisters, and any person who stood *in loco parentis*to the Soldier before enlistment. (The term "*in loco parentis*", as used here, means "any person who has stood in the place of a parent to a Soldier for 5 continuous years when the Soldier was a child.")

d. *Application for separation.* A Soldier must submit a written application to be separated because of dependency or hardship. A request for separation will be submitted as follows:

(1) An ARNGUS, or USAR Soldier assigned to a TPU or IMA duty position, must submit a written application to the unit commander who will immediately forward it with recommendations and Soldier's records through channels to the separation authority (para 1-10) for final action.

(2) A Soldier assigned to the IRR, Standby Reserve, or Retired Reserve, must submit a written application to the Commander, HRC–St. Louis, ATTN: AHRC-PAR, 1 Reserve Way, St. Louis, MO 63132-5200. The Chief, Regional Personnel Actions Division, will immediately forward it with recommendations and Soldier's records through the Director, Personnel Actions and Services Directorate, and Director, Enlisted Personnel Management Directorate, to the Commander, HRC–St. Louis (para 1-10*b*(1)) for final action.

e. *Evidence required.* The evidence required for dependency or hardship separation will normally be in affidavit form. The evidence must substantiate dependency or hardship conditions on which the application for separation is based.

(1) The evidence will include affidavits or statements submitted by or in behalf of the Soldier's dependents and by at least two disinterested persons or agencies having firsthand knowledge of the circumstances. If dependency or hardship is the result of disability of a member of the individual's family, a physician's certificate should be furnished showing specifically when such disability occurred, the nature thereof, and prognosis for recovery. There also will be furnished the names, ages, occupations, home addresses, and monthly incomes of other members of the applicant's family. The affidavits of disinterested individuals and agencies should include reasons within their knowledge that these members of the family can or cannot aid in the financial or physical care of the dependents concerned for the period the Soldier is to continue membership or is ordered to AD, FTNGD, or ADT. When the basis for the application is the death of a member of the Soldier's family, a death certificate or other proof of death should be furnished.

(2) If the basis for the application is parenthood of either a sole parent or a married Soldier, the supporting evidence will be in affidavit form and will substantiate the applicant's claim that unexpected circumstances or circumstances beyond his or her control have occurred. These circumstances prevent fulfillment of military obligations without resultant neglect of the child. Affidavits from the Soldier's immediate commander and officer who is the job supervisor will be considered sufficient. Evidence in (1) above is not required for these applications; however, sole parenthood resulting from divorce or legal separation will be substantiated by a judicial decree or court order awarding child custody to the Soldier.

f. *Procedures.* On receipt of a written application with required supporting evidence, the separation authority will—

(1) Consider carefully the facts on which the request is based.

(2) Obtain any other information that may be necessary to determine the validity of the request.

(3) Take final action to approve or disapprove the application.

# 6–3. Pregnancy
When it has been determined that a Soldier was pregnant at the time of her enlistment, she will be processed in

accordance with paragraph 6-6. When it has been determined that a Soldier became pregnant after her enlistment, she will be allowed to elect one of the options under the provisions of AR 135-91, chapter 4, section V, except as follows:

*a. Discharge for pregnancy.*

(1) On her request, a Soldier who meets all of the following criteria, will be discharged from military service when it has been determined that the pregnancy occurred after she was processed for enlistment; and

*(a)* She has not entered on initial active duty for training (IADT) or ever completed IET; and

*(b)* She has not incurred an active duty obligation as a result of a federally subsidized program.

(2) On her request, a Soldier may be discharged when it has been determined that the pregnancy occurred after she was processed for enlistment and the separation authority determines she is eligible but possesses no potential to perform useful service if ordered to active duty to meet mobilization requirements in accordance with paragraph 1-25.

*b. Application for discharge.* A Soldier who meets the criteria in *a* above may submit a written application to be discharged because of pregnancy.

(1) The Soldier may request a specific discharge date, which will not be later than 30 days prior to the expected date of delivery. This date may be accelerated by the separation authority if the applicant cannot fully meet the performance requirements of her duty MOS.

(2) A request for separation will be submitted as follows:

*(a)* An ARNGUS Soldier, or USAR Soldier assigned to a TPU or IMA duty position, may submit a written application to the unit commander who will immediately forward it with recommendations and Soldier's records through channels to the separation authority (para 1-10) for final action.

*(b)* A Soldier assigned to the IRR or Standby Reserve may submit a written application to the Commander, HRC–St. Louis, ATTN: AHRC-PAR, 1 Reserve Way, St. Louis, MO 63132-5200. The Chief, Soldier Support Division, will immediately forward it with recommendations and Soldier's records through the Director, Personnel Actions and Services Directorate, and Director, Enlisted Personnel Management Directorate, to the Commander, HRC–St. Louis (para 1-10*b*(1)) for final action.

*c. Pregnancy terminated prior to discharge.* If, before discharge is accomplished, a medical doctor determines that the Soldier's pregnancy has terminated for any reason, discharge under this paragraph is no longer authorized.

## 6–4. Surviving sons or daughters

*a. Criteria.* A Soldier who becomes a surviving son or daughter after having enlisted or reenlisted, may apply for and promptly will be discharged. For the purpose of this paragraph, a surviving son or daughter is any son or daughter in a family in which the father or mother or one or more of the sons or daughters:

(1) Have been killed in action or have died when serving in the U.S. Armed Forces from wounds, accident, or disease.

(2) Are in a captured or missing-in-action status.

(3) Have a permanent 100-percent service-related disability (including 100-percent mental disability), as determined by the Director of Veterans Affairs or one of the military services, and are not gainfully employed because of the disability.

*b. Ineligible.* A Soldier may not apply for discharge as a surviving son or daughter under any of the following circumstances:

(1) When the Soldier has court-martial charges pending against him or her.

(2) When the Soldier has been convicted by court-martial with appellate review in process.

(3) When the Soldier is serving a sentence to confinement, or is otherwise undergoing punishment, imposed by a court-martial.

(4) When the Soldier is being processed for involuntary administrative separation for cause.

(5) During a period of war or National emergency declared by the Congress.

*c. Waiver.* A Soldier who—

(1) After having been advised of the provisions in paragraph *a* above, enlists, reenlists, or voluntarily extends his or her term of service after having been notified of the family casualty on which the surviving status is based, will be considered as having waived his or her rights to request separation based on the determination that he or she is a surviving son or daughter.

(2) Has waived his or her right to discharge as a surviving son or daughter, in accordance with (1) above, may request reinstatement of that status at any time. However, a request for reinstatement shall not be granted automatically, but shall be considered on the merits of the individual case. Approval for reinstatement rests with the separation authority in accordance with paragraph 1-10.

*d. Application.* A Soldier who meets the criteria in *a* above may submit a written application to be discharged as a surviving son or daughter.

(1) The application will include the following information:

*(a)* Name, grade, service number (when appropriate), Social Security number, branch of service (that is, Army), relationship, and date of death or disability of the family member on which request is based.

*(b)* DVA Claim Number, if appropriate.

*(c)* Name, age, and sex of other family members.

(2) The application will be submitted as follows:

*(a)* An ARNGUS Soldier, or USAR Soldier assigned to a TPU or IMA duty position, may submit a written application to the unit commander who will immediately forward it with recommendations and Soldier's records through channels to the separation authority (para 1-10) for final action.

*(b)* A Soldier assigned to the IRR or Standby Reserve may submit a written application to the Commander, HRC–St. Louis, ATTN: AHRC-PAR, 1 Reserve Way, St. Louis, MO 63132-5200. The Chief, Regional Personnel Actions Division, will immediately forward it with recommendations and Soldier's records through the Director, Personnel Actions and Services Directorate, and Director, Enlisted Personnel Management Directorate, to the Commander, HRC–St. Louis (para 1-10*b*(1)) for final action.

*e. Verification.* Commanders authorized to approve discharge are also authorized to verify status of deceased or disabled family members by forwarding a request, including name, grade, service number (when appropriate), Social Security number, approximate inclusive dates of service, and branch of the Armed Forces to the National Personnel Records Administration, National Personnel Records Center, 9700 Page Ave., St. Louis, MO 63132-5200.

## 6–5. Involuntary separation due to parenthood

*a. General.* A Soldier may be separated by reason of parenthood if, as a result thereof, it is determined under the guidance set forth in chapter 2, section I, the Soldier is unable satisfactorily to perform his or her duties or is unavailable for world wide assignment or deployment if ordered to AT, AD, FTNGD, or ADT.

*b. Counseling.* Commanders will ensure that before recommending separation under this paragraph, the Soldier has been adequately counseled concerning deficiencies and has been afforded the opportunity to overcome those deficiencies as reflected in appropriate counseling or personnel records. See AR 600-20, paragraph 5-5, concerning a Soldier's responsibilities for care of family members as related to military responsibilities.

## 6–6. Not medically qualified under procurement medical fitness standards

*a.* Discharge will be accomplished on determination that a Soldier was not medically qualified under procurement medical fitness standards when accepted for enlistment, or who became medically disqualified under these standards prior to entry on IADT. A Soldier found to be not medically qualified under procurement medical fitness standards will be discharged on the earliest practicable date following such determination and prior to entry on IADT.

*b.* A basis for discharge exists when—

(1) A medical finding of the Staff Surgeon that the Soldier has a medical condition that—

*(a)* Would have permanently disqualified him or her from entry in the Army had it been detected or had it existed at the time of enlistment; and

*(b)* Does not disqualify him or her from retention under the provisions of AR 40–501, chapter 3.

(2) A Soldier is found positive for drugs as a result of accession testing on or after 1 June 1988.

(3) A Soldier is found to have been pregnant on enlistment. Pregnancy is a disqualifying medical condition for enlistment under AR 40–501, AR 601–210, and NGR 600–200. Women who are discharged under this paragraph for pregnancies that existed prior to entry service (EPTS) pregnancies) are not entitled to maternity care as provided in AR 40–400, paragraph 3–39. The option of separation authorities provided elsewhere in the chapter to retain Soldiers recommended for discharge does not apply to EPTS pregnancies.

*c.* This paragraph is not to be used in personality disorder cases. Such cases will be processed under paragraph 6–7.

## 6–7. Other designated physical or mental conditions

*a. Criteria.* The separation authority (para 1-10) may approve discharge under this paragraph on the basis of other physical or mental conditions not amounting to disability (AR 635-40) that potentially interfere with assignment to or performance of military duty. Such conditions may include, but are not limited to, chronic airsickness or seasickness, enuresis, sleepwalking, dyslexia, severe nightmares, claustrophobia, personality disorder, and other disorders manifesting disturbances of perception, thinking, emotional control or behavior sufficiently severe that the Soldier's ability to perform military duties effectively is significantly impaired.

*b. Personality disorder.* In cases of personality disorder, the diagnosis must be made by a psychiatrist or doctoral-level clinical psychologist with necessary and appropriate professional credentials who is privileged to conduct mental health evaluations for DOD components. This condition is a deeply ingrained, maladaptive pattern of behavior of long duration, which interferes with the Soldier's ability to perform his or her duty. Exceptions are combat exhaustion and other acute situational maladjustment. Separation on the basis of personality disorder is authorized only if the diagnosis concludes that the disorder is so severe that the Soldier's ability to function effectively in the military environment is significantly impaired.

*c. Counseling.* Discharge processing may not be initiated until the Soldier has been counseled formally concerning deficiencies and has been afforded an opportunity to overcome those deficiencies as reflected in appropriate counseling or personnel records.

*d. Limitation.* Discharge for personality disorder is not appropriate when discharge is warranted under other chapters of this regulation. For example, if discharge is warranted on the basis of unsatisfactory performance (chap 9), the Soldier should not be discharged under this paragraph regardless of the existence of a personality disorder. Nothing in this paragraph precludes separation of a Soldier having a condition as described in *a* above under any other reason authorized by this regulation.

*e. Medical evaluation.* When a commander determines that a Soldier may have a medical or mental condition that interferes with the Soldier's performance of duty and contemplates initiation of separation under this paragraph, the commander will refer the Soldier for a medical or mental health evaluation (or both). Commanders referring Soldiers for a mental status evaluation must comply with the provisions of DOD Directive 6490.1 and AR 600-20.

## 6–8. Characterization of service
The service of a Soldier separated under this chapter will be characterized as honorable unless an uncharacterized description of service is required by paragraph 2-11, or a characterization of general (under honorable conditions) is warranted under chapter 2, section III.

## 6–9. Procedures
*a.* For separations under paragraphs 6-2, 6-3, and 6-4, prior to characterization of service of general (under honorable conditions), the Soldier will be notified of the specific factors in the service record that warrant such a characterization, and the Notification Procedure (chap 3, section II) will be used.

*b.* For separations under paragraphs 6-5, 6-6, and 6-7, the Notification Procedure (chap 3, section II) will be used.

*c.* For separation under paragraph 6-3 the MATP policy prescribed by chapter 1, section V, will govern whether the Soldier will be discharged from the Army, or retained in, or transferred/reassigned to the IRR.

## 6–10. Separation authority
*a.* The authorities cited in paragraph 1-10 may order separation under this chapter.

*b.* The involuntary separation of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1-11).

# Chapter 7
# Defective Enlistments and Reenlistments

## 7–1. Minority enlistments
*a. Basis*

(1) *Under age 17.* A minor under 17 years of age is barred from entering into a valid enlistment. The enlistment is void in the case of a minor who was under 17 years of age at date of enlistment and who has not attained the age of 17 on receipt of satisfactory evidence of the date of his or her birth.

(2) *Age 17.* Except when retained for the purpose of trial by court-martial, the Soldier will be separated in the following circumstances:

*(a)* There is satisfactory evidence that the Soldier is under 18 years of age, and

*(b)* The Soldier enlisted without the written consent of his or her parent or guardian; and

*(c)* An application for the Soldier's separation has been submitted to the Soldier's command by the parent or guardian within 90 days of the Soldier's enlistment.

*b. Description of separation.*

(1) A Soldier separated under *a*(1) above will receive an order of release from the custody and control of the Army (by reason of void enlistment) (Orders Format 505, AR 600-8-105).

(2) The separation of a Soldier under *a*(2) above will be described as an entry level separation and the service will be uncharacterized.

*c. Procedure.* The Notification Procedure (chap 3, sec II) will be used.

*d. Separation authority.* The authorities cited in paragraph 1-10 may order separation under this paragraph.

## 7–2. Erroneous enlistment, reenlistment, and extension
*a. Basis.* A Soldier may be discharged on the basis of an erroneous enlistment, reenlistment, or extension of enlistment under the guidance set forth in chapter 2, section I. An enlistment, reenlistment, or an extension of enlistment is erroneous in the following circumstances, if—

(1) It would not have occurred had the relevant facts been known by the Government or had appropriate regulations been followed;

(2) It was not the result of fraudulent conduct on the part of the Soldier; and

(3) The defect is unchanged in material respects.

*b. Actions on discovery.* When it is discovered that a Soldier's enlistment, reenlistment, or extension is erroneous because he or she failed to meet the qualifications for enlistment, reenlistment, or extension (AR 140-111, AR 601-210, AR 601-280, or NGR 600-200), as applicable, the unit commander (CDR, HRC–St. Louis (AHRC-EP-S), for IRR, IMA, or Standby Reserve Soldiers) will initiate action to retain, discharge, or release the Soldier, as appropriate, under the provisions of this paragraph. The unit commander (CDR, HRC–St. Louis (AHRC-EP-S), for IRR, IMA, or Standby Reserve Soldiers) will forward the case through channels to the appropriate separation authority (para 1-10) with the following information:

(1) Facts relating to and circumstances surrounding the erroneous enlistment or extension.

(2) The desire of the Soldier regarding retention or discharge.

(3) A statement by the immediate commander as to the Soldier's conduct, efficiency, and overall value to the Army.

(4) A specific recommendation for retention or discharge, and the reasons, by each commander in the chain of command.

*c. Actions by separation authority.* The separation authority will—

(1) Direct retention:

*(a)* In an exceptionally meritorious case involving a disqualification listed as non-waivable in AR 140-111, AR 601-210 or AR 601-280, when, in the judgment of the separation authority, retention of the Soldier is definitely in the best interest of the Army and retention is otherwise in accordance with law. The following statement will be entered in Item 27 of the Soldier's Personnel Qualification Record (DA Form 2-1): "Discharge action based on erroneous enlistment or extension is waived and retention is authorized by."

*(b)* In those cases in which the disqualification was waivable or the defect is no longer present and retention is deemed to be in the best interest of the Army and the Soldier. The Soldier's Personnel Qualification Record will be annotated as in (1)(a) above.

(2) Direct separation.

*(a)* In those cases in which the disqualification was waivable or the defect is no longer present and discharge is requested by the Soldier and deemed to be in the best interest of the Army. (Format 500, AR 600-8-105).

*(b)* In all cases in which the disqualification was nonwaivable, initiate separation proceedings, except in extremely meritorious cases as described in paragraph *c*(1)(a) above.

*(c)* When it has been established that an enlistment is erroneous because it was effected without the voluntary consent of a person who has the capacity to understand the significance of the enlistment (to include persons intoxicated or insane at enlistment) and a constructive enlistment did not arise within the same term of service, issue orders releasing the person from custody and control of the Army by reason of a void enlistment (Format 505, AR 600-8-105). The following entry will be made in Item 27, DA Form 2-1: "Released from custody and control of the Army by virtue of a void enlistment (cite order number and issuing headquarters)." A copy of the orders releasing the individual will be filed as a permanent document in his or her MPRJ and OMPF.

*(d)* When it has been established that an enlistment is erroneous because the individual is a deserter from another military service, issue orders releasing the person from custody and control of the Army by reason of a void enlistment (Format 505, AR 600-8-105), regardless of any subsequent constructive enlistment.

*(e)* If before an enlistee's departure from a military entrance processing station, if it is discovered that he or she was erroneously enlisted in a circumstance, set forth in DODD 1332.14, enclosure 3, subparagraph E3.A1.1.5.2, the enlistment will be voided as follows. The military entrance processing station commander will revoke any orders already issued regarding the enlistee's assignment and training and will issue an order assigning the individual to the adjacent RBN. The RBN commander will issue orders releasing the person from custody and control of the Army by reason of a void enlistment (Format 505, AR 600-8-105).

*d. Characterization or description of service.*

(1) When discharged under paragraph *c*(2)(a) above, service will be characterized as honorable unless an uncharacterized description of service is required by paragraph 2-11*a*.

(2) When separated under paragraphs *c*(2)(b) through (e) above, the separation will be described as a release from custody and control of the Army and service will not be characterized.

*e. Procedure*

(1) If the command recommends the Soldier be retained in military service, the initiation of separation proceedings is not required if the separation authority approves the recommendation.

(2) If separation processing is initiated, the Notification Procedure (chap 3, sec II) will be used.

*f.* Separation authority. The authorities cited in paragraph 1-10 may order separation under this paragraph.

## 7–3. Defective enlistments or reenlistments

*a. Basis.* A defective enlistment or reenlistment agreement exists in the following circumstances:

(1) As a result of a material misrepresentation by recruiting or retention personnel, upon which the Soldier reasonably relied, and the Soldier was induced to enlist or reenlist with a commitment for which the Soldier was not qualified; or

(2) The Soldier received a written enlistment or reenlistment commitment from recruiting or retention personnel for which the Soldier was qualified, but which cannot be fulfilled by the Army; or

(3) The enlistment or reenlistment was involuntary.

*b. Characterization or description.* Service will be characterized as honorable, unless an uncharacterized description of service, or an order of release from custody and control of the Army (by reason of void enlistment) is required under chapter 2, section III.

*c. Requirements.* This provision does not bar appropriate disciplinary action or other administrative separation proceedings regardless of when the defect is raised. Separation is appropriate under this provision only in the following circumstances:

(1) The Soldier did not knowingly participate in creation of the defective enlistment or reenlistment;

(2) The Soldier brings the defect to the attention of appropriate authorities within 30 days after the defect is discovered or reasonably should have been discovered by Soldier;

(3) The Soldier requests separation instead of other authorized corrective action; and

(4) The request otherwise meets such criteria as established by this regulation.

*d. Separation authority.* The authorities cited in paragraph 1-10 may order separation under this paragraph.

## 7–4. Fraudulent enlistments or reenlistments

*a. Basis.* A Soldier may be separated under the guidance set forth in chapter 2, section I, on the basis of procurement of a fraudulent enlistment or reenlistment through any deliberate material misrepresentation, omission, or concealment which, if known at the time of the enlistment or reenlistment might have resulted in rejection. This includes all disqualifying information requiring a waiver. However, the enlistment of a minor with false representation as to age without proper consent will not in itself be considered as fraudulent enlistment.

*b. Establishing fraud.* The following tests must be applied in each case of suspected fraudulent enlistment or reenlistment to establish that the enlistment or reenlistment was, in fact, fraudulent.

(1) *First test.* Commanders will determine if previously concealed information is in fact disqualifying. This information will be evaluated using the appropriate criteria for enlistment or reenlistment. Any waivable or nonwaivable disqualification concealed, omitted, or misrepresented constitutes fraudulent entry. This includes concealing information with alleged or actual recruiter connivance. If, however, the newly revealed information does not amount to a disqualification from enlistment or reenlistment under the appropriate regulation, then there is no fraudulent enlistment or reenlistment. Hence, the enlistment or reenlistment is valid and separation may not be directed.

(2) *Second test.* Commanders must verify the existence and true nature of the apparently disqualifying information. Verification of the actual offense may reveal that the enlistee was not disqualified and, therefore, is not a fraudulent enlistee. For example, if the Soldier alleged that he or she was convicted of burglary and placed on probation, inquiries must be made whether he or she was actually convicted of burglary. In fact, he or she may have initially been charged with burglary, but it may have been reduced to trespass, which is a minor non traffic offense for enlistment purposes. If it is the only record that the Soldier has, he or she is not disqualified for enlistment or reenlistment. Hence, the enlistment or reenlistment is valid and separation may not be directed. To conduct an inquiry using these tests to establish existence of fraud, a delay of 30 days is considered reasonable.

*c. Fraudulent actions.* The following represent some, but not all, of the actions which, when verified, substantiate the existence of a fraudulent enlistment or reenlistments.

(1) Concealment of a prior separation from any of the Armed Forces of the United States under conditions barring enlistment or reenlistment in the ARNGUS or USAR.

(2) Concealment of true citizenship status by an alien at the time of enlistment or reenlistment.

(3) Concealment by a Soldier of a conviction by civil court for a criminal offense for which the Soldier was sentenced to imprisonment, probation, or parole, or given a suspended sentence.

(4) Concealment of a record as a juvenile offender.

(5) Concealment of medical defect or disability that would have precluded enlistment or reenlistment in the ARNGUS or USAR for the purpose of fraudulently obtaining veteran's benefits, hospitalization, disability retirement, monetary benefits, or a position to which the person would not otherwise be entitled.

(6) Concealment of absence without leave or desertion from an Armed Force of the United States.

(7) Misrepresentation of intent with regard to legal custody of children. Wherein a Soldier without a spouse at the time of enlistment certified that children were not under his or her legal custody and then following enlistment, custody of the children is regained by court decree, as provided by State law, or as a result of the children resuming residency with the Soldier instead of the legal custodian.

(8) Concealment disqualification. Where a Soldier has procured entry into the ARNGUS or USAR by assuming the identity of another individual, or by concealment of any fact, circumstances, or condition that existed prior to enlistment or reenlistment which would have made the Soldier ineligible.

*d. Characterization or description.* Characterization of service or description of separation will be in accordance

with chapter 2, section III. If the fraud involves concealment of a prior separation in which service was not characterized as honorable, characterization normally will be Under Other Than Honorable Conditions.

*e. Requirements.* The Notification Procedure (chap 3, sec II) will be used except as follows:

(1) Characterization of service Under Other Than Honorable Conditions may not be issued unless the Administrative Board Procedure (chap 3, sec III) is used.

(2) When the sole reason for separation is fraudulent entry, suspension of separation (chap 2, sec II) is not authorized. When there are approved reasons for separation in addition to fraudulent entry, suspension of separation is authorized only in the following circumstances:

*(a)* A waiver of the fraudulent entry is approved by the proper authority; and

*(b)* The suspension pertains to reasons for separation other than fraudulent entry.

(3) If the command recommends that the Soldier be retained in the ARNGUS or USAR, the initiation of separation processing is unnecessary in the following circumstances:

*(a)* The defect is no longer present; or

*(b)* The defect is waivable and a waiver is obtained from appropriate authority.

(4) If the material misrepresentation includes pre-service and prior-service homosexual conduct (para 10-2), the standards of paragraph 10-3 and procedures of paragraph 10-4 will be applied in processing separation under this section. In such a case the characterization of service or description of separation will be determined under *e* above.

*f. Separation authority.* The authorities cited in paragraph 1-10 may order separation under this paragraph.

# Chapter 8
# Entry Level Performance and Conduct

## 8–1. Basis

*a.* A Soldier may be separated under this chapter if he or she is notified of the initiation of separation proceedings while in an entry level status (see glossary) when it is determined under the guidance set forth in chapter 2, section I, that the Soldier is unqualified for further military service by reason of unsatisfactory performance or conduct (or both), as evidenced by inability, lack of reasonable effort, failure to adapt to the military environment or minor disciplinary infractions.

*b.* When separation of a Soldier in entry level status is warranted by unsatisfactory performance or minor disciplinary infractions (or both), the Soldier normally will be separated in accordance with this chapter. Nothing in this chapter prevents separation under another provision of this regulation when such is warranted.

## 8–2. Counseling and rehabilitation

Separation processing may not be initiated under this chapter until the Soldier has been formally counseled under the requirements prescribed by paragraph 2-4.

## 8–3. Characterization and description

The service of a Soldier who is separated under this chapter will be uncharacterized.

## 8–4. Procedures

*a.* The Notification Procedure (chap 3, sec II) will be used.

*b.* The MATP policy prescribed by chapter 1, section V, will govern whether the Soldier will be discharged, or transferred to the IRR.

## 8–5. Separation authority

The authorities cited in paragraph 1-10 may order separation under this paragraph.

# Chapter 9
# Unsatisfactory Performance

## 9–1. Basis

A Soldier may be discharged when it is determined under the guidance set forth in chapter 2, section I, the Soldier is unqualified for further military service by reason of unsatisfactory performance.

**9–2. Criteria**

*a.* Commanders will take action to discharge a Soldier for unsatisfactory performance when it is clearly established that—

(1) In the commander's judgment—

*(a)* A Soldier will not develop sufficiently to participate satisfactorily in further training or become a satisfactory Soldier; or

*(b)* The seriousness of the circumstances forming the basis for initiation of discharge proceedings is such that the Soldier's retention would have an adverse impact on military discipline, good order, and morale.

(2) There is a likelihood that the Soldier will be a disruptive influence in present or future duty assignments.

(3) There is a likelihood that the circumstances forming the basis for initiation of separation proceedings will continue or recur.

(4) The ability of the Soldier to perform duties effectively in the future, including potential for advancement or leadership, is unlikely.

(5) The Soldier meets retention medical standards (AR 40-501). See paragraph 1-8.

*b.* Commanders will initiate discharge action only when the Soldier is under military control. As an exception, commanders may initiate this action when a Soldier is confined by civil authorities and his or her military record indicates that he or she should be processed for separation by reason of unsatisfactory performance.

*c.* When a Soldier has committed serious acts of misconduct, commanders will not take action prescribed in this chapter in lieu of discharge for misconduct under chapter 12 solely to spare him or her penalties.

*d.* This chapter applies also to Soldiers who are pregnant and whose substandard duty performance is not attributable solely to the condition of pregnancy, such as, failure to report to duty without medical or military authorization.

*e.* Initiation of discharge proceedings is required for Soldiers without medical limitations who have two consecutive failures of the Army Physical Fitness Test, or who are eliminated for cause from Noncommissioned Officer Education System courses, unless the responsible commander chooses to impose a bar to reenlistment in accordance with AR 140-111, or NGR 600-200.

**9–3. Counseling and rehabilitation**

Discharge processing may not be initiated under this chapter until the Soldier has been formally counseled under the procedures prescribed by paragraph 2-4.

**9–4. Suspension of favorable personnel action**

Favorable personnel action will be suspended in accordance with AR 600-8-2 upon initiation of discharge proceedings under this chapter.

**9–5. Medical processing and evaluation**

Medical processing and evaluation guidance is listed in paragraph 1–8.

**9–6. Characterization of service**

The service of Soldiers discharged because of unsatisfactory performance will be characterized as honorable or general (under honorable conditions) in accordance with chapter 2, section III).

**9–7. Procedures**

*a.* The Notification Procedure (chap 3, sec II) will be used, except under *b* below.

*b.* The Administrative Board Procedure (chap 3, sec III) will be used if the Soldier has 18 but fewer than 20 years of qualifying service for retired pay.

**9–8. Separation authority**

*a.* The authority cited in paragraph 1-10 may order discharge under this chapter.

*b.* The discharge of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1-11).

## Chapter 10
## Homosexual Conduct

### Section I
### Policy

### 10–1. General policy
AR 600-20 contains general policies concerning homosexual conduct, including statutory provisions and commander guidelines for fact-finding inquiries. Pertinent definitions are included in the glossary. AR 195-2 provides guidance on criminal investigation of sexual misconduct. AR 380-67 offers guidance on personnel security and clearance matters related to homosexual conduct.

### 10–2. Discharge policy
*a.* Homosexual conduct is grounds for discharge from the ARNGUS and USAR under the criteria set forth in paragraph 10-3. This includes pre-service, prior-service, or current-service homosexual conduct. The term "homosexual conduct"includes homosexual acts, a statement by a Soldier that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted marriage. A statement by a Soldier that demonstrates a propensity or intent to engage in homosexual acts is grounds for discharge not because it reflects the Soldier's sexual orientation, but because the statement indicates a likelihood that the Soldier engages in or will engage in homosexual acts. A Soldier's sexual orientation is considered a personal and private matter, and is not a bar to continued service unless manifested by homosexual conduct as described in paragraph 10-3.

*b.* The foregoing does not preclude:

(1) Retention of the Soldier in the Army when it is determined that the purpose of the Soldier's homosexual conduct is to avoid or terminate military service.

(2) Trial by court-martial in appropriate cases. Conviction by a court-martial which did not impose a punitive discharge does not prevent initiation of administrative discharge proceedings under this chapter.

(3) Separation, in appropriate circumstances, for another reason specified in this regulation.

(4) When discharge under this chapter has been approved, retention of the Soldier for a limited period of time in the interests of national security. In such cases, the separation authority will submit a request for retention, with full particulars and rationale, to Chief, National Guard Bureau, ATTN: NGB-ARP, 2500 Army Pentagon, Washington, DC 20310-2500, for ARNGUS Soldiers, and to Commander, HRC–St. Louis, ATTN: AHRC-PAR, 1 Reserve Way, St. Louis, MO 63132-5200, for USAR Soldiers. Retention approved under this paragraph does not constitute suspension of separation as described in chapter 2, section II.

### 10–3. Criteria for discharge
Except as indicated, a Soldier will be discharged if one or more of the following findings have been made and approved by the separation authority:

*a.* The Soldier has engaged in, attempted to engage in, or solicited another person to engage in a homosexual act or acts, unless there are further approved findings that—

(1) Such acts are a departure from the Soldier's usual and customary behavior;

(2) Such acts under all the circumstances are unlikely to recur;

(3) Such acts were not accomplished by use of force, coercion, or intimidation;

(4) Under the particular circumstances of the case, the Soldier's continued presence in the Army is consistent with the interest of the Army in maintaining proper discipline, good order, and morale; and

(5) The Soldier does not have a propensity or intent to engage in homosexual acts. In determining whether retention is appropriate, separation boards/authorities must ensure that all of the foregoing conditions are met. Additionally, a determination as to whether retention is warranted under the limited circumstances is required if the Soldier clearly and specifically raises such limited circumstances. However, the Soldier bears the burden of proving, by a preponderance of the evidence, that retention is warranted under the limited circumstances.

*b.* The Soldier has made a statement that he or she is a homosexual or bisexual, or words to that effect, unless there is a further approved finding that the Soldier has demonstrated that he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. A statement by a Soldier that he or she is a homosexual or bisexual, or words to that effect, creates a rebuttable presumption that the Soldier engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts. The Soldier will be advised of this presumption and given the opportunity to rebut the presumption by presenting evidence demonstrating that he or she does not engage in, attempt to engage in, have a propensity to engage in, or intend to engage in homosexual acts. The Soldier bears the burden of rebutting the presumption. In determining whether a Soldier has successfully rebutted the presumption, some or all of the following may be considered:

(1) Whether the Soldier has engaged in homosexual acts.

(2) The Soldier's credibility.

(3) Testimony from others about the Soldier's past conduct, character, and credibility.

(4) The nature and circumstances of the Soldier's statement.

(5) Any other evidence relevant to whether the Soldier is likely to engage in homosexual acts.

*c.* The Soldier has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the persons involved).

## 10–4. Characterization or description of service

*a.* When the sole basis for separation is homosexual conduct, a discharge Under Other Than Honorable Conditions may be issued only if such characterization is warranted in accordance with chapter 2, section III, and if there is a finding that during the current term of service the Soldier attempted, solicited, or committed a homosexual act—

(1) By using force, coercion, or intimidation;

(2) With a person under 16 years of age;

(3) With a subordinate in circumstances that violate customary military superior-subordinate relationships;

(4) Openly in public view;

(5) For compensation;

(6) Aboard a military vessel or aircraft; or

(7) In another location subject to military control under aggravating circumstances noted in the finding that have an adverse impact on discipline, good order, or morale comparable to the impact of such activity aboard a vessel or aircraft.

*b.* In all other cases, the Soldier's service will be characterized or described in accordance with chapter 2, section III.

## 10–5. Separation authority

*a.* Commanders specified in paragraph 1-10 are authorized to order discharge for homosexual conduct.

*b.* HQDA approval is required before Soldiers who have completed 18 but fewer than 20 years of qualifying service for retired pay may be discharged (see para 1-11).

## Section II
## Procedures

## 10–6. Action by unit or immediate commander

*a.* If the unit/immediate commander, or another commander in the Soldier's chain of command, receives credible information that there is a basis for discharge for homosexual conduct, the commander will cause a fact-finding inquiry to be conducted in accordance with AR 600-20. Suspension of favorable personnel actions will be initiated in accordance with AR 600-8-2.

*b.* If the unit/immediate commander determines, based on the fact-finding inquiry, that a basis for discharge exists, he or she will—

(1) Submit a report, in memorandum format (fig 3-3) through any intermediate commander(s) to the separation authority.

(2) Take action required by the Administrative Board Procedure (chapter 3, section III). In the case of a Soldier who has made a statement that he or she is a homosexual or bisexual, or words to that effect, the memorandum for notification of discharge (fig 3-4) will specifically advise the Soldier of the rebuttable presumption provisions of paragraph 10-3*b*.

(3) Comply with paragraph 1-8 regarding medical examination and mental status evaluation.

## 10–7. Action by intermediate commanders

Intermediate commanders will take one of the following actions:

*a.* Disapprove the unit/immediate commander's recommendation when there is insufficient evidence that one or more of the circumstances for which discharge is authorized (para 10-3) has occurred.

*b.* Approve the unit/immediate commander's recommendation and forward it to the separation authority.

## 10–8. Action by separation authority

On receipt of a recommendation for discharge for homosexual conduct, the separation authority will take one of the following actions:

*a.* Disapprove the recommendation when there is insufficient evidence that one or more of the circumstances for which discharge is authorized (para 10-3) has occurred.

*b.* Disapprove the recommendation for discharge for homosexual conduct, and take other appropriate action, under this regulation, to determine whether the Soldier should be separated for another reason of which the Soldier has been duly notified.

*c.* Convene an administrative separation board, as prescribed in chapter 3, section III, to determine whether the Soldier should be discharged for homosexual conduct.

*d.* When the Soldier has waived the right to a hearing by an administrative separation board:

(1) Direct retention of the Soldier if the separation authority determines there is insufficient evidence to support discharge for homosexual conduct, unless there is another basis for separation of which the Soldier has been duly notified; or

(2) Direct discharge of the Soldier if the separation authority determines that one or more of the circumstances for which discharge is authorized (para 10-3) has occurred, unless retention is warranted under the limited circumstances described in paragraph 10-3*a*(1) through (5).

## 10–9. Administrative separation board

The board will follow the requirements outlined in paragraph 3-17 except as follows:

*a.* The board will make no inquiry or finding concerning sexual orientation.

*b.* If the board finds that one or more of the circumstances authorizing discharge under paragraph 10-3 is supported by the evidence, the board will recommend discharge unless the board makes specific findings that retention is warranted under the limited circumstances described in paragraph 10-3*a*(1) through (5).

*c.* If the board does not find that there is sufficient evidence that one or more of the circumstances authorizing discharge (para 10-3) has occurred, the board will recommend retention unless the case involves another basis for separation of which the Soldier has been duly notified.

## 10–10. Separation authority action after board hearings

The separation authority will follow the required actions specified in paragraph 3-18. Exceptions are as indicated below.

*a.* If the board recommends retention:

(1) Approve the finding and direct retention; or

(2) Forward the case to HQDA (para 1-12), when the board has recommended retention and the separation authority believes discharge is warranted and in the Army's best interest. HQDA may authorize discharge under chapter 14.

(3) Return the case to the board for compliance with this regulation if findings required by paragraph 10-3 have not been made.

*b.* If the board recommends discharge:

(1) Approve the finding and direct discharge; or

(2) Disapprove the finding on the basis that there is insufficient evidence to support the finding, or retention is warranted under the limited circumstances described in paragraph 10-3*a*(1) through (5).


# Chapter 11
# Substance Abuse Rehabilitation Failure

## 11–1. Basis

*a.* Initiation of discharge proceedings is required in the case of a Soldier who has been referred to a program of rehabilitation for personal substance abuse under the provisions of AR 600-85 and who fails through inability or refusal to participate in, cooperate in, or successfully complete the program in the following circumstances:

(1) There is a lack of potential for continued military service; or

(2) Long-term rehabilitation in a civilian medical facility is determined necessary.

*b.* A Soldier may be discharged when the commander, in consultation with an Army Substance Abuse Program official (AR 600-85), determines that further rehabilitation efforts are not practical, rendering the Soldier a rehabilitation failure, and discharge is in the best interest of the Army.

*c.* Nothing in this chapter precludes discharge of a Soldier who has been referred to such a program under any other provision of this regulation in appropriate cases.

## 11–2. Characterization or description

When a Soldier is discharged under this chapter, characterization of service as honorable or general (under honorable conditions) is authorized except when service is uncharacterized for Soldiers in entry level status.

*a.* The relationship between voluntary submission for treatment and the evidence that may be considered on the issue of characterization is set forth in paragraph 2-10*f*.

*b.* On the issue of whether mandatory urinalysis results may be considered on the issue of characterization of service, see para 2-10*g* and AR 600-85.

## 11–3. Procedures

*a.* The Notification Procedure (chap 3, sec II) will be used, except under *b*below.

*b.* The Administrative Board Procedure (chap 3, sec III) will be used if the Soldier has 18 but fewer than 20 years of qualifying service for retired pay.

## 11–4. Separation authority

*a.* The authorities cited in paragraph 1-10 may order discharge under this chapter.

*b.* The discharge of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1-11).


# Chapter 12
# Misconduct

## 12–1. Basis

A Soldier may be discharged for misconduct when it is determined under the guidance set forth in chapter 2, section I, that the Soldier is unqualified for further military service by reason of one or more of the following circumstances.

*a. Minor disciplinary infractions.* A pattern of misconduct consisting solely of minor disciplinary infractions. If separation of a Soldier in entry level status is warranted solely by reason of minor disciplinary infractions, the action will be processed under Entry Level Performance and Conduct (chap 8).

*b. A pattern of misconduct.* A pattern of misconduct consisting of discreditable involvement with civil or military authorities or conduct prejudicial to good order and discipline. Discreditable conduct and conduct prejudicial to good order and discipline include conduct which violate the accepted standards of personal conduct found in the UCMJ, Army regulations, the civil law, and time-honored customs and traditions of the Army.

*c. Commission of a serious offense.* Commission of a serious military or civilian offense, if the specific circumstances of the offense warrant discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ.

*d. Abuse of illegal drugs.* Abuse of illegal drugs is serious misconduct.Discharge action normally will be based upon commission of a serious offense. However, relevant facts may mitigate the nature of the offense. Therefore, a single drug abuse offense may be combined with one or more disciplinary infractions or incidents of other misconduct and processed for discharge under *a*or *b*above, as appropriate.

(1) All Soldiers against whom charges will not be referred to a court-martial authorized to impose a punitive discharge, or against whom separation action will not be initiated in accordance with chapter 11, will be processed for discharge under *a, b*, or *c* above, as applicable.

(2) "Processed for discharge" means that discharge actions will be initiated and processed through the chain of command to the separation authority for appropriate action.

(3) Voluntary (self) identification/referral in accordance with AR 600-85 does not require initiation of discharge proceedings under this paragraph.

*e. Civil conviction.* See paragraph 12-2, below.

## 12–2. Conviction by civil court

A Soldier may be discharged for misconduct when it is determined under the guidance set forth in chapter 2, section I, that the Soldier is unqualified for further military service by reason of a civil conviction.

*a. Conditions which subject Soldier to discharge.*

(1) Discharge action may be initiated against Soldiers under the following circumstances:

*(a)* When initially convicted by civil authorities, or action is taken that is tantamount to a finding of guilty (to include a similar adjudication in juvenile proceedings).

*(b)* When a punitive discharge would be authorized for the same or a closely related offense under the UCMJ, or the sentence by civil authorities includes confinement for 6 months or more without regard to suspension or probation.

*(c)* When specific circumstances of the offense warrant discharge.

(2) The immediate commander will consider whether to initiate discharge action against a Soldier when the criteria of *a*above are satisfied.

(3) Adjudication in juvenile proceedings includes adjudication as a juvenile delinquent, wayward minor, or youthful offender.

(4) If no discharge action is undertaken on a Soldier's final civil conviction after the passage of 2 years, it is presumed that the Soldier's commanding officer has determined that retention of the Soldier is in the best interest of the Army. However, this presumption may be rebutted and discharge action initiated when it is established by a preponderance of the evidence that the Soldier's commanding officer did not make such a determination.

*b. Appeals.* A Soldier will be considered as having been convicted or adjudged a juvenile offender even though an

appeal is pending or is subsequently filed. A respondent subject to discharge under this regulation will be considered and processed for discharge even though he or she has filed an appeal or has stated his or her intention to do so. However, execution of the approved discharge will be withheld until the Soldier has indicated in writing that he or she does not intend to appeal the conviction or adjudication as a juvenile offender, or until the time an appeal may be made has expired, whichever is earlier; or if an appeal has been made, until final action has been taken. On request of the Soldier or when the Soldier is present for duty and the commander believes his or her presence is detrimental to good order and discipline or the Soldier presents a threat to the safety and welfare of other members of the organization, it may be appropriate to discharge a Soldier prior to final action on an appeal. In such cases, the entire file will be forwarded to HQDA (para 1-12) for a final decision. The recommendation of the separation authority for immediate discharge as an exception will fully substantiate the circumstances on which the recommendation is based.

*c. Retention action.* Cases often arise that warrant consideration with a view toward retention of the Soldier in the Army.

(1) In determining whether retention should be recommended or approved, full consideration should be given to the gravity of the offense involved, the circumstances related to it and any matters in extenuation. Also, the military record of the Soldier prior to the commission of the offense should be considered as well as prospects for rehabilitation.

(2) If retention in the Army is desired and a form of civil custody exists, such as parole or probation, the nature of which would interfere with the Soldier's normal performance of military duties, civil authorities will be requested to relinquish such custody during the Soldier's term of military service. If the civil authorities decline to relinquish custody or if the conditions placed on relinquishment of custody are unduly burdensome to the Army, as a general rule, the Soldier will not be considered for retention, but will be discharged under this regulation.

*d.* Action following disposition by civil courts.

(1) When discharge is contemplated, while a Soldier is under military control, the unit commander will take action as specified in the Administrative Board Procedure (chap 3, sec III). Where the Soldier is confined, the provisions of paragraph 2-18 and chapter 3, section IV, are applicable.

(2) If the sole basis for discharge is conviction of a civil offense, counseling and rehabilitative efforts are not required prior to initiation of discharge action.

(3) When a board hearing has been properly waived, the case will be processed under the Notification Procedure and the separation authority will take action under paragraph 3-9.

## 12–3. Procedures for civil court cases in foreign countries

*a.* Discharge of Soldiers convicted by a foreign tribunal may be approved by outside continental United States (OCONUS) area commanders except as provided in paragraph *c* below. This authority may be delegated to an Army Reserve Command/General Officer Command commander with a judge advocate on his or her staff. Every action taken in such delegation will state the authority. When a Soldier is convicted by a foreign tribunal, and the Soldier returns to the United States before the initiation or completion of discharge proceedings in accordance with this paragraph, discharge proceedings will be initiated or completed in accordance with paragraph 12-2. The proceedings will be completed as if the Soldier had been convicted by a court of the United States or its territorial possession. However, the recommendation for discharge will include the items specified in *b*(1) through (4) below. In such cases, the authorities specified in paragraph 1-10 may approve and order discharge under this paragraph if the Soldier has been assigned to their command. However, HQDA (para 1-12) authorization is required before Soldiers who have completed 18 but fewer than 20 years of qualifying service for retired pay may be discharged. This provision is not intended to relieve OCONUS commanders of their responsibility to promptly initiate and process civil court cases on Soldiers of their command.

*b.* The commander will forward the board proceedings, or waiver, through channels to the OCONUS area commander. Cases will be processed through the chain of command to the commander in the United States authorized to approve discharge. In both situations, the recommendation regarding discharge will include—

(1) Information concerning the civil record and military service of the Soldier.

(2) A statement from the court indicating that the Soldier has been initially convicted.

(3) A statement as to the type of discharge and the character of service desired. This will include a statement as to whether paragraph 3-10 has been complied with.

(4) A report of the trial proceedings submitted by the official U.S. observer, if any, attending the trial or a transcript of the record of trial, if obtainable.

*c.* Soldiers confined in foreign prisons will not be discharged from military service until the term of imprisonment is completed and they return to the United States. Normally, Soldiers whose cases are disposed of by a foreign tribunal, but not confined, or who are confined but whose release from confinement is imminent, will be returned to the United States, or its territorial possessions for discharge. It is general policy that the Soldier will be returned to the continental United States. Very unusual cases may be forwarded through command channels to HQDA (para 1-12), with supporting reasons as to why a Soldier should be authorized discharge in a foreign country. Only most unusual situations will be considered. If discharge in a foreign country is desired, either by the commander or the Soldier concerned, this paragraph will be complied with before such requests are submitted to HQDA.

*d.* If HQDA authorizes discharge in a foreign country, the overseas commander accomplishing the discharge will inform the nearest U.S. diplomatic or consular mission of such action.

## 12–4. Related separations

Homosexual conduct shall be processed under chapter 10. Misconduct involving a fraudulent enlistment is considered under paragraph 7-4.

## 12–5. Counseling and rehabilitation

*a.* Separation processing for minor disciplinary infractions or a pattern of misconduct (paras 12-1*a* and *b*) will not be initiated under this chapter until the Soldier has been formally counseled under the requirements prescribed by paragraph 2-4.

*b.* If the sole basis for discharge is a single offense (paras 12-1c and d) or a civilian conviction or a juvenile adjudication (para 12-2), the counseling and rehabilitation requirements of paragraph 2-4 are not applicable.

## 12–6. Suspension of favorable personnel action

Favorable personnel action will be suspended in accordance with AR 600-8-2 upon initiation of separation processing under this chapter.

## 12–7. Medical processing and evaluation

Medical processing and evaluation guidance is listed in paragraph 1–8.

## 12–8. Characterization of service

*a.* Characterization of service normally will be Under Other Than Honorable Conditions, but characterization as General (under honorable conditions) may be warranted under the guidelines in chapter 2, section III.

*b.* For Soldiers who have completed entry level status, characterization of service as Honorable is not authorized unless the Soldier's record is otherwise so meritorious that any other characterization clearly would be inappropriate. In such cases, separations for misconduct with an Honorable characterization will be approved by the separation authority (para 1-10). As an exception, the separation authority will approve separations with service characterized as Honorable when the sole evidence of misconduct is command-directed urinalysis results, which cannot be used for characterization of service, or when an administrative discharge board has recommended separation with an Honorable characterization of service.

*c.* When characterization of service Under Other Than Honorable Conditions is not warranted for a Soldier in entry level status under chapter 2, section III, the service will be described as uncharacterized.

## 12–9. Procedures

*a.* The Administrative Board Procedure (chap 3, sec III) will be used, except under *b* below.

*b.* The use of the notification procedure is authorized provided characterization of service under other than honorable conditions is unwarranted.

## 12–10. Separation authority

*a.* The authority cited in paragraph 1-10 may order discharge under this chapter.

*b.* The discharge of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1-11).

# Chapter 13
# Unsatisfactory Participation in the Ready Reserve

## 13–1. Basis

*a.* A Soldier is subject to discharge for unsatisfactory participation when it is determined that the Soldier is unqualified for further military service because:

(1) The Soldier is an unsatisfactory participant as prescribed by AR 135-91, chapter 4; and

(2) Attempts to have the Soldier respond or comply with orders or correspondence have resulted in—

(a) The Soldier's refusal to comply with orders or correspondence; or

(b) A notice sent by certified mail was refused, unclaimed, or otherwise undeliverable; or

(c) Verification that the Soldier has failed to notify the command of a change of address and reasonable attempts to contact the Soldier have failed.

*b.* Discharge action may be taken when the Soldier cannot be located or is absent in the hands of civil authorities in accordance with the provisions of paragraph 2-18 and chapter 3, section IV.

*c.* Commanders will not take action prescribed in this chapter in lieu of disciplinary action solely to spare a Soldier who may have committed serious misconduct the harsher penalties that may be imposed under the UCMJ.

## 13–2. Suspension of favorable personnel action
Favorable personnel action will be suspended in accordance with AR 600-8-2 upon initiation of separation processing under this chapter.

## 13–3. Characterization of service
*a.* Characterization of service normally will be Under Other Than Honorable Conditions, but characterization as General (under honorable conditions) may be warranted under the guidelines in chapter 2, section III.

*b.* For Soldiers who have completed entry level status, characterization of service as Honorable is not authorized unless the Soldier's record is otherwise so meritorious that any other characterization clearly would be inappropriate. In such cases, separation for unsatisfactory participation with an Honorable characterization will be approved by the separation authority (para 1-10). As an exception, the separation authority will approve separation with service characterized as Honorable when an administrative separation board has recommended such characterization.

*c.* When characterization of service as Under Other Than Honorable Conditions is not warranted for a Soldier in entry level status under chapter 2, section III, the service will be described as uncharacterized.

## 13–4. Procedures
*a.* The Administrative Board Procedure (chap 3, sec III) will be used, except under *b* below.

*b.* Except for a Soldier who has 18 but fewer than 20 years of qualifying service for retired pay, the use of the Notification Procedure (chap 3, sec II) is authorized if a characterization of service Under Other Than Honorable Conditions is not warranted under chapter 2, section III.

*c.* The MATP policy prescribed by chapter 1, section V, will govern whether the Soldier will be discharged, or transferred to the IRR.

## 13–5. Separation authority
*a.* The authority cited in paragraph 1-10 may order separation under this chapter.

*b.* The separation of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (paras 1-11 and 1-12).

# Chapter 14
# Secretarial Plenary Authority

## 14–1. Basis
*a.* Separation under this paragraph is the prerogative of the Secretary of the Army. Secretarial plenary separation authority is exercised sparingly and seldom delegated. Ordinarily, it is used when no other provision of this regulation applies, and early separation is clearly in the best interests of the Army. Separations under this chapter are effective only if approved, in writing, by the Secretary of the Army or approved designee as announced in updated memoranda.

*b.* Secretarial separation authority is normally exercised on a case-by-case basis but may be used for a specific class or category of Soldiers. When used in the latter circumstance, it is announced by a special HQDA directive that may, if appropriate, delegate blanket separation authority to field commanders for the class or category of Soldiers concerned.

*c.* Individual cases that may be submitted to HQDA for consideration of separation under Secretarial plenary authority include those processed under paragraphs 2-3*a*, 3-18*e*, 3-18*f*(2)(b), and 10-10*a*(2). Other bases for separation under this paragraph include, but are not limited to, refusal to submit to medical care (AR 600-20), Human Immunodeficiency Virus (HIV) infection (AR 600-110), and when religious practices cannot be accommodated (AR 600–20).

## 14–2. Characterization of service
The service of Soldiers separated under this chapter will be characterized as Honorable or Under Honorable conditions as determined under chapter 2, section III, unless an uncharacterized description of service is warranted under paragraph 2-11.

## 14–3. Procedures
*a.* Separation under this paragraph may be voluntary or involuntary. When involuntary separation proceedings are initiated, the Notification Procedure (chap 3, sec II) will be used; however, the provision for requesting an administrative board (para 3-4*a*(7)) is not applicable. Unless waived by HQDA, medical examinations are required for Soldiers being processed for involuntary separation (para 1-8*a*).

*e.* Blanket or individual requests for separation under this paragraph will be submitted to the authorities cited in

paragraph 1-12. Chain of command forwarding endorsements must include rationale to support determination that early separation is in the best interest of the Army, as well as a statement whether the counseling requirements of paragraph 2-4 have been met. In addition, chain of command forwarding endorsements on individual cases must include recommendations concerning characterization or description of service and, when applicable, transfer or reassignment to the IRR (chap 1, sec V), recoupment of incentives or entitlements (AR 135-7), and award of separation pay.

# Chapter 15
# Separation for Other Reasons

## Section I
## Reasons for Separation

### 15–1. Basis

*a. Noncitizens.* Provided one of the following conditions exists, a noncitizen will be discharged.

(1) At the time of release from active duty, the Soldier fails or refuses to give a permanent mailing address within the United States or its territories but gives only an address in a foreign country; or

(2) Leaves the United States for permanent residence in a foreign country; or

(3) Visits a foreign country of which the Soldier is a national for a continuous period of 6 months or more.

*b. Ministers of religion and divinity students.* A Soldier will be discharged, upon request, if he or she is a regular or ordained minister of religion, or upon entering full-time training to become or to engage in full-time employment as a regular or duly ordained minister of religion.

(1) A minister of religion is classified as either a duly ordained minister of religion or a regular minister of religion as follows:

*(a) Duly ordained minister of religion.* A person who has been ordained in accordance with the ceremonial ritual or discipline of a church, religious sect, or organization, established on the basis of the community's doctrine and practices of a religious character, to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies in public worship, and who, as a regular customary vocation, teaches the principles of religion and administers the ordinances of worship as embodied in the creed or principles of such church, sect, or organization.

*(b) Regular minister of religion.* A person who as a customary vocation preaches and teaches the principles of the religion of a church, religious sect, or an organization of which the individual is a member without having been formally ordained as a minister of religion, but who is recognized by such church, sect, or organization as a regular minister.

(2) Requests for discharge will be supported by appropriate documentary evidence as follows:

*(a)* A statement from the appropriate authority of the church, religious sect, or organization that the Soldier has met the requirements for recognition and has been appointed a regular or duly ordained minister of religion and is employed full-time in a religious occupation (1) above.

*(b)* A statement from an appropriate authority of the religious order that as a divinity student the Soldier is fully qualified and acceptable for further religious training; must be separated from military status for further theological education or processing into the religious order or organization; and if separated, will be eligible for ordination or recognition as a minister on or about a specified date.

*(c)* A statement from the seminary or other educational institution in which the religious training is now or will be received that the individual is now or will be, concurrent with discharge, a full-time divinity student preparing for the ministry.

*c. Attainment of maximum allowable age.* A Soldier who attains age 60 as set forth in AR 140-10, as appropriate, unless granted a waiver will be discharged or, if eligible and the Soldier applies, be transferred to the Retired Reserve. The discharge will be effective the last day of the month in which the Soldier attains age 60.

*d. Approved exemption from involuntary order to active duty.* A Soldier will be discharged when a determination is made in accordance with AR 601-25 that the Soldier be exempt from reporting for involuntary call to active duty under emergency or mobilization circumstances.

*e. USAR dual status technician.* A contractually obligated Soldier who enlisted or reenlisted for permanent employment under the USAR dual status technician program will, on request, be discharged—

(1) On failure to be employed as a technician.

(2) On separation from employment as a technician.

*f. Early discharge of Soldier with a bar to reenlistment.* A Soldier may be voluntarily discharged before the expiration of his or her service obligation when the Soldier has received a locally imposed bar to reenlistment (AR 140-111, chap 1) and the following provisions have been met.

(1) Except when serving under a statutory MSO, a Soldier who perceives that he or she will be unable to overcome a locally imposed bar to reenlistment may apply for immediate discharge.

(2) A Soldier with a statutory MSO will not be discharged early under this paragraph until completion of the statutory obligation.

(3) An ARNGUS Soldier with a statutory MSO who has been barred from reenlistment or extension in the ARNGUS and discharged early from the ARNGUS will be transferred to the appropriate IRR control group to serve the remaining term of the obligation.

(4) Reassignments or transfers to other units or to the IRR will be curtailed to the extent necessary to permit early discharge under this section.

*g. Nonavailability of member of Standby Reserve.* A Soldier of the Standby Reserve will be discharged when 12 months after mobilization the Soldier remains unavailable for active duty and the Soldier's case has been reviewed and discharge determined to be appropriate because of extended nonavailability in accordance with AR 601-25.

*h. For security reasons.* The Soldier will be processed in accordance with AR 380–67.

*i. Discharge from Retired Reserve.* A Soldier retired under the provision of 10 USC 3914 may be discharged from the USAR Retired Reserve at the Soldier's request and on completion of 30 years of active and inactive service. This discharge does not affect the Soldier's Army of the United States status on the retired list.

*j. Confirmed as infected with HIV.* As prescribed by AR 600-110, a Soldier who has been confirmed after a second Western Blot test as infected with HIV may request voluntary discharge under the plenary authority of the Secretary of the Army in accordance with chapter 14, Secretarial Plenary Authority. Procedures for reassignment of USAR Soldiers to the Standby or Retired Reserve are prescribed by AR 140-10.

*k. Medically unfit for retention.*

(1) Discharge will be accomplished when it has been determined that a Soldier is no longer qualified for retention by reason of medical unfitness (AR 40-501, AR 40-3) unless the Soldier requests and is—

*(a)* Granted a waiver under AR 40-501, as applicable.

*(b)* Determined fit for duty under a non-duty related PEB fitness determination (AR 635-40).

*(c)* Eligible for transfer to the Retired Reserve (AR 140-10).

(2) Soldiers who do not meet the medical fitness standards for retention due to a condition incurred while on active duty, any type of active duty training, or inactive duty training will be processed as specified in AR 635-40 if otherwise qualified.

*l. Conscientious objection.* The Soldier will be processed in accordance with AR 600-43.

## 15–2. Characterization of service

The service of a Soldier separated under this section will be characterized as honorable unless an uncharacterized description of service is required by paragraph 2-11, or a characterization of general (under honorable conditions) is warranted under chapter 2, section III.

## 15–3. Procedures

Prior to characterization of service of general (under honorable conditions), the Soldier will be notified of the specific factors in the service record that warrant such a characterization, and the Notification Procedure (chap 3, section II) will be used.

## 15–4. Separation authority

The appropriate authority cited in paragraph 1-10 can order separations under this section.

## Section II
## Separation from the Delayed Entry Program

## 15–5. Basis

A Soldier who enlisted in the USAR under the DEP in accordance with AR 601-210, chapter 5, section X, must be processed for discharge if he or she satisfies the conditions in paragraphs *a* or *b* below and may be processed for discharge if he or she satisfies the conditions in paragraphs *c* or *d* below.

*a.* Upon enlistment in the Regular Army (para 5-4*a*).

*b.* On discovery that the USAR enlistment is defective. The Soldier will be processed for separation under para 7-3.

*c.* The Soldier is found to be ineligible for enlistment in the Regular Army.

*d.* The Soldier declines enlistment in the Regular Army and is not being ordered to active duty as a Reserve of the Army (10 USC 12103(b)).

## 15–6. Characterization or description

*a.* The service of a Soldier discharged on the basis of paragraph 15-5*a* is not characterized. (See DD Form 4 (Enlistment/Reenlistment Document Armed Forces of the United States), section G.)

*b.* The separation of a Soldier on the basis of paragraph 15-5*c* or paragraph 15-5*d* will be described as an entry level separation and the service will be uncharacterized.

## 15–7. Procedures

When it is determined that a member of the DEP is unqualified for further military service or has requested separation, the Commander, U.S. Army Recruiting Battalion, will advise the Soldier, in writing, of the proposed separation and the reasons using the Notification Procedure (chap 3, sec II).

*a.* The notification memorandum (fig 3-1) will be presented to the Soldier. If the Soldier cannot be personally notified, the certified mail procedures in paragraph 3-4*b* will be applied or an equivalent procedure if such service is not available by the U.S. mail at an address outside the United States. The notice will inform the Soldier that he or she must respond by endorsement (fig 3-2) within 30 days from the date of delivery.

*b.* Insert the following with the member's original DEP enlistment packet:

(1) A copy of the endorsement (fig 3-2) completed by the Soldier;

(2) A copy of the notification memorandum (fig 3-1) and post office receipt; or

(3) The original notification memorandum (fig 3-1) and envelope marked "unclaimed" or other designation indicating it was not delivered, and the Affidavit of Service by Mail (fig 1-1).

*d.* On receipt of the completed endorsement (fig 3-2) from the Soldier, the Commander, U.S. Army Recruiting Battalion, will make the final determination for retention or separation from the USAR DEP. A careful consideration of the Soldier's statement or rebuttal is mandatory.

*e.* If the Soldier is not approved for retention or fails to respond within 30 days from the date of delivery, the authorities cited in *a*above will process the Soldier for discharge.

*f.* The discharge order (Format 500) will cite this paragraph and regulation as the authority.

*g.* On discharge, with the discharge order as the top document, the Soldier's USAR DEP enlistment packet will be sent to Director, National Personnel Records Center, ATTN: Accession and Disposal Section, 9700 Page Ave., St. Louis, MO 63132-5200.

## 15–8. Separation authority

The authorities cited in paragraph 1-10*b*(6) may order discharge under this section.

## Section III
## Dropping from the Rolls

## 15–9. Sentenced to imprisonment (10 USC 12684(3))

*a.* A Soldier who is sentenced to confinement in a Federal or State penitentiary or correctional institution after having been found guilty of an offense by a court other than a court-martial or other military court, and whose sentence has become final, may be dropped from the rolls of the Army. For purposes of this regulation, a conviction is final when the authorized time for an appeal has expired or final action on an appeal has been taken.

*b.* A Soldier who is convicted by a civil court, other than a Soldier who is sentenced as in *a*above, may be processed for discharge for misconduct in accordance with chapter 12.

*c.* When a Soldier is to be dropped from the rolls of the Army, he or she will be reduced to PV1 by the reduction authority in accordance with AR 600–8–19, chapter 10.

## 15–10. Characterization of service

No characterization or description of service is authorized (para 2-11*c*) and no discharge certificate will be issued.

## 15–11. Procedures

The appropriate separation authority will issue orders dropping the Soldier from the rolls of the Army using order Format 540 as prescribed in AR 600-8-105. Disposition of personnel records will be accomplished as set forth in AR 600-8-104.

## 15–12. Separation authority

The authority cited in paragraph 1-10 is authorized to drop a Soldier from the rolls of the Army under this section.

# Chapter 16
# Failure to Meet Army Body Composition Standards

## 16–1. Applicability

The applicability for separation processing under this chapter is determined by the following criteria.

*a.* An ARNGUS or USAR Soldier who has not completed IET, or been awarded an MOS, will be processed for discharge under this chapter.

*b.* An ARNGUS or USAR Soldier who has completed IET and been awarded an MOS, and is not within 3 months of the date of expiration of a statutory or contractual obligation, whichever is the later, will be processed for separation under this chapter when such processing is required under paragraph 16-2, but will only be discharged when it has been determined by the separation authority that the Soldier has no potential to perform useful service if ordered to active duty to meet mobilization requirements in accordance with paragraph 1-25.

*c.* A Soldier who is within 3 months of the date of expiration of a statutory MSO will not be processed for separation under this chapter.

## 16–2. Basis

*a.* A Soldier is subject to separation for failure to meet the Army body composition standards in accordance with AR 600-9 when it is determined the Soldier is unqualified for further military service and meets all of the following conditions:

(1) The Soldier is not diagnosed with a medical condition that precludes participation in the Army weight control program. A Soldier with a medically diagnosed condition that precludes participation in the Army weight control program will be processed through medical channels, if appropriate, or under the guidance set forth in paragraph 6-6, 6-7, or 15-1*k*.

(2) The Soldier fails to meet the Army body composition standards in accordance with AR 600-9 and the sole reason for separation is failure to meet those standards.

*b.* Where no medical condition exists, initiation of separation proceedings is required for Soldiers who—

(1) Do not make satisfactory progress in the Army Body Composition Program (ABCP) after a period of 6 months, unless the responsible commander chooses to impose a bar to reenlistment in accordance with AR 140-111, chapter 1, or NGR 600-200, paragraph 7-20.

(2) Fail to maintain Army body composition standards during the 12-month period following removal from the ABCP.

*c.* Separation action under this chapter will not be initiated against a Soldier who meets the criteria for separation under other provisions of this regulation. For example, a Soldier who, apart from failure to meet body composition standards, is an unsatisfactory performer will be processed for separation under the provisions of chapter 9.

## 16–3. Counseling and rehabilitation

Separation processing may not be initiated under this chapter until the Soldier has been formally counseled under the requirements prescribed by paragraph 2-4.

## 16–4. Medical processing and evaluation

Medical processing and evaluation guidance is listed in paragraph 1–8.

## 16–5. Characterization or description

The service of Soldiers separated under this chapter will be characterized as honorable.

## 16–6. Separation authority

*a.* The authorities specified in paragraph 1-10 are authorized to order separation under this chapter.

*b.* The separation of a Soldier with more than 18 but fewer than 20 years of qualifying service for retired pay requires the approval of HQDA (para 1-11).

**Appendix A**
**References**

**Section I**
**Required Publications**

**AR 15–6**
Procedures for Investigating Officers and Boards of Officers. (Cited in paras 3–3, 3–10, and 3–17.)

**AR 27–3**
The Army Legal Assistance Program (Cited in paras 3–3.)

**AR 27–10**
Military Justice. (Cited in para 3–3, 3–10.)

**AR 40–3**
Medical, Dental, and Veterinary Care. (Cited in para 15–1$k$(1).)

**AR 40–400**
Patient Administration. (Cited in paras 1–9$b$ and 6–6$b$(3).

**AR 40–501**
Standards of Medical Fitness. (Cited in paras 1–8, 1–9, 6–6, 9–2, and 15–1 and figs 3–1 and 3–4.)

**AR 135–91**
Service Obligations, Methods of Fulfillment, Participation Requirements, and Enforcement Procedures. (Cited in paras 1–18, 5–6, 6–3, and 13–1.)

**AR 140–10**
Assignments, Attachments, Details, and Transfers. (Cited in paras 1–23, 1–26, 3–9, 5–4, and 15–1.)

**AR 140–111**
U.S. Army Reserve Reenlistment Program. (Cited in paras 1–10, 1–20, 4–2, 5–3, 7–2, 9–2, 15–1, and 16–2.)

**AR 195–2**
Criminal Investigation Activities. (Cited in paras 1–13 and 10–1.)

**AR 380–67**
The Department of the Army Personnel Security Program. (Cited in paras 2–2, 10–1, and 15–1$h$.)

**AR 600–8–2**
Suspension of Favorable Personnel Actions (FLAGS). (Cited in paras 9–4, 10–6, 12–6, and 13–2.)

**AR 600–8–105**
Military Orders. (Cited in paras 2–13, 7–1, 7–2, and 15–11.)

**AR 600–9**
The Army Weight Control Program. (Cited in para 16–2 and B–4.)

**AR 600–20**
Army Command Policy. (Cited in paras 1–8, 6–2, 6–5, 6–7, 10–1, 10–6, and 14–1.)

**AR 600–43**
Conscientious Objection. (Cited in para 15–1.)

**AR 600–85**
Army Substance Abuse Program (ASAP). (Cited in paras 2–10, 3–4, 3–10, 3–17, 11–1, 11–2, and 12–1 and fig 3–3.)

**AR 600–110**
Identification, Surveillance, and Administration of Personnel Infected with Human Immunodeficiency Virus (HIV). (Cited in paras 14–1 and 15–1.)

**AR 601–25**
Delay in Reporting for and Exemption from Active Duty, Initial Active Duty Training, and Reserve Forces Duty. (Cited in para 15–1.)

**AR 601–210**
Regular Army and Army Reserve Enlistment Program. (Cited in paras 4–2, 5–6, 5–8, 6–6, 7–2 and 15–5.)

**AR 601–280**
Army Retention Program. (Cited in paras 4–2, 5–4 and 7–2.)

**AR 635–40**
Physical Evaluation for Retention, Retirement, or Separation. (Cited in paras 1–9c, 6–7, and 15–1.)

**DODD 1332.14**
Enlisted Administrative Separations. (Cited in para 7–2c(2)(e).) (Available at http://www.dtic.mil/whs/directives.)

**DODD 6490.1**
Mental Health Evaluations of Members of the Armed Forces. (Cited in paras 1–8b(3) and 6–7e.) (Available at http://www.dtic.mil/whs/directives.)

**DODI 6490.4**
Requirements for Mental Health Evaluations of Members of the Armed Forces. (Cited in para 1–8b(3).) Available at www.dtic.mil/whs/directives.)

**Section II**
**Related Publications**
A related publication is a merely source of additional information. The user does not have to read a related publication to understand this regulation.

**AR 15–180**
Army Discharge Review Board

**AR 15–185**
Army Board for Correction of Military Records

**AR 25–50**
Preparing and Managing Correspondence

**AR 25–400–2**
The Army Records Information Management System (ARIMS)

**AR 135–7**
Army National Guard and Army Reserve Incentive Programs

**AR 140–1**
Mission, Organization, and Training

**AR 145–1**
Senior Reserve Officers' Training Corps Program: Organization, Administration, and Training

**AR 600–8–19**
Enlisted Promotions and Reductions

**AR 600–8–104**
Military Personnel Information Management/Records.

**AR 630–10**
Absence Without Leave, Desertion, and Administration of Personnel Involved in Civilian Court Proceedings

**AR 635–200**
Active Duty Enlisted Administrative Separations

**NGR 40–3**
Medical Care for Army National Guard Members. (Available at http://www.ngbpdc.ngb.army.mil/arngfiles.asp.)

**NGR 600–200**
Enlisted Personnel Management and Fiscal Year (FY) Enlistment Criteria Memorandum (ECM). (Available at http://www.ngbpdc.ngb.army.mil/arngfiles.asp.)

**UCMJ**
Uniform Code of Military Justice. (Available at http://www.au.af.mil/au/awc/awcgate/ucmj.htm.)

**10 USC 115**
Personnel strengths: requirement for annual authorization. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 641**
Applicability of chapter. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 651**
Members: required service. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 654**
Policy concerning homosexuality in the armed forces. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 1176**
Enlisted members: retention after completion of 18 or more, but less than 20, years of service. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 2104**
Advanced training; eligibility for. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 2107**
Financial assistance program for specially selected members. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 3914**
Twenty to thirty years: enlisted members. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 10206**
Members: periodic physical examinations. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 10301**
Reserve Forces Policy Board. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12103**
Reserve components: terms. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12106**
Army and Air Force Reserve: transfer to upon withdrawal as members of National Guard. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12301**
Reserve components generally. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12304**

Selected Reserve and certain Individual Ready Reserve members; order to active duty other than during war or national emergency. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12641**

Standards and procedures: Secretary to prescribe. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12644**

Members physically not qualified for active duty: discharge or transfer to retired status. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12681**

Reserves: discharge authority. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12682**

Reserves: discharge upon becoming ordained minister of religion. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12684**

Reserves: separation for absence without authority or sentence to imprisonment. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12685**

Reserves separated for cause: character of discharge. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**10 USC 12732**

Entitlement to retired pay: computation of years of service. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**32 USC 316**

Detail of members of Army National Guard for rifle instruction of civilians. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**32 USC 502**

Required drills and field exercises. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**32 USC 503**

Participation in field exercises. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**32 USC 504**

National Guard schools and small arms competitions. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**32 USC 505**

Army and Air Force schools and field exercises. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**32 USC 708**

Property and fiscal officers. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**50A USC 460**

Selective Service System. (Available at http://www.gpoaccess.gov/uscode/index.html.)

**Section III**
**Prescribed Forms**

The following forms are available on the Army Electronic Library CD–ROM and the APD Web site (http://www.apd.-army.mil) unless otherwise stated. DD forms are available from the Office of the Secretary of Defense Web site (http://www.dior.whs.mil)

**DA Form 7423**

Consulting Counsel's Checklist. (Prescribed in para 3-3*a*(1).)

**Section IV**
**Referenced Forms**

**DA Form 2–1**
Personnel Qualification Record

**DA Form 11–2–R**
Management Control Evaluation Certification Statement

**DA Form 2028**
Recommended Changes to Publications and Blank Forms

**DA Form 5138**
Separation Action Control Sheet

**DD Form 4**
Enlistment/Reenlistment Document Armed Forces of the United States

**DD Form 256A**
Discharge Certificate, Honorable

**DD Form 293**
Application for the Review of Discharge or Dismissal from the Armed Forces of the United States

**PS Form 3800**
Receipt for Certified Mail. (Available at United States Postal Service facilities.)

**SF Form 600**
Medical Record—Chronological Record of Medical Care. (Available at www.gsa.gov.)

# Appendix B
# Management Control Evaluation Checklist

## B–1. Function
The function covered by this checklist is the accurate and orderly administrative separation of enlisted Soldiers in a variety of circumstances

## B–2. Purpose
The purpose of this checklist is to assist commanders in evaluating the key management controls listed below. It is not intended to cover all controls.

## B–3. Instructions
Answers must be based on the actual testing of key management controls (for example, document analysis direct observation, random sampling, and simulation). Answers that indicate deficiencies must be explained and corrective action indicated in supporting documentation. These management controls must be evaluated at least once every 2 years. Certification that this evaluation has been conducted must be accomplished on DA Form 11–2–R (Management Control Evaluation Certification Statement), which is available at http://www.apd.army.mil.

## B–4. Test questions
*a.* Has a managerial review been conducted using DA Form 5138 to ensure compliance with regulatory guidance prior to forwarding to approval authority?

*b.* Has the commander's report been completed accurately, as required under AR 135–178, paragraph 3–7?

*c.* Have the Administrative Board Procedures, as required under AR 135–178, paragraph 3–10, been conducted accurately.

*d.* Have the Hearing Procedures, as required under AR 135–178, paragraph 3–17, been conducted as required by the regulation.

*e.* Have those Soldiers identified for separation under chapter 16 complied with all of the requirements under AR 600–9?

## B–5. Comments
Help make this a better tool for evaluating management controls. Submit comments to HQDA, DCS, G–1, ATTN: DAPE–MPE–RC, 300 Army Pentagon, Washington, DC 20310–0300.

**Glossary**

**Section I**
**Abbreviations**

**ABCP**
Army Body Composition Program

**AD**
active duty

**ADT**
active duty for training

**ARNG**
Army National Guard

**ARNGUS**
Army National Guard of the United States

**AT**
annual training

**CAR**
Chief, Army Reserve

**CDR**
Commander

**CNGB**
Chief, National Guard Bureau

**DA**
Department of the Army

**DCS, G–1**
Deputy Chief of Staff, G–1

**DEP**
Delayed Entry Program

**DOD**
Department of Defense

**DTP**
Delayed Training Program

**DVA**
Department of Veterans Affairs

**EAD**
extended active duty

**EPTS**
existed prior to entry service

**FTNGD**
Full-time National Guard duty

**GCMCA**
General Court Martial Convening Authority

**HIV**
Human Immunodeficiency Virus

**HQDA**
Headquarters, Department of the Army

**HRC**
U.S. Army Human Resources Command

**HRC–St. Louis**
U.S. Army Human Resources Command–St. Louis

**IADT**
initial active duty for training

**IET**
initial entry training

**IMA**
Individual Mobilization Augmentee; individual mobilization augmentation

**IRR**
Individual Ready Reserve

**MATP**
Mobilization Asset Transfer Program

**MEB**
Medical Evaluation Board

**MOS**
military occupational specialty

**MPRJ**
Military Personnel Records Jacket, U.S. Army

**MSO**
military service obligation

**MTF**
medical treatment facility

**NGR**
National Guard regulation

**OCONUS**
outside continental United States

**OMPF**
official military personnel file

**PEB**
physical examination board

**PSI**
personnel security investigative

**PV1**
private E–1

**RBN**
U.S. Army Recruiting Battalion

**RDEP**
Reserve Delayed Entry Program

**ROTC**
Reserve Officers' Training Corps

**SMP**
simultaneous membership program

**SROTC**
Senior Reserve Officers' Training Corps

**TDA**
table of distribution and allowances

**TOE**
table of organization and equipment

**TPU**
troop program unit

**UCMJ**
Uniform Code of Military Justice

**USAR**
United States Army Reserve

**USAREC**
United States Army Recruiting Command

**USC**
United States Code

**WOC**
warrant officer candidate

**Section II**
**Terms**

**Active Army**

   *a.* The Active Army consists of (1) Regular Army Soldiers on active duty; (2) Army National Guard of the United States and Army Reserve Soldiers on active duty (except as excluded below): (3) Army National Guard Soldiers in the service of the United States pursuant to a call; and (4) all persons appointed, enlisted, or inducted into the Army without component.

   *b.* Excluded are Soldiers serving on (1) active duty for training (ADT); (2) Active Guard Reserve (AGR) status; (3) active duty for special work (which includes temporary tours of active duty for 180 days or less; and (4) active duty pursuant to the call of the President (10 USC 12304).

**Active duty**

Full-time duty in the active military service of the United States. As used in this regulation, the term applies to all Army National Guard of the United States and U.S. Army Reserve Soldiers ordered to duty under Title 10, U.S. Code, other than for training. It does not include AGR personnel in a full-time National Guard duty status under Title 32, U. S. Code.

**Active Guard Reserve**

Army National Guard of the United States (ARNGUS) and U.S. Army Reserve (USAR) personnel serving on active duty (AD) under Title 10, U.S. Code, section 12301(d) and Army National Guard (ARNG) personnel serving on full-time National Guard duty (FTNGD) under Title 32, U.S. Code, section 502(f). These personnel are on FTNGD or AD

(other than for training or AD in the Active Army) for 180 days or more for the purpose of organizing, administering, recruiting, instructing, or training the Reserve Components and are paid from National Guard Personnel, Army or Reserve Personnel Army appropriations. Exceptions are personnel ordered to AD as—
   *a.* General officers.
   *b.* United States Property and Fiscal Officers under 32 USC 708.
   *c.* Members assigned or detailed to the Selective Service System serving under the Military Selective Service Act, (50 USC App 460(b)(2)).
   *d.* Members of the Reserve Forces Policy Board serving under 10 USC 10301.
   *e.* Members of Reserve Components on active duty to pursue special work (10 USC 115(d) and 10 USC 641(1)(D)).

**Active status**
The status of an ARNGUS or USAR commissioned officer, other than a commissioned warrant officer, who is not in the inactive Army National Guard, in the Standby Reserve (Inactive List), or in the Retired Reserve.

**Active service**
Service on active duty or full time National Guard duty.

**Administrative board procedure**
An administrative separation action wherein the respondent will have a right to a hearing before a board of commissioned, warrant, or noncommissioned officers. It is initiated in the same manner as the Notification Procedure.

**Administrative separation**
Discharge or release from expiration of enlistment or required period of service, or before, as prescribed by the Department of the Army or by law. Separation by sentence of a general or special court-martial is not an administrative separation.

**Administrative separation board**
A board of officers, or officers and noncommissioned officers, appointed to make findings and to recommend retention in or separation from the service. The board states the reason and recommends the type of separation or discharge certificate to be furnished.

**Area command**
A geographic area of command with Reserve Component functions and responsibilities.

**Area commands**
The following are defined as area commands:
   *a.* United States Army, Europe (USAREUR).
   *b.* United States Army Pacific Command (USARPAC).
   *c.* United States Army South (USARSO).
   *d.* United States Army Southern Command (SOUTHCOM).
   *e.* United States Army Special Operations Command (USASOC).
   *f.* United States Army Reserve Command (USARC).
   *g.* Eighth United States Army (EUSA), Korea

**Area commanders**
Commanders of area commands.

**Army**
The Regular Army, Army of the United States, ARNGUS, and the USAR.

**Army National Guard (ARNG)**
That part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive, that—
   *a.* Is a land force;
   *b.* Is trained, and has its officers appointed, under the sixteenth clause of section 8, article I, of the Constitution;
   *c.* Is organized, armed, and equipped wholly or partly at Federal expense; and
   *d.* Is federally recognized.

**Army National Guard of the United States (ARNGUS)**
The reserve component of the Army whose members also are members of the ARNG. The ARNGUS consists of—
   *a.* Federally recognized units and organizations of the ARNG; and
   *b.* Members of the ARNG who are also Reserves of the Army.

**Army Reserve command**
A USAR troop program unit commanded by a general officer that reports directly to an area command.

**Basic training (BT)**
Initial entry training which provides non-prior-service-personnel instruction in basic skills common to all Soldiers and precedes advanced individual training (AIT).

**Bisexual**
A person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual and heterosexual acts.

**Cause**
Separation or denial of reenlistment for cause is based on a decision by an appropriate member of the Soldier's chain of command, supervisory chain, or higher authority that the Soldier's personal or professional conduct, behavior, or performance of duty warrants separation or denial of reenlistment in the best interest of the Army.

**Character of service for administrative separation**
A determination reflecting a Soldier's military behavior and performance of duty during a specific period of service. The three characters are: Honorable; General (Under Honorable Conditions); and under Other Than Honorable Conditions. The service of Soldiers in entry level status is normally described as uncharacterized.

**Contractually obligated Soldier**
A Soldier who has completed his or her statutory service obligation and is serving on a contractual obligation or a Soldier enlisted or appointed under circumstances in which a statutory obligation was not incurred.

**Contractual term of service**
The military service obligation incurred by completion of the oath of enlistment on an enlistment or reenlistment agreement. Contractual and statutory service may run concurrently. The Selected Reserve contractual term of service is that portion of a military service obligation which is to be served in a unit of the Selected Reserve. For example, the 6X2 enlistment option requires that 6 years be served in a unit of the Selected Reserve and the remaining 2 years be served in the Individual Ready Reserve (IRR).

**Convening authority**
Can be defined as either—
   *a.* The separation authority; or
   *b.* A commanding officer who is authorized by this regulation to process the case, except for final action, and who otherwise has the qualifications to act as a separation authority.

**Delayed Entry Program (DEP)**
A program where Soldiers may enlist and are assigned to USAR Control Group (Delayed Entry) until they enlist in the Regular Army.

**Discharge**
Complete severance from all military status gained by the enlistment concerned.

**Entry level status**
   *a.* Upon enlistment, a Soldier qualifies for entry level status during—
   (1) The first 180 days of continuous active military service; or
   (2) The first 180 days of continuous active service after a service break of more than 92 days of active service.
   *b.* A member of a Reserve component who is not on active duty or who is serving under a call or order to active

duty for 180 days or less begins entry level status upon enlistment in a Reserve component. Entry level status for such a member of a Reserve component terminates as follows:

(1) 180 days after beginning training if the Soldier is ordered to ADT for one continuous period of 180 days or more; or

(2) 90 days after the beginning of the second period of ADT if the Soldier is ordered to ADT under a program that splits the training into two or more separate periods of active duty.

*c.* For the purposes of characterization of service, the Soldier's status is determined by the date of notification as to the initiation of separation proceedings.

**Expiration of service obligation**
The scheduled date on which an individual's statutory or contractual (whichever is later) military service obligation will end.

**Extended active duty**
Active duty performed by a member of the ARNGUS or USAR when strength accountability passes from the ARNG or USAR to the Active Army.

**Full-Time National Guard Duty (FTNGD)**
Training or other duty, other than inactive duty, performed by a member of the ARNGUS or the Air National Guard of the United States in the member's status as a member of the National Guard of a State or territory, the Commonwealth of Puerto Rico, or the District of Columbia under section 316, 502, 503, 504, or 505 of Title 32, U.S. Code, for which the member is entitled to pay from the United States or for which the member has waived pay from the United States.

**General Officer Command**
A USAR troop program unit, commanded by a general officer, at the level of a regional support command (RSC) or higher, that reports directly to an area command or to U. S. Army Civil Affairs and Psychological Operations Command .

**Homosexual**
A person, regardless of sex, who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

**Homosexual act**
*a.* Any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and

*b.* Any bodily contact that a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in paragraph *a* above.

**Homosexual conduct**
A homosexual act, a statement by the Soldier that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted homosexual marriage.

**Individual Ready Reserve (IRR)**
Soldiers who are assigned to the following USAR Ready Reserve Control Groups: Annual Training, Reinforcement, Officer Active Duty Obligor, Delayed Entry Program, Dual Component, and Reserve Officers' Training Corps.

**Initial entry training (IET)**
Mandatory training each Army Soldier must complete upon initial entry in the service to qualify in a military specialty or branch. This training is required by law for deployability on land outside the continental limits of the United States in accordance with 10 USC 671. Initial entry training encompasses the completion of basic training and specialty or branch qualification while serving on active duty or active duty for training. For ARNGUS and USAR Soldiers it includes completion of initial active duty for training, the officer basic course, and the warrant officer basic course.

**Juvenile offender**
A person judged guilty of an offense by a domestic court of the United States or its territorial possessions, or by a foreign court, without regard to whether a sentence has been imposed or suspended, or any other subsequent proceedings in the case. The law of the jurisdiction of the court will determine whether a given proceeding constitutes an adjudication of guilt. Adjudication as a juvenile offender includes adjudication as a juvenile delinquent, wayward minor, or youthful offender.

**Military record**
A Soldier's overall performance while a member of a military service, including personal conduct and performance of duty.

**Nonlocatee**
An enlisted Soldier who has failed to furnish an address through which personal contact is possible.

**Notification procedure**
The initiation of an administrative separation process in which the respondent is notified, in writing, of the proposed separation, the bases thereof, the results of separation, and his or her rights. This term is commonly used when the respondent does not have a right to a hearing before a board of officers.

**One station unit training**
Initial entry training in which elements of BT and AIT are provided in the same unit, under one cadre throughout the total period of training. Elements of BT and AIT are either integrated-provided simultaneously, or are nonintegrated-provided in distinct BT/AIT phases.

**Preponderance of evidence**
Evidence, which after a consideration of all the evidence presented, points to a certain conclusion as being more credible and probable than any other conclusion. Where the evidence is equally consistent with two or more opposing propositions, it is insufficient.

**Propensity to engage in homosexual acts**
More than an abstract preference or desire to engage in homosexual acts. The term indicates a likelihood that a person engages or will engage in homosexual acts.

**Ready Reserve**
The Ready Reserve of the Army is comprised of military members of the ARNGUS and USAR, organized in units or as individuals, and liable for order to active duty in time of war or national emergency. The Ready Reserve consists of three subcategories: the Selected Reserve, the IRR, and the Inactive National Guard.

**Reasonable commuting distance**
The maximum distance a member of a Reserve component may be required to travel involuntarily between residence and IDT site. That distance may be in the following:
    *a.* A 100-mile radius of the IDT site or a distance that may be traveled by automobile under average conditions of traffic, weather, and roads in three hours. That applies only to those units that normally do four IDT sessions on two consecutive days and where Government meals and quarters are provided at the unit IDT site.
    *b.* A 50-mile radius of the IDT site or a distance that may be traveled by an automobile under average conditions of traffic, weather, roads in a 1 1/2–hour period, where Government meals and quarters are not provided at the unit IDT site.

**Regional Support Command (RSC)**
A major subordinate command of the U.S. Army Reserve Command (USARC) that reports directly to an Area Command.

**Regional Support Group**
A USAR general officer command that is subordinate to an RSC.

**Release from active duty**
Termination of active duty status and transfer or reversion to a Reserve component not on active duty, including transfer to the IRR.

**Reserve Components of the Army**
The ARNGUS and the USAR.

**Reserve of the Army**
A member of the ARNGUS or the USAR.

**Respondent**
A Soldier who has been notified that action has been initiated to separate him or her from the Service.

**ROTC cadet**
A student enrolled in the Senior Reserve Officers' Training Corps (SROTC) as a cadet under 10 USC 2104 or 10 USC 2107.

**ROTC program**
The SROTC of the Army.

**Satisfactory participation**
A level of performance where a Soldier avoids incurring the condition of unsatisfactory participation as defined in AR 135–91.

**Selected Reserve**
The Selected Reserve of the Army consists of those units and individuals in the Ready Reserve designated as so essential to initial wartime missions that they have priority over all other Reserves. The Selected Reserve includes officers, warrant officers, and enlisted Soldiers who are:
  *a.* Members of the ARNGUS.
  *b.* Assigned to troop program units of the USAR.
  *c.* Serving on active duty (10 USC 12301d) or full-time National Guard duty (32 USC 502f) in an AGR status.
  *d.* Individual Mobilization Augmentees.

**Separation**
An all inclusive term which is applied to personnel actions resulting from release from active duty, discharge, retirement, dropped from the rolls, release from military control of personnel without a military status, death, or discharge from the ARNGUS with concurrent transfer to the Individual Ready, Standby, or Retired Reserve. Reassignments between the various categories of the USAR (Selected, Ready, Standby, or Retired) are not considered as separations.

**Separation authority**
An official authorized by the Secretary of the Army, or his designated official, to take final action with respect to a specified type of separation.

**Sexual orientation**
An abstract sexual preference for persons of a particular sex, as distinct from a propensity or intent to engage in sexual acts.

**Standby Reserve**
The Standby Reserve consists of personnel maintaining their military affiliation without being in the Ready Reserve, having been designated key civilian employees, or who have a temporary hardship or disability. These Soldiers are not required to perform training and are not part of units. It is a pool of trained Soldiers who may be mobilized as needed to fill manpower needs in specific skills. The Standby Reserve consists of two training categories: the Active Status List and the Inactive Status List.

**Statement that a Soldier is a homosexual or bisexual or words to that effect**
Language or behavior that a reasonable person would believe was intended to convey that a person engages in, attempts to engage in, or has a propensity or intent to engage in homosexual acts.

**Statutorily obligated member**
A Soldier who is serving by reason of law.

**Statutory term of service**
The military service obligation incurred on initial entry into the Armed Forces under 10 USC 651.

**Temporary tours of active duty**
A term applied to active duty for special work when the tour of duty is paid from military personnel appropriations and the purpose of the tour is to support an Active Army mission.

**Troop program unit (TPU)**
A table of organization and equipment (TOE) or table of distribution and allowances (TDA) unit of the USAR organization which serves as a unit on mobilization or one that is assigned a mobilization mission. The "unit" in this case is the largest separate unit prescribed by the TOE or TDA.

**Unsatisfactory participant**
A member of the Selected or Individual Ready Reserve who fails to participate as outlined in AR 135–91.

**U.S. Army Reserve (USAR)**
The Army Reserve includes all Reserves of the Army who are not members of the ARNGUS and who are in a Ready, Standby, or Retired Reserve category. It is a Federal force, consisting of individual reinforcements and combat, combat support, and training type units organized and maintained to provide military training in peacetime, and a reservoir of trained units and individual reservists to be ordered to active duty in the event of a national emergency.

**Section III**
**Special Abbreviations and Terms**
This sections contains no entries.

**UNCLASSIFIED**



ELECTRONIC  PUBLISHING  SYSTEM
OneCol FORMATTER WIN32 Version 236

PIN:            002143–000
DATE:          03-13-07
TIME:          08:37:13
PAGES  SET:    103
_____

DATA  FILE:     C:\wincomp\r135-178.fil
DOCUMENT:     AR  135–178

SECURITY:      UNCLASSIFIED
DOC  STATUS:  REVISION

Exhibit E

Departments of the Army and the Air Force                                    *NGR 10-1
National Guard Bureau
Arlington, VA  22202-3231
22 November 2002

Operations and Functions

**ORGANIZATION AND FEDERAL RECOGNITION OF ARMY NATIONAL GUARD UNITS**

---

By Order of the Secretaries of the Army and the Air Force:

RAYMOND F. REES
Major General, USA
Acting Chief, National Guard Bureau

Official:

MICHAEL S. MILLER
Colonel, USAF
Chief, Office of Policy and Liaison

---

**History.**  This printing publishes a revision of NGR 10-1.

**Summary.**  This revision adds a Management Control Evaluation Checklist to the Federal Recognition process and ensures compliance with DoD Directive (DoDD) 1225.7 and DoD Instruction (DoDI) 1225.8.  It also updates office symbols, acronyms and regulations.

**Applicability.**  This regulation applies to the Army National Guard (ARNG).

**Proponent and exception authority.**  The proponent of this regulation is the Chief, NGB-ARF.  The proponent has the authority to approve exceptions to this regulation that are consistent with controlling law and regulation.

**Management Control Process.**  This regulation is subject to the management control requirements of AR 11-2 (Management Control)and contains management control provisions, which provide a Management Control Checklist to evaluate management controls.

**Supplementation.**  Supplementation of this regulation/instruction is prohibited without prior approval from the Chief, National Guard Bureau, ATTN:  NGB-ARF, 111 South George Mason Drive, Arlington, VA 22204-1382.

**Suggested Improvements.**  Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to the Chief, National Guard Bureau, ATTN: NGB-ARF, 111 South George Mason Drive, Arlington, VA 22204-1382.

Distribution.  B.

---

*Table of Contents*

**Chapter 1**
**Introduction**
1-1.   Purpose
1-2.   References

---

*This regulation supersedes NGR 10-1, 25 October 2002.

**NGR 10-1**                                                                              **22 November 2002**

1-3.   Explanation of abbreviations and terms
1-4.   Responsibilities

**Chapter 2**
**Procedural Information**
2-1.   General
2-2.   Allotment of Units
2-3.   Designation of Units
2-4.   Unit Identification Codes
2-5.   Types of UICs
2-6.   Federal Recognition of Units
2-7.   Authorization
2-8.   Unit Standards
2-9.   Determination of Unit Status
2-10.  Units Failing to Maintain Unit Standards
2-11.  Requests for Organization, Reorganization, Redesignation, Consolidation, and Conversion
2-12.  Change of Station
2-13.  Attachment of a Unit
2-14.  Return of Army National Guard United States (ARNGUS) Units to State Control
2-15.  Concept Plans
2-16.  Force Management Division Planning Shell for Concept Plans
2-17.  Multi Component Documentation

**Appendix A**
**References**

**Appendix B**
**Stationing Plans**

**Appendix C**
**Force Management Division Planning Shell**

**Appendix D**
**Management Control Evaluation Process**

**Appendix E**
**Unit Identification Code (UIC) Policy, Process, and Procedures**

**Glossary**

**Chapter 1**
**Introduction**

**1-1.  Purpose**

This regulation prescribes policies and procedures for the organization, change of status, Federal Recognition, and minimum standards of Army National Guard (ARNG) units.

**1-2.  References**

Required publications, related publications, prescribed forms and referenced forms are listed in Appendix A.

**1-3.  Explanation of abbreviations and terms.**

Abbreviations and special terms used in this regulation are explained in the glossary.

**1-4.  Responsibilities**

    a.  The Chief, National Guard Bureau (CNGB) will establish policies and procedures for:

        (1)  Organization

        (2)  Change in status

        (3)  Extending Federal Recognition

        (4)  Withdrawal of Federal Recognition

        (5)  Extending temporary Federal Recognition

        (6)  Withdrawal of temporary Federal Recognition

        (7)  Unit standards

        (8)  OA

    b.  The State Adjutant General (AG) will:

        (1)  Prepare and submit concept plans.

        (2)  Comply with DoDD 1225.7 and DoDI 1225.8, prior to stationing ARNG units.  The State Adjutant General will review the manpower potential of the area, and if appropriate, prepare, sign, and submit the following demographics certification as required by DoDI 1225.8, Enclosure 6, paragraph E6.3.

"The Reserve manpower potential to meet and maintain authorized officer and enlisted strengths of all Reserve units in the areas where units are to be located has been reviewed, in accordance with the procedures described in DoDD 1225.7 and DoDI 1225.8.  It has been determined, in coordination with the other Military Departments having Reserve units in the area, that the number of Reserve component units presently located in the area, and those units having been allocated to this area for future activation, is not, and shall not be larger than the number that reasonably may be maintained at authorized strength."

(3)  Submit a statement of adequacy, to meet and maintain authorized strengths, shall be included in the project justification for DD Forms 1390/91 (Military Construction)  and also in Stationing Plans submitted to CNGB even if construction is not involved.

(4)  Complete the procedures as required in Enclosures 1 through 6 of DoDI 1225.8.  A statement from the State Adjutant General ensuring that Enclosures 1 through 6 have been complied with will be submitted as an enclosure to the stationing plan.

(5)  Submit stationing plans for units requiring organization or change in status.

(6)  Submit NGB Form 113 (Report of Inspection for Federal Recognition).

(7)  Determine the unit's status regarding unit standards, and report units failing to maintain unit standards.

(8)  Submit state plans on units returning from active federal service (if returning to a location other than from where they were originally located).

(9)  Prepare and distribute permanent orders.

**Chapter 2**
**Procedural Information**

**2-1.  General**

a.  Equal Opportunity.  In order for a unit to qualify for initial Federal Recognition or to maintain its federally recognized status, the enlistment and appointment of applicants, assignment, promotion, or other personnel actions affecting its soldiers shall be without regard to the race, color, religion, gender (except for assignment limitations prescribed by regulation) or national origin of the applicant or soldier.

b.  Organization of Units

(1)  Except as otherwise specifically provided, the organization of the ARNG and the composition of all its units shall be the same as that which is, or may hereafter be, prescribed for the Active Army, subject in time of peace to such general exceptions as may be authorized by the Secretary of the Army (Title 10 United States Code (USC) 10503 and Title 32 USC Section 104).

(2)  Unless otherwise directed by CNGB, an entire MTOE or TDA unit will be organized within a community. When the community cannot support a complete unit, CNGB may consider a request for a subunit to be organized separately, creating a split unit within that state.  All adjustments to strength elements of a split organization must be approved by the State AG and published in permanent orders.  Two copies of Permanent Orders effecting initial and subsequent strength changes will be sent to NGB-ARF and United States Army Forces Command (FORSCOM) or overseas commander.

(3)  Units split between states (e.g. an engineer company located in one state, with the balance of the battalion located in another state) must be fully justified, planned, staffed, coordinated and programmed.  Each state is responsible to ensure that the unit is provided copies of the appropriate MTOE.

(4)  Multiple Component Units (MCUs), split between components of the U.S. Army, must be nominated by DARNG, justified, planned, staffed, coordinated, and programmed in accordance with HQDA multiple component policy and appropriate regulations.  Each state is responsible to ensure that the unit is provided copies of the appropriate MTOE.

4

**2-2.  Allotment of Units**

    a.  Allotment to a state comprises all units allocated to and accepted by the Governor of that state for organization under appropriate authorization documents.

    b.  No change in the branch, organization, or allotment of a unit located entirely within a state may be made without the approval of the Governor of that state under Title 10 USC Section 18238, and Title 32 USC Section 104.

    c.  An organization of the National Guard, the members of which having received compensation from the United States as members of the National Guard, may not be disbanded by the state without the consent of the President of the United States, or the Secretary of the Army acting for the President, under Title 32 USC, Section 104.

**2-3.  Designation of Units**  ARNG units will be designated in Organizational Authority (OA) letters issued by CNGB. These designations will conform to HQDA policy, procedures, and AR 220-5.  Normally, the designation of TOE units will be prescribed by the unit designation appearing under the title of the appropriate MTOE.  However, the official designation will be the designation contained in the OA directing the change in status of the unit.

    a.  When further identification of the unit type is desirable, additional descriptive words may be added parenthetically as approved by HQDA.  When the designation includes a parenthetical identification, that portion not in parenthesis is the official designation.  Redesignation of a unit is not required where a change is made in the parenthetical identification.  For example, 222nd Transportation Company (Lt Trk) to 222nd Transportation Company (Lt-Med Trk).

    b.  Chief of Military History controls and issues all names and numbers used in ARNG unit designations.  CNGB officially assigns numbers for units of the ARNG and prepares an OA.

    c.  Units within parent regiments established under the US Army Regimental System (USARS) will have, within each parent regiment, a variable number of active units depending upon the Army Force Program.  The regiment (except armored cavalry regiment) will be a family of units bearing the regimental name.  Regimental designations are maintained primarily for historic and morale purposes.  Except in the case of armored cavalry regiments, which contain a tactical regimental headquarters, units sharing the same regimental designation do not necessarily share a command or supply relationship.  When there are no composite units of a USARS regiment in the ARNG troop structure, the regiment will be inactivated and returned to control of CNGB (NGB-PAI-H).

**2-4.  Unit Identification Codes (UICs)**  The UIC is a six-character alphanumeric code that uniquely identifies an organization (CJCSM 3150.02).

    a.  The UIC consists of three data elements and is structured as follows:

       (1)  The first position indicates service designator.  "W" is for all Army units.

       (2)  Positions 2, 3 & 4 equal parent organization designator.

       (3)  Positions 5 & 6 equal descriptive designator.  These two positions further define or break out organizational elements belonging to that parent organization.

    b.  The letters I or O are never used.

**2-5.  Types of Unit Identification Codes**

    a.  Parent UIC.  Each parent unit MTOE and TDA will be assigned a unique UIC.  The recording of an MTOE and a TDA unit on the same authorization document is prohibited.  A numbered organization of battalion or equivalent

level, or a company, battery, troop, or detachment that is not an organic element of a battalion or other parent organization; will always end with AA.

b. Derivative UIC. Used to identify organic elements of an organizational element that is expressed in the organization structure or identifies a functional subordinate element of an organization. The first four characters of a derivative UIC must be the same as those of the parent UIC from which the organization was derived. Positions 5 and 6 will end with T0, T1, A0, A1, B0, B1, B2 etc.

c. Augmentation UIC. A nonstandard organization that augments an MTOE organization. A TDA augmentation to a parent MTOE will be documented with a derivative UIC of the parent unit such as WXXX99. Position 5 and 6 will end between 99 and 91.

d. Carrier UIC. A carrier UIC is assigned to provide a means to assign personnel to and account for equipment in a unit until activation. When the HQDA Unit Identification Code Information Officer (UICIO) assigns a UIC for unit activation, a carrier UIC is also assigned. Both UICs are registered in the Chairman, Joint Chiefs of Staff Global Status of Resources and Training System (GSORTS). Upon activation of the MTOE unit, the Major Army Command (MACOM) UICIO must delete the carrier UIC (AR 71-32).

(1) The carrier UIC provided by HQDA for an approved active army or reserve component MTOE unit activation will normally have an effective date (EDATE) 1 year before the documented unit EDATE. Personnel and equipment requisitions will cite the approved document as requisition authority and show the carrier UIC. On arrival at the location of the activating unit, personnel are assigned to and equipment is accounted for under the carrier UIC until the approved document's unit EDATE. The carrier UIC will be a two position code designed as "90" appearing in the fifth and sixth positions of the UIC code. If the proponent determines that the activation of the unit cannot be accommodated on the specified EDATE because of readiness considerations and a revised unit EDATE is approved by HQDA, the carrier UIC will continue in existence until the revised unit EDATE (AR 71-32).

(2) Reorganizations and conversions will not receive a carrier UIC. However, the authority and time periods for requisitioning personnel and equipment are the same as stated above for new activations (AR 71-32).

(3) A carrier UIC provides an organizational base for recruiting, transferring, and training of personnel assigned to the new unit within the guidelines established by NGB (AR 71-32).

(4) For equipment, submit requisitions per AR 700-120. (AR 71-32).

(5) Authorized by Deputy Chief of Staff for Operations (DCSOPS), it enables a parent organization to recruit and train people when the EDATE of the organization is more than one year out. The first four digits will be the same as the parent UIC; positions 5 and 6 will always be 90.

e. Notional UIC. Assigned by DA, and used to track a planned unit prior to the assignment of a parent UIC. It begins with a G and then five numbers (i.e. G12345).

f. Multiple Component Unit UIC. The first four characters of the UIC must be the same as those of the parent UIC. The second position of the UIC will be N, denoting multiple component, regardless of the parent being Army, Army National Guard, or Army Reserve. If the fifth position of the UIC is G, it is designating an ARNG element of a unit.

g. Mobilization UIC. UICs that are created for mobilization purposes are created and managed in the NGB Readiness Division (NGB-ARR).

h. Stock Record, Property Book, or Maintenance Account, Task Force/Exercise UICs. A suborganization UIC used to identify a stock record, property book, or maintenance account by using the appropriate logistics indicator code (LIC). Additional records of this type that need to be uniquely identified will be assigned a derivative UIC for the organization. The UIC will be the same first four digits as the STARC; the last two digits will be between 01

through 89. NGB Logistics Division (NGB-ARL) will authorize the property book or maintenance account UICs, and NGB-ARF will provide the next available UIC(s) (NGR 600-200).

**2-6.  Federal Recognition of Units**

a.  Extending Federal Recognition (Title 10 USC, Section 10503, and Title 32 USC, Section 105). CNGB, acting for the Secretary of the Army, will extend Federal Recognition to a unit based on a favorable NGB Form 113. If the inspection is conducted prior to the date of organization, then the date of organization becomes the date of Federal Recognition. Requests for Federal Recognition must refer to the OA number for the unit. Federal Recognition must be accomplished within 6 months of the date of organization. Failure to conduct the Federal Recognition inspection within this time period may result in the withdrawal of the allotment of the unit to the state.

b.  Inspection Criteria.  Inspections will include, but will not be limited to the following:

(1) The unit's having been allocated and authorized to be organized.

(2) The unit's having been organized in accordance with appropriate authorization documents – MTOE/TDA.

(3) The unit's having attained an assigned strength of 25 percent of MTOE/TDA authorized strength of officers and warrant officers combined and 10 percent of MTOE/TDA authorized strength of enlisted personnel. Exceptions include:

(a) Units with ten or more aviator positions in the MTOE/TDA authorized strength column must have attained an assigned strength of 15 percent of all officers and warrant officers combined.

(b) For medical units, Army Medical Department personnel (except Medical Service Corps) will be excluded in computing strength requirements.

(4) Members of the unit having been enlisted or appointed and assigned without regard to race, color, religion, gender, or national origin, and otherwise qualified in accordance with appropriate NGRs.

(5) All individual personnel records being complete and available.

(6) Storage facilities for federal property having been provided in a secure supply room or strong room vault (arms room) (the Construction and Facilities Management Officer or a qualified state engineer must certify that weapons, ammunition, and explosive storage room, building, or area meets the minimum required physical security standards in AR 190-11.

(7) An adequate armory facility having been provided, which is suitable for at least temporary occupancy.

(8) The community favoring organization and maintenance of the unit.

c.  Procedures to Obtain Federal Recognition as an ARNG unit.

(1) Upon determination that the requirements for Federal Recognition can be met, the State AG requests the Senior Army Advisor to inspect the unit. If there is no Senior Army Advisor, the State AG may request an officer on active (Title 10) serving as the State Inspector General to inspect the unit (Title 10 USC 12314).

(2) The Senior Army Advisor inspects the designated unit and submits NGB Form 113 to the State AG. The Senior Army Advisor (or State Inspector General) may delegate federal inspection responsibility to a commissioned officer assigned to his/her staff.

(3)  The completed NGB Form 113 is endorsed by the StateAG and forwarded to CNGB, ATTN:  NGB-ARF-T.

(4)  CNGB, upon approving NGB Form 113, extends Federal Recognition to the unit.  OA granting Federal Recognition will be forwarded to the StateAG, FORSCOM, and Continental United States (CONUSA) or overseas commanders concerned.

d.  Date of Federal Recognition.

(1)  The date on which the unit was inspected and found satisfactory is the date of Federal Recognition, or the date of organization will become the date of Federal Recognition if the inspection was conducted prior to the unit organization date.

(2)  When there is a change of station, Federal Recognition remains with the unit if 50 percent or more of its personnel move with the unit.  If over 50 percent of assigned personnel move with the unit and is substantiated by submission of DA Form 1379 (U.S. Army Reserve Components Unit Record of Reserve Training), Federal Recognition will remain with the unit regardless of distance moved.  In addition, the lineage and honors associated with a unit will not be lost if over 50 percent of assigned personnel move with the unit.

(3)  Upon reorganization, redesignation, or conversion, Federal Recognition remains with the unit.

(4)  Upon consolidation of two or more units, the date of Federal Recognition will be the date of the unit that was first extended Federal Recognition.

e.  Withdrawal of Federal Recognition.

(1)  CNGB, acting for the Secretary of the Army, may withdraw Federal Recognition from a unit that fails to maintain the policies prescribed by law (Title 10 USC, Section 10503, and Title 32 USC, Section 108).

(2)  When Federal Recognition is withdrawn from a unit, the personnel shall be transferred to other federally recognized units, to the Inactive Army National Guard, or to the Individual Ready Reserve under provision of AR 135-91.  Copies of state orders directing such action will be forwarded to the ARNG Personnel Division (NGB-ARH).

(3)  States/territories requesting the withdrawal of Federal Recognition of a unit, and not consolidating it with another unit for lineage and honors purposes, will lose all lineage and honors connected with such a unit.

f.  Temporary Federal Recognition.  CNGB, acting for the Secretary of the Army, extends temporary Federal Recognition to a new unit that has been allotted to a state and to which a carrier UIC has been assigned in accordance with (IAW) AR 71-32.  Temporary Federal Recognition will be extended for a specified period, normally not more than one year, but for however long a carrier UIC is in place.  Extensions of temporary Federal Recognition beyond one year will be handled on an individual basis.  Applicants may be recruited and enlisted or appointed for vacancies in a unit that has been extended temporary Federal Recognition.  They are eligible to participate in training, in pay status, and are eligible for participation in the incentive bonus program (AR 135-7).  If within the specified period of Temporary Federal Recognition the unit is not granted permanent Federal Recognition, the Temporary Federal Recognition will be withdrawn and unit members reassigned or separated, as appropriate.

**2-7.  Authorization**

a.  General.  Section I of the MTOE/TDA states the mission and organization of each unit.  Section II states the required and authorized strengths of the unit by grade and military occupational specialty (MOS).  Section III states the required and authorized equipment levels.  Section IIIs equipment supplement (TDA only) states the required and authorized supplement equipment levels for National Guard line item numbers (LINS).

b. Exceeding Authorizations.

(1) Personnel. The NGB strength policy is published annually by NGB-ARH. This policy is the basis for exceeding the strength contained in the authorized column of the MTOE/TDA. Additional temporary TDA positions may also be authorized by NGB to achieve specific NGB objectives. These policies will be stated separately.

(2) Equipment. Equipment will be requisitioned, maintained, and turned in IAW applicable policy. Requisitioning or maintaining other than the authorized quantities requires specific approval of NGB. Requisitions for equipment will be submitted no sooner than 365 days before the effective date of the unit's authorization document IAW AR 710-2.

c. Programmed Changes. Upon receipt of an MTOE/TDA to be implemented on a specific date (EDATE), the state and unit will plan the necessary changes to improve unit resources and training levels. If an early or delayed implementation date is required, a written request with full justification for an EDATE change must be submitted to NGB-ARF for approval by the Director of Force Programs, HQDA, IAW HQDA Command Plan Process and AR 71-32.

(1) Begin to recruit and train the personnel authorized by the new document up to one year before EDATE. For exceptionally long MOS-producing schools, NGB Training Division (NGB-ART) may authorize earlier recruitment and training.

(2) At the beginning of the period (365 days prior to EDATE) as authorized by AR 710-2, requisition new equipment authorizations, plan redistribution, or prepare to turn in equipment that will become excess.

(3) Unit Status Reporting (USR). In accordance with AR 220-1, units will report against a new MTOE/TDA on the EDATE of the document or before the EDATE if, in the opinion of the commander, the unit is more like the new MTOE/TDA than the old and reporting early will not degrade the unit's overall level. The state must submit a written request to NGB-ARR-R to report readiness against a future MTOE prior to submission of the record USR. Early implementation requires written approval from NGB-ARF and HQDA.

(4) When the authorized strength of a unit is changed by the MTOE/TDA, assigned personnel no longer authorized may be retained for 1 year past the EDATE. Every effort must be made to retain or reassign personnel into authorized positions (NGR 600-200).

**2-8. Unit Standards**

a. General. Units will be manned, equipped, and trained to accomplish their assigned mission.

b. Reporting Units. It is NGB's goal that all units have a unit status reporting numerical C-level under AR 220-1, equal to the authorized level of organization (ALO) of the unit. As a minimum, all MTOE units organized at ALO 3 or higher and TDA units reporting under AR 220-1 must achieve and maintain a unit resource level of C-3 by comparing each of the personnel, equipment, and training resource areas to MTOE requirements.

c. Nonreporting Units. For TDA units not reporting under AR 220-1, there are no minimum standards. The unit should be manned and equipped with the minimum personnel and equipment required to accomplish its mission. Send requests to NGB-ARF to reduce the authorized personnel and equipment if they exceed the minimum required.

d. Newly Organized or Converted Units. Units not given C-5 reporting authority must meet the C-3 level standard. Units given C-5 reporting authority will specify the milestones needed to achieve a C-3 level. These milestones must meet or exceed the following criteria unless other guidance is provided by NGB.

(1) Within 20 percent of the requirements for C-3 resource level by the end of the first year.

(2) Within 10 percent of the requirements for C-3 resource level by the end of the second year.

(3)  By the end of the third year, MTOE units organized at ALO 3 or higher and TDA units reporting under AR 220-1 must achieve and maintain a unit resource level of C-3.

**2-9.  Determination of Unit Status**
The unit standards specified in paragraph 2-8 will be implemented using unit status reports.  The StateAG is responsible for reporting the status of units IAW AR 220-1.

**2-10.  Units Failing to Maintain Unit Standards**

a.  When it is determined that a unit does not meet the standards specified in paragraph 11, the StateAG will take the following action:

(1)  For those units that meet or exceed minimum standards, but fail to achieve the NGB goal, the StateAG will take appropriate action, through the state readiness committee, to establish milestones as necessary for the unit to meet its goal.  NGB-ARR may request reasons for low status level and/or actions being taken on a case-by-case basis.

(2)  For those units failing to meet minimum standards specified in paragraph 2-8, the StateAG, through the state readiness committee, will prepare and implement a corrective action plan detailing the steps and milestones required for the unit to meet minimum standards.  In accordance with AR 220-1, milestone reports for each unit will be forwarded to NGB-ARR within 60 days of entering C-4 status or upon request from NGB-ARR.  This indicates the unit is failing to meet the minimum standards in any one of the resource areas measured in the Unit Status Report.

b.  When it is determined that a unit is deficient in achieving or maintaining the minimum standards, CNGB may take the following actions:

(1)  Upon receipt of the corrective action plan on a specific unit, recommend and/or direct that additional steps be taken.

(2)  If a unit has been deficient in any one resource area for a period of at least two years, a letter of deficiency may be issued.  The letter of deficiency will be sent to the AG of the state concerned.  The letter will include:

(a)  Each area of deficiency

(b)  Minimum actions to be accomplished

(c)  Possible action if deficiency is not corrected.

(3)  When a unit has been deficient in any one resource area for two years or more when, in the opinion of CNGB, the unit will not meet minimum standards within an acceptable period of time, a letter notifying units of deficiencies and possible probation may be issued.  These letters will serve as formal notification that if satisfactory improvement is not achieved within a one-year period from the time of the letter, withdrawal of Federal Recognition may occur.  This letter will include the following:

(a)  Resource areas that unit has not attained or maintained at an appropriate level.

(b)  Minimum actions to be accomplished and specific milestones.

(c)  Possible action to be taken if satisfactory improvement is not accomplished.

c.  As a minimum, the StateAG will take the following actions:

(1)  Upon receipt of the notice citing deficiency, forward CNGB within time specified by NGB-ARR the following:

(a)  Corrective action plan to include steps being taken to implement any recommendation and directives outlined in that letter.

(b)  Recommend actions that NGB can take to assist the state in achieving the minimum standards.

(2)  Upon receipt of the letter of probation, forward to CNGB within time specified by NGB-ARR the following:

(a)  Specific recommendations as to the unit's future.

(b)  If a unit is to be retained, outline all actions underway or planned, including milestones that ensure the unit meets minimum standards.

(c)  If unit is not to be retained
 aa.  Recommend replacement units that could achieve minimum standards within 3 years.
 bb.  Detail specific impact on assigned personnel, authorized equipment, armory, and full-time manning if Federal Recognition is withdrawn.
 cc.  Recommend date for proposed change. **Formatting?**

## 2-11.  Requests for Organization, Reorganization, Redesignation, Consolidation, Conversion and Withdrawal of Federal Recognition

a.  Specific approval must be obtained from the Secretary of the Army, through the CNGB, for the organization, reorganization, redesignation, consolidation, conversion, and withdrawal of Federal Recognition of ARNG units.  The following information is required for the above actions:

(1)  Approval of the Governor.

(2)  Stationing plan to include nine digit ZIP codes**,** street addresses, Congressional districts, and installation numbers.  For format see samples in Appendix B.

(3)  Incremental cost impacts identified to appropriations accounting classification code (armories, mobilization and training equipment site, unit training equipment site, and service schools).

(4)  Impact on unit resources and training levels (time to meet unit resources and training objectives, MOS mismatch).

(5)  Impact on training (special unit training, new or different training areas/weekend training site or ranges).

(6)  Impact on full-time support (increase, decrease, relocation).

(7)  Impact on personnel (demographic analysis).

(8)  Impact on logistics (redistribution actions).

(9)  The Construction and Facilities Management Officer or a qualified state engineer must certify the adequacy of the facility at the proposed new site of the unit concerned based on their inspection of the facility and the criteria outlined in AR 190-11 and NG PAM 415-12.  A statement to this effect and data required for inclusion in the state's Facilities Inventory and Stationing Plan (FISP) must accompany the request for organization or relocation.

(10) Impact/change to state maintenance plan.

(11) Environmental documentation must comply with the National Environmental Policy Act (NEPA) and it's implementing regulation (AR 200-2). Review of the document and consultation with the State Environmental Specialist will provide guidance in determining the degree of documentation required. Depending on the nature of the action and the potential environmental effects, a Record of Environmental Consideration (REC), Environmental Assessment (EA) or an Environmental Impact Statement (EIS) must be prepared. Review and approval can be a lengthy process and should be planned accordingly. The proponent of an activity is responsible for ensuring that all proper environmental documentation, to include documentation funding, is completed. The environmental process must address the cumulative environmental consequences of concurrent stationing actions that impact on the same installation or activity.

(12) Effective date of Stationing Plans. Stationing plans should be submitted once a unit has a DA approved authorization document (MTOE/TDA), or at least 12 months prior to the effective date (EDATE) of the approved document. The EDATE of the stationing plan must match the EDATE on the DA approved authorization document (MOTE/TDA). Requests for changes to EDATEs (to include EDATE changes within the fiscal year) must be submitted by separate memorandum to HQDA through the appropriate NGB SRC Organizational Integrator. Requests not requiring an authorization document should be received by this office a minimum of 120 days in advance of the requested EDATE. Units that require a concept plan must comply with EDATE requirements as reflected in paragraph 2-15.

(13) A statement is now required effectively saying "Minutes of the Joint Service Reserve Component Facilities Board, per DoDD 1225.7 and DoDI 1225.8, are available for review."

(14) A carrier UIC will be issued for newly organized units.

b. The effective date of a unit's force structure action is the date indicated in the OA. The effective date of a unit's MTOE/TDA document is shown on the document. The effective date for unit activations/inactivations needs to reflect the programmed date in the Structure of Manpower Allocation System (SAMAS) database.

c. One copy of Permanent Orders, reflecting the OA number and directing above actions, will be furnished to NGB-ARF-T and appropriate CONUSA or overseas commander.

**2-12.  Change of Station**

a. A change of the actual physical location (to include changes in street address without a physical move) of any federally recognized unit must be authorized by CNGB before the initiation of any unit or detachment element movement. To effect a change of station the State AG will submit a stationing plan to the CNGB that will include, but not limited to, the following information, using the format shown below:

| UNIT DESIGNATION | FORMER STATION | NEW STATION |
|---|---|---|
| Name of unit | Street address | Street address |
| Federal Recognition Date | City, State | City, State |
| UIC | 9 digit ZIP Code | 9 digit ZIP Code |
| | Installation Number | Installation Number |
| | Congressional district | Congressional district |

(1) Reasons for desired change.

(2) Distance involved and percentage of personnel moving with the unit (reference paragraph 9d(2)).

(3) Impact on full-time support (increase, decrease, relocation).

(4)  Impact on training and resource levels of unit(s).

(5)  Impact on requirements for service school training.

(6)  Summary of personnel and equipment action necessitated by the proposed change of station.

(7)  Summary of changes in facility occupancy.

(8)  Impact/change to state maintenance plan.

(9)  Incremental cost impact(s) identified to appropriations accounting classification code.

(10)  Effective date of change.

(11)  Approval of the Governor

b.  The Construction and Facilities Management Officer, or a qualified state engineer, must certify the adequacy of the armory facility at the proposed new site of the unit concerned based in their inspection of the new facility and the criteria outlined in AR 190-11 and NG PAM 415-12.  A statement to this effect and data required for inclusion into the state's FISP must accompany the request for change of station.

c.  If a newly constructed armory has been federally inspected, the requirements in b above will not apply; however, a statement to that effect and data required for inclusion into the FISP must be included with the request for change of station.

d.  See paragraph 2-11a(11) above for environmental impact issues.

e.  To effect a change of station of aviation units, the state authority will submit a concept plan IAW AR 71-32 to CNGB, ATTN: NGB-AVN, with a copy to NGB-ARF-F.  The plan should include proposals for any new or temporary aviation support facilities associated with the change of station.

f.  Units that are being relocated to an Active Army installation need to submit a 5-10 package to HQDA (DAMO-FMP) per AR 5-10 (Stationing), through NGB-ARF-T.

**2-13.  Attachment of a Unit**  A unit or part of a unit may be attached to another unit of the same state for administration, training, and operation.  Unless the attachment order contains specific provisions to the contrary, such attachment will imply full responsibility for the attached unit's administration, training, and operation by the unit to which attached.  The parent unit will retain responsibility in matters relating to the transfer, promotion, and demotion of personnel of the attached unit.

**2-14.  Return of ARNGUS Units to State Control**  Unit(s) returning from mobilization status to locations other than where they were originally located are required to provide a stationing plan to effect the change of station.  (See paragraph 2-12.)

**2-15.  Concept Plans**

a.  Newly formed organizations and reorganizations may require a concept plan approval prior to preparation of authorization documents.  Criteria for preparation and submission of concept plans are provided in AR 71-32.

b.  A concept plan is a detailed proposal to create a new MTOE/TDA unit.  Even though a state is directed by HQDA to create or reorganize a unit or gains approval from HQDA of a proposal for a new or changed unit, the state is not relieved of the requirement to submit a concept plan.  The purpose of the concept plan is to fully detail how the state will implement an action.

c.  Approved concept plans will have a programmed EDATE in accordance with the HQDA Command Plan Process.

**2-16.  Force Management Division Planning Shell for Concept Plans**  Newly formed organizations and reorganizations may require identifying specific criteria used to analyze unit-stationing proposals using the NGB-ARF Planning Shell (Appendix C).

**2-17.  Multiple Component Documentation**  The information listed below is an extract from HQDA LTR 220-01-1.  Subject: Army Policies and Procedures for Establishing Multiple Component Modification Table of Organization and Equipment (MTOE) and Augmentation Tables of Distribution (AUG TDAs) Units, dtd 27 July 2001, expires 27 July 2003.  Upon expiration MCU policy and procedures will be integrated within applicabale Army Regulations (AR 71-32, AR 27-10, AR 220-1).

a.  Objective:  To resource MTOE units with manpower, equipment, and funding from more than one component.  To enhance Total Force integration; to improve the resource and readiness posture of Army units; to optimize unique capabilities of each component; to improve documentation.

b.  Policies.
(1)  Funding.  The unit commander will manage funds required for organizational training and sustainment.

(2)  Personnel.

(a)  All processes will remain component specific.  Prior to processing, however, the action will be forwarded to the unit commander for review or approval.

(b)  Existing laws and regulations remain the same for utilization of full-time support personnel.

(3)  Logistics.  Property accountability will be situation dependent.

(4)  Authorization Documents (MTOE, TDA and Augmentation TDA).  Doctrinal requirements will not be changed when establishing a multi component unit.  TAA and Command Plan processes will determine component mix.

(5)  Training.  Each component will assign MOS and branch qualified personnel to the unit.

(6)  Mobilization.  Multiple Component Units will train and prepare for deployment as a unit.

(7)  Unit Status Reporting.  Procedures for submitting required USR data will be performed IAW AR 220-1.  ARNG elements will submit reports to their TAG XX, with copies to the Multiple Component Unit commander, and to NGB as directed by NGB-ARR.

**Appendix A**
**References**

**Section I**
**Required Publications**

**AR 5-10**
Stationing

**AR 11-2**
Management Controls

**AR 27-10**
Military Justice

**AR 71-32**
Force Development and Documentation – Consolidated Policies

**AR 135-7**
Incentive Programs

**AR 135-91**
Service Obligations, Methods of Fulfillment, Participation Requirements, and Enforcement Procedures.

**AR 190-11**
Physical Security of Arms, Ammunition, and Explosives

**AR 200-2**
Environmental Effects of Army Actions

**AR 220-1**
Unit Status Reporting

**AR 220-5**
Designation, Classification, and Change in Status of Units

**AR 710-2**
Inventory Management Supply Policy Below the Wholesale Level

**CJCSM 3150.02**
Joint Reporting Structure, Status of Resources and Training System

**DoDD 1225.6**
Equipping the Reserve Forces

**DoDD 1225.7**
Reserve Component Facilities Programs and Unit Stationing

**DoDI 1225.8**
Programs and Procedures for Reserve Component Facilities and Unit Stationing

**NGB Pam 415-12**
Interim Design Guide, ARNG Facilities Design/Construction Criteria

**NGR 600-200**
Enlisted Personnel Management

**Section II**
**Related Publications**

**AR 11-2**
Management Controls

**NGR 870-5**
Army National Guard Lineage and Honors

Title 10, United States Code, Section 12310

Title 32, United States Code, Sections 104, 105, 108

**Section III**
**Prescribed Forms**

**DA Form 11-2R**
Management Control Evaluation Certification Statement

**DA Form 1379**
Unit Record of Reserve Training

**NGB Form 113**
Report of Inspection for Federal Recognition

**Section IV**
**Referenced Forms**

**DA Form 1379**
Unit Record of Reserve Training

**DA Form 2028**
Recommended Changes to Publications and Blank Forms

**DD Form 1390/91**
Military Construction Program

**Appendix B**
**Stationing Plans**

**B-1. Format**
Stationing plans will be included with requests for unit changes and formatted as follows:

     a.  Under the provisions of Title 32, United States Code, Section 104, request the troop allotment to (STATE) be changed as indicated below, effective (DATE).

| Addition(s) | Deletions |
|---|---|
| Unit (parent) | Unit (parent) |
| Parent Organization | Parent Organization |
| Division (if applicable) | Division (if applicable) |
| MTOE | MTOE |
| UIC | UIC |

NOTES:
       ADDITIONS – New units to the state at the parent (AA) level.
       DELETIONS – Units eliminated from the state at the parent (AA) level.

     b.  When paragraph B-1 a. is not required, the following section will begin with the statement:
The state of (STATE) requests authority to organize, reorganize, redesignate, consolidate, and convert (as applicable) the following unit(s):
_____
____

|  |  | STRENGTH | | |
|---|---|---|---|---|
|  |  | REQUIRED | AUTHORIZED |  |
| NEW UNIT | OLD UNIT | OFF/WO/ENL | OFF/WO/ENL | ACTION* |
| Unit | Unit |  |  |  |
| MTOE | MTOE |  |  |  |
| EDATE | EDATE |  |  |  |
| STREET ADDRESS | STREET ADDRESS |  |  |  |
| CITY, STATE | CITY, STATE |  |  |  |
| ZIP Code +4 | ZIP Code +4 |  |  |  |
| F/R Date | F/R Date |  |  |  |
| Installation Number | Installation Number |  |  |  |
| Congressional district | Congressional district |  |  |  |
| UIC | UIC |  |  |  |

* See glossary for definition of terms.

     c.  Subject request must also include any separate TDA augmentation that directly supports MTOE units (i.e. CSMS, MATES, AASF).  The augmentation TDA may require a new UIC.

**B-2. Exceptions**
NGB will not issue OA letters for MTOE/TDA documents that are updates to existing documents unless the change(s) involves reorganizing, redesignating, consolidating, or converting the unit.

**Appendix C**
**Force Management Division Planning Shell**

**C-1. Description of Action (NGB-ARF)**
    a. Unit Identification.
        (1) Abbreviated name (A-name)/US Army Regimental System (USARS) designation:
        (2) UIC
    b. Type action:
    c. EDATE/start fielding:
    d. Programmed location:
    e. Origin of action.

**C-2. Organization**
    a. Documentation (NGB-ARF)
        (1) SRC:
        (2) BOIPS (NGB-ARL):
        (3) MTOE:
        (4) ALO (NGB-ARL/NGB-ARH/NGB-ARR):
    b. Full-Time Support (NGB-ARM).
    c. Personnel (NGB-ARH)
        (1) Authorized and structured strength (NGB-ARF)
        (2) Recruiting (NGB-ARH)
        (3) Reclassification (NGB-ARH/NGB-ARO)
        (4) General Officer impact (GOMO)
    d. Stationing
    e. MDEP (NGB-ARA)

**C-3. Facilities (NGB-ARI)**
    a. Planning assumptions
    b. Training requirements
    c. Technical Requirements
    d. Maintenance facilities requirements
    e. Storage and security requirements
        (1) Equipment storage – home station
        (2) Storage at concentration sites
        (3) Weapons security requirements
        (4) Other special security requirements
    f. Facility safety requirements

**C-4. Environmental issues (NGB-ARE)**
    Environmental impact

**C-5. Supply (NGB-ARL/NGB-ARF)**
    a. New tactical systems (Force Modernization Equipment)(NGB-ARF)
        (1) Materiel Fielding Plan
        (2) Distribution Plan
        (3) Fielding Command
    b. Supply systems and accounts (NGB-ARL)
    c. Materiel support requirements (NGB-ARL)
    d. Associated support items of equipment (NGB-ARL/NGB-ARF)
    e. Displaced equipment redistribution (NGB-ARL)
    f. Major non-force modernization systems (NGB-ARL)
    g. Other

**C-6. Maintenance (NGB-ARL)**
    a. Initial
    b. Recurring
        (1) Organizational
        (2) DS
        (3) GS
        (4) Publications
        (5) Support Relationships (Base Operations)

**C-7. Transportation**
    a. New systems and relocation
    b. Deprocessing and storage of new equipment
    c. Displaced systems and other requirements
    d. Planned transportation modes

**C-8. Training and Doctrine (NGB-ARO)**
    a. Training development
    b. Training strategy
    c. Individual training
        (1) Reclassification
        (2) Additional skill qualification training
    d. Collective training
    e. Training materials and simulation devices
    f. Doctrinal integration requirements
    g. Training ammunition requirements – initial and recurring
    h. Training facilities
        (1) WETS
        (2) Training centers
        (3) Ranges
    i. Training publications
    j. New/displaced equipment training

**C-9. Resourcing (NGB-ARA/NGB-ARM)**
    a. MDEP
    b. Full-Time Support

**C-10. Readiness (NGB-ARR)**
    a. Date for change to C-5
    b. Objective date for C-3
    c. Monitoring procedures
    d. Major inhibitors

**C-11. Other requirements**
    Approval of the State Adjutant General (cover letter with TAG signature)

**Appendix D**
Management Control Evaluation Checklist

**D-1. Function**
The functions covered by this checklist is the administration of the management control process.

**D-2. Purpose**
The purpose of this checklist is to assist assessable unit managers and Management Control Administrators (MCAs) in evaluating the key management controls outlined below.  It is not intended to cover all controls.

**D-3. Instructions**
Answers must be based on the actual testing of key management control (e.g., document analysis, direct observation, sampling, simulation, other).  Answers that indicate deficiencies must be explained and corrective action indicated in supporting documentation.  These key management controls must be formally evaluated at least once every five years.  Certification that this evaluation has been conducted must be accomplished on DA Form 11-2-R (Management Control Evaluation Certification Statement).

**D-4. Test Questions**

  a.  Federal Recognition

      (1)  The key management control for unit Federal Recognition as established in NGR 10-1.  Unit Federal Recognition is required by Title 10, United States Code, Armed Forces. The Federal Recognition as prescribed on NGB Form 113.  Federal Recognition inspection shall be completed no later than six months after the EDATE for the new organization.  The inspection shall be completed by the Senior Army Advisor or a commissioned officer of his/her staff.

      (2)  Test questions related to unit Federal Recognition:

          (a)  Is the required regulation on hand and current?  (NGR 10-1)

          (b)  Has a unit Federal Recognition Inspection been completed within the timeline for each unit inspection?  (Not later than six months after EDATE.)

          (c)  Has the required NGB Form 113 been completed for each unit based on the results of the Federal Recognition inspection?

          (d)  Have the NGB Forms 113 been submitted to NGB-ARF for issuance of OA and a Federal Recognition Certificate?

          (e)  Have OA and Federal Recognition Certificates been received for each NGB Form 113 submitted?

  b.  Joint Service Reserve Component Facilities Board.  The key management control for the Minutes of the Joint Service Reserve Component Facilities Board as established in DoDD 1225.7, DoDI 1225.8, AR 5-10, and NGR 10-1 shall be used before stationing decisions are finalized.  Coordination with the Joint Services Reserve Component Facility Board is required for all actions for increases in Army National Guard requirements or any reserve component requirements in any local community.  The coordination of all members of the Joint Service Reserve Component Facility Board will ensure that the manpower potential of local communities is adequate to meet and maintain the authorized strength of new and existing units.  Test questions related to minutes of the Joint Service Reserve Component Facilities Board:

      (1)  Are the required directive and instruction on hand and current?  (DoDD 1225.7, DoDI 1225.8, AR 5-10, and NGR 10-1)

(2)  Has a manpower potential survey been performed for the proposed local community being considered for new or increased Army National Guard structure (DoDI 1225.8 Enclosure 6)?

(3)  Has the proposed stationing action been coordinated with other members of the Joint Service Reserve Component Facility Board?

(4)  Is there a copy of the minutes of the Joint Service Reserve Component Facilities Board meeting at which the proposed stationing action was coordinated?

(5)  Has a copy of the minutes of the Joint Service Reserve Component Facilities Board or the manpower potential survey been submitted with the stationing plan submitted to NGB-ARF?  Or, has a statement been incorporated into the stationing plan that the survey was completed and coordinated with the Joint Service Reserve Component Facility Board indicating that the results were favorable for placement of the ARNG unit(s) in specific location(s) and is available for review upon request?

**D-5.  Supersession**
This checklist is new.

**D-6.  Comments**
Help to make this a better tool for evaluating management controls.  Submit comments to Chief, National Guard Bureau, ATTN: NGB-ARF, 111 South George Mason Drive, Arlington, VA 22204-1382.

**Appendix E**
Unit Identification Code (UIC) Policy, Processes, and Procedures.

**E-1.  Purpose**  This appendix prescribes policies, processes and procedures for requesting, processing, issuing and return of UICs.

**E-2.  References**  Required and related publications and forms are listed in Appendix A.

**E-3.  Explanation of abbreviations and terms**  Abbreviations and special terms used in this regulation are explained in the glossary.

**E-4.  Responsibilities**

   a.  The Chief, Force Management Division will establish policies and procedures within the Force Management Division to:

      (1)  Request UIC

      (2)  Process UIC

      (3)  Issue UIC

      (4)  Return UIC

   b.  The State Adjutant General will:

      (1)  Provide the NGB-ARF Standard Requirement Code (SRC) Organizational Integrator (OI) three proposed Unit Designations.  Numerical designations of like type units programmed for inactivation may be considered to be retained for the new unit.

      (2)  Provide the NGB-ARF SRC OI a proposed location in the following format:  City_____, State_____, Zip Code_____.

   c.  The NGB-ARF SRC OI will:

      (1)  Request notional UIC from the SRC OI at HQDA.

      (2)  Coordinate with the appropriate State Mobilization Readiness Officer (MRO) or Force Integration and Readiness Officer (FIRO) to obtain three proposed unit designations and unit location.

      (3)  Program notional UIC/Unit Location in the Structure & Manpower Allocation System (SAMAS) with the SRC OI at HQDA.

      (4)  Program notional UIC/Unit Location in the ARNG Force Authorization System within RCAS.

      (5)  Complete the Request for Assignment of Unit Identification Code.

      (6)  Submit the Request for Assignment of UICto the UIC Manager, NGB-ARF.

      (7)  Maintain a file copy.

      (8)  Provide guidance and coordination to the SRC Document Integrator at USAFMSA for authorization document.

22

(9)  Ensure correct UIC is on the HQDA approved document.

d.  UICManager, NGB-ARF.

(1)  Process UIC request upon receipt from the NGB-ARF SRC OI.

(2)  Coordinate with the Center for Military History.

(3)  Submit UIC Request to HQDA (ATTN: DAMO-FDP)

(4)  Track the request.

(5)  Receive the UIC approval from HQDA.

(6)  Issue approved UICs received from the HQDA UIC Manager to the NGB-ARF SRC OI, with copies to the NGB-ARF Command Plan Manager and the TAADS Administrator.

(7)  Update the OA database.

(8)  Submit the unit status changes to NGB-ARR for registration in GSORTS.

**E-5.  Procedural Information**

a.  The ARNG is authorized force structure by HQDA.

b.  The Army uses the Total Army Analysis (TAA) process to determine force structure requirements and authorizations at organizational level of detail.

c.  Based on staff recommendations the ARNG leadership determines in which state to activate the new unit.

d.  Upon state acceptance, the NGB-ARF SRC OI will call the StateMRO and/or FIRO to obtain required information.

e.  The NGB-ARF SRC OI will complete the UIC request form.

f.  The NGB-ARF SRC OI will submit the UIC request to the UIC Manager in NGB-ARF.

g.  The NGB-ARF UIC Manager will coordinate the numeric designation UIC request with the Center for Military History (CMH).

(1)  When a state designation is assigned, CMH will notify the NGB-ARF UIC Manager.

(2)  If one of the three state designations is not accepted, the request is returned to the NGB-ARF UIC Manager and the process goes back to E-5 (d) above.  (An initial attempt will be made by the UIC Manager to contact the StateFIRO/MRO.)

h.  The NGB-ARF UIC Manager forwards the UIC request to HQDA (ATTN: MOFI-ZC-SAM).

i.  The NGB-ARF UIC Manager monitors and tracks the UIC request.  This enables the UIC Manager to provide status updates.

j.  The UIC request is processed and staffed at the HQDA level.

k.  Upon approval of the UIC request, HQDA will issue the UIC to the NGB-ARF UIC Manager.

l. The NGB-ARF UIC Manager receives copies of the approved UIC, makes copies, and distributes to the NGB-ARF SRC OI, TAADS Administrator, and the Command Plan Manager.

m. The NGB-ARF UIC Manager enters the HQDA approved UIC in the OA data base in RCAS and forwards to NGB-ARR for entry into JCS SORTS.

n. The NGB-ARF SRC OI will at this time enter the UIC in the Force Authorization System in RCAS and delete the notional UIC from the Force Authorization System.

o. The NGB ARF SRC OI will ensure the HQDA SRC OI adds the UIC to SAMAS and deletes the now replaced notional UIC from SAMAS.

p. The NGB-ARF SRC OI will notify the SRC DI at USAFMSA for validation and entry in the documents.

**E-6.  Multiple Year Carrier UIC**

Once the parent UIC and one year carrier UIC has been issued by HQDA, the following steps will be followed in order to obtain a multiple year carrier UIC:

a. The state will provide a written justification for the multiple year carrier UIC.

b. The NGB-ARF SRC OI will prepare an endorsement for the Chief, Force Management Division's signature.

c. The draft endorsement will be staffed with all appropriate concerned NGB divisions, the NGB-ARF Command Plan Manager, and the NGB-ARF UIC Manager.

d. The signed endorsement will be sent to DAMO-FDP for the Director, Force Programs approval.

e. The HQDA NGB Command Manager will provide the NGB-ARF UIC Manager a copy of the signed memorandum approving the revised carrier UIC Edate.

f. The NGB-ARF UIC Manager will then provide copies to the NGB-ARF SRC OI and the NGB-ARF Command Plan Manager.

g. If the NGB-ARF SRC OI is notified first of the approval of a multiple year carrier, the SRC OI will provide the NGB-ARF UIC Manager a copy of the approval.  The NGB-ARF UIC Manager will then provide a copy to the NGB-ARF Command Plan Manager.

h. The NGB SRC OI will provide state notification in writing that the request was approved.

**E-7.  Delayed or Accelerated UIC Edates**

HQDA must approve any delay or acceleration of Edates.  If the action is within the same FY, the HQDA approval authority is Chief, FDP.  If the action affects a separate FY, the Director, Force Programs is the required approval authority.  The following steps will be followed in order to obtain delayed or accelerated Edates:

a. If a state requests to delay or accelerate an edate, the state will provide a written justification to support the request.

b. The NGB-ARF SRC OI will either prepare an endorsement to the state's request (or a memo if its an NGB request) for the Chief, Force Management Division's signature.

c.  The draft endorsement or memo will be staffed with all appropriate concerned NGB divisions, the NGB-ARF Command Plan Manager, and the NGB-ARF UIC Manager.

d.  The signed endorsement or memo will be sent to DAMO-FDP for either the Chief, FDP or Director, Force Programs approval.

e.  The HQDA NGB Command Manager will provide the NGB-ARF UIC Manager a copy of the signed memorandum approving the delay or acceleration of the Edate.

f.  The NGB-ARF UIC Manager will then provide copies to the NGB-ARF SRC OI, the NGB-ARF Command Plan Manager, and the NGB-ARF TAADS Manager.

g.  If the NGB-ARF SRC OI is notified first of the approval of the delay or acceleration, the SRC OI will provide the NGB-ARF UIC Manager a copy of the approval.  The NGB-ARF UIC Manager will then provide copies to the NGB-ARF Command Manager and the NGB-ARF TAADS Manager.

h.  The NGB SRC OI will:

(1)  Ensure that the approved change and other programmed actions affected by the approval are programmed correctly in the ARNG Force Authorization File.

(2)  Ensure that the HQDA SRC OI programs the approved change and other programmed actions affected by the approval correctly in SAMAS.

(3)  Ensure that the USAFMSA SRC documentor is notified of the approved delay or acceleration of Edate and makes all necessary documentation changes required by the approval.

(4)  Ensure the state is notified in writing of the approved delay or acceleration of Edate.

**E-8.  Return of UIC**

If a decision is made not to use a UIC that has been issued by the HQDA  the NGB-ARF SRC OI will notify the NGB-ARF UIC Manager.  The following events are required:

a.  The NGB-ARF UIC Manager returns the UIC to the UICIO at HQDA.

b.  The NGB-ARF SRC OI removes the UIC from the Force Authorization System.

c.  The NGB-ARF SRC OI requests the HQDA SRC OI to remove the UIC from SAMAS.

d.  The NGB ARF SRC OI requests the USAFMSA SRC documentor remove the UIC from documentation.

**NGR 10-1**                                                    **22 November 2002**

**GLOSSARY**

**Section I**
**Abbreviations**

**AAA**
Army Audit Agency

**AASF**
Army Aviation Support Facility

**AG**
Adjutant General

**ALO**
Authorized Level of Organization

**ARNG**
Army National Guard

**ASORTS**
Army Status of Resources and Training System

**BOIP**
Basis of Issue Plans

**CJCSM**
Chief, Joint Chief of Staff Memorandum

**CNGB**
Chief, National Guard Bureau

**CONUSA**
Continental US Army

**CSMS**
Combined Support Maintenance Shop

**DCSOPS**
Deputy Chief of Staff for Operations

**DoD**
Department of Defense

**DoDD**
Department of Defense Directive

**DoDI**
Department of Defense Instruction

**EA**
Environmental Assessment

**EDATE/Edate**
Effective Date

**EIS**
Environmental Impact Statement

**FISP**
Facilities Inventory and Stationing Plan

**FORSCOM**
US Army Forces Command

**GOMO**
General Officer Management Office

**HQDA**
Headquarters, Department of the Army

**INSNO**
Installation Number

**JCS**
Joint Chiefs of Staff

**JCS GSORTS**
Joint Chiefs of Staff Global Status of Resources and Training System

**MATES**
Maneuver and Training Equipment Site

**MOS**
Military Occupational Skill

**MTOE**
Modified Table of Organization & Equipment

**NEPA**
National Environmental Policy Act

**NGB**
National Guard Bureau

**NGB-ARC**
Comptroller Division

**NGB-ARE**
Environmental Programs Division

**NGB-ARF**
Force Management Division

**NGB-ARI**
Installations Division

**NGB-ARL**
Logistics Division

**NGB-ARM**
Full-Time Support Division

**NGB-ARR**
Readiness Division

**NGB-ARH**
Human Resources, Policy, and Programs Division

**OA**
Organizational Authority

**REC**
Record of Environmental Consideration

**SORTS**
Status of Resources and Training System

**SRC**
Standard Requirements Code

**TAA**
Total Army Analysis

**TDA**
Table of Distribution and Allowance

**UIC**
Unit Identification Code

**USARS**
US Army Regimental System

**WETS**
Weekend Training Site

**Section II**
**Terms**

**Authorized strength**
That portion of the required strength that can be supported by allocated spaces. Authorized strengths for ARNG units are prescribed in the approved MTOE/TDA documents published by NGB under the authorized strength column. For MTOE and TDAs, the authorized column depicts those resources applicable during peacetime operation as a result of budgetary constraints or manpower ceilings as directed by HQDA. Normally, the authorized column will not exceed the required column. When an exception is necessary, the reason must be completely justified.

**Change of status**
Upon request from the StateAG, or in order to implement the ARNG troop basis, CNGB may, IAW directions of the Secretary of the Army, authorize the organization of new units, or the conversion, consolidation, reorganization, redesignation, or change of station of existing units.

**Change of Station**
A change in the official location of a unit.  The lineage of an ARNG unit is historically linked with that of a local geographical area and should not be physically transferred out of the local recruiting area except to enter the active federal service or when there is a physical change of station of a unit with its personnel.

**Consolidation**
The merging of two or more federally recognized units into a single federally recognized unit.

**Conversion**
The changing of a unit from one branch to another, for example from infantry to field artillery.

**Designation**
Normally, the designation of TOE units will be prescribed by the unit designation appearing under the title of the appropriate MTOE.  However, the official designation will be the designation contained in the OA directing the change in status of the unit.
        a.  When further identification of the type unit is desirable, additional descriptive words may be added parenthetically as approved by HQDA.  When the designation includes a parenthetical identification, that portion not in parenthesis is the official designation.  Redesignation of a unit is  not required where a change is made in the parenthetical identification.  For example 222d Transportation Company (Lt Trk) to 222d Transportation Company (Lt-Med Trk).

        b.  Chief of Military History controls and issues all numbers used in ARNG unit designations.  CNGB officially assigns numbers for units of the ARNG and prepares an OA.

        c.  Units within parent regiments established under the US Army Regimental System will have, within each parent regiment, a variable number of active units depending upon the Army Force Program.  The regiment (except armored cavalry regiment) will be a family of units bearing the regimental name.  When there are no composite units of a USARS regiment in the ARNG troop structure, the regiment will be inactivated and returned to control of CNGB (NGB-PAI-H).

**Effective date (EDATE)**
A six position numeric code that signifies the actual date that an authorization document is effective.

**Federal Recognition**
Federal Recognition is granted by the Secretary of the Army when a unit of the organized militia of a state, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, the District of Columbia, or territories under US control, meets the qualifications prescribed for the organization and composition of the ARNG.

**Major Command**
The Active Army commander designated by HQDA as having mobilization command responsibility for ARNG units.  The major commander may be the US Army Forces Command (FORSCOM) or overseas commander as designated by HQDA.  FORSCOM may delegate this responsibility to Continental US Army (CONUSA) commanders.

**Management Control**
The rules, procedures, techniques and devices employed by managers to ensure that what should occur in their daily operations does occur on a continuing basis; a broad array of measures used by managers to provide reasonable assurance that their subordinates are performing as intended. Controls are designed to ensure organizational effectiveness and compliance with legal requirements and are the baseline requirement for management control evaluations.

**Organizational Authority**
The official document issued by NGB to authorize organization of a new unit, change of station, consolidation, conversion, redesignation, reorganization, or to grant or withdraw Federal Recognition.

**Organize**
The bringing of a unit into physical existence by commissioning, enlisting, or assigning personnel to obtain Federal Recognition.

**Parent organization/unit**
The complete structure of a military element prescribed by an MTOE/TDA.

**Redesignation**
The changing of the official and distinctive number or designation of a unit.

**Reorganization**
The changing from one type of unit to another within a branch, or the changing of personnel and equipment within a unit in accordance with new or revise authorization documents.

**Required (structured) strength**
Strength prescribed in HQDA approved MTOE and TDA documents published by NGB under required strength column. For MTOE, the required column (structured strength) is the level 1 personnel and equipment resources that should accompany an MTOE unit when deployed or committed to sustain combat. For TDAs, the required column (structured strength) is based upon the military and civilian spaces recognized by manpower and equipment surveys.

**Split organization/unit**
A part of a parent unit or subunit that is stationed at a location other than the main or headquarters portion of the unit. The designation of split units will include a description such as Detachment 1, Detachment 2, etc., to distinguish between the split organization and the main or headquarters portion of the unit.

**Section III**
**Special Terms**

This section contains no entries

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ASSOCIATION OF CIVILIAN TECHNICIANS, INC., <u>et</u> <u>al</u>.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 07-1747 (CKK)** |
| | ) |
| **UNITED STATES OF AMERICA, <u>et</u> <u>al</u>.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| _____ | ) |

<u>**ORDER**</u>

On consideration of the Defendants' Motion, and the entire record herein, it is this _____

day of February, 2008,

**ORDERED**, that the Defendants' Defendants' Motion to Dismiss, or in the Alternative,

For Summary Judgment, is **Granted.**

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies to Parties via ECF