UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ASSOCIATION OF CIVILIAN            )
TECHNICIANS, INC., *et al*.,        )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )        Civil Action No. 07-01747 (CKK)
                                    )
UNITED STATES OF AMERICA, *et al*., )
                                    )
            Defendants.             )
_____ )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN
THE ALTERNATIVE FOR SUMMARY JUDGMENT**

We show below that defendants' dispositive motion should be denied and that plaintiffs'

motion for summary judgment should be granted.

## FACTS

The Army Board for Correction of Military Records (ABCMR, Correction Board, or

Board) determined that plaintiffs Daniel Romero Cruz, Juan A. Velez Soto, Domingo Hernandez

Dones, and Kenneth Colon Ayala had been separated from military membership in the Puerto

Rico Army National Guard (PRARNG) in violation of a federal regulation, NGR 600-200, and

that each should be retroactively reinstated in the PRARNG and afforded related relief incident

to correction of their military records. In each case, however, the Board, the Secretary of the

Army, and the Chief of the National Guard Bureau refused to order implementation of this relief.

They based their refusal to order the relief on a government policy and practice asserting lack

authority to order it. In the absence of an order, the PRARNG has not implemented the relief

that the Board recommended. Defs.' Statement of Material Facts ¶¶ 3, 5b-e, 6b-h, 7e-k, 8k-m,

12, and 13. Defs.' Mem. at 8 n. 7.

As a result of their loss of military membership in the PRARNG, plaintiffs automatically were separated from their federal civilian employment as technicians under 32 U.S.C. § 709. Defs.' Statement of Material Facts ¶¶ 2, 3, 5b, 6b, 8e.  Under that statute maintaining military membership in the PRARNG was required in order for them to keep their civilian jobs.  § 709(b)(2).

The plaintiff unions represent a nationwide majority of technicians employed under 32 U.S.C. § 709.  Defs.' Statement of Material Facts ¶ 1.

## ARGUMENT

I.    **The Federal Government Policy and Practice of Refusing to Afford Relief from National Guard Separations that Violate Federal Regulations, and Defendants' Failure to Afford this Relief to the Individual Plaintiffs, are Contrary to Law**

A.  **Introduction**

We show below that, where the Secretary determines that separation from National Guard membership violates federal regulations, the Secretary has authority and a duty to redress the violation.  The Secretary may order redress by acting either through the Correction Board under 10 U.S.C. § 1552 or independently of the Board, under 32 U.S.C. § 110.  The Chief of the National Guard Bureau also has authority to order redress.

Defendants' contrary view overlooks 32 U.S.C. § 110,  which states, "The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."  Defendants overlook that the authority stated in § 110 is delegated to them by 3 U.S.C. § 302.  Defendants' memorandum does not mention either of these statutes.[1]

In light of § 110, defendants' legal position is untenable and self-contradictory.  On the one hand, defendants do not dispute that they have authority to "prescribe regulations . . . necessary

---

[1] Plaintiffs cited these statutes in paragraph 17 of their complaint.

to . . . govern the National Guard," § 110; but, on the other hand, they deny that they have authority to "issue orders" enforcing those regulations.  *Id*.  Section 110, however, confers both types of authority.

The cases on which defendants rely do not address the authority of the Correction Board under § 110.  Nor do they address defendants' § 110 authority to act independently of the Board. The reasoning of the opinions on which defendants rely is not only incomplete because it fails to consider § 110 and § 302, but also self-contradictory and unsupported by the text of the Correction Board statute.

### B.  The Secretary Has Authority and a Duty to Order Redress Through the Board

The Secretary, acting through the Board, has authority under § 1552 to correct federal records of PRARNG membership.  The Board also has authority, under § 1552 or § 110, to correct PRARNG records of PRARNG membership to ensure that they meet federal legal requirements.  Where the Board finds that error or injustice has occurred, it has a duty to afford "thorough and fitting relief."  *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (internal quotation marks and citations omitted).

### 1.  The Board Must Correct Army Department Records of State Guard Membership

Under 10 U.S.C. § 1552(a), the Secretary corrects "record[s] of the . . . department" by "acting through" the Correction Board.  Thus, to the extent records concerning plaintiffs' membership in the PRARNG are Department records, they should be corrected by action through the Board.

The Department has records concerning membership in the PRARNG.  The PRARNG is part of the "Army National Guard" (ARNG) and therefore the "National Guard."  32 U.S.C. § 101(3) and (4).  Further, members of the PRARNG are members of the "Army National Guard of

the United States" (ARNGUS), which is "the reserve component of the Army all of whose members are members of the Army National Guard." § 101(5). The Secretary has a statutory obligation to "determine whether . . . Army National Guard records are being kept in accordance with [title 32 of the United States Code]" and this determination is "the basis for determining . . . which . . . persons constitute . . . members of the National Guard." § 105. Because the Department must determine which persons are members of the PRARNG to determine which persons are members of the ARNG and therefore the ARNGUS, the Department necessarily has records concerning PRARNG membership. Department records of ARNGUS membership necessarily show who is a member of the PRARNG.

Because the Department has records of PRARNG membership, the Secretary should correct those records by "acting through" the Correction Board. 10 U.S.C. § 1552(a). The Correction Board determined that plaintiffs' separations from the PRARNG violated federal regulations and that their records should be corrected to show that they were not separated from the PRARNG. The Secretary therefore, acting through the Board, should correct the Department's records to show that plaintiffs were not separated from the PRARNG.

In *Penagaricano v. Llenza*, 747 F.2d 55 (1st Cir. 1984), a case concerning an officer's membership in the Air National Guard (ANG) and the Air National Guard of the United States (ANGUS), the court said the Correction Board "can correct the officer's *federal* records to show that his federal recognition has not been withdrawn and that he remains a member in good standing of the ANGUS." 747 F.2d at 57 (emphasis in original). The "federal records" of "federal recognition" that the court said the Board could correct, to show that recognition had not been "withdrawn," are federal records of membership in the state National Guard. Federally recognized membership in the state National Guard is what the plaintiff in *Penagaricano* had

possessed. "Federal recognition" means recognition by the federal military department that a person is a member of a federally recognized state National Guard unit. 32 U.S.C. § 301 ("a person . . . becomes federally recognized" as "an enlisted member of the National Guard . . . upon enlisting in a federally recognized unit or organization of the National Guard").

A federal record that shows membership in good standing in the ARNGUS necessarily is a record that shows membership in good standing in a state ARNG. By statute, one cannot be a member of the ARNGUS without being a member of a state ARNG. 32 U.S.C. § 101(5). For this reason, a federal record of membership in the ARNGUS inherently is a record of membership in a state ARNG. Thus, as noted above, the Department has records of PRARNG membership; and the Correction Board has power to correct plaintiffs' federal records to show that, insofar as the Department is concerned, plaintiffs are members of the ARNGUS because they are members of the PRARNG.

The *Penagaricano* court, after stating first that the Correction Board has authority to correct federal records to show retention of federal recognition and continued membership in good standing in the ANGUS, went on to say that "the Board cannot direct . . . reinstatement in the National Guard of the state." 747 F.2d at 57. The court, however, did not acknowledge that this latter statement contradicts its first statement.[2] Because "federal records" of "federal recognition" are federal records that recognize state National Guard membership, and because federal records of membership in the ANGUS necessarily are federal records of membership in a

---

[2] Also, the *Penagaricano* court did not address the President's authority under 32 U.S.C. § 110 to issue orders to a state Guard. Consequently, the court did not consider whether the Secretary and the Correction Board also have § 110 authority, by implicit delegation under 3 U.S.C. § 302. The court's discussion of the scope of the Correction Board's authority is *obiter dicta* because no Board decision was before the court. 747 F.2d at 58.

state ANG, authority to correct these federal records necessarily constitutes authority to "direct . . . reinstatement in the National Guard of the state" *insofar as federal records* are concerned.

Here, the Board recognized that the proper relief was retroactive reinstatement of plaintiffs to PRARNG membership. This obviously is the case. To be "thorough and fitting," *Yee v.United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975), relief from unlawful separation must include retroactive reinstatement. The Board itself recommended this relief. But the Board and the Secretary failed to implement this relief as to the Department's records. They failed to correct Department records to show that, in the eyes of the Department, plaintiffs were not separated from, and instead continued to be, members of the PRARNG and the ARNGUS. This failure was contrary to law.[3]

### 2. The Board Must Correct PRARNG Records to Show Plaintiffs' Federally Mandated PRARNG Membership

Under 32 U.S.C. § 105, "Army National Guard records" used as "the basis for determining . . . which . . . persons constitute . . . members of the National Guard," must be "kept in accordance with [title 32 of the United States Code]." Under 32 U.S.C. § 101(3) and (4), Army National Guard records include PRARNG records because the PRARNG is part of the Army National Guard.

For records of PRARNG membership to be kept in accordance with title 32, they must reflect the membership of all persons who are entitled under title 32 to be PRARNG members. Persons entitled to be PRARNG members under title 32 include those who are entitled to

---

[3] Though the language of § 1552(a) says that the Secretary "may" correct a record when the "Secretary considers it necessary to correct an error or remove an injustice," the Secretary does not have the option of declining to afford thorough and fitting relief. *Yee*, 512 F.2d at 1388-89. *See Dilley v. Alexander*, 603 F.2d 914, 924 n. 20 (D.C. Cir. 1979) (Board does not have discretion to limit relief to measures that fail to satisfy legal requirements); *Reale v. United States*, 208 Ct. Cl. 1010, 1011 (1976) ("If the Board when asked, fails to correct [legal] 'error', courts will correct it on judicial review").

PRARNG membership under federal regulations issued to implement title 32, because these regulations are binding and have the force of law. *United States v. Nixon*, 418 U.S. 683 (1974) (agency bound by its regulations); *Barnes v. United States*, 66 Fed. Cl. 497 (2005) (military bound by its personnel regulations). The Correction Board found that plaintiffs were entitled to continue to be members of the PRARNG because their separations from the PRARNG violated NGR 600-200, a binding federal regulation issued to implement title 32.

NGR 600-200 is binding on the PRARNG, as well as the Department, because the President, Secretary, and Chief of the National Guard Bureau have statutory authority to issue regulations governing membership in and separation from the Army National Guard, which includes the PRARNG. Section 110 of title 32 states, "The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard." The President's authority is "presumed in law" to be delegated to appropriate "official[s]" even in the absence of "express authorization." 3 U.S.C. § 302; *Dysart v. United States*, 369 F.3d 1303, 1312 (Fed. Cir. 2004) (under § 302 Secretary has presidential authority to appoint officers, despite absence of express delegation); *Law v. United States*, 11 F.3d 1061, 1066-67 (Fed. Cir. 1993) (same, Secretary's removal of officer from promotion list); *Gunning v. Walker*, 663 F. Supp. 941, 943-44 (D. Conn. 1987) (under § 302 Secretary is presumed to have authority to issue regulations governing National Guard where statute gives President that authority), *aff'd* 847 F.2d 834 (2d Cir. 1988). The Secretary also has authority under 32 U.S.C. § 322(c) to prescribe by regulation in "time of peace" the circumstances in which "an enlisted member of the National Guard may be discharged before his enlistment expires."

The Chief of the National Guard Bureau also is an "official" to whom the President's authority to regulate and issue orders to the National Guard is "presumed in law" to be delegated

under 3 U.S.C. § 302.  In addition, the Secretary's statutory authority as to the National Guard is

delegated to the Chief of the National Guard Bureau by the statutorily mandated National Guard

Bureau charter.  The charter delegates to the Bureau responsibility, as to the National Guard, to

issue "directives, regulations, and publications consistent with approved policies of the Army."

10 U.S.C. § 10503(10); AR 130-5/AFMD Fig. 1-1, paragraph 10 (30 Jan 2002).

Under the statutory provisions reviewed above, NGR 600-200 is a valid regulation that is

binding on the PRARNG.  These statutory provisions, moreover, are well within the

constitutional authority of the Congress.  The statutory authority of the President, Secretary and

Chief of the Guard Bureau to issue NGR 600-200 is grounded in the constitutional authority of

Congress "To provide for . . . the Militia, and for governing such Part of them as may be

employed in the Service of the United States." U.S. Const. art. I, § 8, cl. 16; *see generally*,

*Perpich v. Dep't of Defense*, 496 U.S. 334 (1990).  It also is grounded in Congress's

constitutional authority to prescribe the terms under which federal funds may be used.  *South

Dakota v. Dole*, 483 U.S. 203, 210-211 (1987) (federal government has broad latitude to attach

regulatory requirements to grants of federal funds even in areas exclusively reserved to the states

where the federal government lacks power to regulate state conduct directly).  The PRARNG is a

"federally recognized" part of the "Army National Guard" that is "trained, . . . under the

sixteenth clause of section 8, article I, of the Constitution; [and] . . . organized, armed, and

equipped wholly or partly at Federal expense." 32 U.S.C. § 101(3) and (4).  NGR 600-200

therefore is authorized by the Constitution as well as statutes.

In carrying out the duty to keep, in accordance with federal law, records of federally

mandated and federally recognized PRARNG membership, the PRARNG performs a federal

function and acts as an agency of the Department of the Army.  *Lipscomb v. Fed. Labor*

*Relations Auth.*, 333 F.3d 611, 617-19 (5th Cir. 2003) (in employing technicians under 32 U.S.C.

§ 709, state National Guard acts as "a federal agency . . . because of the federal nature of the

employees . . . and the substantive federal law that governs the [state Guard's] duties," *id*. at

618). The Correction Board has authority under 10 U.S.C. § 1552 to correct records maintained

by an agency of the Department.[4]

Even if the PRARNG were deemed not to be a Department agency with respect to its

maintenance of records of federally mandated PRARNG membership, the President's duty and

authority to "issue orders, necessary to . . . govern the National Guard," 32 U.S.C. § 110, is

"presumed in law" to be delegated to the Correction Board as well as the Secretary, even in the

absence of "express authorization." 3 U.S.C. § 302. The Board therefore has § 110 authority in

addition to its authority under § 1552. In *United States v. Mead Corporation*, 533 U.S. 218, 229

(2001), the Supreme Court described federal agencies' implied authority as follows:

> [S]ometimes the legislative delegation to an agency on a particular question is
> implicit. Congress, that is, may not have expressly delegated authority or
> responsibility to implement a particular provision or fill a particular gap. Yet it
> can still be apparent from the agency's generally conferred authority and other
> statutory circumstances that Congress would expect the agency to be able to
> speak with the force of law when it . . . fills a space in the enacted law, even one

---

[4] This does not mean, however, that the PRARNG and the ARNGUS are indistinguishable, or
that every action affecting PRARNG members necessarily affects them in their ARNGUS
capacity. Some federal statutes apply to PRARNG service but not to ARNGUS service. *See
Clark v. United States*, 322 F.3d 1358 (Fed. Cir. 2003) (Alabama Guard member entitled to
federal pay for taking correspondence courses where statute granted pay for study in state Guard
capacity and denied pay for study in ARNGUS capacity and plaintiff was not activated to federal
service when he studied). In *Gilliam v. Miller*, 973 F.2d 760, 764 (9th Cir. 1992), the court held
that the state Guard acted "solely in the capacity of a state actor" when it separated Guard
members for failure to meet state statutory obligations because, in enforcing state standards, the
Guard was not "operating under federal control" and "was not a federal agency." In *Gilliam*, the
Guard did not act contrary to controlling federal law. Here, the PRARNG, by violating a binding
federal regulation, acted in dereliction of its federal duty as a federal agency. When a state
Guard breaches its federal obligations, it acts in dereliction of its duty as a federal agency and
federal officials have jurisdiction to order corrective action. *Lipscomb*, 333 F.3d at 618.

about which Congress did not actually have an intent as to a particular result.
[Citations and internal quotation marks omitted.]

In drafting the Correction Board statute, 10 U.S.C. § 1552, Congress did not give the Board "expressly delegated authority or responsibility to implement" the Secretary's delegated authority under 32 U.S.C. § 110 to "issue orders, necessary to . . . govern the National Guard." Nonetheless, this authority is "apparent from" the Board's "generally conferred authority and other statutory circumstances." By statute, PRARNG membership and ARNGUS membership are linked.[5] Because of this circumstance, the Board's authority to correct ARNGUS records, *Penagaricano v. Llenza*, 747 F.2d 55, 57 (1st Cir. 1984), necessarily includes authority to correct the Department's records of PRARNG membership. The Board's statutory obligations, moreover, include the duty to afford "thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1388 (Ct. Cl. 1975). Where error or injustice requires correction of PRARNG membership records, thorough and fitting relief cannot be afforded unless all records of PRARNG membership, those of both the Department and the PRARNG, are corrected. Under 3 U.S.C. § 302 and 32 U.S.C. § 110, the Secretary has authority to order the PRARNG to correct PRARNG records so that they comply with federal law. Under 10 U.S.C. § 1552, the Secretary corrects records by acting through the Board. Because of these "statutory circumstances," the Board's authority and duty to afford thorough and fitting relief requires that the Board be presumed in law to be delegated § 110 authority to order correction of the PRARNG's membership records, to the same extent that federal law requires correction of the Department's PRARNG membership records.

---

[5] Membership in the ARNGUS is impossible without membership in the ARNG (such as membership in the PRARNG). 32 U.S.C. 101(5). The same is true as to the ANGUS and ANG. § 101(7).

The contrary view expressed in *Penagaricano v. Llenza*, 747 F.2d 55 (1st Cir. 1984), overlooks 32 U.S.C. § 110 and 3 U.S.C. § 302. Also, as noted earlier, the court's assertion that the Board cannot direct reinstatement in a state ANG contradicts its acknowledgement that the Board can correct federal records to show continued good standing in the ANGUS.

The *Penagaricano* court's discussion, all *obiter dicta*, is unacceptable for other reasons as well. The court said that the Board, instead of ordering reinstatement to a state Guard, can "reinstate" a wrongly separated Guard member to "active federal reserve status" that is "comparable" to state Guard membership. 747 F.2d at 57. This is inconsistent with the court's acknowledgement that the Board can order reinstatement in the ANGUS. The court's reference to "active federal reserve status" that is "comparable" to state Guard membership necessarily was a reference to membership in the (Army or Air Force) Reserve, because there is no other option. 10 U.S.C. § 10101 (federal reserve air force composed of Air Force Reserve and ANGUS; federal reserve army composed of Army Reserve and ARNGUS). But membership in the Army Reserve and the ARNGUS are mutually exclusive. 10 U.S.C. § 10104 (Army Reserve composed of all Reserves who are not members of ARNGUS).[6] Thus, even if the Army Correction Board does have authority to offer membership in the Army Reserve to a wrongly separated ARNG member, acceptance of the offer would require the applicant to give up the relief that the *Penagaricano* court said the Board has authority to afford—"federal recognition" as a state Guard member and continued membership "in good standing" in the ARNGUS.

The *Penagaricano* court's reasoning, moreover, has no basis in the text of the Correction Board statute, 10 U.S.C. § 1552. Offering Army Reserve membership to a wrongly separated ARNG member cannot properly be characterized as "correction" of federal records "to correct an

---

[6] The same is true as to the Air Force Reserve and the ANGUS. 10 U.S.C. § 10110.

error or remove an injustice." § 1552(a)(1). Where "error" and "injustice" are due to unlawful separation from the ARNG, an offer of membership in a different part of the military does not "correct" the error or "remove" the injustice. The *Penagaricano* court's statement that the Board can "reinstate" applicants to military membership that they never held, 747 F.2d at 57, is illogical and has no basis in law. The *Penagaricano* court's reasoning erroneously transforms the Correction Board from an adjudicatory body that corrects legal wrongs into a placement agency that proposes new arrangements, elsewhere, as a substitute for legal relief from wrongdoing.[7]

C. **Alternatively, the Secretary and the Chief of the Guard Bureau Have Authority and a Duty under 32 U.S.C. § 110 and 3 U.S.C. § 302 to Order Redress Independently of the Board**

We have shown above that the Correction Board—under 10 U.S.C. § 1552, or under 32 U.S.C. § 110 presidential authority implicitly delegated to the Board by 3 U.S.C. § 302—has authority to correct PRARNG records to show federally mandated PRARNG membership. Irrespective of whether the Board has § 110 authority, however, the Secretary has it, under § 302. *Dysart v. United States*, 369 F.3d 1303, 1312 (Fed. Cir. 2004) (Secretary presumed by § 302 to have presidential authority); *Law v. United States*, 11 F.3d 1061, 1066-67 (Fed. Cir. 1993) (same); *Gunning v. Walker*, 663 F. Supp. 941, 943-44 (D. Conn. 1987) (same), *aff'd* 847 F.2d 834 (2d Cir. 1988). The Chief of the National Guard Bureau also has § 110 authority, either by

---

[7] We have addressed the *Penagaricano obiter dicta* at length because it reflects defendants' position in this case and their policy and practice in general. The *Penagaricano* court embraced defendants' view in a case where no Correction Board decision was before the court, the scope of the Board's authority was not relevant to the appellant's claims, and the appellant had no incentive to argue that the Correction Board could afford full relief. The same was true in all of the other cases on which defendants rely. Defs.' Mem. at 22-24, discussing *Williams v. Wilson*, 762 F.2d 357 (4th Cir. 1985); *Navas v. Vales*, 752 F.2d 765 (1st Cir. 1985); and *Culbreth v. Ingram*, 389 F.Supp. 2d 668 (E.D.N.C. 2005). The latter two cases indicate that the plaintiffs actually argued that the Correction Board could not afford them relief, offering this as a reason why they should not be required to exhaust Board proceedings. In none of the cases did the plaintiff argue that the Board *could* afford full relief, and that its authority is *not* limited to what is stated in the *Penagaricano obiter dicta*.

presumed delegation under § 302 or by delegation from the Secretary in the Guard Bureau Charter.  10 U.S.C. § 10503(10).

Section 110 states, "The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."  Where part of the National Guard, such as the PRARNG, has separated Guard members in violation of federal regulations, an order correcting the violation is "necessary."  It is necessary that the National Guard be governed in accordance with federal regulations.

This last point is expressly reflected in the statutes governing federal funding of the National Guard.  Under 32 U.S.C. § 107(a), "appropriations for the National Guard are available for . . . expenses of the National Guard authorized by law," in accordance with "such regulations as the Secretary concerned may prescribe."  Section 108 of title 32 states: "If, within a time fixed by the President, a State fails to comply with a requirement of this title, or a regulation prescribed under this title, the National Guard of that State is barred, in whole or in part, as the President may prescribe, from receiving money or any other aid, benefit, or privilege authorized by law."  The Chief of the National Guard Bureau has responsibility under 10 U.S.C. § 10503 and the Bureau's Charter to withdraw federal recognition and withhold federal funds from National Guard units that fail to comply with federal regulations. [8]

---

[8] Defendants erroneously argue that the *only* lawful federal response to PRARNG non-compliance with federal regulations is withdrawal of federal recognition and funding.  Defs.' Mem. at 31 n. 10 and 32 n. 11.  Again, defendants overlook their authority to "issue orders" under 32 U.S.C. § 110.  If the PRARNG were to defy an order from defendants to implement the relief recommended by the Correction Board, § 108 gives defendants authority, and imposes a duty, to withhold at least in part federal funding of the PRARNG (such as the part needed to afford plaintiffs the monetary relief recommended by the Board).  The Court need not reach this point now, however, because defendants have never issued the order.  The Court at this time need only require that defendants issue the order.

Under § 110, defendants have authority, and a duty, to issue an order to the PRARNG to implement the relief recommended by the Correction Board. To date, defendants have failed to issue the order based on their erroneous policy and practice that maintains they lack authority to issue such orders. Defendants' policy, and their failure to issue the order, are contrary to law.

## II.   The Court has Jurisdiction and Power to Order the Relief that Plaintiffs Seek

### A.   The APA Waives Sovereign Immunity as to Plaintiffs' Claims

Under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*., the Court has power to order the relief that plaintiffs seek. A provision of the Act, 5 U.S.C. § 702, waives the sovereign immunity of the United States as to "relief other than money damages." *Clark v. Library of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) ("the 1976 amendments to § 702 of the Administrative Procedure Act, 5 U.S.C. § 702, eliminated the sovereign immunity defense in all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity").[9]

---

[9] Defendants' memorandum at 5-6 erroneously argues that the complaint should be dismissed for lack of "subject matter jurisdiction" because it "Fail[s] to Provide a Waiver of Sovereign Immunity." An action should be dismissed for lack of subject matter jurisdiction only if "the court *determines* . . . that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3) (emphasis added). Under 28 U.S.C. § 1653, "[d]effective *allegations* of jurisdiction may be amended" by the Court, or even the Court of Appeals. (Emphasis added.) *Swan v. Clinton*, 100 F.3d 973, 980 n. 3 (D.C. Cir. 1996). The jurisdictional allegations in the complaint, moreover, are not defective. A complaint need only state "the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). In *Swan* the Court amended a complaint under § 1653 "to treat [it] as if it also sought injunctive or declaratory relief against [government officials] in their official capacity." Plaintiffs' complaint needs no similar amendment. In its caption and paragraphs 1, 6, 7, 18, 19, and 21 the complaint expressly states that plaintiffs seek equitable relief under the APA against government officials sued in their official capacity. These allegations state "the grounds for the court's jurisdiction." The complaint is not subject to dismissal simply because it does not cite 5 U.S.C. § 702. Any such requirement "would elevate form over substance." *Swan*, 100 F.3d at 980. Defendants' memorandum at 6 admits that the complaint's allegations show that "the Court could review the case under the APA standard."

## B.  The Court has Federal Question Jurisdiction under 28 U.S.C. § 1331

The Court has jurisdiction under 28 U.S.C. § 1331.  *Califano v. Sanders*, 430 U.S. 99, 106-107 and n. 7 (1977) (in light of amendment to § 1331 closing jurisdictional gap, APA is not an independent or duplicative source of jurisdiction in district court APA cases).  Defendant correctly acknowledges that § 1331 "offer[s] a jurisdictional basis" because plaintiffs "assert that the Defendants acted contrary to [federal] law."  Defs.' Mem. at 6.

The Court has jurisdiction to afford plaintiffs the equitable relief that they seek even if payment of money by the United States to the individual plaintiffs would be an automatic consequence of that relief.  *Kidwell v. Dep't of the Army*, 56 F.3d 279, 284-85 (D.C. Cir. 1995) (district court had jurisdiction to award retroactive retirement even if this equitable relief "may obligate the United States to pay the complainant," such payment is an "automatic consequence" of the equitable relief afforded," and "the plaintiff filed the complaint with an eye to future monetary awards").  *See also*, *Tootle v. Sec'y of the Navy*, 446 F.3d 67 (D.C. Cir. 2006) (same).

## C.  The Correction Board Decisions and the Policy and Practice Stated in Them are Subject to Review, and the Court can Afford Full Relief, Under the APA

Correction Board decisions, like those of other federal agencies, are subject to "the normal review" afforded by the APA.  *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1512 (D.C. Cir. 1989).  *See also*, *Chappell v. Wallace,* 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence").  Under the APA, a "reviewing court shall—(1) compel agency action unlawfuly withheld . . . and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C. § 706.[10]  We showed in Argument I that defendants have

"unlawfully withheld" the "thorough and fitting" relief to which plaintiffs are entitled under *Yee*

*v.United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975).  The Correction Board decisions

withholding this relief are "arbitrary and capricious."  *Id*. at 1389.  Defendants' reason for

withholding the relief—a government policy and practice maintaining that they lack authority to

afford it—is "not in accordance with law."[11]

Also, the policy and practice stated in the Board opinions is a general legal interpretation

that, by itself, is "agency action" that the Court can review, "hold unlawful," and enjoin under §§

702 and 706 of the APA.[12]  *Crowley Caribbean Transp., Inc. v. Pena*, 37 F.3d 671, 677 (D.C.

Cir. 1994) ("general statement of policy" announced in an agency decision can be reviewed even

if agency decision, itself, may not); *Int'l Union, United Auto., Aerospace and Agric. Implement*

*Workers of Am. v. Brock*, 783 F.2d 237 (D.C. Cir. 1986) (*Brock*) (same).[13]

---

[10] Plaintiffs' complaint, at ¶ 18 invoked 5 U.S.C. § 706(1).

[11] Contrary to defendants' memorandum at 7, plaintiffs' claims do not ask the Court to
"determine who is fit or unfit to serve in the armed forces."  (Brackets, internal quotation marks,
and citation omitted.)  The Correction Board, itself, determined that the individual plaintiffs were
unlawfully separated from, and should be retroactively reinstated in, the PRARNG.  The Court
need only determine whether defendants' belief that they lack authority to order this relief is
contrary to law and whether defendants' legal duties to afford thorough and fitting relief and to
issue necessary orders to the National Guard require that defendants implement the relief that
they themselves determined should be implemented.  Decision of these questions, and affording
appropriate relief, are within the Court's competence and authority.  *Dilley v. Alexander*, 603
F.2d 914, 919-20, 925 (D.C. Cir. 1979).

[12] Section 702 expressly states that a "mandatory or injunctive decree" may be issued in an APA
case.

[13] *Crowley Caribbean Transport* and *Brock* establish that a general legal interpretation
announced in an agency decision is "agency action" distinct from the decision itself; but here,
unlike in those cases, *both* the individual agency decisions and the general legal interpretation
they announce are subject to review.

Defendants' unlawful policy and practice is an ongoing danger to the continued employment of the employees represented by the union plaintiffs, because these employees automatically lose their employment if they lose their military membership in the National Guard. Defendants' policy and practice is an improper abdication of defendants' enforcement authority, from which the Court should afford the union plaintiffs declaratory and injunctive relief. *Adams v. Richardson*, 480 F.2d 1159, 1162-66 (D.C. Cir. 1973) (injunction against agency practice manifesting abdication of enforcement authority);[14] *Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 843, 853, 868 (D.C. Cir. 2006) (union had standing to seek and was properly awarded injunction against unlawful regulations contrary to employee rights). *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) (injunction against practice appropriate if practice is official policy).

**D. Given Defendants' Admission that the APA Remedy is Adequate, the Court Need Not Decide Whether it Also has Mandamus Jurisdiction**

We agree with defendants that plaintiffs can "obtain relief from this Court under the APA" and that this relief is an "adequate remedy." Defs.' Mem. at 9.[15] For this reason, the Court need not address whether it also has mandamus jurisdiction under 28 U.S.C. § 1361.

**E. Plaintiffs' Automatic Loss of Civilian Employment with the Department, Due Solely to Loss of PRARNG Military Membership, Should be Automatically Restored, Retroactively, upon Removal from Department Records of the Unlawful Military Separation from the PRARNG**

As technicians employed under 32 U.S.C. § 709, plaintiffs were federal civilian employees of the Department of the Army. § 709(e); *Lipscomb v. Fed. Labor Relations Auth.*,

---

[14] In *Adams* the plaintiffs proved the unlawful practice by evidence. Here, defendants admit, indeed expressly assert, the unlawful policy and practice that plaintiffs challenge.

[15] We understand defendants' admission of the adequacy and availability of APA relief to apply to all of the relief requested in paragraphs 21a-e of the complaint. Under §§ 702 and 706, defendants' admission is appropriate.

333 F.3d 611, 616 (5th Cir. 2003). They lost their employment with the Department

automatically, and solely, because of their unlawful military separation from the PRARNG. §

709(b)(2) and (f)(1)(A). For this reason, correction of the Department's military records to

remove plaintiffs' military separation from the PRARNG appropriately should result in

plaintiffs' retroactive reinstatement to their Department civilian employment. The Court has

authority to order this relief. 5 U.S.C. § 702 (authorizing "mandatory or injunctive decree" in

APA case); *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 71 (1992) ("federal courts have

the power to award any appropriate relief in a cognizable cause of action brought pursuant to a

federal statute").[16]

**F.    The Court can Order Restoration of Plaintiffs' Federal Civilian Employment in the Department of the Army without Adding Puerto Rico as a Party**

Defendants erroneously argue that the Court cannot order them to reinstate plaintiffs to

their Department civilian employment without Puerto Rico being added as a party. Defs.' Mem.

---

[16] The 32 U.S.C. § 709(f)(4) limitation of the "right of appeal" in technician civilian employment separation cases does not restrict the Court's remedial power. In this statute, "appeal" means administrative appeal, not judicial review. *Chaudoin v. Atkinson*, 494 F.2d 1323, 1327 n. 5 (3rd Cir. 1974). Some courts have held that judicial review is unavailable to determine whether there was "cause" for separation of a technician pursuant to § 709(f)(2), but these decisions infer the unavailability not from § 709, but from Congress's failure expressly to provide for judicial review of technician "for cause" separations in the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 111, and subsequent amendments to that law. *See, e.g.*, *Booth v. United States*, 990 F.2d 617 (Fed. Cir. 1993). Affording relief from automatic loss of civilian employment upon invalidation of the military reason for it, however, is not "review" of a civilian employment separation, let alone review of a "for cause" separation. In automatic separation cases, there is no claim of poor work performance or on-the-job misconduct constituting "cause" for firing from civilian employment. Also, because technicians who continue to satisfy military requirements have a protected property interest in their civilian employment, separation of such technicians from their civilian employment without even an allegation of "cause" would violate due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 545 (1985); *Tennessee v. Dunlap*, 426 U.S. 312, 316 (1976). Nothing in *Booth* precludes redress of unlawful military discharge from including redress of an automatic adverse consequence of that discharge, particularly where failure to redress it would in effect create an unconstitutional circumstance— loss of tenured public employment without even assertion of "cause."

at 15-17.[17]  Contrary to defendants' argument, an order to defendants can "accord complete relief" to plaintiffs.  Fed. R. Civ. P. 19(a)(1)(A).  Plaintiffs' civilian employment with the Department of the Army is an "affair[] of the Department of the Army" and the "Secretary of the Army is responsible for, and has the authority necessary to conduct, all affairs of the Department."  10 U.S.C. § 3013(b).[18]

In carrying out its technician employment functions under § 709(d), the PRARNG acts as an agency of the United States and the Department of the Army.  *Lipscomb v. Fed. Labor Relations Auth.*, 333 F.3d 611, 617-19 (5th Cir. 2003) (in employing technicians under 32 U.S.C. § 709, state National Guard acts as "a federal agency . . . because of the federal nature of the employees . . . and the substantive federal law that governs the [state Guard's] duties," *id*. at 618).  The Federal Labor Relations Authority (FLRA) has power to issue orders to state National Guards to enforce the federal civilian employment collective bargaining rights that § 709 technicians have.  *Id*. at 612-13.  Under 10 U.S.C. § 3013(b), the Department of the Army also has authority to issue orders to the PRARNG concerning employment of the Department's technician employees.[19]

---

[17] Defendants do not argue that Puerto Rico must be a party in order for the Court to afford the relief requested in paragraphs 21a-c and e of the complaint.

[18] Also, the Chief of the National Guard Bureau has authority under the Bureau charter to "[e]stablish[] policies . . . for the employment and use of National Guard technicians under section 709 of title 32" and to "[i]ssu[e] directives . . . consistent with approved policies."  10 U.S.C. 10503(8) and (10).

[19] And the Chief of the National Guard Bureau has similar authority under the Bureau charter.  10 U.S.C. 10503(8) and (10).  The authority of the Secretary and the Guard Bureau would be broad even if the PRARNG, in employing Department technicians under § 709, were just a recipient of federal funds rather than an agency of the Department.  *South Dakota v. Dole*, 483 U.S. 203, 210-211 (1987) (federal government has broad latitude to attach regulatory requirements to grants of federal funds even in areas exclusively reserved to the states where the federal government lacks power to regulate state conduct directly).

As the Department's agent for purposes of employing the Department's technicians, Puerto Rico has no "interest relating to the subject of the action" that makes it a separate "Required Party" within the meaning of Fed. R. Civ. P. 19(a)(1)(B).  Contrary to defendants' view, Puerto Rico's "interest in who works as a National Guard technician" in Puerto Rico, Defs.' Mem. at 15, is not such an interest.  This interest is no different from the interest of any agency subdivision or supervisor or manager as to who works for them.  Under defendants' reasoning, every federal employment case in which the plaintiff seeks reinstatement would require that every supervisor, manager, and agency subdivision for whom the plaintiff might work upon reinstatement be joined as a separate party under Rule 19.  Defendants' view is not the law.  Although supervisors, managers, and agency subdivisions may have an interest in whether a separated employee will be reinstated to work for them, this interest is not the kind of legal interest that implicates Rule 19.  *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995).

Defendants erroneously argue that an order requiring them to reinstate plaintiffs to their federal civilian employment with the Department of the Army would "be in derogation of the rights" of Puerto Rico.  Defs.' Mem. at 16-17 (citation and quotation marks omitted). [20]  Because Puerto Rico had no "right" to terminate plaintiffs' PRARNG military membership in violation of federal regulations, it has no "right" to resist appropriate relief from adverse consequences that by operation of federal law resulted automatically, without exercise of discretion, from the

---

[20] In *Corsi v. Eagle Publishing, Inc.*, No. 1:07-cv-0204-ESH, 2008 U.S. Dist. LEXIS 6257 (January 30, 2008), a subsidiary of the defendant had separate legal rights because it was the only signatory to the contract on which plaintiffs sued and that contract had an arbitration clause. Plaintiffs sought to avoid the subsidiary's right to arbitration by suing the defendant parent company.  Here, however, the PRARNG has no separate rights as to the specific issue of whether the Court should order plaintiffs reinstated to Army Department civilian employment that they lost solely as an automatic consequence of their unlawful military discharges.

unlawful military discharges.[21]  As noted above, the Secretary of the Army has full authority

under 10 U.S.C. § 3013(b) to undo plaintiffs' automatic loss of federal civilian employment with

the Department of the Army.  Puerto Rico has no "right" to resist such action by the Secretary.[22]

Defendants' argument that 32 U.S.C. § 709 "gives State officials final discretion to

terminate National Guard employees," Defs.' Mem. at 15, is irrelevant.  Plaintiffs did not lose

their federal employment by discretionary "for cause" decision by the PRARNG under §

709(f)(2) or reduction in force under § 709(f)(3).  They lost their employment automatically,

under § 709(f)(1)(A), due solely to (unlawful) loss of military membership.  That PRARNG

officials in the future could take discretionary action to fire the reinstated plaintiffs "for cause"—

for future unacceptable work performance or on-the-job misconduct, should either occur—is not

[21]  In *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995), plaintiffs sought an order
requiring the federal government to deem their contract with a state to be valid even though the
state's supreme court had held otherwise and the validity of the contract was a question of state,
not federal law.  As to this claim for relief, the Court held that the state was a required party.
Here, the validity of plaintiffs' military discharges is not in question.  It is undisputed that
plaintiffs' military discharges were invalid, under federal law, and that the Secretary acting
through the Correction Board had authority to make this determination.  Plaintiffs lost their
civilian employment with the Department automatically, by operation of federal law.  Relief
from this automatic consequence implicates none of the concerns that made the state a required
party in *Kickapoo Tribe*.  The holding in *Cloverleaf Standardbred Owners Ass'n, Inc. v. National
Bank of Washington*, 699 F.2d 1274 (D.C. Cir. 1983), is inapplicable here for similar reasons.
There, the plaintiff sought to sue for breach of contract without suing the entity alleged to have
breached it, and whether a breach had occurred was in question.  No similar circumstances are
involved in this case.

[22]  This would be true even if the unlawfulness of plaintiffs' military discharges were in question
and therefore a "subject of the action."  Rule 19(a)(1)(B).  Defendants do not deny that, without
adding Puerto Rico as a party, the Court can review and afford relief from both defendants'
policy and practice and the Correction Board decisions.  This would be true even if the
Correction Board had found plaintiffs' military discharges to be lawful, making the issue a
subject of the action.  Here, however, the unlawfulness of plaintiffs' military discharges is not
even in question; and defendants do not argue that the requested judicial relief as to the unlawful
military discharges requires that Puerto Rico be made a party.  Defendants argue only that Puerto
Rico has a cognizable "interest" in contesting, or a "right" to contest, an order to the federal
defendants to restore plaintiffs' federal civilian employment, where loss of that employment was
due solely to the concededly unlawful military actions.  Defendants' argument makes no sense.

a basis for denying reinstatement to employment that was *not* lost for cause, but was lost automatically, without exercise of discretion.  The existence of PRARNG officials' discretionary authority under § 709(f)(2) is not "an interest relating to the subject of the action."  Rule 19(a)(1)(B).  It therefore is not an interest that requires addition of Puerto Rico as a party.

**G. Even if Puerto Rico had a Cognizable Rule 19 Interest as to Reinstatement of Plaintiffs' Civilian Employment with the Department of the Army, Dismissal of the Entire Complaint Would Not be Warranted**

Even if Puerto Rico did have a separate right or cognizable Rule 19 "interest" with respect to retroactive reinstatement of plaintiffs to their federal employment with the Department of the Army—though that is not the case—this circumstance would not be a basis for dismissing the complaint in its entirety.  As we noted earlier, *supra* nn. 17 and 22, plaintiffs present claims as to which defendants make no argument that Puerto Rico is a required party.  As to these claims, at least, "the action should proceed among the existing parties."  Rule 19 (b).

Defendants do not argue that Puerto Rico must be added as a party in order for the Court to review and afford declaratory and injunctive relief from defendants' policy and practice of not ordering redress of unlawful military discharges from the National Guard.  In *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973), our Court of Appeals approved an injunction against a federal agency's unlawful abdication of its enforcement authority, without requiring addition as parties of all the federal fund recipients against whom the plaintiffs claimed enforcement action was appropriate.  Here, defendants properly decline to claim that every state must be added as a party in order for the Court to determine the legality of defendants' announced policy and practice.

Nor do defendants assert that Puerto Rico must be added as a party for the Court to afford relief from the Correction Board's failure to correct plaintiffs' military records to show that

plaintiffs were not discharged from the PRARNG.[23]  Finally, defendants do not argue that Puerto

Rico must be added as a party for the Court to afford relief from defendants' failure to order,

independently of the Board, plaintiffs' retroactive reinstatement to PRARNG military

membership.  Because it already has been established that the PRARNG unlawfully discharged

plaintiffs from the military, it cannot properly be said that Puerto Rico has a right to resist, or a

cognizable Rule 19 "interest" in resisting, retroactive military reinstatement orders issued by

defendants independently of the Board under 32 U.S.C. § 110.

## CONCLUSION

Defendants' dispositive motion should be denied.  Plaintiffs' cross motion for summary

judgment should be granted.

Respectfully submitted,

/s _____

DANIEL M SCHEMBER, D.C. Bar #237180
Gaffney & Schember, P.C.
1666 Connecticut Ave, N.W., Suite # 225
Washington D.C., 20009
(202) 328-2244

Counsel for Plaintiffs

---

[23] Further, such an assertion could not be sustained as to correction of the Department's records to show that, *insofar as the Department is concerned*, plaintiffs were not discharged from the PRARNG.  *See* Argument I.B.1, *supra*.  The assertion also could not be sustained as to plaintiffs' entitlement to additional relief from the Board.  Defendants do not dispute that the Board had jurisdiction—without making Puerto Rico a "party"—to find that the PRARNG unlawfully had terminated plaintiffs' military memberships.  As there was no need to make Puerto Rico a party to the Board proceedings, there can be no need to add Puerto Rico as a party now for the Court to determine whether the Board's decisions were contrary to law because, due to erroneous legal belief, they failed to afford "thorough and fitting" relief.  *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975).  We would note that there are other contexts in which a plaintiff can challenge a federal agency's failure to take enforcement action against another entity without having to make that entity a party under Rule 19, even where that entity *was* a party to the agency proceeding.  *See*, *FEC v. Akins*, 524 U.S. 11, 18-26 (1998) (voters have standing to seek agency enforcement action against campaign contributor); *Democratic Cong. Campaign Comm. v. FEC*, 831 F. 2d 1131, 1133-35 (D.C. Cir. 1987) (denial of enforcement action reviewable).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF CIVILIAN TECHNICIANS, INC., *et al*., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  Civil Action No. 07-01747 (CKK) |
| UNITED STATES OF AMERICA, *et al*., | ) ) ) |
| Defendants. | ) ) |

**ORDER**

On consideration of defendants' motion to dismiss, or in the alternative for summary

judgment, it is this ___ day of _____, 2008,

ORDERED, that defendants' motion is denied.

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Copies to:

Brian C. Baldrate
Special Assistant U.S.  Attorney
455 Fourth Street, N.W.,
Washington, D.C.  20530

Daniel M. Schember
Gaffney & Schember, P.C.
1666 Connecticut Ave, N.W., Suite # 225
Washington D.C., 20009