# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASSOCIATION OF CIVILIAN TECHNICIANS, INC., et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 07-1747 (CKK)** |
| | ) |
| **UNITED STATES OF AMERICA, et al.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendants' initial motion demonstrates that as federal entities, the Secretary of the Army, the Army Board for Corrections of Military Records (ABCMR), and the Chief of the National Guard Bureau (NGB) do not possess the authority to order the Governor of Puerto Rico, as commander-in-chief of the Puerto Rico Army National Guard (PRANG), to reinstate Plaintiffs as members of the Commonwealth's National Guard.  Nor do Defendants have authority to reinstate Plaintiffs as civilian technicians because 32 U.S.C. § 709 requires Plaintiffs to be members of the PRANG.  As a result, Defendants' actions and decisions were not arbitrary, capricious, or contrary to law.  Defendants' motion also clearly establishes that the Puerto Rico officials solely possess the power to provide Plaintiffs the relief they seek: reinstatement into the PRANG. Puerto Rico officials also have a substantial interest in the composition of the PRANG,

and they cannot protect that interest unless they are a party to this suit.  Therefore, the Commonwealth of Puerto Rico is an indispensible party to Plaintiffs' claims.

Plaintiffs' Cross-Motion and Opposition ("Pl. Resp."), alleges that the federal government's refusal to take the action Plaintiffs seek is contrary to law.  (Pl. Resp. 1-23.) Plaintiffs claim that Defendants have the authority to order the officials of the Commonwealth of Puerto Rico to reinstate members of the Commonwealth's National Guard, and then order redress to restore their civilian technician positions.  Plaintiffs base this argument on their interpretation of several statutes to include: 10 U.S.C. §§ 1552, 3013(b), 10503, and 32 U.S.C. §§ 101(4) and (5), 105, 108, 110, 301, 302, 709.  (Pl. Resp. 1-23.)

Plaintiffs concede that the Court does not have mandamus jurisdiction, and accept Defendant's suggestion that the Administrative Procedures Act (APA) provides the applicable waiver for sovereign immunity.  (Pl. Resp. 15-18.) However, Plaintiffs incorrectly characterize the APA standard for judicial review of ABCMR decisions suggesting it is subject to "'the normal review' afforded by the APA."  (Pl. Resp. at 15-16.)  In fact, Defendants' initial motion detailed the deferential application of the 'arbitrary and capricious' standard when courts review ABCMR decisions.  Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000)(quoting Kreis, 866 F.2d at 1514).  Lastly, Plaintiffs claim that Puerto Rico is not an indispensable party because: the federal government has authority over the membership of the Commonwealth's militia; the PRANG is responsible for the wrongful discharge and cannot resist the remedy the Secretary of the Army imposes; and Puerto Rico officials lack any real interest in the case.  (Pl. Resp. 20-22.)

It is Plaintiffs' burden to prove the Secretary of the Army, the ABCMR, and the NGB's actions or decisions were arbitrary, capricious, or contrary to law.  Smith v. Dalton, 927 F.

2

Supp. 1, 4 (D.D.C. 1996); <u>see</u> <u>also</u> <u>Wronke v. Marsh</u>, 787 F.2d 1569, 1576 (Fed. Cir. 1986) <u>cert.</u> <u>denied</u>, 479 U.S. 853 (1986). Plaintiffs fail to show the federal government or its agencies have statutory authority to order Puerto Rico officials to reinstate members to the Commonwealth's National Guard.

Plaintiffs' Response confuses the issue in this case by intermingling federal aspects of the National Guard and civilian technician employment with the issue of Plaintiffs' status in the State national guard. The primary issue in this case is Plaintiffs' challenge to the ABCMR's decision regarding reinstatement to their Title 32, military, state status. Plaintiffs applied to the ABCMR after they were discharged from their military positions for allegedly being absent without leave (AWOL) during a state emergency. Plaintiffs' claim challenges the ABCMR's decision, which suggested, but did not order, the PRANG to reinstate Plaintiffs to their military positions with back pay. Therefore, the focus of this case remains the status of Plaintiffs as guardsmen–not dual-status technicians. Re-employment as a civilian technician is one of the benefits that Plaintiffs hope to receive if the Commonwealth of Puerto Rico were to reinstate Plaintiffs into the PRANG. However, that issue revolves around the balance of power between the federal government and states, and the administration of personnel decisions in the Commonwealth's militia.

**ARGUMENT**

I.   **Defendants Properly Applied Statutes And Regulations In Accordance With The Law**

A.   **The Defendants' Interpretation of Statutes Is Entitled to Substantial Deference**

Plaintiffs' Response contains several statutory provisions which they allege support their theory that Defendants can grant Plaintiffs full relief.  (Pl. Resp. 2-23.)  Plaintiffs weave the statutes together to support their position and suggest that under United States v. Mead Corporation, 533 U.S. 218, 229 (2001), the ABCMR has implied authority to order the PRANG to reinstate Plaintiffs.  (Pl. Resp. 9-10).  However, the Mead case specifically addressed the deference the courts should give to the federal agency's interpretation of statutes.  Mead, 533 U.S. at 237 (explaining deference can be afforded to federal agencies based on either Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) or Skidmore v. Swift & Co., 323 U.S. 134 (1994) case precedent).   Defendants' interpretation of these statutes is entitled to substantial deference in the courts.  Id. at 237 (recognizing various justifications for deference depending on statutory circumstances and agency action).  In Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., the Supreme Court held that a court must defer to an agency's interpretation of a statute it is "charged with responsibility for administering," where the statute is unclear.  467 U.S. 837, 865 (1984).  A court must first determine whether the intent of Congress is "clear" in the statute; if so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842-43.  If, however, "the statute is silent or ambiguous with respect to the specific issue," the court must follow the agency's interpretation, as long as it is "based on a permissible construction of the

statute," id. at 843, even if it is not the only "permissible" construction or "the reading the court

would have reached" on its own. Id. at 843 n.11.

Under Chevron, Defendants' interpretations of statutes, 10 U.S.C. § 1552 and 32 U.S.C.

§§ 110 and 302 in particular, should be entitled to "substantial deference" even if the statutes are

not clear in that regard. See Rust v. Sullivan, 500 U.S. 173, 184 (1991) ("substantial deference

is accorded to the interpretation of the authorizing statute by the agency authorized with

administering it"). In Mead, the Supreme Court held that Chevron deference is due where

Congress has "delegated authority to the agency generally to make rules carrying the force of

law, and that the agency interpretation claiming deference was promulgated in the exercise of

that authority." Mead, 533 U.S. at 226-27.

Even if this Court determines Chevron deference does not apply in this instance,

Defendants' interpretation of the statutes deserve some deference under Skidmore v. Swift &

Co., 323 U.S. 134 (1994). See Mead, 533 U.S. at 221, 226.[1]

---

[1] In Mead, the United States Supreme Court explained,

> [A]gencies charged with applying a statute necessarily make all sorts of interpretive
> choices, and while not all of those choices bind judges to follow them, they certainly may
> influence courts facing questions the agencies have already answered. "The well-
> reasoned views of the agencies implementing a statute constitute a body of experience
> and informed judgment to which courts and litigants may properly resort to guidance,"
> Bragdon v. Abbott, 524 U.S. 624, 642 (1998)(quoting Skidmore, 323 U.S. at 139-40),
> and "we have long recognized that considerable weight should be accorded to an
> executive department's construction of a statutory scheme it is entrusted to administer . . .
> ." (citing Chevron, 467 U.S. at 844; Ford Motor Credit Co. v. Milhollin, 444 U.S. 555,
> 565 (1980); Zenith Radio Corp. v. United States, 437 U.S. 443, 450 (1978). The fair
> measure of deference to an agency administering its own statute has been understood to
> vary with circumstances, and courts have looked to the degree of the agency's care, its
> consistency, formality, and relative expertness, and to the persuasiveness of the agency's
> position, see Skidmore, 323 U.S. at 139-40.

Id. at 227-28.

5

Defendants have at least a <u>Skidmore</u> claim for seeking deference here, where the regulatory scheme is highly detailed under 10 U.S.C. § 1552, and Defendants can bring the benefit of specialized experience to bear on the heart of the question in this case: whether federal entities can correct state militia's records, in this case PRANG records, and require membership in a State's National Guard, when the federal entities' jurisdiction is limited to the Department of the Army. Defendants consistently have issued formal recommendations, rather than orders, to State National Guards, such as the PRANG, when they believe an error or injustice occurred.[11] Case law in several circuits recognizes that the limitations of federal jurisdiction prevents Defendants from intervening into a State's jurisdiction, and therefore, Defendants cannot correct state records or order membership into a State National Guard. <u>Jorden v. National Guard Bureau</u>, 799 F.2d 99, 102 (3rd Cir. 1986); <u>Navas v. Vales</u>, 752 F.2d 765, 770 (1st Cir. 1985); <u>Williams v. Wilson</u>, 762 F.2d 357, 360 n.6 (4th Cir. 1985); <u>Penagaricano v. Llenza</u>, 747 F.2d 55, 67 (1st Cir. 1984); <u>Aikens v. Ingram</u>, No. 5-06-00185, 2007 U.S. Dist. Ct. Motions LEXIS 27445 (E.D.N.C. Jan. 9, 2007); <u>Karr v. Carper</u>, 818 F. Supp. 687 (D. Del. 1993). Therefore, if the

---

"An agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." <u>Id.</u> at 234 (quoting <u>Skidmore</u>, 323 U.S. at 139-40). <u>See</u> generally <u>Metropolitan Stevedore Co. v. Rambo</u>, 521 U.S. 121, 136 (1997)(holding that reasonable agency interpretations carry "at least some added persuasive force" where <u>Chevron</u> is inapplicable); <u>Reno v. Koray</u>, 515 U.S. 50, 61 (1995)(according "some deference" to an interpretative rule that "does not require notice and comment"); <u>Martin v. Occupational Safety and Health Review Comm'n</u>, 499 U.S. 144, 157 (1991)(giving "some weight" to the informal interpretations).

[11] Plaintiffs acknowledge that the ABCMR consistently and uniformly issues recommendations rather than orders compelling states to correct their state records, and refer to it as "government policy and practice." (Pl. Resp. 1.)

Court finds any ambiguity in the statutes cited by Plaintiff, Defendants' interpretation and

application of those statutes should be given substantial deference.

###    B.    The States Are Responsible For Administering The Respective National Guards When Not On Active Federal Duty

"The National Guard is an organization possessing both federal and state attributes.  In

each state, the Guard is a state agency, under state authority and control, commanded by the

governor and the state adjutant general, who is appointed by the Governor."  See 32 U.S.C. §

314; Charles v. Rice, 28 F.3d 1312, 1315 (1st Cir. 1994); Kise v. Dep't of Military and Veterans

Affairs, 574 Pa. 528 (2003).  When not on active federal duty, the Commonwealth of Puerto

Rico is responsible for administering, arming, equipping, and training the PRANG.  10 U.S.C. §§

10107, 12401; Wright v. United States, 19 Cl. Ct. 779, 784 (1990); Ursulich v. Puerto Rico

National Guard, 384 F. Supp. 736, 739-40 (D.P.R. 1974);

> The United States Constitution expressly reserves to the states the authority of training the militia according to the discipline prescribed by Congress.[12]  The construction is uniformly given to the Constitution that in the absence of or subordinate to the regulations of Congress, a state may organize[13] and control[14] its own militia.  Every state has authority to train its able-bodied male citizens of suitable age appropriately to develop fitness, should any such duty be laid upon them, to serve in the United States Army or in the state militia, or as members of local constabulary forces, or as officers needed effectively to police the state, and, for such purpose, may, when the national government makes it possible, avail itself of the services of officers and equipment belonging to the military establishment of the United States; and so long as its action is within retained powers and not inconsistent with any exertion of the authority of the national government and transgresses no right safeguarded to the citizen by the Federal Constitution, the state is the sole judge of the means to be employed and the

---

[12]  U.S. CONST. art. I, § 8.

[13]  Dunne v. People, 94 Ill. 120 (Ill. 1879).

[14]  Houston v. Moore, 18 U.S. 1 (1820).

amount of training to be exacted for the effective accomplishment of these ends.[15] The congressional and executive authority granted by the Constitution[16] to prescribe and regulate the training and weaponry of the national guard precludes any form of judicial regulation of the same matters.[17]

53 AM. JUR. 2d <u>Military and Civil Defense</u> § 28 (2007).

In order to standardize the States' National Guards to ensure their readiness in the event they are activated to a federal status, the States follow the guidance issued by the federal government, in the forms of regulations and orders. <u>See</u> U.S. CONST. art. I, § 8, cl. 16.; 32 U.S.C. §§ 102, 110. In exchange, the National Guard units receive federal recognition, arms, equipment, and funding. <u>See</u> 32 U.S.C. §§ 101(4), 106, 107. The Secretary of the Army can appoint an inspection be done to ensure the States meet these standards and are prepared to deploy if necessary. 32 U.S.C. § 105. If the States fail to follow the regulations or orders pertaining to the organization, training, or governing of the National Guard, then they risk forfeiting federal funding. 32 U.S.C. § 108.

> **1. 32 U.S.C. § 110 Authorizes the President To Issue Federal Regulations, But Withholding Federal Funds Under 32 U.S.C. § 108 Is The Only Remedy**

Section 110 of Title 32 is entitled "Regulations," and authorizes the President, "Defense Department, the Secretaries of the Army and Air Force, and the National Guard Bureau [to] prescribe regulations and issue orders to organize, discipline, and govern the Guard. 32 U.S.C. § 110." <u>Charles v. Rice</u>, 28 F.3d at 1315; 3 U.S.C. § 302. The statute is rooted in the United

---

[15] <u>Hamilton v. Regents of Univ. Of Calif.</u>, 293 U.S. 245 (1934).

[16] U.S. CONST. art. I, § 8, cl. 16.

[17] <u>Gilligan v. Morgan</u>, 413 U.S. 1 (1973).

States Constitution which empowers Congress "to provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of Officers, and the Authority of Training the Militia according to the discipline prescribed by Congress." Holdiness v. Stroud, 808 F.2d 417, 420 (5ᵗʰ Cir. 1987); U.S. CONST. art. I, § 8, cl. 16; see also Gilligan v. Morgan. 413 U.S. 1 (1973). Congress has given the President the authority to "prescribe regulations, and issues orders, to organize, discipline, and govern the [PRANG]." 32 U.S.C. § 110.

This statute does not empower the federal government to issue blanket orders regarding any subject matter. Instead it permits the establishment of regulations, and orders to "organize, discipline, and govern the [National] Guard." 32 U.S.C. § 110. "Organizing" the National Guard should be taken in the context of 32 U.S.C. § 104, which specifically addresses the larger picture concerning organization of national guard units and the location of the commands. "Disciplining" the National Guard is addressed in 32 U.S.C. § 501 which states that discipline includes training, which will conform to that of the Army. 32 U.S.C. § 501 proceeds to state that the training of the National Guard shall be conducted by the states. Governing would include those processes such as discharging enlisted soldiers to ensure all service members are afforded the same due process, and standards such as age limitations to ensure the readiness of the force.

The regulations and orders promulgated pursuant to 32 U.S.C. § 110 establish systems, processes, and standards for uniformity among the States' National Guards. The States are then responsible for the execution and day-to-day administering in accordance with the federal government's guidance. The statute does not authorize the federal government to step in and

9

take over the state's daily administration duties if it identifies that the State National Guard is doing something wrong or fails to meet the established standards. See 32 U.S.C. § 110. To extend that power to the federal government would completely undermine the states' authority to administer their affairs while in a Title 32 status. If a State National Guard fails to comply with the regulations, or orders, issued pursuant to 32 U.S.C. § 110, then the federal government only has one remedy, to withhold funds under 32 U.S.C. § 108. "States that fail to comply with federal regulations [or orders] risk forfeiture of federal funds allocated to organize, equip, and arm state Guards. 32 U.S.C. §§ 101, 107, 108, 501." Charles v. Rice, 28 F.3d at 1315; Walker v. United States, 40 Fed. Cl. 666, 668 (Ct. Cl. 1998).

In this case, the NGB issued a regulation, NGR 600-200, governing the separation of enlisted members from the National Guard in an effort to standardize due process afforded to service members, regardless of their state. The PRANG, however, followed its own regulation which did not require a hearing. When the PRANG failed to follow the federal regulation, the PRANG risked the possibility that the President may bar the Commonwealth of Puerto Rico from receiving money or any other aid, benefit, or privilege authorized by law. See 32 U.S.C. § 108.

The statutory scheme within Title 10 and Title 32 of the U.S. Code does not provide Defendants in this case with the authority to remedy the situation by either correcting a state record or ordering the Commonwealth of Puerto Rico to accept Plaintiffs as members of their State militia. Instead, the only remedy is to withhold federal funds pursuant to 32 U.S.C. § 108.

2.    **The Ability To Issue Orders Pursuant to 32 U.S.C. §110 Does Not Include Reinstatement Orders**

Plaintiffs take the wording of the statute out of context in order to support their position. Plaintiffs infer that if a state disobeys a regulation, the federal government can then issue an order to enforce the regulation.  (Pl. Resp. 3).  Plaintiffs' interpretation would require the statute to say that the President is authorized to prescribe regulations to organize, discipline, and govern the National Guard, and if the States do not obey the federal regulations, then the president can issue an order as to require compliance with those regulations.  The statute is not worded in a way that supports Plaintiffs' reading, and there is no authority to support Plaintiffs' interpretation.

Defendants' interpretation of 32 U.S.C. § 110 is supported by the Constitution of the United States, and case precedent.  As referenced above, Article I, § 8, cl. 16 of the Constitution provides that Congress shall have the power for "organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress."
U.S. CONST. art. I, § 8, cl. 16.

The Supreme Court applied Art. I, § 8, cl. 16 to 32 U.S.C. § 110 in Gilligan v. Morgan. 413 U.S. 1 (1973)(declining to oversee the training, arming, and orders of the Ohio National Guard following the Kent State tragedy based on the separation of powers).

> [T]hat provision is explicit that the Congress shall have the responsibility for organizing, arming, and disciplining the Militia (now the National Guard), with certain responsibilities being reserved to the respective states.  Congress has

11

enacted appropriate legislation pursuant to Art. I, § 8, cl. 16,[18] and has also authorized the President - - as the Commander in Chief of the Armed Forces - - to prescribe regulations governing organization and discipline of the National Guard [with 32 U.S.C. § 110]. The Supreme Court explained "[t]he Guard is an essential reserve component of the Armed Forces of the United States, available with regular forces in time of war. The Guard also may be federalized in addition to its role under state governments, to assist in controlling civil disorders.

Id. at 6-7.

The Supreme Court's explanation in Gilligan supports Defendants' interpretation that 32 U.S.C. § 110 provides the President with the power to issue regulations and orders "governing organization and discipline of the National Guard," Gilligan, 413 at 6-7, and by discipline, the legislature included the training of the National Guard to ensure the military would meet the requisite standards if activated into Federal Status. See id.

32 U.S.C. § 110 refers to "regulations and orders" as one in the same, pertaining to federal guidance over the organization, discipline, and governing of the National Guard. If the federal government intends to issue an order to align a National Guard unit with another unit for organizational purposes, or issue new training guidance, an entire regulation does not have to be published, instead the Secretary can issue an order as to the organization, training, and governing the Guard.

The statute does not provide for the federal government to issue orders to a State National Guard to impose individual membership in a State's National Guard. See 32 U.S.C. § 110. 32 U.S.C. § 110 merely provides a mechanism for the President to establish criteria in an effort to control the quality of the force which could potentially be activated into federal service.

_____

[18] The Supreme Court provided examples of Congress enacting the appropriate legislation in 32 U.S.C. §§ 105, 501-507, 701-714. Gilligan v. Morgan, 413 U.S. 1, at n. 10 (1973).

See  32 U.S.C. § 102; Gilligan v. Morgan, 413 U.S. 1 (1973).  Section 110 does not state that the President shall prescribe regulations, and issue orders, as to who will be a member in the State National Guard.  The President does not have the power to enlist a soldier into a State National Guard pursuant to 32 U.S.C. § 110.  The administration of the State National Guard is reserved to the Adjutant General.  Jorden v. National Guard Bureau, 799 F.2d 99 (3rd Cir. 1986)("Article 1, § 8, cl. 16 of the Constitution places the power of appointing personnel to the state militia in the hands of the state.")

Plaintiffs concede that Congress did not explicitly give the ABCMR the power under 10 U.S.C. § 1552 and 32 U.S.C. § 110 to issue orders to govern the Army National Guard.  (Pl. Resp. at 9-10 )  Instead, Plaintiffs allege it is "presumed in law" that the ABCMR can issue orders pursuant to 32 U.S.C. § 110 in addition to its authority under 10 U.S.C. §1552.  (Pl. Resp. 9).  Plaintiffs proceed to argue that the ABCMR possesses the power which is delegated under 3 U.S.C. § 302, which is also "apparent from" the Board's "generally conferred authority and other statutory circumstances."  (Pl. Resp. 10).  This combination of statutes is completely inaccurate and does not add up to authority which would empower the ABCMR to issue orders to state officials to reinstate members to a State militia.

The ABCMR is a board to correct military records within the Department of the Army pursuant to 10 U.S.C. § 1552.  The ABCMR is not empowered to issue regulations or orders as to the organization, training, or governing of the National Guard, pursuant to 32 U.S.C. § 110. The ABCMR's purpose is to review military members' applications and grant relief within the ABCMR's jurisdictional authority.  10 U.S.C. § 1552.  The ABCMR's role does not include issuing regulations, or orders, for the organization, training, or governing of the National

Guard.[19]  Therefore, Plaintiffs' misreading of the statute which attempts to isolate the President's

authority to issue "orders" governing the National Guard as a remedy for disobeying federal

regulations is inaccurate and completely misplaced when applied to the ABCMR.

Because the President does not possess the authority to issue an order to the State

National Guard to enlist or reinstate a soldier to the state militia, Plaintiff's argument that the

President's power is apparently or implicitly delegated to the ABCMR is without merit.  The

ABCMR does not have any authority, express or implied, directly or delegated, which would

empower the federal agency to order the Puerto Rico officials to reinstate members to the

Commonwealth's National Guard.

### C.    Defendants Properly Refrained From Correcting Records Outside Their Federal Jurisdiction

#### 1.    The Hybrid Nature of the National Guards

Plaintiffs improperly assert that their PRANG records belong to the Department of the

Army as federal records.  (Pl. Resp. 3) This is inaccurate. Understanding why the PRANG

records belong to the Commonwealth of Puerto Rico and not the federal government, requires a

clear understanding of the relationship between the state Army National Guard (ANG), and the

federal Army National Guard of the United States (ARNGUS).

The National Guard consists of "two overlapping but distinct organizations," the ANG

and the ARNGUS.  Perpich v. Department of Defense, 496 U.S. 334, 345 (1990).

> The "Army National Guard" means that part of the organized militia of the
> several states and Territories, Puerto Rico, and the District of Columbia, active
> and inactive, that (A) is a land force; (B) is trained, and has its officers appointed,
> under the sixteenth clause of section 8, article I, of the Constitution; (C) is

---

[19]  See 10 U.S.C. § 1552; 32 C.F.R. § 581.3; U.S. DEP'T OF ARMY REG. 15-185, ARMY BOARD
FOR CORRECTION OF MILITARY RECORDS (31 Mar. 2006).

organized, armed, and equipped wholly or partly at Federal expense; and (D) is
federally recognized.

32 U.S.C. § 101(4).

"The [Army] National Guard is available to serve the state in times of civil strife within

state borders."  See Knutson v. Wisconsin Air Nat'l Guard, 995 F.2d 765, 767 (7th Cir. 1993).

Each member of the state ANG is concurrently a member of the ARNGUS, a component of the

Ready Reserves of the United States Armed Forces.  10 U.S.C. §§ 10101, 10145(b), 32 U.S.C. §

101(5).  The ARNGUS consists of "the reserve component of the Army all of whose members

are members of the Army National Guard."  32 U.S.C. § 101(5).  "The ARNGUS is activated

when the ANG is called into federal service during national emergencies.  10 U.S.C §§ 10103,

12406."  Walker v. United States, 40 Fed. Cl. 666, 668-69 (Ct. Cl. 1998).

The federally recognized ANG units in the various States collectively comprise the

ARNGUS.  Consistent with Congress's constitutional authority for "organizing . . . the Militia,

and for governing such part of them as may be employed in the [federal] Service of the United

States," the federal government sets the requirements for federal recognition for enlistment in the

ARNGUS.  See U.S. Const., art. I, § 8, cl. 16; 32 U.S.C. § 301.

> To be eligible for Federal recognition as an enlisted member of the National
> Guard, a person must have the qualifications prescribed by the Secretary
> concerned for the grade, branch, position, and type of unit or organization
> involved.  He becomes federally recognized upon enlisting in a federally
> recognized unit or organization of the [Army] National Guard.

32 U.S.C. § 301.

> "Federal recognition" is the acknowledgment by the federal government that
> persons appointed by the state to the Guard meet the prescribed federal standards
> for their particular grade.  As a consequence of federal recognition, members of
> the [Army] National Guard of their respective states concurrently hold
> membership in a distinct federal military organization, the [ARNGUS].

15

Jorden v. Sager, No. 85-670, 1988 U.S. Dist. LEXIS 11880, * 2-3 (E.D. Pa. June 6, 1989).

Plaintiffs were enlisted in the PRANG, the Commonwealth's ANG, and served in a state capacity. Simultaneously, Plaintiffs belonged to the ARNGUS, but would have only fallen under the USARNG if they were federally activated. The PRANG is a federally recognized unit, therefore, Plaintiffs were federally recognized as members of the ARNGUS.

### 2. The PRANG Is Not A Federal Agency Despite The Fact The Maintenance of State National Guard's Records Is Subject To Federal Inspection Under 10 U.S.C. § 105

Plaintiffs allege that "[i]n carrying out the duty to keep, in accordance with federal law, records of federally mandated and federally recognized PRANG membership, the PRANG performs a federal function and acts as an agency of the Department of the Army." (Pl. Resp. 8.) Plaintiffs assert that since the PRANG is required to maintain personnel records in accordance with Title 32, and since those records are subject to inspection by the Department of the Army under 32 U.S.C. § 101(5), then the PRANG's actions of maintaining their own records is a federal activity, and the PRANG is then an agency within the Department of the Army. Plaintiffs seek this conclusion in order to maintain that the ABCMR has authority under 10 U.S.C. § 1552 to correct the Commonwealth's records, because the PRANG, a state militia, is an agency within the Department Army. Plaintiffs' argument has no merit.

The original purpose of 32 U.S.C. § 105 was to authorize the War Department to, upon inspection, summarily withdraw federal recognition from organizations and individuals lacking in qualifications prescribed from the National Guard.[20]  Hurley v. United States, 47 F.2d 431

---

[20] 32 U.S.C. §15 was the predecessor to 32 U.S.C. §105. 32 U.S.C. § 15 provided that,

the Secretary of War shall cause an inspection to be made at least once each year"

(D.C. Cir. 1931).  The current version of 32 U.S.C. § 105(a) provides the Secretary of the Army

with a mechanism to see if the ANG units are in compliance with the federal recognition

standards which the Secretary imposes in the event that the ANG is ever federally activated for

service in the ARNGUS.  See 32 U.S.C. § 105(a).  Section 105(a) states:

> (a) Under regulations prescribed by him, the Secretary of the Army shall have an
> inspection made by inspectors general, or, if necessary, by any other
> commissioned officers of the Regular Army detailed for that purpose, to
> determine whether--
> (1) the amount and condition of property held by the Army National Guard are
> satisfactory; (2) the Army National Guard is organized as provided in this title;
> (3) the members of the Army National Guard meet prescribed physical and other
> qualifications; (4) the Army National Guard and its organization are properly
> uniformed, armed, and equipped and are being trained and instructed for active
> duty in the field, or for coast defense; (5) Army National Guard records are being
> kept in accordance with this [32 U.S.C. § 101 et. seq.]; (6) the accounts and
> records of each property and fiscal officer are properly maintained; and
> (7) the units of the Army National Guard meet requirements for deployment.

32 U.S.C. §105(a).

The ability of the federal government to inspect the maintenance of records does not

convert a State militia into a federal agency. Section 105 does not give the Secretary control over

---

> by inspectors general, and if necessary by other officers of the Regular Army, "to
> determine whether the amount and condition of the property in the hands of the
> National Guard is satisfactory; whether the National Guard is organized as
> hereinbefore prescribed; whether the officers and enlisted men possess the
> physical and other qualifications prescribed; whether the organization and the
> officers and enlisted men thereof are sufficiently armed, uniformed, equipped, and
> being trained and instructed for active duty in the field or coast defense; and
> whether the records are being kept in accordance with the requirements of this
> Act." That "the reports of such inspections shall serve as the basis for deciding as
> to the issue to and retention by the National Guard of the military property
> provided for by this title, and for determining what organizations and individuals
> shall be considered as constituting parts of the National Guard within the meaning
> of this Act.

Hurley v. United States, 47 F.2d 431 (D.C. Cir. 1931).

the state National Guard's records or the power to order State records be changed.  It simply allows the Secretary to order an inspection.  32 U.S.C. § 105.  Section 105 does not provide a remedy if a state fails to meet the inspection criteria; and does not state that the Secretary of the Army has the authority to order individual military records to be changed.  Instead, like the other provisions within Title 32, if a state fails to comply with the sections within Title 32, then they risk losing federal funding under 32 U.S.C. § 108.

While the Army National Guard does constitute a reserve component of the ARNGUS, 10 U.S.C. § 101(5), State Army National Guard units, such as the PRANG, are not actually considered under federal control and supervision, unless, until, and only so long as they are "federalized."  See, e.g., Kise v. Dep't of Military and Veterans Affairs, 832 A.2d 987, 991 (Pa. 2003)(noting that Guard duty under Title 32 is undertaken in state status, directed by the governor, as opposed to Title 10 duty, under which National Guard members are federalized and directed by the Secretary of the Army, and approved lower court's conclusion that ABCMR was without jurisdiction over decision of state Adjutant General.)  If the plaintiff's argument were true, that the PRANG were an agency within the Department of the Army, then there would be no need to establish separate State ANG units from the federal ARNGUS.  Instead, our Constitution empowers the federal government to issue regulations and orders "governing such part of [the State National Guard units] as may be employed in the in the [federal] Service of the United States" while reserving other responsibilities, such as the daily administration of affairs, appointment of their members, and maintenance of State records, to the respective States.  See U.S. Const. art I, § 8, cl. 16; Gilligan v. Morgan, 413 U.S. 1, 6-7 (1973).

Having to comply with standards established by the federal government, does not make a

State ANG an agency of the federal government.  It should be noted that the ANG are required to comply with training requirements established by the Secretary of the Army to ensure they will be ready in the event they are activated into a federalized status in the ARNGUS.  Simply having to meet the federally mandated training standards does not make the ANG an agency within the Department of the Army.  Likewise, being subject to inspection for the maintenance of records does not make the PRANG an agency of the Department of the Army that would then give the Correction Board the authority under 10 U.S.C. § 1552 to correct their State records.

In the present case, when Plaintiffs were discharged, they were serving solely in state, Title 32 status, under the PRANG, not in a Title 10 status under the ARNGUS.  There was no federal involvement whatsoever in their separation from the PRANG.  The PRANG chain of command investigated and handled the administrative separations of Plaintiffs, and maintained those records at their respective units in Puerto Rico. Their discharges were caused by the actions of the PRANG AG and the Puerto Rico Governor, who were serving in a state status. The plaintiffs' PRANG records are solely under the control of the state Adjutant General.

Although, the maintenance of the records may be inspected by the federal government under 32 U.S.C. § 105, the content of the records is controlled by the PRANG and the Commonwealth of Puerto Rico.  The federal government, to include the ABCMR, does not possess the authority to order those records be changed because the PRANG, conducting its mission as a state ANG, is not a federal agency.

### 3.    The Defendants' Jurisdiction Is Limited To Granting Federal Relief

As stated in Defendants' initial motion, the Secretary of the Army, the ABCMR, and the Chief of the NGB, are all federal entities limited to correcting records within the Department of

the Army. "A federal board for the correction of military records has the authority to correct federal aspects of a Guard member's military records." Karr v. Carper, 818 F.Supp. 687, 689 n.2 (D. Del. 1993). "The [ABCMR], as a federal board, does not possess the power to issue an order directing the [PRANG] personnel to reevaluate a separation in conformance with National Guard Regulation [600-200]." Id.; see also Jorden v. National Guard Bureau, 799 F.2d 99, 102 (3rd Cir. 1986), cert. denied, Sajer v. Jorden, 484 U.S. 815 (1987)(finding that the Air Force Board for Correction of Military Records, as a federal board, lacked the ability to order Jorden's reinstatement to the National Guard, a state entity).

The powers of the ABCMR are set forth in 10 U.S.C. § 1552(a), which specifies in pertinent part:

> (1) The secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department .

10 U.S.C. § 1552(a)(emphasis added).

The Army's regulations governing those who may submit applications to the ABCMR, provide in pertinent part:

> (i) The ABCMR's jurisdiction under 10 U.S.C. § 1552 extends to any military record of the [Department of the Army] DA. It is the nature of the record and the status of the applicant that define the ABCMR's jurisdiction.
> (ii) Usually, applicants are soldiers or former soldiers of the Active Army, the U.S. Army Reserve (USAR), and in certain cases, the Army National Guard of the United States (ARNGUS) and other military and civilian individuals affected by an Army military record.

32 C.F.R. 581.3(d)(1) (emphasis added).

A 2007 case in the Eastern District of North Carolina concluded that due to the

ABCMR's limited jurisdiction,

> not every case involving a National Guard member should go through the
> ABCMR. In fact, under the applicable law, the authority for correction of
> military records is limited to "any military record of the Secretary's department."
> 10 USC 1552(a)(1). The term "military record" in turn, is defined to include only
> those records that pertain to individual or former members of the armed forces.
> 10 U.S.C. 1552(g). While "armed forces" is defined to include the Army, 10
> U.S.C. 101(a)(4), the term "department" is defined to include only "the executive
> part of the department and all field headquarters, forces, reserve components,
> installations, activities, and functions under the control or supervision of the
> Secretary of the department." 10 U.S.C. 101(a)(6).

Aikens v. Ingram, No. 5-06-00185, 2007 U.S. Dist. Ct. Motions LEXIS 27445 (E.D.N.C. Jan. 9,
2007).

The remedy that Plaintiffs seek, reinstatement to the PRANG, correction tor their state

records, and back pay, can only be granted by state personnel in a state status. See id. In

Plaintiffs' case, there was no federal agency action, the PRANG did not even submit the

discharges to the NGB for approval, therefore, there were no federal records regarding their

discharges to correct.[21] See id. The ABCMR does not have access or control over a state

militia's records.

"The board is not authorized to take action in cases in which it does not have jurisdiction

to grant the requested relief." Id. at n.3; see 32 C.F.R. 581.3(e)(1)(iii). Therefore, Defendants

---

[21] "By contrast, when federal personnel take actions against Guard members, based on federal
concerns or federal employment, there is a federal record for the ABCMR to correct." Aikens v.
Ingram, No. 5-06-00185, 2007 U.S. Dist. Ct. Motions LEXIS 27445 (E.D.N.C. Jan. 9, 2007).
See also Cammermeyer v. Aspin, 850 F. Supp. 910, 913 (W.D. Wash. 1994)(where the United
States Army initiated action against and withdrew Guard member's federal recognition based on
her sexual orientation), appeal dismissed, 97 F.3d 1235 (9th Cir. 1996); 10 U.S.C. §
1558(b)(3)(c) (providing for special boards which may be convened by the Secretary for
involuntary separation from an armed force, whose determinations may be corrected by Board of
Corrections).

acted in accordance with the statute and regulation when they only granted Plaintiffs the federal relief the ABCMR deemed appropriate, and made recommendations to the Puerto Rico AG and Governor as to re-instating Plaintiffs into the PRANG.

The ABCMR cannot direct Plaintiffs' reinstatement in the National Guard of a State, however it can provide federal forms of relief. <u>Williams v. Wilson</u>, 762 F.2d 357, 360 n.2 (4th Cir. 1985); <u>Penagaricano v. Llenza</u>, 747 F.2d 55, 57 (1st Cir. 1984); <u>see</u> <u>also</u> <u>Culbreth v. Ingram</u>, 389 F. Supp. 2d 668, 674 (E.D.N.C. 2005); <u>Navas</u>, 752 F.2d at 770.  The ABCMR is limited to reinstate Plaintiffs to a comparable active federal reserve status, in the United States Army Reserves, similar to their state status in the National Guard, restore their pay, and order compensatory back pay.  <u>Id.</u>  The First and Fourth Circuits also determined that the ABCMR can provide federal relief by correcting the federal records to show that federal recognition has not been withdrawn and a member remains in good standing of the ARNGUS.  <u>See</u> <u>Penagaricano v. Llenza</u>, 747 F.2d 55, 57 (1st Cir. 1984); <u>Williams v. Wilson</u>, 762 F.2d 357 (4th Cir. 1985). Plaintiffs seem dissatisfied with that as a remedy because federal recognition and membership in the ARNGUS is dependent upon membership in the state National Guard.  (Pl. Resp. 4.)  These are federal records within the Department of the Army which can be corrected.  Also, by maintaining federal recognition and good standing in the ARNGUS, it provides an opportunity for those records to be in place if the state National Guard decides to reinstate the former Guardsman.

All of Plaintiffs in this case submitted applications based on their military membership in the PRANG, not in their civilian technician capacity. (AR Cruz 46-63; AR Hernandez 3, 11; AR Colon 16; AR Velez at 23-145.)  Each application was identical in that Plaintiffs all requested

that their records be corrected to show that they were not discharged from the PRANG and that they were not Absent Without Leave (AWOL).  Id.  The ABCMR recommended that the Puerto Rico AG revoke all of Plaintiffs' discharges.  (AR Cruz 24-26; AR Hernandez 10-14; AR Colon 16;  AR Velez 16 .)

The ABCMR provided that in the event the Puerto Rico AG refused to reinstate Plaintiffs, it would provide federal relief by correcting the Department of Army records and specified what relief would be appropriate for each plaintiff.  For Cruz, the ABCMR determined his orders should be amended to show he was in the U.S. Army Reserve as of January 18, 1999, and that he be credited with drills and retirement points, receive pay and allowances for ten drill periods and recalculate his retirement points based on the amendment.  (AR Cruz 10-14)  The ABCMR directed that Colon's Department of the Army records be corrected to reflect his drilling status in the U.S. Army Reserves, and that an audit should be performed of his retirement points with a published corrected statement, and a corrected 20-year retirement letter.  (AR Colon 11-12.)  The ABCMR determined there was insufficient evidence to support Hernandez's contention that he was not AWOL.  (AR Hernandez 13-14.)  Also, the ABCMR did not provide any relief for Hernandez concerning the federal Reserves because Hernandez did not request that relief.  (AR Hernandez at 1.)  For Velez, the ABCMR determined there was insufficient evidence to warrant removal of his AWOL charge.  Also, the Board did not find it necessary to change his re-entry code which would allow him to join the federal Reserves because he was already a member in good standing with the U.S. Army Reserves.  (AR Velez 17.)  The ABCMR directed that all of his Department of Army records be corrected to show that he was separated from the PRANG on February 21, 1999 and transferred to a federal Reserve unit right away.  (Id.)  The

ABCMR determined Velez would remain in the U.S. Army Reserves in his current assignment in compliance with his current service obligation. (<u>Id.</u>)

Plaintiffs did not allege the federal relief the ABCMR provided was arbitrary and capricious. Instead, Plaintiffs only challenge the ABCMR's decision to issue a recommendation to the Puerto Rico AG, rather than an order compelling the State officials to reinstate Plaintiffs to the PRANG. (Compl. 1, 5, 6; Pl. Resp. 1, 16.)

As stated in Defendants' initial motion, the ABCMR made recommendations to the AG that all of Plaintiffs be reinstated into the PRANG, and in the event the AG refused, the ABCMR provided Plaintiffs alternate means of relief through their federal records as deemed appropriate. Plaintiffs AWOL offenses and discharges occurred in their capacity as military members of the State's National Guard capacity in a Title 32 status, not federal employees in a Title 10 status. The records surrounding those circumstances are state records, belonging to the Commonwealth of Puerto Rico and the PRANG. Given the ABCMR's limited federal jurisdiction under 10 U.S.C. § 1552, the ABCMR's decision to make a recommendation to the Puerto Rico AG rather than issue an order was in accordance with the law. Therefore, the decision was not arbitrary, capricious, or contrary to law or regulation.

## II. **The Commonwealth of Puerto Rico Has a Vested Interest In The PRANG Membership And Are The Only Officials Who Can Provide Plaintiffs Relief And Therefore Indispensable Parties To This Suit**

### A. **The Governor and AG of Puerto Rico Are The Only Officials Who Can Order Reinstatement To Plaintiffs' Former Military Positions In The PRANG And They Have A Substantial, Vested Interest In The Composition of State Militia's Membership.**

The Governor of Puerto Rico and the AG are the only officials empowered to reinstate Plaintiffs to the PRANG. The Constitution specifically withholds the power to the state to

appoint members of the militia.  <u>See</u> U.S. CONST. art I, § 8, cl. 16.  Numerous courts support

Defendants' position that 10 U.S.C. § 1552 does not provide the Secretary of the Army or the

ABCMR with the authority to provide remedies that consist of orders or directives compelling

State National Guard officials to reinstate members.  <u>See</u> <u>Jorden</u>, 799 F.2d at 102 n.5; <u>Navas v.</u>

<u>Vales</u>, 752 F.2d 765, 770 (1st Cir. 1985); <u>Williams</u>, 762 F.2d at 360 n.6, <u>Penagaricano</u>, 747 F.2d

at 67.  As the officials who possess the authority to provide Plaintiffs with the full remedy they

seek, the Puerto Rico Governor and the AG are indispensible parties to this case pursuant to Fed.

R. Civ. P. 19.

 "The Puerto Rico National Guard is created by Law No. 28 of April 12, 1917, Title 25,

Laws of Puerto Rico Annotated, Section 1 et seq.  It is basically a volunteer military organization

maintained jointly by the State and Federal Government.  Said Law makes the Governor of

Puerto Rico the Commander in Chief of it.  Title 25, Laws of Puerto Rico Annotated, Section 2."

<u>Ursulich v. Puerto Rico National Guard</u>, 384 F. Supp. 736, 738 (D.P.R. 1974).  The AG and the

PRANG are "alter egos of the Commonwealth of Puerto Rico."  <u>Arroyo v. Colon</u>, No. 95-2455,

1997 U.S. Dist. LEXIS 19771 (D.P.R. 1997)(court dismissed complaint filed by plaintiff who

brought an action against the AG and PRANG for reinstatement to both his military and civilian

positions, back pay, and damages.)  "The fact that the Governor of Puerto Rico is the

Commander in Chief of the Puerto Rico National Guard clearly shows that the agency is a direct

arm of the [Puerto Rico] executive.  That the Commonwealth of Puerto Rico is the real party in

interest is clear."  <u>Ursulich</u>, 384 F. Supp. at 738.

 The facts here present the rather straightforward case of state officers exercising their

state authority to effectuate the termination of state militia personnel.  No one is claiming the

PRANG had been called into service by the federal government at the time of the termination. Moreover, the PRANG is the militia of the Commonwealth of Puerto Rico, with the governor serving as the commander-in-chief. The AG, an appointee of the governor, effected the termination of Plaintiffs. The termination actions, administered at the state level, are therefore under the color of state law. See Knutson v. Wisconsin Air National Guard, 995 F.2d 765, 768 (7th Cir.), cert. denied, 510 U.S. 933 (1993). There is simply no question that the acts Plaintiffs complain of, the wrongful discharges, were taken under the color of state law, and therefore those officials are indispensable parties to the case.

As the Commander-in-Chief of the PRANG, the Governor, as well as the appointed AG, have a substantial interest in the composition of their Commonwealth's militia. The Puerto Rico officials are responsible for everything the PRANG does or fails to do. The leaders of the Commonwealth's military force certainly possess a direct, vested interest in determining who its members are as a military force, as a state militia. The Governor and AG have an interest to ensure members of the state militia will be responsive and capable to responding to state emergencies, and capable of supporting the ARNGUS if the ANG were to be federally activated. The Puerto Rico officials are directly involved in the administration of personnel decisions and hold a significant interest in the membership of their military. That alone makes them an indispensable party to this suit.

**B.    Puerto Rico Maintains A Significant Interest In The Employment of the Civilian Technicians Supporting the PRANG And The AG Is The Appropriate Official To Restore The Plaintiffs' Civilian Employment**

Plaintiffs assert that since they were technicians and federal civilian employees of the

Department of the Army, when the ABCMR corrects Plaintiffs' records to remove their military separation, Plaintiffs should be automatically, and retroactively reinstated to their civilian employment. (Pl. Resp. 17-18.) Plaintiffs argue that when the Court orders Plaintiffs to be reinstated to the PRANG, the Court should also order the restoration of Plaintiffs' civilian employment, without adding Puerto Rico as a party. (Pl. Resp. 18-20).

Plaintiffs try to claim that Puerto Rico's "interest is no different from any interest of any subdivision or supervisor or manager as to who works for the Department." (Pl. Resp. 20.) Plaintiffs lose sight again that the first matter in this case is determining who can provide relief to Plaintiffs as to their military status to reinstate Plaintiffs to the PRANG. Plaintiffs try to compare the leaders of the PRANG to any other supervisor within the Department of the Army and claim that Puerto Rico is simply an agent of the Department of the Army for employing civilian technicians, and therefore their interest is not significant. (Pl. Resp. 20.)

Plaintiffs also assert that since the Puerto Rico Governor and the AG wrongfully discharged Plaintiffs, then they are not deserving to be a party in fashioning a remedy to right the wrong, and must be subject to whatever orders the Secretary of the Army demands, and the automatic restoration of Plaintiffs' civilian employment. (Pl. Resp. 20-21.) Plaintiffs state "Because Puerto Rico had no 'right' to terminate Plaintiffs' PRANG military membership in violation of federal regulations, it has no 'right' to resist appropriate relief from adverse consequences that by operation of federal law resulted automatically, without exercise of discretion, from the unlawful military discharges." (Pl. Resp. 20.) Plaintiffs go on to claim that "Puerto Rico has no 'right' to resist such action by the Secretary." (Pl. Resp. 20-21.) Plaintiffs' discontent with the Commonwealth of Puerto Rico for discharging Plaintiffs does not exclude

27

the Commonwealth from being an indispensable party to the case when it has the exclusive role in providing the remedy and such a substantial interest in the outcome of the case.

The restoration of Plaintiffs' civilian technician employment is contingent upon Puerto Rico State officials re-instating Plaintiffs as members of the PRANG, since civilian technicians must maintain membership in the Commonwealth's National Guard pursuant to 32 U.S.C. § 709. Just as Defendants cannot order the Puerto Rico AG to reinstate Plaintiffs to their military positions within the PRANG, Defendants cannot order the AG of the PRANG to reinstate Plaintiffs as civilian technicians. See Jorden v. National Guard Bureau, 799 F.2d 99, 102, n. 5 (3rd Cir. 1986)("A military correction board is arguably not empowered to reinstate [plaintiffs] to their civilian position.") The PRANG has a substantial, vested interest in this case, to determine who will be members of the PRANG, as well as employed as civilian technicians in support of the Commonwealth's militia.

Even though technicians are considered federal employees for several purposes, the military nature of the civilian technician's job imposes a significant interest to the Commonwealth of Puerto Rico. "Every court having occasion to closely consider the capacity of National Guard technicians has determined that capacity to be irreducibly military in nature." Wright v. Park, 5 F.3d 586 (1st Cir. 1993). "[S]ince National Guard technicians' positions are encompassed within a military organization and require the performance of work directly related to national defense, such positions are themselves military in nature." Id.

Plaintiffs overlook the military nature of the civilian technician's job in supporting the State militia, and instead focus on the federal aspect of the position as being within Defendants' purview. Plaintiffs cite the Lipscomb case and claim that "in carrying out its technician

employment functions under § 709(d), the PRANG acts as an agency of the United States and the Department of the Army."  (Pl. Resp. at 19 citing <u>Lipscomb v. Federal Labor Relations Auth.</u>, 333 F.3d 611, 617-19 (5th Cir. 2003)).  That case involved technicians and the organizational rights of National Guard civilian technicians under the Federal Service Labor-Management Relations Act (FSLMRA).  <u>Id.</u>  However, in the <u>Lipscomb</u> case, the Fifth Circuit Court of Appeals carefully pointed out that Congress was concerned with protecting the military authority of the states and limited its ruling.  <u>Id.</u> at 614-15.  The case held that the AG was acting as a federal agency for Federal Labor Relations Authority purposes.  <u>Id.</u>  The fact remains that in order to resolve that issue, it was necessary for the AG and the State to be parties to the suit.  The <u>Lipscomb</u> case actually supports Defendants' argument that Puerto Rico must be joined as an indispensable party.  In <u>Lipscomb</u>, Plaintiffs sued the Mississippi Adjutant General, Major General Lipscomb, in his official capacity as head of the Mississippi National Guard, the Mississippi Militia, and the Mississippi Military Department.  <u>See</u> <u>Lipscomb</u>, 333 F.3d 611.  It should be noted that the Secretary of the Army, ABCMR, and Chief of the National Guard Bureau were not parties.  <u>Id.</u>

      In the instant case, Plaintiffs try to assert that under 10 U.S.C. § 3013(b), which addresses the Secretary of the Army's responsibilities, the Department of the Army has authority to issue orders to the PRANG concerning employment of the Department's technician employees, and the Chief of the NGB has similar authority under the NGB charge pursuant to 10 U.S.C. 10503(8) and (10).  (Pl. Resp. 19.)  However, Plaintiffs take the holding in <u>Lipscomb</u> too far.  The Fifth Circuit Court of Appeals carefully limited the holding in the case to the civilian technicians' rights provided in the FSLMRA.  The case did not address the issue of civilian

29

technician membership under 32 U.S.C. §709 that hinges on the requirement to be a member in the State National Guard. In fact, the court distinguished the case from other National Guard cases which address the status of the guardsmen which is "a wholly different statutory scheme." Lipscomb, 333 F.3d 620, n. 10. The instant case is based on the status of Plaintiffs as National Guardsmen, not the election and bargaining rights of civilian technicians. Therefore, Plaintiffs improperly apply the Lipscomb holding in this case by stretching the dual role of the AG, to the statutory authority of the Secretary of the Army and the Chief of the NGB.

As stated in Defendants' original motion, "[s]ince technicians are members of the state National Guard, Congress was careful to recognize the authority of the state." Am. Fed'n of Gov't Employees Local 2953 v. Fed. Labor Relations Auth., 730 F.2d 1534, 1536 (D.C. Cir. 1984). The principal reason for enacting the Technician Act was to afford those employees the federal fringe benefits, while recognizing the states' authority as well. Id. The state maintains authority over reductions-in-force, discharges and other personnel actions which are accomplished by the AG of the National Guard. A right to appeal from the AG's decision does not extend beyond the State's AG. See also Illinois National Guard, 854 F.2d 1398 (holding that 32 U.S.C. § 709(e) of the Technician Act "vests the adjutants general of the various states with final discretion over most matters relating to [the Technicians] employment and determination.").

Case history demonstrates that courts respect the dual nature of the civilian technicians employment, and respect the state's interest in the technicians' role in supporting the State's National guard. See Anselmo v. Ailes, 344 F.2d 607 (2nd Cir. 1965). Over forty years ago, the Second Circuit pointed out the military nature of the civilian technician's employment which

30

is consistent with the basic constitutional scheme providing a state militia available both for national and state purposes, U.S. Const. Art. 1, § 8, clause 12. While the Congress chose to treat the technicians as civilians not on active military duty, it apparently elected to integrate their employment with their National Guard dual status.  They have a dual function in that they handle federal equipment in possession of the states, but are appointed and discharged by a state officer designated by the Secretary of the Army, with no federal veto over specific individual hiring and firing except through recognition or non-recognition of the unit as a whole.  In view of their dual status, any protection which the Congress might desire to provide by way of review of discharge would require careful dovetailing into this federal-state scheme.  The natural place for any such provision would be in the caretaker statute itself, but no provision is there included.  Any decision so to include it involves a matter of policy left for Congressional determination.

We think it unlikely that the Congress ever intended that these men, even though federal employees in some sense, should be considered either members of "the classified civil service" or "permanent indefinite eligibles."  It would be quite inconsistent with the statutory scheme of determination of individual qualifications, appointment, and discharge by state officials to provide federal Civil Service Commission or federal court review of discharge.

Id. at 610-11.

Throughout the history of the employment of civilian technicians, courts have recognized the nature and function of the job is to support the states' National Guard.  Because the types of jobs Plaintiffs performed as civilian technicians were military in nature, and they provided direct support to the PRANG, the Governor and AG of the PRANG then have a significant interest in who is employed.  The AG has a significant interest in the outcome of the case whether he is acting in a federal or state capacity.  Being absent as a party to the case impedes and impairs the AG's ability to protect that interest.  Accordingly, the Court should determine that Puerto Rico is an indispensable party to this suit pursuant to Fed. R. Civ. P. 19.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter judgment

in favor of Defendants denying Plaintiffs' claims.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
Major Kelly L. McGovern
U.S. Army Litigation Division
Arlington, VA 22203