UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF CIVILIAN TECHNICIANS, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 07-01747 (CKK)

**REPLY IN SUPPORT OF
PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

The Court should reject defendants' interpretation of 32 U.S.C. 110.  If it does, the Court should grant plaintiffs' motion for summary judgment, because none of defendants' other arguments is dispositive.  With defendants' interpretation of § 110 set aside, principles that defendants do not dispute provide a basis for relief.[1]

We develop these points below and also point out errors in defendants' non-dispositive arguments, establishing additional or alternative bases for relief.

**I.     DEFENDANTS' INTERPRETATION OF 32 U.S.C. § 110 IS UNSUPPORTED, SELF-CONTRADICTORY, AND CONTRARY TO BOTH THE TEXT OF THE STATUTE AND A RULE OF STATUTORY CONSTRUCTION**

Defendants erroneously argue that the President lacks authority under 32 U.S.C. § 110 to issue orders requiring the National Guard to comply with valid regulations prescribed by the President under § 110.  Dfdts' Reply and Opp. at 11.  Defendants' argument is contrary to the

---

[1] Apart from § 110, defendants do not dispute our argument that the Department of the Army has records of its own showing who is a member of the Puerto Rico Army National Guard (PRARNG) and that the Army Board for Correction of Military Records (ABCMR, Correction Board, or Board) at least can correct the Department's records to show that, insofar as the Department is concerned, the individual plaintiffs were not separated from, and remain members of, the PRARNG.  Pltfs' Mem. and Opp. at 3-6.

text of the statute, which states, "The President shall prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National Guard."  Under § 110, it is "necessary" that the Guard comply with valid regulations prescribed by the President; and, if the Guard does not comply with them, it is "necessary" that the President "issue orders" requiring compliance.

The Court should reject defendants' unsupported argument that, in § 110, "regulations" and "orders" are "one in the same" and can "merely . . . establish criteria in an effort to control the quality" of the Guard.  Dfdts' Reply and Opp. at 12.  Defendants cite nothing to support their "one in the same" interpretation.  The text of the statute indicates that "prescrib[ing] regulations" and "issu[ing] orders" are distinct functions, and that regulations and orders are not "one in the same."  Defendants' "one in the same"  interpretation is contrary to the principle of statutory construction requiring that each word and phrase in a statute—"prescribe regulations" and "issue orders"—be given effect.  *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1882) ("[i]t is the duty of the court to give effect, if possible, to every clause and word of a statute").  *See also*, *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (same, quoting *Montclair*); *Ass'n of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1155 (D.C. Cir. 1994) (same, quoting *Menasche*).  Defendants' memorandum, moreover, contradicts their "one in the same" interpretation in the next sentence.  It offers an example of a permissible "order"—an "order to align" units—that is *not* a "regulation."  Dfdts' Reply and Opp. at 12.

The other part of defendants' interpretation—asserting that § 110 "regulations" and "orders" can "merely establish criteria in an effort to control the quality" of the Guard—is also

unsupported by authority.[2]  Defendants point to no language in § 110 that establishes this limitation on the orders that the "President shall . . . issue."  Defendants' own example of a permissible order—"an order to align a National Guard unit with another unit for organizational purposes," Dfdts' Reply and Opp. at 12—is not an order that "merely . . . establish[es] criteria.

Defendants' interpretation is contrary to the text of the statute.  The statute speaks directly to the types of orders that the "President shall . . . issue."  Like the regulations that the "President . . . shall prescribe," the "orders" that the "President shall . . . issue" are those "*necessary to* organize, discipline, and *govern* the National Guard."  (Emphasis added.) "Defendants' interpretation is contrary to the plain meaning of "govern the National Guard." "Govern" does not mean "merely . . . [make an] effort to control . . . quality," by "establish[ing] criteria."  Rather, "govern" means "1.  To rule or direct by right or authority: to *govern* a nation. 2.  To guide or control the course or action of; influence.  3.  To serve as a rule or deciding factor for: This decision *governed* the case.  4.  To keep in check; curb."  Funk & Wagnalls *Standard College Dictionary* (New York: Harcourt, Brace & World, Inc. 1966).  Defendants' reading of the statute is an "extraordinary twist on simple words" that, under the framework of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984), the Court "must reject outright."  *Ass'n of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1155 (D.C. Cir. 1994) (applying *Chevron* and invalidating agency statutory interpretation).

On this point, moreover, defendants' legal position is once again self-contradictory.  The federal regulation that the Puerto Rico Army National Guard (PRARNG) violated in the individual plaintiffs' cases did not merely "establish criteria."  To the contrary, the regulation

_____

[2] Defendants cite 32 U.S.C. § 102, but this statute says nothing about the meaning of § 110. Defendants also cite *Gilligan v. Morgan*, 413 U.S. 1 (1973), but nothing in *Gilligan* supports defendants' "merely establish criteria" interpretation of § 110.

established mandatory rules restricting the PRARNG's authority to discharge plaintiffs from the

PRARNG.  Dfdts' Statement of Material Facts ¶¶ 10-13.  Defendants do not dispute the validity

of the regulation.  They do not claim that, by establishing mandatory rules, not just criteria, the

regulation exceeded the President's § 110 authority.  Defendants' memorandum admits that the

President's § 110  "[g]overning" authority includes prescribing "processes [for] discharging

enlisted soldiers" that "*ensure* all service members are afforded the same due process."  Dfdts'

Reply and Opp. at 9 (emphasis added).[3]

Defendants erroneously argue that their interpretation of § 110 is entitled to "some

deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)."  Dfdts' Reply and Opp,. at 5.

Defendants base their argument solely on the Correction Board policy of issuing only

recommendations in National Guard cases, and *obiter dicta* in several judicial opinions

discussing limitations on the Board's power in Guard cases.  *Id*. at 6.  The Board's policy,

however, does not *interpret* § 110; instead, it entirely *overlooks* it.  Defendants cite no Correction

Board case that even mentions § 110.  Discussion in judicial decisions, moreover, is not *agency*

interpretation; but, in any event, none of the cited judicial decisions discussing the Board's

authority in Guard cases mentions § 110.

Defendants have not pointed to any document of any kind where their "one in the same"

and "merely establish criteria" interpretation of § 110 previously has appeared.  Defendants'

interpretation appears to be, not an agency interpretation, but a "post hoc rationalization" by

---

[3] The regulation that the PRARNG violated in plaintiffs' cases not only established mandatory
procedures for the PRARNG to follow, but also required that the PRARNG's decision be
approved by federal officials.  Dfdts' Statement of Material Facts ¶ 13.  Defendants overlook this
when they argue that "[t]here was no federal involvement whatsoever in [plaintiffs'] separation
from the PRANG."  Dfdts' Mem. at 19.  That was the case only because the PRARNG *violated*
the federal regulation that *required* the PRARNG to obtain federal officials' approval of
plaintiffs' discharges.  It would be absurd to say that the PRARNG's violation of the federal
regulation is a *reason* why federal officials lack authority to issue an order to enforce it.

counsel. If it is, the Court must ignore it, not defer to it. *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-69 (1962). This point aside, defendants' interpretation lacks the consistency, formality, and persuasiveness required for deference. See Dfdts' Reply and Opp. at 5, n. 1, *quoting United States v. Mead Corporation*, 533 U.S. 218, 227-28 (2001). Our opening memorandum, at 11-12, showed that the Correction Board's practice of offering enlistment in another Reserve component rather than correction of unlawful Guard action has no basis in the language of the Correction Board statute and improperly transforms the Board into a placement agency instead of an adjudicator of legal rights. Defendants' reply and opposition has no response to this point.

Defendants do not dispute our argument, Pltf's Mem. and Opp. at 13, that "[i]t is necessary [within the meaning of § 110] that the National Guard be governed in accordance with [valid] federal regulations." To be governed by federal regulations means to be required to comply with federal regulations. It follows that, where a state National Guard violates a federal regulation, an order to comply is "necessary . . . to . . . govern" that state Guard. Contrary to defendants' argument, Dfdts' Reply and Opp. at 11, the statute *is* "worded in a way that supports Plaintiffs' reading" that "if the States do not obey the federal regulations, then the president can issue an order . . . to require compliance with those regulations." It is defendants' reading—the assertion that regulations and orders are "one in the same" and can "merely establish criteria"—that has no basis in the wording of the statute.

Defendants erroneously argue that, when the National Guard violates a federal regulation, "the federal government only has one remedy, to withhold funds under 32 U.S.C. § 108." Dfdts' Reply and Opp. at 10. Defendants' argument is not only contrary to the text of § 110, as we have shown above, but also inconsistent with § 108, which states:

> If, within a time fixed by the President, a State fails to comply with a . . . regulation prescribed under this title, the National Guard of that State is barred, in whole or in part, as the President may prescribe, from receiving money or any other aid, benefit, or privilege authorized by law.

Before the "State is barred" under § 108, the President must fix the time within which compliance with the regulation must occur. Thus, when "a State fails to comply with a regulation," the President has authority under §§ 108 and 110 to issue an order to the State saying that if it fails to comply within a "time fixed," the State will be barred "from receiving money or any other aid, benefit, or privilege authorized by law," as "the President may prescribe."

Further, nothing requires the President to exercise this authority solely by means of a single order, rather than a sequence orders, such as, first, an order that informs the State that it must comply, but does not fix a deadline; second, if compliance does not occur within a reasonable time, an order that fixes the time for compliance, but does not state the specific sanction to be imposed if the deadline is not met; and third, if the deadline is not met, an order prescribing a sanction. The President's authority to issue orders fixing deadlines for regulatory compliance and prescribing sanctions for noncompliance necessarily includes authority to issue orders that simply require compliance and leave fixing deadlines and prescribing sanctions to future orders, should they become necessary.[4]

Defendants erroneously argue that recognition of the President's authority under § 110 to issue orders requiring state Guards to comply with valid § 110 regulations unlawfully "undermine[s] the states' authority to administer their affairs while in a Title 32 status." Dfdts'

---

[4] Thus, even if withholding of future funds under § 108 were the only sanction that the President ultimately can impose for violation of a regulation prescribed under § 110, authority to issue an order requiring compliance is implicit in the authority to issue, ultimately, an order imposing the sanction, for noncompliance. Here, defendants have failed to issue any order at all to the PRARNG, because of their erroneous belief that all they can do is make "recommendations."

Reply and Opp. at 10.  First, to the extent the states have any authority over the National Guard that cannot be governed by command, either congressional or presidential, that authority cannot be infringed by order *or* mandatory regulation.  As noted, however, defendants do not claim that the mandatory regulation violated by the PRARNG in the individual plaintiffs' cases exceeds congressional or presidential power.  Nothing supports the illogical idea that an order is beyond the power of Congress or the President if a regulation that commands the same is not.

Second, defendants overlook that the power of the federal government to impose requirements on the states as a condition of federal funding is broader than the power of Congress and the President to control the states merely by command.  *South Dakota v. Dole*, 483 U.S. 203, 210-211 (1987) (federal government has broad latitude to attach regulatory requirements to grants of federal funds even in areas exclusively reserved to the states where the federal government lacks power to regulate state conduct directly).  *See also*, *Lau v. Nichols*, 414 U.S. 563 (1974) (federal government has authority to issue orders requiring states to comply with conditions for receipt of federal funds).

Here, where the federal government has funded the training of Guard members, giving them the experience and qualifications they need to serve in the federal military if their Guard unit is called to federal service, the federal government has a legitimate interest in ensuring that its right to the services of these experienced and highly qualified soldiers is not impaired by their summary discharge from the Guard by their state, contrary to federal regulations that require due process and federal approval of the state action.  Defendants present no authority saying, or any logical reason why, a federal government order requiring a state not to separate Guard members in violation of federal regulations is beyond the power of the federal government, where the federal government has paid for the training and experiences of those Guard members.

For these reasons, the Court should reject defendants' interpretation of § 110 and hold that this statute empowers the President to issue orders requiring the PRARNG to comply with valid regulations governing the National Guard.

## II.   IF DEFENDANTS' INTERPRETATION OF 32 U.S.C. § 110 IS REJECTED, PLAINTIFFS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED BASED ON PRINCIPLES THAT DEFENDANTS DO NOT DISPUTE

If the Court rejects defendants' interpretation of § 110, it should grant plaintiffs' motion for summary judgment. None of defendants' other arguments is dispositive, and principles that defendants do not dispute provide a basis for relief.

Defendants do not dispute that, under 3 U.S.C. § 302, the President's § 110 authority is delegated to the Secretary of the Army and the Chief of the National Guard Bureau. Indeed, defendants, themselves, acknowledge that "the Secretary can issue an order" under § 110. Dfdts' Reply and Opp. at 12. For this reason, whether the Correction Board has § 110 authority, or comparable authority under 10 U.S.C. § 1552, is not dispositive. Under § 110, the Secretary can act independently of the Board.

Also, defendants do not dispute that under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702 and 706, the Court has authority to order defendants to take remedial action under § 110 to the extent that defendants have § 110 authority. Defendants do not dispute that, if they do have § 110 authority to issue orders requiring compliance with § 110 regulations, their failure to issue any order to the PRARNG in plaintiffs' cases, based on erroneous belief of lack of authority to issue orders, is an unlawful abdication of enforcement authority that the Court can enjoin. *Adams v. Richardson*, 480 F.2d 1159, 1162-66 (D.C. Cir. 1973) (injunction against agency practice manifesting abdication of enforcement authority). Defendants do not dispute that the Court has power to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), and

to afford any other appropriate relief, including declaratory relief, if defendants' conduct or ongoing policy is contrary to law. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 71 (1992) ("federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute").[5]

## III. DEFENDANTS DO NOT DISPUTE THE BOARD'S AUTHORITY TO CORRECT THE DEPARTMENT'S RECORDS OF PRARNG MEMBERSHIP, OR THE COURT'S POWER TO REQUIRE THE BOARD TO DO SO

Apart from § 110, defendants do not dispute our argument, Pltfs' Mem. and Opp. at 3-6, that the Department of the Army has records of its own showing who is a member of the PRARNG and that the Board can correct the Department's records to show that, insofar as the Department is concerned, the individual plaintiffs were not separated from, and remain members of, the PRARNG. Defendants do not deny that the Board's failure to so correct the Department's records was contrary to the Board's duty to afford "thorough and fitting" relief. *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975). They do not dispute that the Court has APA authority to order the Board to afford this relief.[6]

---

[5] Defendants do not deny the correctness of our observation, Pltfs' Mem. and Opp. at 19, n. 17, that the Fed. R. Civ. P. 19 argument presented in their summary judgment motion applies only to reinstatement of the individual plaintiffs to their civilian employment, not to redress of their unlawful military separations, or to grant of declaratory or injunctive relief to the unions. Defendants' reply and opposition, at 24-26, impermissibly seeks to extend their Rule 19 argument to reinstatement of the individual plaintiffs to military membership in the PRARNG. (Defendants do not seek to extend their Rule 19 to preclude grant of declaratory and injunctive relief to the unions.) The Court must disregard defendants' impermissible attempt to use a reply memorandum to extend their Rule 19 argument. Under Fed. R. Civ. P. 7(b)(1)(B), the grounds for a motion must be stated in the motion, not a reply memorandum.

[6] Defendants do not claim that Rule 19 precludes the Court's issuance of an order requiring the Secretary, acting through the Board, to correct the Department's own records of PRARNG membership.

IV.  **DEFENDANTS ERRONEOUSLY ARGUE THAT THE CORRECTION BOARD LACKS AUTHORITY TO CORRECT PRARNG RECORDS THAT ARE CONTRARY TO FEDERAL REGULATIONS**

Defendants' argument that the Correction Board lacks authority under 32 U.S.C. § 110 to order the PRARNG to reinstate the individual plaintiffs' military membership is based on their argument that the President lacks this authority.  Dfdts' Reply and Opp. at 14.  Defendants present no interpretation of 3 U.S.C. § 302 or the doctrine of implied authority set forth in *United States v. Mead Corporation*, 533 U.S. 218, 229 (2001), saying why the Board should not be presumed to have whatever § 110 authority the President has to order reinstatement of Guard members who have been separated in violation of federal regulations.

It is undisputed that the Board has jurisdiction to decide whether Guard members have been separated in violation of federal regulations.  Given the Board's duty to afford thorough and fitting relief in the cases within its jurisdiction, the Board, like the Secretary, should be presumed to be delegated the President's § 110 authority, whatever it may be, to redress unlawful separation from the Guard.  To the extent that presidential authority exists, the Board should be presumed to have it as well.  Defendants present no logical reason why 3 U.S.C. § 302 and the *Mead Corporation* doctrine should not be applied in this way.

Further, defendants offer no persuasive reason why the Board does not have 10 U.S.C. § 1552 authority to correct PRARNG records to the extent necessary to ensure that they reflect membership by all those entitled to it under federal regulations.  Defendants do not dispute that one of the PRARNG's federal obligations is to keep, in accordance with federal law, records of federally mandated and federally recognized PRARNG membership.  Further, defendants do not dispute the correctness of the holding in *Lipscomb v. Fed. Labor Relations Auth.*, 333 F.3d 611, 618 (5th Cir. 2003), that in employing technicians under 32 U.S.C. § 709, a state National Guard

acts as "a federal agency . . . because of the federal nature of the employees . . . and the substantive federal law that governs the [state Guard's] duties." Nor do defendants explain why this holding does not apply to the PRARNG's performance of its duty to keep, in accordance with federal law, records of federally mandated and federally recognized PRARNG membership.

The question is not whether, by keeping these records or employing technicians, a state Guard becomes a federal agency for all purposes. Defendants' categorical argument that the PRARNG "is not a federal agency," Dfdts' Reply and Opp. at 16-19, is incompatible with *Lipscomb* and overlooks defendants' earlier acknowledgement that the National Guard has "both federal and state attributes." *Id.* at 7. The PRARNG acts as a federal agency when it performs functions governed by "substantive federal law" concerning the "federal nature" of its personnel. *Lipscomb*, 333 F.3d at 618. Maintaining records of federally recognized members in accordance with federal regulations is one of those functions.[7] Records maintained by the PRARNG in its capacity as a federal agency of the Department of the Army are Department records that the Correction Board has authority to correct.

## V. DEFENDANTS ERRONEOUSLY ARGUE THAT THE COURT CANNOT ORDER RELIEF FROM PLAINTIFFS' UNLAWFUL MILITARY SEPARATIONS WITHOUT ADDING PUERTO RICO OFFICIALS AS DEFENDANTS

Defendants' extension of their Rule 19 argument to the issue of the individual plaintiffs' reinstatement in the PRARNG, improper under Rule 7, *supra*, n. 5, is also erroneous. Contrary to defendants' argument, the authority of the states to "Appoint Officers" in the National Guard

---

[7] Defendants erroneously argue that only "the maintenance," not "the contents" of PRARNG membership records is subject to federal regulation. Dfdts' Reply and Opp. at 19. The substance of the records, not their manner of storage, is the concern of Title 32. Under 32 U.S.C. § 105, "Army National Guard records" used as "the basis for determining . . . which . . . persons constitute . . . members of the National Guard," must be "kept in accordance with [title 32 of the United States Code]." Guard records that do not reflect the membership of persons entitled to it under federal regulations implementing Title 32 are not "in accordance" with Title 32.

does not mean that Puerto Rico officials are "the only officials empowered to reinstate Plaintiffs to the PRANG." Dfdts' Mem. at 24-25. First, the individual plaintiffs are not "Officers." They are enlisted members. Second, reinstatement to correct unlawful separation is not appointment.

Third, even as to matters that are exclusively reserved to the states and cannot be regulated simply by federal command, the federal government has broad latitude to impose requirements as a condition of federal funding. *South Dakota v. Dole*, 483 U.S. 203, 210-211 (1987). As noted, the federal government funds the National Guard. It pays for the training of Guard members so that they acquire the experience and qualifications needed to serve in the federal military if their Guard unit is called to federal service. The federal government has a legitimate interest in ensuring that its right to the services of experienced and highly qualified Guard members is not impaired by their unlawful summary discharge from the Guard by their state, contrary to federal regulations.

For this reason, where a state Guard has separated Guard members in violation of federal regulations, federal officials have authority under 32 U.S.C. § 110 to issue orders to the state Guard to enforce the regulations. Where federal officials have failed to take enforcement action due to unlawful abdication or misconception of the scope of their enforcement authority, the Court can afford relief from the federal officials' failure without requiring addition as a party of the person or entity against whom the plaintiff claims enforcement action should be taken. *Adams v. Richardson*, 480 F.2d 1159, 1162-66 (D.C. Cir. 1973) (injunction against agency practice manifesting abdication of enforcement authority). *See also*, *FEC v. Akins*, 524 U.S. 11, 18-26 (1998) (voters have standing to seek agency enforcement action against campaign

contributor); *Democratic Cong. Campaign Comm. v. FEC*, 831 F. 2d 1131, 1133-35 (D.C. Cir. 1987) (denial of enforcement action reviewable).[8]

    With respect to military reinstatement of the individual plaintiffs, defendants' Rule 19 argument is based exclusively on, and presumes the validity of, their arguments under 32 U.S.C. § 110 and 10 U.S.C. § 1552.  We have shown earlier that defendants' § 110 and § 1552 arguments are incorrect.  Consequently defendants' dependent Rule 19 argument fails as well.

## VI.  DEFENDANTS ERRONEOUSLY ARGUE THAT THE COURT CANNOT ORDER RELIEF FROM PLAINTIFFS' UNLAWFUL AUTOMATIC SEPARATIONS FROM CIVILIAN EMPLOYMENT WITHOUT ADDING PUERTO RICO OFFICIALS AS DEFENDANTS

    Defendants do not dispute that the individual plaintiffs' separations from their federal civilian Army Department employment was an automatic consequence of their unlawful military separations, not a matter of PRARNG judgment or discretion.  Nor do they dispute that, if plaintiffs' military separations from the PRARNG are invalidated, plaintiffs are automatically entitled to reinstatement to their federal civilian Army Department employment under 32 U.S.C. § 709.

    Further, defendants do not dispute that civilian employment by the Department of the Army is an "affair[] of the Department of the Army" and that the "Secretary of the Army is responsible for, and has the authority necessary to conduct, all affairs of the Department."  10 U.S.C. § 3013(b).  And they do not dispute that the Chief of the National Guard Bureau has authority under the Bureau charter to  "[e]stablish[] policies . . . for the employment and use of

---

[8] Similarly, to the extent the Correction Board has failed to afford thorough and fitting relief in a Guard separation case, the Court can provide relief from the Board's error, and remand the case to the Board, without adding the Guard as a party.  Because these is no requirement that the Guard be a party to the Board proceeding, there can be no requirement that the Guard be a party to a suit for on-the-record review the Board's decision, under the APA.  Defendant does not argue to the contrary.

National Guard technicians under section 709 of title 32" and to "[i]ssu[e] directives . . . consistent with approved policies."  10 U.S.C. 10503(8) and (10). [9]

Given this legal framework and the automatic nature of plaintiffs' entitlement to reinstatement to Army Department civilian employment under § 709 if their military separations are invalidated, Puerto Rico officials have no separate Rule 19 legal "interest" that requires their addition as parties.  Because reinstatement indisputably is automatic, there is nothing that Puerto Rico officials can say to the Court to resist it.

**CONCLUSION**

Under 32 U.S.C. § 110 the President has authority to issue orders requiring compliance with regulations prescribed under § 110.  Defendants do not dispute that under 3 U.S.C. § 302 the Secretary has the same § 110 power as the President and that under the APA the Court can order relief from the Secretary's unlawful failure to take enforcement action under § 110. Defendants' Rule 19 argument does not apply to the unions' claims for declaratory and injunctive relief from the defendants' unlawful policy and practice based on misconception and abdication of their § 110 enforcement authority.  Nor does it apply to the individual plaintiffs' request for an order requiring the Correction Board to correct the Department's records of their PRARNG membership.  Defendants do not dispute that the Board can correct these records and that the Court can require the Board to do it.  For these reasons alone, plaintiffs' summary judgment motion should be granted and appropriate relief afforded.

---

[9] Defendants' reliance on *Anselmo v. Ailes,* 344 F.2d 607 (2d Cir. 1965), is misplaced.  That case was decided before the major revision of 32 U.S.C. § 709 in 1968, which first created the modern-era statute and expressly declared National Guard technicians to be employees of the United States and the Department of the Army or Air Force.  Defendants' discussion of *Lipscomb v. Fed. Labor Relations Auth.*, 333 F.3d 611, 618 (5th Cir. 2003), is erroneous.  The state officials in that case were not sued; rather, they were the plaintiffs.  They sued the Federal Labor Relations Authority.  *Lipscomb* therefore affords no support to defendants' Rule 19 argument.

Defendants improperly seek to extend their Rule 19 argument to the individual plaintiffs' entitlement to relief from their unlawful military separations. In any event, defendants' extension of their Rule 19 argument is erroneous because it depends entirely on their erroneous arguments under § 110 and 10 U.S.C. § 1552.

Finally, the Correction Board, like the Secretary, has § 110 authority necessary to afford thorough and fitting relief in Guard cases that fall within the Board's jurisdiction, and it is undisputed that the Board has jurisdiction over the individual plaintiffs' cases. Apart from § 110, the Correction Board has authority under 10 U.S.C. § 1552 to correct the PRARNG's records of plaintiffs' federally required PRARNG membership, because in performing its duty to keep these records in accordance with federal law the PRARNG acts as a federal agency. For these reasons as well, plaintiffs' summary judgment motion should be granted.

Respectfully submitted,

/s Daniel M. Schember
Daniel M. Schember, D.C. Bar #237180
Gaffney & Schember, P.C.
1666 Connecticut Ave, N.W., Suite # 225
Washington D.C., 20009
(202) 328-2244

Counsel for Plaintiffs

15