## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF CIVILIAN TECHNICIANS, INC., *et al.,*<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | Civil Action No. 07-1747 (CKK) |

## MEMORANDUM OPINION
(March 4, 2009)

Plaintiffs Daniel Romero Cruz, Juan A. Velez Soto, Domingo Hernandez Dones, and

Kenneth Colon Ayala, along with the Association of Civil Technicians, Inc. and Laborers'

International Union of North America ("Plaintiffs")[1] bring this action for declaratory and injunctive

relief against Defendants, the United States of America, Pete Geren in his official capacity as

Secretary of the Army ("Secretary"), and General Craig R. McKinley in his official capacity as

Chief of the National Guard Bureau[2] ("NGB," collectively with the United States of America and

the Secretary, "Defendants").  Plaintiffs are former military members of the Puerto Rico Army

National Guard ("PRANG") and former dual status National Guard technicians employed by the

PRANG.  Each of the Plaintiffs was administratively separated from the PRANG by the Adjutant

General of Puerto Rico and consequently was also automatically separated from his employment as

---

[1]Unless otherwise noted, although the Court recognizes that the union organizations are named as Plaintiffs in the Complaint, the Court shall use the term "Plaintiffs" throughout this Memorandum Opinion to refer only to the four individual plaintiffs.

[2]General McKinley is automatically substituted for Lieutenant General H. Steven Blum, pursuant to Federal Rule of Civil Procedure 25(d).

a dual status National Guard technician.  The Secretary, acting through the Army Board for

Correction of Miliary Records ("ABCMR" or "Board"), found that each Individual Plaintiff had

been separated from the PRANG in violation of federal regulations.  Defendants determined,

however, that as federal agencies they lacked the authority to require the State National Guard to

reinstate Plaintiffs and therefore recommended (rather than ordered) that the Adjutant General of

Puerto Rico retroactively reinstate each Individual Plaintiff in the PRANG.  Puerto Rico officials,

however, refused to reinstate Plaintiffs, as recommended.

Plaintiffs filed the instant lawsuit alleging that Defendants in fact have the authority both to

order Puerto Rico officials to reinstate Plaintiffs into the Army National Guard ("ARNG") and to

correct Plaintiffs' National Guard records to show that they were never discharged.  According to

Plaintiffs, Defendants' refusal to do so is therefore arbitrary, capricious, and otherwise in violation

of the law.[3]  Currently pending before the Court are Defendants' [6] Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment and Plaintiffs' [9] Cross-Motion for Summary

Judgment.  Upon a searching review of the parties' submissions, the administrative record,

applicable case law as well as statutory and regulatory authority, the Court shall GRANT

Defendants' [6] Motion to Dismiss as to Plaintiffs' claims for mandamus relief pursuant to 28

U.S.C. § 1361, shall GRANT Defendants' Motion in the Alternative for Summary Judgment as to

Plaintiffs' remaining claims brought pursuant to the APA, and shall DENY Plaintiffs' [9] Cross-

Motion for Summary Judgment, for the reasons that follow.

---

[3]As the Court explains in greater detail below, Plaintiffs' Complaint is less than a model
of clarity.  Although Plaintiffs' Complaint purportedly invokes the Court's jurisdiction under the
Mandamus Act, 28 U.S.C. § 1361, and does not explicitly assert a claim under the
Administrative Procedures Act ("APA"), Plaintiffs now appear to concede that they solely seek
relief pursuant to the APA.  *See infra* at 14-16.

## I. BACKGROUND

To better understand Plaintiffs' allegations, it is useful to first understand the somewhat complex organization of the National Guard as well as the unique position of a dual status National Guard technician. Accordingly, the Court shall briefly provide an overview of the National Guard organization and the National Guard Technician Act, before then turning to the specific factual allegations at issue in the instant case.

   A.   *General Factual Background*

      1.   Structure of the National Guard

The National Guard is a component of the organized militia of the United States and incorporates both the Army National Guard and the Air National Guard. 10 U.S.C. § 101(c). The National Guard is an "unique military force in that each unit within the Guard is responsible to two governments, one local (here, the Commonwealth of the Puerto Rico) and the other federal, *i.e.,* that of the United States." *Penagaricano v. Llenza*, 747 F.2d 55, 56 (1st Cir. 1984)*, overruled in part on other grounds by *Wright v. Park*, 5 F.3d 586, 590-91 (1st. Cir. 1993); *see also Perpich v. Dep't of Defense*, 496 U.S. 334, 345-346 (1990). That is, the National Guard consists of "two overlapping but distinct organization"—(1) the National Guard of the various states[4] and (2) the National Guard of the United States. *Perpich*, 496 U.S. at 345 (internal quotation marks omitted).

All fifty states and Puerto Rico have their own National Guard. *Jorden v. Nat'l Guard*

---

[4]The local governments to which National Guard units may be responsible include the local governments of states, territories of the United States, Puerto Rico, the Canal Zone, and the District of Columbia. 32 U.S.C. § 101(6). In the present case, the differences between Puerto Rico and a state are immaterial, and the Court shall therefore, for the sake of convenience, refer to all these entities, including Puerto Rico, as "states," although, of course, Puerto Rico is not a state but enjoys a unique political relationship of its own with the United States. *See Penagaricano*, 747 F.2d at 56, n. 1.

*Bureau*, 799 F.2d 99, 101 (3rd Cir. 1986).  "In each state, the Guard is a state agency, under state

authority and control."  *Charles v. Rice*, 28 F.3d 1312, 1315 (1st Cir. 1994).  "The governor and his

or her appointee, the Adjutant General, command the Guard in each state."  *Id.*  At issue here is the

ARNG unit of Puerto Rico, known as the PRANG.  The ARNG is defined by statute as "that part of

the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia,

active and inactive, that (A) is a land force; (B) is trained, and has its officers appointed, under the

sixteenth clause of section 8, article I, of the Constitution; (C) is organized, armed, and equipped

wholly or partly at Federal expense; and (D) is federally recognized."  32 U.S.C. § 101(4).

Pursuant to the National Guard's "dual enlistment" system, all persons who enlist in a State

National Guard unit also simultaneously enlist in the National Guard of the United States, a distinct

federal military organization.  *See Penagaricano*, 747 F.2d at 56; *see also Perpich*, 496 U.S. at 345-

56.  Accordingly, every member of the PRANG is concurrently enlisted in the Army National

Guard of the United States ("ARNGUS"), which is a component of the Ready Reserves of the

United States Armed Forces and is composed of the federally recognized ARNG units of the various

States.  *See Perpich*, 496 U.S. at 345-56; *see also* 32 U.S.C. § 101(5).

Because of the hybrid nature of the National Guard and the fact that each member of a State

National Guard is also a member of the National Guard of the United States and may be activated to

federal status at anytime, the federal government is authorized to prescribe regulations and issue

orders to organize, discipline and govern the National Guard.  *See* 32 U.S.C. § 110; *see also*

*Charles*, 28 F.3d at 1315.  In exchange for following the regulations, the State National Guard

receive federal recognition, arms, equipment and funding.  *See* 32 U.S.C. §§ 101(4), 106, 107.

"States that fail to comply with federal regulations risk forfeiture of federal funds allocated to

organize, equip, and arm state Guards." *Charles*, 28 F.3d at 1315-16; *see also* 32 U.S.C. § 108.

## 2.   National Guard Technicians

"The National Guard Technician Act of 1968 is a special act of Congress enacted for the limited purpose of making fringe and retirement benefits of federal employees and coverage under the Federal Tort Claims Act available to National Guard technician employees of the various states." *Am. Fed. of Gov't Employees v. F.L.R.A.*, 730 F.2d 1534, 1536-37 (D.C. Cir. 1984). "It accomplishes this by creating a dual status for such technicians." *Id.* at 1537. Specifically, National Guard technicians are considered to be federal employees for some purposes—*i.e.*, for purposes of federal employee benefits and coverage under the Federal Tort Claims Act—but are also members of the respective State National Guard units where they serve. *Id.*

As the D.C. Circuit has emphasized, "[s]ince technicians are members of the state National Guard, Congress was careful to recognize the authority of the state." *Id.* In particular, Congress provided that the Secretary is directed to designate that the relevant State's Adjutant General "employ and administer the technicians." 32 U.S.C. § 709(b). Accordingly, Congress provided that the State's Adjutant General is authorized to separate a technician from his or her technician employment at any time for cause and to accomplish any "reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation." *Id.* at §§ 709(f)(2)-(3). As the D.C. Circuit summarized, "[it] thus appears that the scheme of the act is to create the technicians as nominal federal employees for a very limited purpose and to recognize the military authority of the states through their Governors and Adjutants General to employ, command and discharge them." *Am. Fed. of Gov't Employees*, 730 F.2d at 1537-38.

5

In addition, Congress also specifically required that technicians be members of their State National Guard and that, in the event a technician is "separated from the National Guard," the individual "shall be promptly separated from military technician (dual status) employment by the adjutant general" of the relevant state.  32 U.S.C. at §§ 709(b), (f)(1); *see also Ass'n of Civilian Technicians v. F.L.R.A.*, 250 F.3d 778, 780 (D.C. Cir. 2001) ("The National Guard Technician Act of 1968, 32 U.S.C. § 709(b), provides that, as a condition of civilian employment, technicians must, *inter alia*, be members of the National Guard and hold the military grade specified by the Secretary concerned.").  In addition, Congress provided that a right of appeal from any such action taken by the state adjutant general "shall not extened beyond the adjutant general of the jurisdiction concerned."  32 U.S.C. § 709(f)(4).

>3.     The ABCMR and the NGB

The ABCMR is composed of civilians who evaluate service-members' claims of error or injustice in their military records.  *Dickson v. Secretary of Defense*, 68 F.3d 1396, 1399 (D.C. Cir. 1995).  The ABCMR derives its authority from 10 U.S.C. § 1552(a)(1), which provides in relevant part that:

>The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice . . .  [S]uch corrections shall be made by the Secretary acting through ABCMRs of civilians of the executive part of that military department.

10 U.S.C. § 1552(a)(1).

The NGB "is the channel of communications on all matters pertaining to the National Guard [and] the Army National Guard of the United States . . .between (1) the Department of the Army . . ., and (2) the several States."

B.      *Factual Background Specific to the Instant Case*

The material facts of this case are undisputed.[5]  Plaintiffs Association of Civil Technicians,

Inc. and Laborers' International Union of North America are labor organizations within the meaning

of 5 U.S.C. § 7103(a)(4).  Defs.' Stmt. ¶ 1.  Their members and members of the federal employee

bargaining units they represent include a nationwide majority of dual status National Guard

technicians employed under 32 U.S.C. § 709.  *Id.*

Plaintiffs[6] are former members of the PRANG and former dual status National Guard

technicians employed by the PRANG under 32 U.S.C. § 709.  *Id.* ¶ 3.  In 1998, the Governor of

Puerto Rico mobilized the PRANG to provide recovery assistance in the aftermath of Hurricane

Georges.  *Id.* ¶ 4.  All four Plaintiffs were each accused by PRANG officials of being absent without

---

[5]As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil
Rule 56.1 when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513,
519 (D.C. Cir. 2002) (district courts need to invoke Local Civil Rule 56.1 before applying it to
the case).  The United States District Court for the District of Columbia has recently clarified
that, for "cases in which judicial review is based solely on the administrative record . . . motions
for summary judgment and oppositions thereto shall include a statement of facts with references
to the administrative record."  LCvR 7(h)(2).  Local Civil Rule 7(h)(2) does not alter the parties'
obligations to submit statements of material fact in support of motions for summary judgment in
administrative review cases.  Rather, as the Comment to Local Civil Rule 7(h) states, LCvR
7(h)(2) "recognizes that in cases where review is based on an administrative record the court is
not called upon to determine whether there is a genuine issue of material fact, but rather to test
the agency action against the administrative record."  *See* Comment to LCvR 7(h).  Plaintiffs
have not disputed any of Defendants' factual assertions as set forth in Defendants' Statement of
Material Facts ("Defs.' Stmt."), although Plaintiffs do contend that certain factual assertions are
not material.  *See* Pls.' Cross-Mot./Opp'n, Pt. 3 (Statement of Facts).  Accordingly, the Court
shall cite largely to Defendant's undisputed Statement of Material Facts, but shall also cite
directly to evidence in the record, where appropriate, to provide additional information not
covered in Defendants' Statement.

[6]Although the factual circumstances relating to each of the Plaintiffs' separations from the
PRANG differ in minor ways, the material facts relating to each Individual Plaintiff are largely
identical as is relevant to the case at hand.  The Court shall therefore consider Plaintiffs together,
noting where appropriate any material differences.

out leave for various periods of time during this activation and were each administratively separated

from the PRANG by the Adjutant General based on those allegations. *Id.* In addition, as a result of

their discharge from the PRANG, each Individual Plaintiff was also automatically terminated from

his military technician status. *See id.* ¶¶ 5(b), 6(b), 7(e), 8(e).

Plaintiffs thereafter each applied to the ABCMR requesting, in relevant part, that their

military records be corrected to show that they were not discharged from the PRANG and that they

were not absent without leave ("AWOL"). *See id.* ¶¶ 5(d), 6(c), 7(g), 8(g). The ABCMR ultimately

determined that the Plaintiffs' discharges were in violation of federal regulations, erroneous and

unjust. *Id.* ¶ 13. Specifically, the ABCMR determined that the administrative separations were in

contravention of a NGB memorandum issued on October 20, 1998 and entitled "All States Enlisted

Separation" (the "Memorandum"). *Id.* ¶ 11. The Memorandum served to replace all previous

policies and regulations concerning enlisted discharges and required that commanders must use

Army Regulation 135-178, "Separation of Enlisted Personnel," for all involuntary discharges. *Id.*

In particular, Army Regulation 135-178 affords service members notification procedures and the

right to a hearing before an administrative separation board if he or she has served over six years.

*Id.* Although each of the Plaintiffs' discharges were initiated on October 22, 1998—*i.e.,* after the

Memorandum was issued on October 20, 1998—the Plaintiffs' commanders failed to follow Army

Regulation 135-178 as well as other applicable regulations.[7] *Id.* ¶ 12. Consequently, none of the

Plaintiffs received notice of a right to a hearing or appeared before an administrative separation

board prior to their discharge, nor were their discharges approved by NGB as required by the

---

[7]Because the PRANG did not utilize the separation procedures set forth in the relevant regulations, the discharges impacted only the Plaintiffs' membership in the PRANG. Defs.' Stmt. ¶ 12. The four Plaintiffs remain in the U.S. Army Reserves following their discharges. *Id.*

relevant federal regulations.  *Id.* ¶ 13.

The ABCMR therefore recommended to the Adjutant General that the Plaintiffs' discharges from the PRANG be reconsidered and/or revoked, and that Plaintiffs be granted related equitable relief.  *See id.* ¶¶ 5(e), 6(d), 6(h), 7(h), 7(k), 8(h), 8(k).  In addition, except as to Plaintiff Hernandez,[8] the ABCMR provided that, in the event the Adjutant General refused to revoke and/or reconsider the Plaintiffs' discharges from the PRANG, the ABCMR would grant Plaintiffs alternative relief as to their enlistment in the federal reserves and their federal reserves' records.[9] *See id.* ¶¶ 5(e), 7(k), 8(k)-(m).  The NGB, acting as the liaison, generated advisory opinions and forward the ABCMR's recommendations to the Puerto Rico Adjutant General.  *See id.* ¶¶ 5(f), 6(e)-(h), 7(h), 7(l), 8(h)-(i).  Ultimately, however, the Adjutant General refused to reconsider and/or revoke the Plaintiffs' discharges, as recommended by the ABCMR.[10]  *See id.* ¶¶ 6(e), 7(i); *see also* AR Velez at 22.

### C.    Procedural Background

Plaintiffs filed the instant lawsuit on September 27, 2007.  Defendants thereafter filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.  *See* Defs.' Mot., Docket

---

[8]Plaintiff Hernandez did not request any relief concerning his enlistment in the federal reserves and/or his federal reserves' records, and the ABCMR therefore did not provide any such relief.  Defs.' Stmt. ¶¶ 6(d), (h).

[9]The Court notes that Plaintiffs do not challenge the adequacy or correctness of the ABCMR's decision as to corrections and/or changes concerning their enlistment in the federal reserves.  *See generally* Pls.' Cross-Mot./Opp'n.

[10]Although, as Defendants point out, Plaintiff Cruz's administrative record does not affirmatively indicate that Puerto Rico officials refused his reinstatement to the PRANG, his filing of the Complaint suggests that the Adjutant General did in fact refuse to reinstate Plaintiff Cruz, as is similar to the other Plaintiffs.  *See* Defs.' Mot. at 3, n. 5.

No. [6].  Plaintiffs in turn filed their Cross-Motion for Summary Judgment and Opposition to Defendants' Motion.  *See* Pls.'s Cross-Mot./Opp'n, Docket No. [9].  Briefing on the parties' motions is now complete.

## II.  LEGAL STANDARDS

### A.      *Federal Rule of Civil Procedure 12(b)(1)*

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction.  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); *see also Pitney Bowes, Inc. v. U.S. Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  A court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts.  *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge*, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350). Finally, "[a]lthough 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see*

*also Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) (in resolving a motion to dismiss

pursuant to Rule 12(b)(1), a court "may also consider 'undisputed facts evidenced in the record'")

(internal citations omitted).

> B.      *Federal Rule of Civil Procedure 56*

Summary judgment is appropriate where "there is no genuine issue as to any material fact."

Fed. R. Civ. P. 56(c); *see Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).   Under the summary

judgment standard, the moving party "bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any' which it believes

demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).   In response, the opposing party must "go beyond the pleadings and by [its] own

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'"   *Id.* at 324.   In this case, there are no

factual disputes.

## III.  DISCUSSION

> A.      *Motion to Dismiss Pursuant to Rule 12(b)(1)*

Plaintiffs' Complaint, although not drafted *pro se*, is by no means a model of artful pleading.

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement

of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).   Plaintiffs'

Complaint, however, fails to provide the necessary "short and plain statement."

11

Upon review of the Complaint, it is evident that Plaintiffs generally challenge Defendants' position that they lack the authority to order Puerto Rico officials to reinstate Plaintiffs into the Puerto Rico Army National Guard and seek declaratory and injunctive relief requiring Defendants to reinstate Plaintiffs into the National Guard (both in the PRANG and to their technician status) and to correct their National Guard records to reflect their reinstatement.  What is less clear, however, is the precise claims Plaintiffs in fact seek to pursue in this lawsuit and the legal basis for each claim.  *See generally* Compl., Docket No. [1].  Although Plaintiffs' Complaint includes a plethora of citations to various statutory provisions, including the Administrative Procedures Act ("APA") and the Mandamus statute, Plaintiffs' Complaint explicitly provides only that the Court has jurisdiction over Plaintiffs' claims under the federal question statute, 28 U.S.C. § 1331, and the mandamus statute, 28 U.S.C. § 1361.  *See id.* ¶ 2.

Given the ambiguity inherent in Plaintiffs' Complaint, Defendants filed their Motion seeking in the first instance to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  *See* Defs.' Mot. at 2-9.  Defendants make two related arguments, both based on the assumption that Plaintiffs' Complaint solely asserts a claim for mandamus relief.[11]  First, Defendants argue that Plaintiffs' Complaint should be dismissed because it does not provide a waiver of sovereign immunity.  *Id.* at 5-6.  As Defendants emphasize, the United States cannot be sued without its consent.  *Id.* at 5.  Defendants contend, however, that Plaintiffs' Complaint fails to identify a waiver of sovereign immunity as Plaintiffs assert only that the Court has jurisdiction

---

[11]"[A] request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus in this context."  *Swan v. Clinton*, 100 F.3d 973, 977 n. 1 (D.C. Cir. 1996); *see also Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 918 n. 1 (D.C. Cir.1980) ("An action purportedly requesting a mandatory injunction against a federal official is analyzed as one requesting mandamus.").

pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361—neither of which provide a waiver of sovereign

immunity. *See id.* at 6. Defendants nonetheless acknowledge that "Plaintiffs arguably could have an

APA claim under 5 U.S.C. §§ 701-705. Since Plaintiffs are challenging the ABCMR's decision to

make recommendations to the PRANG and assert that Defendants acted contrary to the law, the

Court could review the case under the APA standard." *Id.* at 6.

　　　Second, Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs

have not set forth the necessary prerequisites for mandamus relief in their Complaint. *Id.* at 6-9. As

the D.C. Circuit has observed, "[t]he necessary prerequisites for this court to exercise its mandamus

jurisdiction are that '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to

act; and (3) there is no other adequate remedy available to the plaintiff.'" *Swan v. Clinton*, 100 F.3d

973, 977 n. 1 (D.C. Cir. 1996) (quoting *Am. Cetacean Soc'y v. Baldridge*, 768 F.2d 426, 433 (D.C.

Cir. 1985)). Defendants argue that Plaintiffs cannot demonstrate that they have a clear right to relief

or that Defendants have a clear duty to act, and, because relief is available pursuant to the APA, they

cannot show that there is no other adequate remedy. Defs.' Mot. at 6-9. Accordingly, Defendants

assert that Plaintiffs' Complaint should be dismissed to the extent it alleges a claim for mandamus

relief, even assuming Plaintiffs have provided a waiver of sovereign immunity.

　　　Rather than file an amended complaint to clarify the precise claims and legal relief sought in

their Complaint, as would have been appropriate, Plaintiffs instead filed a Cross-Motion for

Summary Judgment and Opposition to Defendants' Motion, in which Plaintiffs provide the

following two-sentence response to Defendants' motion to dismiss pursuant to Rule 12(b)(1):

> We agree with defendants that plaintiffs can "obtain relief from this Court under the
> APA" and that this relief is "an adequate remedy." For this reason, the Court need not
> address whether it also has mandamus jurisdiction under 28 U.S.C. § 1361.

Pls.' Cross-Mot./Opp'n at 17.  No further elaboration is provided.

From this, the Court understands Plaintiffs to have explicitly conceded that they are only pursuing relief under the APA and have abandoned any claims they may have asserted in their Complaint pursuant to 28 U.S.C. § 1361.  Indeed, Plaintiffs' Cross-Motion and Opposition fails to otherwise address Defendants' substantive argument that, even assuming Plaintiffs' Complaint provides a waiver of sovereign immunity, Plaintiffs cannot set forth the necessary prerequisites for mandamus relief.  *See generally* Pls.' Cross-Mot./Opp'n at 17.  Accordingly, the Court shall deem Plaintiffs' claims, if any, under 28 U.S.C. § 1361 to be abandoned and shall grant Defendants' motion to dismiss Plaintiffs' mandamus claims pursuant to Rule 12(b)(1) as conceded.  *See Hopkins v. Women's Div., General Bd. of Global Ministries,* 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir .1997) ; *see also Day v. D.C. Dep't of Consumer & Regulatory Affairs,* 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").

Finally, in light of Plaintiffs' assertion that they are in fact seeking relief pursuant to the APA, the Court shall proceed upon the understanding that Plaintiffs' Complaint also asserts claims under that statute.[12]  Given the nebulous nature of the Complaint, however, the Court pauses to

---

[12] Although the Court would normally require Plaintiffs to file an amended Complaint to both clarify the basis for the Court's jurisdiction as well as to clarify the precise claims sought and the legal basis for such claims, given the disposition of this case on the parties' Cross-Motions for Summary Judgment, the filing of an amended Complaint is obviously unnecessary. In addition, although Plaintiffs' Complaint does not explicitly provide that this Court has

14

clarify Plaintiffs' remaining claims, the exact nature of which are less than clear.  Although the

Complaint includes citations to the APA, in particular to 5 U.S.C. § 706(1), the Complaint fails to

specifically delineate Plaintiffs' legal claims.  *See generally* Compl.  Upon the Court's own review

of the Complaint, it appears that, as to Plaintiffs' APA claims, Plaintiffs primarily intended to allege

that Defendants' refusal to: (1) order the State National Guard to reinstate Plaintiffs and others who

were separated in violation of federal regulations; (2) reinstate Plaintiffs to their dual status

technician employment; and (3) correct the National Guard records to reflect their reinstatement are

"agency action(s) unlawfully withheld" under 5 U.S.C. § 706(1).[13]  *See id*. ¶¶ 18-20.  In addition,

although Plaintiffs' Complaint does not cite to 5 U.S.C. § 706(2) specifically, it appears that

Plaintiffs may also have intended to allege that Defendants' policy and practice of

recommending—rather than ordering—the Adjutant General of the relevant State National Guard

unit to reinstate Plaintiffs, refusing to reinstate Plaintiffs to their technician status, and refusing to

---

jurisdiction pursuant to the APA, given the parties' briefings on this issue and agreement that
Plaintiffs may proceed under the APA, the Court shall proceed on the understanding that
Plaintiffs' Complaint is amended to explicitly allege jurisdiction pursuant to the APA.  As the
D.C. Circuit has observed, the "court has authority to amend [Plaintiffs'] complaint in this
fashion."  *See  Swan v. Clinton*, 100 F.3d 973, 980 n. 3 (D.C. Cir. 1996) (noting that "[u]nder 28
U.S.C. § 1653, '[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or
appellate courts.'); *see also Goble v. Marsh*, 684 F.2d 12, 17 (D.C. Cir. 1982) (in section 1653
"Congress intended to permit amendment broadly to avoid dismissal of suits on technical
grounds").

[13]Although "[a]n action to 'compel agency action unlawfully withheld or unreasonably
delayed'" 5 U.S.C. § 706(1), is similar to a petition for mandamus," *Nat'l Ass'n of Home
Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1280 (D.C. Cir. 2005), it appears that
in waiving their claims pursuant to the mandamus statute, Plaintiffs did not also intend to waive
their APA claims under 5 U.S.C. § 706(1).  *See* Pls.' Cross-Mot./Opp'n at 16 (stating that
Plaintiffs have shown that Defendants "unlawfully withheld" relief requested by Plaintiffs).
Accordingly, the Court shall proceed upon the understanding that Plaintiffs intend to assert
claims under both 5 U.S.C. §§ 706(1)&(2).

correct the National Guard records to reflect their reinstatement, is "not in accordance with the law" under that section.   *See* Compl. ¶ 4; *see also* Pls.' Cross-Mot./Opp'n at 15-16.  Accordingly, based upon that understanding, the Court shall now proceed to consider Defendants' Motion for Summary Judgment as to Plaintiffs' APA claims.

        *B.*     *Motion for Summary Judgment*

       The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  Pursuant to section 706, a court is authorized to "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . . "  *Id.* § 706.  Accordingly, under section 706, federal courts may review two types of claims: those seeking to compel certain required agency actions not yet taken (§ 706(1)), and those seeking to set aside arbitrary "agency actions" and determinations (§ 706(2)). *Alliance to Save Mattaponi v. U.S. Army Corps of Engineers*, 515 F.Supp. 2d 1, 9 (D.D.C. 2007).

       As discussed above, the heart of Plaintiffs' claims in this case is their assertion that Defendants have unlawfully refused to act—*i.e.*, by refusing to: (1) order Plaintiffs reinstated in the PRANG; (2) order Plaintiffs reinstated to dual status technician status; and (3) correct Plaintiffs' National Guard records accordingly.  As stated previously, Plaintiffs' Complaint appears to assert that Defendants' "inaction" falls under both section 706(1) and section 706(2) of the APA. Ultimately, regardless of whether Plaintiffs' claims are analyzed under section 706(1) or section 706(2), the merits of their claims turn on whether Defendants, as federal agencies, have the authority either to order a State to reinstate individual members of the State's National Guard unit or to correct

the individual members' National Guard records to reflect reinstatement into the National Guard. Because the Court concludes that Defendants do not have such authority, Plaintiffs' claims fail under either theory, for the reasons discussed below.

Finally, before turning to the merits of Plaintiffs' APA claims, the Court pauses to consider the question of justiciability as it pertains to judicial review of military personnel decisions. Although neither party has directly raised the issue, in light of the judiciary's oft-repeated reluctance to second-guess military personnel decision, *see Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989), the Court shall briefly address the issue of justiciability on its own initiative. First, it is clear that the Court may review Plaintiffs' claims challenging the ABCMR's decision as contrary to the law under 5 U.S.C. § 706(2). *See id.* at 1512 (holding that "federal courts may inquire whether the Secretary's action in this area is 'arbitrary, capricious, or contrary to the statutes and regulations governing that agency'"). As the D.C. Circuit has held, district courts may review the ABCMR's decisions because a finding that the Secretary's decision was contrary to the law "would not require the district court to substitute its judgment for that of the Secretary . . . [but] would only require the Secretary, on remand, to explain more fully the reasoning behind his decision and . . . to apply the correct appropriate legal standard." *Id.* at 1512. That is, "adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Id.* at 1511. Claims seeking administrative review of the ABCMR's decisions are therefore reviewable under section 706(2).

The justiciability of Plaintiffs' claims under section 706(1), however, is less clear. Under the D.C. Circuit's case law, it is doubtful that the Court would have the authority to compel Defendants to order the Puerto Rico Adjutant General to reinstate Plaintiffs or to reinstate Plaintiffs to their dual

status technician employment or to correct National Guard records accordingly.  *See id.* (concluding

that individual's request for retroactive promotion—as opposed to request for review of ABCMR's

decision—"falls squarely within the realm of nonjusticiable military personnel decisions"); *see also*

*Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998) ("However, plaintiff's request for

reinstatement . . . [is] clearly not justiciable because consideration of these claims would require this

Court to intrude upon military personnel decisions committed exclusively to the legislative and

executive branches."); *but see Navas v. Vales*, 752 F.2d 765, 770 (1st Cir. 1985) (suggesting that a

plaintiff may have a justiciable claim if the State National Guard refused to reinstate plaintiff as

recommended by the ABCMR).  Nonetheless, because the parties have not briefed this issue and

because the Court ultimately concludes that Plaintiffs' claims under section 706(1) are without

merit, the Court need not resolve this issue *sua sponte*.

      1.    <u>5 U.S.C. § 706(1)</u>

    First, Plaintiffs appear to allege that Defendants have the authority and the duty to: (1) order

that Puerto Rico reinstate Plaintiffs in the PRANG; (2) reinstate Plaintiffs to their dual status

technician employment; and (3) correct the Plaintiffs' National Guard records accordingly.

Defendants' failure to do so is, according to Plaintiffs, an "agency action unlawfully withheld."

Defendants respond that they, as federal agencies, lack the authority to order State officials to

reinstate individual members in a State National Guard unit or to correct the individual's Guard

records to reflect such a reinstatement.  Moreover, because membership in the National Guard is a

prerequisite for dual status technician employment under 32 U.S.C. § 709, Defendants assert that

they are without authority to reinstate Plaintiffs as dual status technicians as well.

    As explained above, section 706(1) authorizes a court to "compel agency action unlawfully

withheld or unreasonably delayed." 5 U.S.C. § 706(1). "However, consistent with underlying

separation of powers considerations, 'a claim under [section] 706(1) can proceed only where a

plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.'"

*Kaufman v. Mukasey*, 524 F.3d 1334, 1338 (D.C. Cir. 2008) (quoting *Norton v. S. Utah Wilderness

Alliance,* 542 U.S. 55, 64 (2004)) (emphasis in original)). Accordingly, "[t]he limitation to required

agency action rules out judicial direction of even discrete agency action that is not demanded by

law." *S. Utah Wilderness Alliance*, 542 U.S. at 65. Because Plaintiffs have not shown that

Defendants are authorized, let alone legally *required*, to order Plaintiffs reinstated into either the

PRANG or their dual status technician employment and to correct the National Guard records

accordingly, the Court determines that Plaintiffs' claims under section 706(1) must fail.

          a.      Plaintiffs' Claim that Defendants' Failure to Order their Reinstatement
in the PRANG is an "Agency Action Unlawfully Withheld"

Defendants have consistently maintained that they—as federal agencies—lack the authority

to compel a State to reinstate members to the State's National Guard. Indeed, as Defendant

emphasize, courts have repeatedly observed that the Secretary, acting through the ABCMR, cannot

compel a State to reinstate a member into a State's National Guard. *See, e.g., Hanson v. Wyatt*, 552

F.3d 1148, 1152 (10th Cir. 2008) (the ABCMR "cannot, however, 'direct [the plaintiff's]

reinstatement in the National Guard of the State"); *Christoffersen v. Washington State Air Nat'l

Guard*, 855 F.2d 1437, 1442 (9th Cir. 1988) (the "Records Board . . . has no power to force

Washington to reinstate appellants in the Washington Guard")*; Jorden v. NGB*, 799 F.2d 99, 101 n.

5 (3rd Cir. 1986) ("the ABCMR, a federal Board, cannot order [plaintiff's] reinstatement to the state

Guard"); *Williams v. Wilson*, 762 F.2d 357, 360 n. 6 (4th Cir. 1985) ("the ABMCR lacks authority to

order the West Virginia Army National Guard to reinstate [the plaintiff]"); *Navas v. Vales*, 752 F.2d

765, 770 (1st Cir. 1985) ("The ABCMR cannot compel the Puerto Rico National Guard to reinstate

[the plaintiff]."); *Culbreth v. Ingram*, 389 F. Supp. 2d 668, 674 (E.D.N.C. 2005) (noting that the

ABCMR "could not order [the plaintiff's] reinstatement in the [North Carolina Army National

Guard]"); *Karr v. Carper*, 818 F. Supp. 687, 689 (D. Del. 1993) (The ABCMR "do[es] not have the

authority to provide remedies that consist of directives to state National Guard bodies.").

Accordingly, courts have routinely observed that, "to be reinstated as an officer of the [Army]

National Guard, an officer must pursue remedies both with the [Army National Guard of the United

States] and within the [Army] National Guard of his own state." *Penagaricano*, 747 F.2d 57; *see

also Hanson*, 552 F.3d at 1151.

Plaintiffs argue that these decisions should not carry weight because they do not directly

involve the question at issue here—*i.e.,* whether the Secretary has the authority to compel a State to

reinstate individual members of a State's National Guard—and the relevant discussions contained

therein are largely dicta.[14]  Although Plaintiffs are correct that none of these decisions directly

involve a claim by a plaintiff requesting the federal government to compel a State to reinstate the

Individual into its State National Guard, the Court nonetheless finds the fact that each of these courts

---

[14]For example, some of these cases involve the question of whether a plaintiff in federal court must exhaust his or her administrative remedies before the ABCMR prior to initiating a lawsuit in federal court challenging a State Adjutant General's decision to separate the plaintiff from the National Guard.  Courts have generally found that, because the ABCMR does not have the authority to force a State to reinstate the plaintiffs into the State's National Guard, a plaintiff need not first submit his or her claim to the ABCMR.  *See, e.g., Christoffersen,* 855 F.2d at 1442 ("Given that the Records Board could not provide effective relief against the state appellees, we will assume that appellants have exhausted all available remedies. . . ."); *Jorden,* 799 F.2d at 101, n. 5 (disagreeing that plaintiffs' claims should be dismissed for failure to exhaust administrative remedies in part because "the ABCMR cannot afford [plaintiff] satisfactory relief").

uniformly understood (without dispute by any of the parties) that the Secretary lacked such authority

is persuasive support for Defendants' position.  This is particularly so given that Plaintiffs have not

pointed the Court to any decision suggesting the contrary—*i.e.,* that the Secretary is, in fact,

authorized to compel a State to reinstate members of the State National Guard.

Having no case law to support their position, Plaintiffs instead make the rather novel

argument that 32 U.S.C. § 110 statutorily authorizes and requires Defendants to order State officials

to reinstate members in the State's National Guard.  Section 110 provides that "[t]he President shall

prescribe regulations, and issue orders, necessary to organize, discipline, and govern the National

Guard."  32 U.S.C. § 110.  According to Plaintiffs, 32 U.S.C. § 110 mandates that the President

order the Adjutant General of the relevant jurisdiction to reinstate any member of a State National

Guard who was separated in violation of a federal regulation.  *See* Pls.' Cross-Mot./Opp'n at 13.

Plaintiffs further argue that, because the President's authority under 32 U.S.C. § 110 is statutorily

delegated to Defendants,[15] Defendants thus have a statutory duty to compel the Puerto Rico Adjutant

General to reinstate Plaintiffs.  Pls.' Cross-Mot./Opp'n at 2-3.

Plaintiffs' interpretation of 32 U.S.C. § 110, however, rests entirely on their own unsupported

contentions.  According to Plaintiffs, 32 U.S.C. § 110 should be read to authorize Defendants to

order State officials to reinstate Plaintiffs into the State National Guard simply because such an order

---

[15]Defendants do not generally challenge Plaintiffs' position that the President's authority under 32 U.S.C. § 110 is delegated to Defendants pursuant to 3 U.S.C. §§ 301 and 302, which provide that the President is "authorized to designate and empower the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate, to perform without approval, ratification, or other action by the President . . . any function which is vested in the President by law."  Accordingly, the Court shall presume without deciding that the President's authority under 32 U.S.C. § 110 is so delegated.

21

is, in this case, "necessary."  *See* Pls.' Cross-Mot./Opp'n at 13 ("Where part of the National Guard,

such as the [PRANG], has separated Guard members in violation of federal regulations, an order

correcting that violation is 'necessary.'").  Plaintiffs, however, fail to cite any case law or legal

authority supporting their unprecedented conclusion that the President's authority to prescribe

regulations and issue orders to organize, discipline and govern the National Guard authorizes—much

less *legally requires*—the federal Defendants to order a sovereign state to reinstate individual

members in that State's National Guard.

Defendants, not surprisingly, disagree with Plaintiffs' interpretation of 32 U.S.C. § 110.

According to Defendants, 32 U.S.C. § 110 authorizes the President to issue orders and regulations

necessary to establish systems, processes and standards for uniformity among the States' National

Guard units, but the States themselves are then responsible for the execution and day-to-day

administering of their own National Guard units in accordance with the federal government's

guidance.  *See* Defs.' Opp'n/Reply at 9.  In other words, the statute does not authorize the President,

or Defendants by delegation, to interfere with or assume the State's daily administrative duties.  *See*

*Lipscomb v. F.L.R.A.*, 333 F.3d 611, 614 (5th Cir. 2003) ("The daily operations of the national guard

units are thus recognized generally to be under the control of the states, but governed largely by

substantive federal law.").  To the extent a State National Guard refuses to comply with federal

guidance, the federal government may choose to sanction the state's noncompliance by withholding

funds pursuant to 32 U.S.C. § 108 ("If, within a time fixed by the President, a State fails to comply

with a requirement of this title, or a regulation prescribed under this title, the National Guard of that

State is barred, in whole or in part, as the President may prescribe, from receiving money or any

other aid, benefit, or privilege authorized by law.").  But Defendants maintain that 32 U.S.C. § 110

22

does not authorize the federal government to mandate that a State undertake specific personnel actions as regards particular members of the State's National Guard.

Defendants further argue that, because the text of 32 U.S.C. § 110 does not speak directly to the specific question of whether the President may compel a State to reinstate members of the State National Guard, Defendants' interpretation of that statute is entitled to *Chevron* deference. *See* Defs.' Opp'n/Reply at 4-6. Plaintiffs disagree. The Court, however, is persuaded that Defendants' interpretation should be afforded deference. As the Supreme Court has stated, judicial deference is appropriate where Congress has not specifically spoken on a particular question, and Congress has generally delegated to the agency the power to administer the statute and to make decisions carrying the force of law. *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001). In addition, deference is particularly warranted where the statutory and regulatory scheme at issue is highly detailed and the agency can bring the benefit of specialized experience to bear on the subtle question. *See id.* at 230-31, 235. Moreover, although Defendants' interpretation of 32 U.S.C. § 110 is not the product of a formal rule-making process, that alone does not preclude judicial deference under either *Chevron* or *Skidmore. See Mead Corp.*, 533 U.S. at 230-31, 235; *see also Fontana v. Caldera*, 160 F. Supp. 2d 122, 127-28 (D.D.C. 2001) (determining that the ABCMR's statutory interpretation was entitled to *Chevron* deference). Rather, "the fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead Corp.*, 533 U.S. at 228 (internal citations omitted).

Here, the Court finds that Defendants' interpretation of 32 U.S.C. § 110 is persuasive and worthy of deference. Unlike Plaintiffs' position, Defendants' interpretation takes into account basic

principles of federalism and is consistent with the long-standing principle, as recognized in numerous court decisions, that the Secretary is without the authority to order a State National Guard to reinstate a particular member.  *See supra* at 20-21.  Moreover, such deference is particularly warranted here, given that the statutory and regulatory scheme governing the National Guard is highly detailed and that Defendants have an expertise in navigating between the federal and state characteristics inherent in the National Guard's uniquely hybrid nature.  *See Mead*, at 230-31, 235. Although Plaintiffs dispute Defendants' well-reasoned and logical interpretation of the relevant statutes, Plaintiffs have offered nothing other than their own conclusory opinions to support their contradictory interpretations.  The Court therefore concludes that Defendants' interpretation is reasonable and entitled to deference.  Accordingly, Plaintiffs have not shown that Defendants are authorized, let alone required, to order a State to reinstate a member of its National Guard, and Plaintiffs' claim that Defendants' failure to require Puerto Rico officials to reinstate Plaintiffs is an "agency action unlawfully withheld" under 706(1) therefore fails.

                b.      Plaintiffs' Claim that Defendants' Failure to Order their Reinstatement to their Dual Status Technician Employment is an "Agency Action Unlawfully Withheld"

Plaintiffs also contend that Defendants' failure to order Plaintiffs be reinstated to their dual status technician employment is an "agency action unlawfully withheld" under section 706(1).  The Court, however, agrees with Defendants that Defendants do not have the authority, let alone a duty, to reinstate Plaintiffs to their dual status technician status.  First, as discussed above, the administration of a State's National Guard, including personnel decisions regarding dual status technicians, is generally reserved to the State's Adjutant General.  *See Lipscomb,* 333 F.3d at 614. Indeed, Congress explicitly reserved control over personnel decisions regarding dual status

technicians, such as Plaintiffs, to the Adjutant General of the relevant jurisdiction.  *See generally* 32

U.S.C. § 709.  In particular, Congress provided that the State Adjutant General is authorized to: (1)

"employ and administer the technicians," *id.* § 709(b); (2) separate a technician from his or her

technician employment at any time for cause, *id.* § 709(f)(2); and (3) accomplish any "reduction in

force, removal, or an adverse action involving discharge from technician employment, suspension,

furlough without pay, or reduction in rank or compensation," *id.* § 709(f)(3).  As the D.C. Circuit

summarized, "[it] thus appears that the scheme of the [National Guard Technician] act is to create

the technicians as nominal federal employees for a very limited purpose and to recognize the military

authority of the states through their Governors and Adjutants General to employ, command and

discharge them."  *Am. Fed. of Gov't Employees*, 730 F.2d at 1537-38; *see also Jorden*, 799 F.2d at

101 ("The adjutant general, a state officer, is in charge of personnel matters" concerning dual status

technicians.).  Defendants therefore lack the authority to order Plaintiffs' reinstatement to their dual

status technician employment, as such personnel matters are given solely to the discretion of the

Puerto Rico Adjutant General pursuant to section 709.

Second, the Court agrees with Defendants that, even if they had the authority as a general

matter to reinstate Plaintiffs to their dual status technician employment, Plaintiffs are no longer

members of the National Guard and therefore are not eligible for dual status technician employment

under 32 U.S.C. § 709.  It is undisputed that technicians must be members of the National Guard and

that, in the event a technician is "separated from the National Guard," the individual "shall be

promptly separated from military technician (dual status) employment by the adjutant general" of the

relevant state.  *Id.* at §§ 709(b), (f)(1); *see also Ass'n of Civilian Technicians,* 250 F.3d at 780 ("The

National Guard Technician Act of 1968, 32 U.S.C. § 709(b), provides that, as a condition of civilian

employment, technicians must, *inter alia*, be members of the National Guard and hold the military

grade specified by the Secretary concerned."). As Plaintiffs were separated from the National Guard

by the Puerto Rico Adjutant General and as Defendants are without authority to order Plaintiffs

reinstated in the PRANG, Plaintiffs are no longer eligible for their dual status technician employment

under the plain language of the relevant statutes. Accordingly, Plaintiffs have not shown that

Defendants are authorized, let alone required, to reinstate Plaintiffs to their technician employment,

and Plaintiffs' claim that Defendants' failure to do so is an "agency action unlawfully withheld"

under 706(1) therefore fails.

> c.   Plaintiffs' Claim that Defendants' Failure to Correct the Plaintiffs'
>      National Guard Records is an "Agency Action Unlawfully Withheld"

Finally, Plaintiffs allege that Defendants' failure to correct the Plaintiffs' National Guard

records to show that they remain members of the PRANG is an "agency action unlawfully withheld"

under section 706(1). Pursuant to 10 U.S.C. § 1552(a), "[t]he Secretary of a military department may

correct any military record of the Secretary's department when the Secretary considers it necessary to

correct an error or remove an injustice. . . . [S]uch corrections shall be made by the Secretary acting

through boards of civilians of the executive part of that military department." Although both parties

vigorously dispute whether the ABCMR has jurisdiction over the records at issue, the Court need not

resolve that issue as Plaintiffs' claim suffers a more fundamental problem. Namely, under the

express terms of 10 U.S.C. § 1552(a), the Secretary has explicit discretion to determine whether to

correct any military record in the first instance: "The Secretary of a military department *may* correct

any military record  of the Secretary's department when the Secretary *considers* it necessary to

correct an error or remove an injustice." *See also Rempfer v. U.S. Dep't of Air Force Bd. for*

*Correction of Military Records*, 538 F. Supp. 2d 200, 207 (D.D.C. 2008) ("Congress has granted the Secretary . . . broad discretion in deciding whether to correct a military record.").  Accordingly, even assuming the ABCMR is authorized to correct the Plaintiffs' records as requested, the plain language of the statute makes clear that the Secretary is not legally required to do so.[16]  *See* 10 U.S.C. § 1552(a).  Plaintiffs' claim under section 706(2) that the Secretary, acting through the ABCMR, has unlawfully refused to correct the Plaintiffs' records must fail.

Accordingly, Plaintiffs' claims that Defendants unlawfully withheld a required agency action cannot succeed, and the Court therefore grants Defendants summary judgment as to Plaintiffs' section 706(1) claims.

2.    <u>5 U.S.C. § 706(2)</u>

Plaintiffs next claim that Defendants' decision to recommend—rather than order—the Adjutant General of Puerto Rico to reinstate Plaintiffs into the PRANG and to refuse to either reinstate Plaintiffs to their dual status technician employment or to correct the Plaintiffs' records to show that each had been reinstated into the National Guard is "not in accordance with the law" under 5 U.S.C. § 706(2).

While section 706(1) of the APA permits a court to compel agency action unlawfully withheld, section 706(2) by contrast authorizes a reviewing court to "hold unlawful and set aside

---

[16]Plaintiffs' reliance on *Yee v. United States*, 512 F.2d 1383, 1388-89 (Ct. Cl. 1975) for the proposition that the ABMCR is always legally required to correct military records when necessary to correct an error or to remove an injustice is misplaced.  *See* Pls.' Cross-Mot./Opp'n at 6.  As the D.C. Circuit opined in *Kreis*, "[t]he Secretary may . . . have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice."  866 F.2d at 1514.  Accordingly, even if the Secretary determines there is a clear injustice, the Secretary is not legally required to correct the error if, for example, he lacks authority to do so.

agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Here, Plaintiffs challenge the Secretary's decision, made through the ABCMR and communicated by the NGB, to merely recommend, rather than order, Plaintiffs' reinstatement.  As explained above, the Secretary's decision is undisputably "a final agency action reviewable under the Administrative Procedure Act." *Miller v. Lehman*, 801 F.2d 492, 496 (D.C. Cir. 1986).  Importantly, however, the D.C. Circuit has advised that, in light of the fact that the ABCMR is vested with considerable discretion in determining whether to take corrective action with respect to an applicant's record, a court should review that exercise of discretion under section 706(2) under an unusually deferential version of the arbitrary and capricious standard.  *Kreis*, 866 F.2d at 1514 ("perhaps only the most egregious decisions may be prevented under such a deferential standard of review"); *see also Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (applying an "unusually deferential application" of the APA standard to a decision of the Army Board for Correction of Military Records).[17]

> a.   Plaintiffs' Claim that Defendants' Decision Recommending the Puerto Rico Adjutant General Reinstate Plaintiffs in the PRANG is "Contrary to the Law"

As discussed above, Defendants reasonably determined that they do not have the authority to compel a State to reinstate members in the State's National Guard is reasonable, and their interpretation is therefore entitled to deference.  *See supra at* 20-25.  Given that conclusion, the ABCMR's decision to recommend (rather than order) the Puerto Rico Adjutant General to reinstate

---

[17]The Court notes, however, that the deferential standard set forth in *Kries* applies only to a reviewable exercise of agency discretion—not to an agency's interpretation of its statutes and regulations as is at issue here.  *See Fontana v. Caldera*, 160 F. Supp. 2d 122, 131 (D.D.C. 2001).

Plaintiffs in the PRANG is not, quite obviously, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

> b.   Plaintiffs' Claim that Defendants' Decision that they Cannot Reinstate Plaintiffs to their Dual Status Technician Employment is "Contrary to the Law"

As explained above, Defendants reasonably determined that they do not have the authority to reinstate Plaintiffs to their dual status technician employment. *See supra* at 25-27. To the contrary, Congress has explicitly reserved control over personnel decisions regarding dual status technicians, such as Plaintiffs, to the Adjutant General of the relevant jurisdiction. *See generally* 32 U.S.C. § 709. In addition, as discussed above, Plaintiffs are no longer members of the National Guard, having been separated from the PRANG, and therefore are not eligible for dual status technician employment under section 709. *See supra* at 25-27. Accordingly, Defendants' decision that they could not reinstate Plaintiffs to their dual status technician employment is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

> c.   Plaintiffs' Claim that Defendants's Decision not to Correct the Plaintiffs' National Guard Records to Reflect that They Remain in the PRANG is "Contrary to the Law"

Finally, Plaintiffs claim that Defendants' refusal to correct the Plaintiffs' National Guard records to reflect that they were not discharged from the PRANG is "contrary to the law." Specifically, Plaintiffs argue that, even if Defendants lack authority to actually order Plaintiffs reinstated in the PRANG and to their technician employment, "the Secretary . . . acting through the Board, should correct the Department's records (including the PRANG's records) to show that plaintiffs were not separated from the PRANG." Pls.' Cross-Mot./Opp'n at 4. In other words, Plaintiffs argue that Defendants have the "power to correct plaintiffs' federal records to show that,

29

insofar as the Department [of the Army] is concerned, plaintiffs are members of the ARNGUS because they are members of the PRANG." *Id.* at 5.

The Court is not so persuaded. Essentially, Plaintiffs seek an end-run around the Court's conclusion that Defendants, as federal agencies, lack the authority to order the Adjutant General of Puerto Rico to reinstate Plaintiffs into the PRANG. Acceptance of Plaintiffs' position would mean that Defendants—although not authorized to actually reinstate Plaintiffs into the PRANG—nonetheless have the authority to "correct" both PRANG and ARNGUS records to show that, for all intents and purposes, Plaintiffs were never discharged from the PRANG by the Puerto Rico Adjutant General. As discussed above, however, Defendants lack the authority to order Plaintiffs reinstated into the PRANG. *See supra* at 20-25. Defendants' conclusion that they therefore also lack the authority to in effect reinstate Plaintiffs into the National Guard by "correcting" their records is reasonable. Given that conclusion, the Court cannot say that the ABCMR's refusal to "correct" the Plaintiffs' National Guard records to act as if Plaintiffs remain enlisted members of the PRANG is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[18]

Before leaving this issue, the Court notes that, although the ABCMR did not change the Plaintiffs' records to reflect reinstatement in either the PRANG or to their dual status technician status, the Board did, where requested, provide Plaintiffs with relief as to their federal records. *See supra* at 9. Importantly, Plaintiffs do not challenge the portion of the ABCMR's decision affording

_____

[18]As mentioned above, the parties dispute whether the records at issue are within the ABCMR's jurisdiction. However, the Court need not resolve this issue given the Court's conclusion above that, even assuming the ABCMR has the authority to correct the records at issue, Defendants' decision not to do so was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

such relief.  *See generally* Pls.' Cross-Mot./Opp'n.  Accordingly, to the extent the ABCMR refused

to change the Plaintiffs' National Guard records to show that they had been"reinstated," the Court

finds that the decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  Plaintiffs' claims under section 706(2) therefore fail, and the Court shall

grant summary judgment as to those claims to Defendants.[19]

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendants' Motion to Dismiss as to

Plaintiffs' claims for mandamus relief and shall GRANT Defendants' Motion for Summary

Judgment as to Plaintiffs' APA claims.  In addition, the Court shall DENY Plaintiffs' Cross-Motion

for Summary Judgment.  An appropriate Order accompanies this Memorandum Opinion.

Date:   March 4, 2009

                                                   */s/*
                                                   COLLEEN KOLLAR-KOTELLY
                                                   United States District Judge

---

[19]Finally, the Court notes that Defendants also argue that, to the extent Plaintiffs seek
reinstatement in the National Guard, Plaintiffs' claims should be dismissed for a failure to join an
indispensable party—the Commonwealth of Puerto Rico—under Federal Rule of Civil Procedure
19.  *See* Defs.' Mot. at 9-17; Defs.' Reply at 24-31.  Given the disposition of this case on the
merits, the Court determines in its discretion that it need not reach the merits of Defendants'
motion, in the alternative, to dismiss for failure to join an indispensable party.